**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MURRAY SCHEINMAN, Plenary | ) | |
| Guardian of the Estate and Person of | ) | |
| JEFFREY J. SCHEINMAN, a Disabled | ) | |
| Person, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No.:09 cv 5340 |
| | ) | |
| MARTIN'S BULK MILK SERVICE, INC., | ) | Honorable John A. Nordberg |
| SAMUEL G. FRANKE, | ) | |
| CSX INTERMODAL, INC., | ) | Magistrate Susan E. Cox |
| INTERNATIONAL PAPER COMPANY | ) | |
| and OVERNITE EXPRESS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Susan E. Cox, Magistrate Judge

The plaintiff, Murray Scheinman ("Plaintiff"), has charged multiple defendants with negligence in connection to an automobile accident that occurred on July 3, 2008 in Highland Park, Illinois. In the approximately two years that have passed since the accident, plaintiff has amended his complaint three times to include a total of five defendants. At issue now is plaintiff's Motion for Leave to Amend his Third Amended Complaint and to Join Additional Parties. Plaintiff seeks leave to amend on two grounds: 1) to add additional allegations regarding defendants International Paper Company ("IPC"), Universal Am Cam, Ltd. ("UACL"), and Overnite Express ("Overnite Express"), and 2) to add additional parties Celtic Cartage, Inc. ("Celtic Cartage"), Celtic Express, Inc. ("Celtic Express"), Trac Leasing, Inc. ("Trac"), Overnite Logisitics, Inc. ("Overnite Logistics"), OX LLC ("OX"), and UACL. The addition of two of these new defendants - Celtic Cartage and Celtic

Express- would, however, destroy diversity jurisdiction. For the reasons discussed herein, the motion for leave to amend is granted in part and denied in part, as follows: plaintiff's request to add parties UACL, Overnite Logistics and OX, and his request to add allegations against UACL and Overnite Express, are granted; however, plaintiff's request to add Celtic Cartage, Celtic Express and Trac and to add allegations against IPC is denied [dkt 73].

## FACTUAL BACKGROUND

The allegations in this case appear straightforward at first blush. On July 3, 2008, Jeffrey J. Scheinman ("J. Scheinman") drove his car in a northbound direction on Skokie Valley Road at or near its intersection with Half Day Road in Highland Park, Illinois.[1] At the same time, defendant Samuel Franke ("Franke") drove a tractor trailer truck in the same direction on Skokie Valley Road at or near the intersection with Half Day Road.[2] Plaintiff alleges that Franke drove the truck in a negligent manner, causing it to collide with J. Scheinman's car, which resulted in serious injuries.[3] Plaintiff has brought charges of negligence against multiple defendants in his capacity as plenary guardian of the estate and person of J. Scheinman, who is now disabled as a result of the collision.[4]

### A.    Procedural History

The case has proceeded in a confusing and complicated manner. On July 7, 2008, plaintiff filed suit against Franke and his employer, Martin's Bulk Milk Service, Inc. ("Martin's"), in the Circuit Court of Cook County in Illinois.[5] Defendants Martin's and Franke filed a motion to transfer to Lake County based on Forum Non Conveniens on August 7, 2008.[6] During the course of

---

[1] Vacated Fourth Am. Compl., 2, ¶ 7 [dkt 51].
[2] *Id.* at 2, ¶ 6.
[3] *Id.* at 2, ¶ 8.
[4] *Id.* at 1.
[5] Pl.'s Mot. for Leave to Amend, 1 [dkt 73].
[6] *Id.* at 2

discovery, plaintiff allegedly learned of other parties involved in the incident.[7] Plaintiff amended his original complaint three times to add additional parties. CSX Intermodal, Inc. ("CSXI") was added on November 11, 2008, IPC was added on July 23, 2009, and Overnite Express was added on August 19, 2009 (because UACL has appeared on behalf of Overnite Express, we will refer to this party as "UACL/Overnite Express").[8] On August 28, 2009, defendants filed a joint notice of removal to federal court, which was granted.[9]

On September 4, 2009, IPC and UACL/Overnite Express filed a motion to dismiss the third amended complaint, which had named them as defendants.[10] On September 30, 2009, plaintiff filed a motion to modify the briefing schedule and conduct relevant discovery[11] and on October 5, defendants IPC and Overnite Express filed their opposition.[12] On October 7, 2009, the district court referred discovery supervision and the motion to set a briefing schedule here.[13] On October 27, the parties appeared before us for an initial status hearing. During this status hearing, we struck the motion to dismiss the third amended complaint filed by IPC and UACL/Overnite Express to allow plaintiff to conduct relevant discovery, as requested, but we limited plaintiff to discovery related only to the inter-relationships of the parties involved in the case.[14] Then, in a status hearing held on November 30, 2009, we allowed additional discovery with respect to the alleged agency or apparent agency relationship between Franke and defendants IPC and UACL/Overnite Express.[15]

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] Mot. to Dismiss [dkt 12].
[11] Pl.'s Mot. to Modify Briefing Schedule [dkt 18].
[12] Opp'n to Mot. to Modify Briefing Schedule [dkt 21].
[13] Minute Order [dkt 27].
[14] *Id.*
[15] Minute Order [dkt 42].

In an oral motion on January 25, 2010, plaintiff claimed that he had gathered information through that limited discovery that revealed a complicated relationship between the various named defendants.[16] Plaintiff then advised the court that he wished to add additional parties as defendants, with no opposition from defendants.[17] We granted plaintiff's oral motion for leave to file an amended complaint at that time.[18] On February 1, 2010, plaintiff filed his fourth amended complaint.[19] The fourth amended complaint added allegations regarding the agency relationship existing between defendant Franke and defendants IPC and UACL/Overnite Express, and six additional parties were added: Celtic Cartage, Celtic Express, Trac, UACL, OX and Overnite Logistics.[20]

On February 25, 2010, defendants Franke, Martin's and CSXI filed their answers to the fourth amended complaint.[21] Defendants IPC and UACL/Overnite Express responded by filing a motion to strike this Court's order granting plaintiff leave to amend the third amended complaint or, alternatively, a motion to dismiss the fourth amended complaint for futility.[22] On March 4, 2010, we ordered plaintiff to respond and plaintiff did so by filing two motions: a motion to remand to state court on the basis of lack of diversity jurisdiction[23] and a motion to stay discovery and motion practice pending a ruling on the motion to remand.[24] Defendants IPC and UACL/Overnite Express filed their opposition to both motions and on April 1, 2010, we vacated the fourth amended complaint, learning for the first time that the addition of potential defendants Celtic Cartage and

---

[16]Minute Order [dkt 48].
[17]*Id.*
[18]*Id.*
[19]Vacated Fourth Am. Compl. [dkt 51].
[20]*Id.*
[21]Answer to Am. Compl. [dkt 55]; Answer to Am. Compl. [dkt 56].
[22]Def.'s Mot. to Strike [dkt 57].
[23]Pl.'s Mot. to Remand [dkt 63].
[24]Pl.'s Mot. to Stay Disc. [dkt 65].

Celtic Express would destroy diversity jurisdiction.[25] Plaintiff was given leave to file a motion for leave to amend the third amended complaint and all parties were asked to file written briefs regarding whether the amendment should be allowed.[26] The court has postponed a decision on the motion to remand until after we decide the motion for leave to amend.[27]

## B.    The Parties

In addition to the complicated nature of the proceedings, there are various named parties who are allegedly connected to the incident. At the time of the third amended complaint, there were five named defendants: Martin's, Franke, CSXI, IPC and UACL/Overnite Express. Plaintiff did not attach a proposed fourth amended complaint to his motion for leave to amend. For this reason, we will use his previously vacated fourth amended complaint in determining the specific allegations plaintiff intends to claim against each party in his new complaint.

Martin's is a corporation engaged in the business of truck transportation and delivery of milk products in and throughout Cook County, Illinois.[28] Franke is a truck driver who transports products in Cook County and is an employee of Martin's.[29] At the time of the accident in question, Franke was driving the truck that allegedly rear-ended J. Scheinman's car, resulting in serious injuries.[30] Plaintiff alleges that Martin's and Franke "owned, operated, managed, maintained and/or controlled" the truck in such a way as to cause it to collide with J. Scheinman.[31] As the basis for these negligence allegations, plaintiff claims that Franke did not keep a proper lookout, proceeded at an

---

[25]Minute Order [dkt 72].
[26]*Id.*
[27]*Id.*
[28]Vacated Fourth Am. Compl., 1-2, ¶ 3 [dkt 51].
[29]*Id.* at 2, ¶ 4-5.
[30]*Id.* at 2, ¶ 8.
[31]*Id.* at 2, ¶ 6.

unsafe speed, did not give audible warning when necessary and failed to maintain a proper distance from J. Scheinman.[32] Plaintiff demands judgment against both Martin's and Franke in the amount of $50,000.00.[33]

CSXI is a corporation engaged in truck transportation of consumer goods in and throughout Cook County.[34] Plaintiff alleges that Franke is a duly authorized employee, agent or apparent agent of CSXI and was acting within the scope of that employment or agency when he collided with J. Scheinman.[35] Plaintiff further alleges that on July 3, 2008, Franke delivered a load of goods to CSXI's facility in Bedford Park and was then provided with a CSXI container to transport other products.[36] Due to the alleged employment or agency relationship existing between Franke and CSXI, plaintiff claims that the negligence of Franke may be imputed to CSXI and makes a demand of $50,000.00 against CSXI.[37]

IPC is a corporation engaged in the business of selling paper and packaging products in and throughout Cook County.[38] As with CSXI, plaintiff alleges that Franke is a duly authorized employee, agent or apparent agent of IPC and was acting within the scope of that employment or agency when he collided with J. Scheinman.[39] Further, plaintiff claims that Franke drove the truck with the CSXI trailer to IPC's facility in Hammond, Indiana and loaded the trailer with IPC's paper products.[40] IPC then allegedly requested, directed, supervised and instructed Franke to drive the

---

[32]*Id.* at 3, ¶ 10.
[33]*Id.* at 3, ¶ 11.
[34]*Id.* at 4, ¶ 3.
[35]*Id.* at 5, ¶ 5.
[36]*Id.* at 5, ¶ 6.
[37]*Id.* at 7, ¶ 12.
[38]*Id.* at 15, ¶ 3.
[39]*Id.* at 15, ¶ 5.
[40]*Id.* at 15, ¶ 7.

truck through Highland Park, which is where he collided with J. Scheinman.[41] For these reasons, plaintiff claims that the negligence of Franke may also be assigned to IPC and similarly makes a demand of $50,000.00 against IPC.[42]

UACL/Overnite Express is a corporation engaged in the business of interstate transportation of consumer goods in and throughout Cook County.[43] Before the accident at issue, UACL (also a corporation engaged in interstate transportation) became the successor corporation to Overnite Express.[44] UACL has voluntarily appeared as a party throughout the proceedings of this case and has even filed motions with this Court, though it was never (before now) formally named as a defendant.[45] Plaintiff alleges that UACL/Overnite Express directed and requested that Franke (as its employee, agent or apparent agent) transport IPC's products from Hammond to various locations in Minnesota.[46] Plaintiff claims that pursuant to these directions, Franke drove through Highland Park, where he collided with J. Scheinman.[47] For these reasons, plaintiff claims that the negligence of Franke may also be assigned to UACL/Overnite Express and makes a demand of $50,000.00 against UACL/Overnite Express.[48]

We will now overview the role of the six potential new defendants that plaintiff seeks to add in his fourth amended complaint: Celtic Cartage, Celtic Express, Trac, Overnite Logistics, OX and UACL. Potential defendants Overnite Logistics and OX are corporations that were acquired by UACL through the same agreement in which UACL acquired Overnite Express.[49] Both are

---

[41]*Id.* at 16, ¶ 8.
[42]*Id.* at 17, ¶ 13.
[43]*Id.* at 18, ¶ 3.
[44]Pl.'s Mot. for Leave to Amend, Exhibit A [dkt 73].
[45]*Id.*
[46]Vacated Fourth Am. Compl., 18-19, ¶ 5, 9.
[47]*Id.* at 20, ¶ 11-12.
[48]*Id.* at 21, ¶ 16.
[49]Pl.'s Mot. for Leave to Amend, Exhibit A [dkt 73].

corporations that are engaged in the business of interstate transportation of consumer goods.[50] Plaintiff makes the exact same allegations against Overnite Logistics and OX as he makes against UACL/Overnite Express: that Franke is the employee, agent or apparent agent of these corporations and that these corporations organized, coordinated, authorized and arranged the transportation of IPC's goods through Highland Park.[51] As such, plaintiff claims Franke's negligence may be imputed to them. Plaintiff seeks $50,000.00 in damages against both Overnite Logistics and OX.[52]

Potential defendants Celtic Cartage and Celtic Express are corporations engaged in the business of truck transportation of consumer goods in and throughout Cook County.[53] As with the other named parties in this action, plaintiff claims that Franke is the employee, agent or apparent agent of both corporations.[54] Plaintiff claims that on or before July 3, 2008, these corporations leased, interchanged, provided and authorized Franke, Martin's, CSXI and IPC to use the CSXI container and a chassis to transport IPC's paper products from Indiana to Minnesota.[55] In addition to Franke's alleged negligence in colliding with J. Scheinman, plaintiff claims that Celtic Cartage and Celtic Express were negligent in failing to maintain the chassis in a proper and safe condition, as well as failing to properly inspect, maintain and repair the chassis before giving it to Franke.[56] Plaintiff demands $50,000.00 from both of these corporations.[57] Both Celtic Cartage and Celtic Express have their principal places of business in Illinois and will destroy diversity jurisdiction if they are added as defendants.[58]

---

[50]Vacated Fourth Am. Compl., 18, ¶ 3.
[51]*Id.* at 18-19, ¶ 5, 9.
[52]*Id.* at 21, ¶ 16.
[53]*Id.* at 8, ¶ 3.
[54]*Id.* at 8, ¶ 5.
[55]*Id.* at 8, ¶ 6.
[56]*Id.* at 9-10, ¶ 12.
[57]*Id.* at 10, ¶ 13.
[58]Pl.'s Mot. for Leave to Amend, 13.

Finally, potential defendant Trac is a corporation engaged in the business of transportation of consumer goods in and throughout Cook County.[59] Plaintiff alleges that when Franke delivered his first load of goods to CSXI's facility, Trac provided Franke with the CSXI container and a chassis to transport the paper products that he would be picking up from IPC.[60] As with the other named parties, plaintiff claims that Franke is the employee, agent or apparent agent of Trac and that as such, his negligence may be assigned to Trac.[61] Plaintiff also claims that Trac failed to maintain the chassis in a proper and safe condition, and also failed to properly inspect, maintain and repair the chassis before giving it to Franke.[62] Consequently, plaintiff demands $50,000.00 in damages from Trac.[63]

## ANALYSIS

As stated, plaintiff seeks leave to amend his complaint to add parties - Celtic Cartage, Celtic Express, Trac, UACL, Overnite Logistics and OX - and to add allegations against IPC and UACL/Overnite Express. We first address the motion as to joinder of Celtic Cartage, Celtic Express and Trac. We next discuss why the motion is granted as to the additional allegations against UACL/Overnite Express and denied as to IPC. Then, because defendants do not articulate specific opposition to joinder of UACL, Overnite Logistics and OX as defendants, and because we find the joinder of those parties is largely procedural, we grant that part of the motion with limited discussion.

---

[59]Vacated Fourth Am. Compl., 11, ¶ 3.
[60]*Id.* at 11, ¶ 6.
[61]*Id.* at 11, ¶ 5.
[62]*Id.* at 13, ¶ 11.
[63]*Id.* at 14, ¶ 12.

As an initial matter, our analysis must refer back to plaintiff's vacated fourth amended complaint. Plaintiff makes the somewhat odd claim that defendants cannot rely on his previous fourth amended complaint to determine what his allegations against Celtic Cartage, Celtic Express and Trac will be, and whether those allegations actually state a cause of action.[64] Plaintiff makes this argument because his previous fourth amended complaint was vacated, but, as we noted above, plaintiff did not attach a proposed fourth amended complaint to his motion for leave to amend. We are left with no other option, then, but to rely on the vacated fourth amended complaint to determine what claims plaintiff intends to plead against defendants.

## A.      Post-Removal Joinder of Celtic Cartage and Celtic Express

Plaintiff seeks to add Celtic Cartage and Celtic Express as parties, alleging that these corporations leased, interchanged, provided and authorized defendant Franke to use the CSXI container and chassis that were attached to the truck Franke was driving when he rear-ended J. Scheinman.[65] Further, plaintiff alleges that defendant Franke is the employee, agent or apparent agent of both Celtic Cartage and Celtic Express and that, as such, these corporations are liable for his negligence.[66] The current defendants in this case, CSXI, IPC and UACL/Overnite Express, contend that plaintiff has stated no cause of action against Celtic Cartage and Celtic Express, and that the true reason plaintiff seeks to join these parties is to destroy diversity jurisdiction and return to state court. Both Celtic Cartage and Celtic Express are non-diverse parties, maintaining their principal places of business in Illinois. The present action was removed here on the basis of federal

---

[64]*Id.* at 11.
[65]*Id.* at 8, ¶ 6.
[66]*Id.* at 8, ¶ 5.

diversity jurisdiction. For this reason, we must first determine whether plaintiff's attempted post-removal joinder - joinder that occurs after a case has been removed to federal court - is proper.

Rules 15 and 20 of the Federal Rules of Civil Procedure guide a court's decision on amendments and permissive joinder of parties. Rule 15(a) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave."[67] Further, Rule 15(a) instructs courts to "freely give leave when justice so requires."[68] Rule 20 sets out the requirements for permissive joinder of parties, allowing joinder if "(A) any right to relief is asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."[69]

Complete diversity of citizenship is required for proper federal diversity jurisdiction[70] and plaintiffs may not join non-diverse defendants simply to destroy diversity jurisdiction.[71] When joinder of a non-diverse party would destroy jurisdiction, the court has only two options: to deny joinder, or to permit joinder and remand the action to state court.[72] The court "has discretion to permit or deny post-removal joinder of a non-diverse party, and the court should balance the equities to make a determination."[73] Courts have looked to the following factors to determine whether post-removal joinder of a non-diverse party is appropriate:

> (1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction;
> (2) the timeliness of the request to amend;

---

[67]Fed. R. Civ. P. 15(a)(2).
[68]*Id.*
[69]Fed. R. Civ. P. 20(a)(2).
[70]*Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).
[71]*Id.* at 763.
[72]*Id.* at 759 (citing 28 U.S.C. § 1447(e)).
[73]*Schur*, 577 F.3d at 759; *see also Mayes v. Rapoport*, 198 F.3d 457, 463 (4th Cir. 1999).

(3) whether the plaintiff will be significantly injured if joinder is not allowed; and
(4) any other relevant equitable considerations.[74]

First, defendants question both the timeliness and plaintiff's motivation for adding these parties. In an oral motion on January 25, 2010, plaintiff sought leave to amend his third amended complaint, claiming he had gathered information that revealed the involvement of additional parties, including Celtic Cartage and Celtic Express.[75] However, defendants all contend that plaintiff was made aware of the existence of Celtic Cartage and Celtic Express before this case was removed to federal court.[76] In fact, plaintiff himself provided the court with CSXI's answers to interrogatories (taken in June 2009 during discovery proceedings in state court), where CSXI disclosed the identities of Celtic Cartage and Celtic Express (indicating that CSXI was covered by an insurance policy whose primary insured entities were Celtic Cartage and Celtic Express).[77] As such, defendants claim that plaintiff learned of the existence of Celtic Cartage and Celtic Express no later than July 31, 2009, when CSXI answered the interrogatories.[78] Plaintiff claims that though he "knew of" Celtic Cartage and Celtic Express by July 31, 2009, defendant CSXI "provided virtually no information whatsoever" about these parties and also failed to identify the business addresses of these parties.[79]

Plaintiff's argument misses the point. Plaintiff blames defendant CSXI for "purposely" not providing him with additional information regarding Celtic Cartage and Celtic Express. However, plaintiff is equally capable of gathering this information and is responsible for doing his due

---

[74]*Schur*, 577 F.3d at 759.
[75]Minute Order [dkt 48].
[76]Opp'n Mot., ¶ 4 [dkt 79].; Opp'n Mot., ¶ 5 [dkt 81].
[77]Pl.'s Mot. for Leave to Amend, Ex. G [dkt 73].
[78]*Id.*
[79]Pl.'s Reply, 5-6 [dkt 85].

diligence with respect to discovery.[80] Plaintiff's claim that he, essentially, could not have added these additional parties sooner because of the purported lack of information is also difficult to follow when he seemingly had no difficulty gathering information on CSXI, IPC and Overnite Express and adding them as parties when he became aware of their involvement. Here, plaintiff provides no explanation for why he waited seven months (during which time this case was removed here) before seeking to add Celtic Cartage and Celtic Express as defendants. This seven month delay lends credence to defendants' argument that plaintiff seeks to add Celtic Cartage and Celtic Express only to destroy diversity jurisdiction.

Defendants proffer the same argument for the motivation element of the analysis: that plaintiff is motivated only by a desire to destroy diversity jurisdiction and return to state court. Defendants rely heavily on a case from the Eastern District of New York, *McGee v. State Farm Mutual Automobile Insurance Company*, to demonstrate why plaintiff's request to join Celtic Cartage and Celtic Express should be denied.[81] In that case, the plaintiff failed to explain why he added non-diverse parties in federal court when he could easily have added them in state court.[82] The court found that the plaintiff's behavior revealed a "deliberate purpose of divesting the court of jurisdiction."[83] The court further reasoned that because plaintiff was aware of the existence and relevance of the additional parties before he filed his original complaint, there was no independent motivation for joining those parties in federal court apart from the desire to destroy diversity jurisdiction.[84]

---

[80]*See Mid-America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497, 498 (D.C. Wis. 1978) (noting that when the burden of deriving information is equal between the parties, the interrogating party ought to be required to bear the burden).
[81]684 F.Supp.2d 258, 264 (E.D.N.Y. 2010) (applying the same test as *Schur* in the Seventh Circuit).
[82]*Id.*
[83]*See McGee*, 684 F.Supp.2d at 264.
[84]*Id.* at 264-265.

In our case, the procedural history and plaintiff's behavior is similarly telling. When plaintiff filed his now vacated fourth amended complaint, defendants IPC and UACL/Overnite Express responded with a motion to strike the Court's order granting leave to amend the third amended complaint (or, alternatively, a motion to dismiss the fourth amended complaint for futility).[85] Rather than respond to the motion to dismiss, plaintiff filed a motion to remand to state court and a motion to stay discovery.[86] Courts have found that when a plaintiff files a motion to remand shortly after filing an amended complaint, such behavior suggests that the plaintiff is aware of jurisdictional issues and seeks to destroy diversity.[87] Similarly, plaintiff's behavior suggests that he was aware of some jurisdictional issues that had not yet been brought to the Court's attention. In fact, plaintiff's motion to remand was the first time the Court learned that the addition of Celtic Cartage and Celtic Express as defendants would destroy diversity jurisdiction.[88] Plaintiff counters these arguments, claiming that he seeks to add Celtic Cartage and Celtic Express because he has a "colorable" claim against them.[89]

Defendants also argue that plaintiff has no reasonable possibility of recovering against Celtic Cartage and Celtic Express. Here, defendants rely on the affidavit of Michael Amerio, Vice President of Operations for Celtic International, Inc., who allegedly had personal knowledge of the operations of Celtic Cartage (a subsidiary of Celtic International, Inc.).[90] Mr. Amerio claims that Celtic Express was not actively operating any business on July 3, 2008, the date of the accident.[91]

---

[85]Def.'s Mot. to Strike [dkt 57].
[86]Pl.'s Mot. to Remand [dkt 63]; Pl.'s Mot. to Stay Disc. [dkt 65].
[87]*Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 309 (8th Cir. 2009); *see also Le Duc v. Bujake*, 777 F.Supp. 10, 12 (E.D.Mo. 1991).
[88]Minute Order [dkt 72].
[89]Pl.'s Reply, 4 [dkt 85].
[90]Opp'n Mot., Ex. B, Amerio Aff., ¶ 3 [dkt 79].
[91]*Id.* at ¶ 4.

Most importantly, Mr. Amerio stated in his affidavit that Celtic Cartage operates its business by using equipment made available to various parties through an agreement called the Uniform Intermodal Interchange and Facilities Access Agreement ("UIIA").[92] Defendant Martin's is also a party to the UIIA, as evidenced by its signature on the agreement, and similarly gains access to equipment through this agreement.[93] According to Mr. Amerio, once the chassis and container at issue were physically transferred from Celtic Cartage to defendants Martin's and Franke, the UIIA stipulated that Celtic Cartage no longer had responsibility for the chassis and container.[94] Therefore, Mr. Amerio states that neither Celtic Cartage nor Celtic Express were involved with the parties or the equipment in the present cause of action.[95] Mr. Amerio further states in his affidavit that Celtic Cartage and Celtic Express do not have an employment or agency relationship with defendant Franke.[96]

Plaintiff opposes the use of this affidavit. Plaintiff argues that Mr. Amerio was never identified in any discovery and Mr. Amerio has no personal knowledge of the involvement of Celtic Cartage and Celtic Express in the accident on July 3, 2008.[97] But plaintiff does not dispute that Martin's and Celtic Cartage are parties to the UIIA.

Whether Mr. Amerio does, in fact, have personal knowledge of the involvement of Celtic Cartage and Celtic Express is not dispositive. The burden is on the plaintiff to, at a minimum, provide the "grounds" for his entitlement to relief, which requires more than "a formulaic recitation of the elements of a cause of action."[98] In other words, plaintiff must plead at least some facts to

---

[92]*Id.* at ¶ 3.
[93]Opp'n Mot., Ex. C, UIIA [dkt 79].
[94]Opp'n Mot., Ex. B, Amerio Aff., ¶ 11 [dkt 79].
[95]*Id.* at ¶ 4-6.
[96]*Id.* at ¶ 7.
[97]Pl.'s Reply, 7-8 [dkt 85].
[98]*See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

support his claim that defendant Franke is the employee, agent or apparent agent of Celtic Cartage and Celtic Express. The UIIA explicitly states that the parties to the agreement are not the agents or employees of any other parties to the agreement, and that all parties have independent contractor status.[99] Plaintiff has no factual support for his "colorable" claim that joinder of Celtic Cartage and Celtic Express is proper because defendant Franke is the employee, agent or apparent agent of these corporations. Without any factual allegations to support his claims, plaintiff's motivation for seeking joinder is that much more questionable.

As mentioned above, courts also balance injury to the plaintiff and other equitable considerations in determining whether to allow post-removal joinder. In this case, there is simply no evidence that plaintiff will be significantly injured if we deny joinder of these parties. Plaintiff is welcome to file suit against them in state court. The final factor that courts weigh - other equitable considerations - also supports this finding. Though plaintiff will not be significantly injured by a denial of joinder, there is always the danger of parallel federal and state proceedings, accompanied by inconsistent results and wasted judicial resources.[100] This danger of parallel proceedings does not affect our decision to deny joinder, however, because duplicative litigation could have been avoided if plaintiff had added Celtic Cartage and Celtic Express when he first learned of them during proceedings in state court.[101] Additionally, a court should balance the interests of a diverse defendant in retaining the federal forum.[102] In this case, there are not one but five diverse defendants, and four of the six parties that plaintiff seeks to add would also be diverse.

---

[99]Opp'n Mot., Ex. C, UIIA, 4 [dkt 79].

[100]*Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).

[101]*See McGee*, 684 F.Supp.2d at 264 (finding that plaintiff could easily have added non-diverse defendants in state court and could have avoided duplicative litigation).

[102]*See Hensgens*, 833 F.2d at 1182 (noting that the removal statutes are predicated on giving the diverse defendant a choice of a state or federal forum).

Balancing the equities in this case, this Court finds that the post-removal joinder of the non-diverse parties Celtic Cartage and Celtic Express is inappropriate. Plaintiff's request for post-removal joinder of Celtic Cartage and Celtic Express is, therefore, denied.

**B.      Post-Removal Joinder of Trac**

Next, plaintiff alleges that Trac should be added as a defendant because it provided defendant Franke with a defective chassis (and was negligent in inspecting the chassis), which was attached to the truck Franke was driving when he collided with J. Scheinman.[103] Further, plaintiff claims that Franke was acting as a duly authorized employee, agent, or apparent agent of Trac and that as such, Trac may be found liable for Franke's negligence.[104] As stated above, Trac is a diverse party whose joinder would not destroy diversity jurisdiction. However, defendants argue that plaintiff has no possibility of prevailing against Trac. Defendants argue that plaintiff fails to allege any facts to support his claims that the chassis was defective or that defendant Franke was the employee, agent or apparent agent of Trac.

As stated above, Rule 20 of the Federal Rules of Civil Procedure governs the permissive joinder of parties.[105] Plaintiff must actually have a right to relief against Trac in order for joinder to be proper, meaning his complaint must include enough facts "to state a claim for relief that is plausible on its face."[106] Factual allegations "must be enough to raise a right to relief above the speculative level."[107] As we noted above, plaintiff must provide "more than labels and conclusions"

---

[103]Vacated Fourth Am. Compl., 13, ¶ 11.
[104]*Id.* at 11, ¶ 5.
[105]Fed. R. Civ. P. 20(a)(2).
[106]*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).
[107]*Twombly*, 550 U.S. at 555.

to state a cause of action.[108] We must, therefore, determine whether plaintiff has sufficiently alleged facts that raise his right to relief against Trac above the speculative level.[109]

First, none of plaintiff's allegations regarding the cause of the accident can be said to arise from a defective chassis. Plaintiff has made his allegations against Trac rather confusing by claiming, within the same negligence count, that the accident was caused both by a defective chassis (which Trac was negligent in inspecting) and by defendant Franke's failure to maintain a safe speed, maintain a safe distance from other vehicles, and to keep a proper lookout for other vehicles on the road.[110] It is, of course, possible that both of these allegations are true: that the chassis was defective and that defendant Franke drove the truck in such a negligent manner as to cause the accident. Defendant CSXI, however, claims - though it does not support this contention - that defendant Franke admitted to authorities that he did not even apply his brakes before rear-ending J. Scheinman.[111] Even though CSXI's contention is questionable, plaintiff has provided no factual basis to support his allegations that the chassis was defective, and this lack of support undermines his claim that a defective chassis was somehow related to the accident. Plaintiff's allegations regarding negligent inspection and a defective chassis seem to be simply legal conclusions unsupported by any factual basis.

Second, the evidence in the record demonstrates that there is no employment relationship between Franke and Trac. Franke has clearly stated that Martin's is his employer and that he does not believe that he works for any other party.[112] If Franke is not an employee of Trac, then the

---

[108]*Id.*
[109]*Id.*
[110]Vacated Fourth Am. Compl., 3, ¶ 10.
[111]Opp'n Mot., ¶ 25 [dkt 79].
[112]Opp'n Mot., Ex. A, Franke Dep., 45-47 [dkt 81].

question is whether he is an agent or apparent agent of Trac. Therefore, the Court must determine whether plaintiff has pled sufficient facts to establish an agency or apparent agency relationship between Franke and Trac, such that Trac could be found liable for Franke's negligence.

Courts have held that a complaint relying on an agency relationship "must plead facts which, if proved, could establish the existence of an agency relationship."[113] Merely pleading legal conclusions of agency is not sufficient.[114] An agency relationship exists when the agent "undertakes to manage some affairs to be transacted for [and] . . . on account of the . . . principal."[115] There must be a right by the principal to control the method or manner by which the agent accomplishes a task, "as well as the agent's ability to subject the principal to liability."[116] The agent must have actual authority or apparent authority to act on the principal's behalf.[117] Apparent agency exists when the principal holds the agent out as possessing the authority to act on its behalf.[118] If a reasonably prudent person would believe that the agent had such authority in light of the principal's conduct, apparent agency is established.[119]

Again, plaintiff has merely pled legal conclusions, rather than factual allegations, that would establish an agency or apparent agency relationship. Plaintiff has provided no factual evidence that Franke undertook to manage some affairs on account of Trac, or that he had authority or apparent authority to act on Trac's behalf. Defendants have provided us with evidence that Martin's, Franke and Trac are parties to the UIIA.[120] This agreement governs the exchange of equipment, such as

---

[113]*Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 592 (Ill. 1997).
[114]*Id.*
[115]*Williams v. Ford Motor Co.*, 990 F.Supp. 551, 555 (N.D. Ill. 1997).
[116]*Id.*
[117]*Connick*, 675 N.E.2d at 592; *Wargel v. First Nat'l Bank*, 460 N.E.2d 331, 334 (Ill. App. Ct. 1984).
[118]*Letsos v. Century 21-New West Realty*, 675 N.E.2d 217, 224 (Ill. App. Ct. 1996).
[119]*Id.*
[120]Opp'n Mot., Ex. C, UIIA [dkt 79].

containers and chassis, at the heart of many of the plaintiff's allegations.[121] As mentioned above, the UIIA explicitly states that the parties to the agreement are not the agents or employees of any other parties to the agreement, and that all parties have independent contractor status.[122] As a party to the UIIA, Martin's (and its employee Franke) are at least constructively aware that they are not the agents or apparent agents of Trac. There is a further lack of any evidence (or any allegations, for that matter) that Trac controlled the manner by which Franke accomplished his tasks, that Franke was acting on behalf of Trac, or that Trac held Franke out as its agent.

Without any factual support to establish an agency or apparent agency relationship, plaintiff's legal conclusions regarding the relationship between Franke and Trac would not overcome a motion to dismiss. Having failed to establish such a relationship, plaintiff has no theory of liability against Trac to make joinder of it proper. Therefore, plaintiff's request to join Trac here is denied.

## C. Additional Allegations Against IPC and UACL/Overnite Express

Plaintiff seeks to amend his complaint to add additional allegations against previously named defendants IPC and UACL/Overnite Express. Count IV in the third amended complaint and Count VI in the proposed fourth amended complaint state the allegations against UACL/Overnite Express. Specifically, plaintiff seeks to add the following allegations to that Count: (1) IPC and UACL/Overnite Express contracted with one another to transport IPC's paper products; (2) UACL/Overnite Express then instructed Martin's and Franke to drive to an IPC warehouse in Hammond, Indiana to pick-up the paper products; and (3) Franke, pursuant to that request, drove

---

[121]*Id.*
[122]*Id.* at 4.

to the Hammond, Indiana warehouse and retrieved the products.[123]  Plaintiff alleges these facts to demonstrate that an agency relationship existed between IPC, UACL/Overnite Express, Martin's, and Franke.

For support of these additional allegations plaintiff points to the deposition testimony of David Martin, a manager at Martin's.[124]  Mr. Martin testified that there was a relationship between Martin's and IPC and also between UACL/Overnite Express and Martin's.[125]  Additionally, he specifically stated that they were agency relationships.[126]  Defendants oppose the addition of these new allegations arguing that they are not supported by any evidence and then refer to the deposition of Franke, who testified that he believed he worked only for Martin's, not any other defendants. Further, defendants argue that the deposition testimony of Mr. Martin is unreliable because in that deposition plaintiff's counsel elicited inadmissable legal conclusions from Mr. Martin, specifically asking whether Martin's was acting as an agent of IPC and UACL/Overnite Express.[127]  In a one sentence argument, defendants move the court to strike these portions of Mr. Martin's testimony, citing to Federal Rule of Civil Procedure 30(c)(2).

First, citing to Rule 30(c)(2) does not support defendants' position. This rule simply provides that testimony in a deposition is taken "subject to any objection."[128] With that background, we find that the testimony of Mr. Martin supports the new allegations: there was a relationship between IPC, UACL/Overnite Express, and Martin's. IPC and UACL/Overnite Express also directed Martin's to pick up the paper products at a specific time and location.[129] He then testified that UACL/Overnite

---

[123]Vacated Fourth Am. Compl., 19, ¶ 8-10 [dkt 51].
[124]Pl.'s Mot. for Leave to Amend, Exhibit C [dkt 73].
[125]*Id.*
[126]Pl.'s Mot. for Leave to Amend, Exhibit C at 65 [dkt 73]
[127]Pl.'s Mot. for Leave to Amend, Exhibit C at 65 [dkt 73].
[128]Fed.R.Civ.P. 30(c)(2)
[129]Pl.'s Mot. for Leave to Amend, Exhibit C at 69 [dkt 73].

required Martin's to use a properly licensed and qualified driver.[130] The motion with respect to these additional allegations is, thus, granted. We refrain from any analysis as to whether these allegations combined with the already alleged claims are sufficient to withstand future challenge.

We also note that plaintiff has slightly modified the count against IPC. We are unclear whether the parties dispute these changes but we will, nonetheless, briefly address the issue. Count III of the third amended complaint and Count V of the proposed fourth amended complaint deal with allegations against IPC, and these two counts are almost identical. There are only two minor changes. First, in Count III of the third amended complaint at paragraph eight plaintiff alleges,

> [o]n July 3, 2008, pursuant to the direction, supervision and control of Defendant INTERNATIONAL, Defendant FRANKE drove the aforesaid tractor trailer truck, containing INTERNATIONAL's paper products in a northbound direction on Skokie Valley Road at or near its intersection with Half Day Road in Highland Park, Illinois.[131]

While paragraph eight in Count V of the proposed fourth amended complaint alleges,

> [o]n July 3, 2008, pursuant to the *request,* direction, supervision, control, *and instruction* of Defendant INTERNATIONAL, Defendant FRANKE drove the aforesaid tractor trailer truck, containing INTERNATIONAL's paper products in a northbound direction on Skokie Valley Road at or near its intersection with Half Day Road in Highland Park, Illinois.[132]

Second, paragraph ten in Count III of the third amended complaint alleges,

> On July, 3, 2008, Defendants, INTERNATIONAL and FRANKE, and each of them, operated and drove their tractor trailer truck in such a manner as to cause it to collide with the rear end of the passenger car driven by JEFFREY J. SCHEINMAN, resulting in a rear end collision that caused serious personal injury to JEFFREY J. SCHEINMAN.[133]

While paragraph ten in Count V of the proposed fourth amended complaint alleges,

> On July, 3, 2008, Defendant, INTERNATIONAL, *and its agent and/or apparent agent*, Defendant, FRANKE, and each of them, operated and drove their tractor trailer truck in such

---

[130]Pl.'s Mot. for Leave to Amend, Exhibit C at 71 [dkt 73].
[131]Third Am. Compl., 8-9, ¶ 8 [dkt 1].
[132]Vacated Fourth Am. Compl., 16, ¶ 8 [dkt 51](emphasis added).
[133]Third Am. Compl., 9, ¶ 10 [dkt 1].

a manner as to cause it to collide with the rear end of the passenger car driven by JEFFREY J. SCHEINMAN, resulting in a rear end collision that caused serious personal injury to JEFFREY J. SCHEINMAN.[134]

Other than these minor changes, the allegations against IPC are identical in both complaints. Restating the same facts couched in different language amounts to a futile re-pleading.[135]  Plaintiff had already alleged an agency relationship in the third amended complaint. Therefore, these additional words substantively change nothing.  We find this portion of the amendment futile and, therefore, deny plaintiff's request as to these amendments.

**D.      Joinder of UACL, Overnite Logistics and OX**

Finally, plaintiff seeks to join UACL, Overnite Logistics, and OX as defendants for the same conduct that he alleged against Overnite Express in the third amended complaint.  The allegations against UACL, Overnite Express, Overnite Logisitics and OX appear in the same count, Count VI, of the proposed fourth amended complaint.  We note again for clarity that UACL purchased Overnite Express, Overnite Logistics and OX through the same purchasing agreement.[136]  While plaintiff did not seek to add UACL until this motion, we note further that counsel for UACL filed an appearance on behalf of UACL "d/b/a and as successor to" Overnite Express after the litigation was removed to federal court.[137]  Therefore, UACL has, effectively, already been a part of this litigation. We will, thus, permit joinder of UACL.  Additionally, we believe the joinder of Overnite Logistics and OX is also permitted, as these corporations fall under UACL's corporate umbrella.

---

[134]Vacated Fourth Am. Compl., 16, ¶ 8 [dkt 51] (emphasis added).
[135]*Wakeen v. Hoffman House, Inc*., 724 F.2d 1238, 1244 (7th Cir. 1983).
[136]Pl.'s Mot. for Leave to Amend, Exhibit A [dkt 73].
[137]Dkts. 3,4.

And without specific objection from defendants as to the joinder of these parties, we grant this portion of plaintiff's motion.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to amend his third amended complaint is granted in part and denied in part [dkt 73]. The motion is granted as to the request to add parties UACL, Overnite Logistics and OX, and to add allegations against and UACL/Overnite Express. The motion is denied with respect to plaintiff's request to add Celtic Cartage, Celtic Express and Trac as additional defendants and to add additional allegations against IPC. Finally, defendants' one sentence motion to strike Martin's deposition testimony is denied.

It is so ordered.

Dated: September 9, 2010

Susan E. Cox
United States Magistrate Judge