IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 09 C 5340 |
| MARTIN'S BULK MILK SERVICE, INC., SAMUEL G. FRANKE, CSX INTERMODAL, INC., INTERNATIONAL PAPER COMPANY, OVERNITE EXPRESS, INC., OX LLC, UNIVERSAL AM CAN LTD., | ) ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Murray Scheinman ("Plaintiff") brings this lawsuit in his capacity as guardian of the estate and person of Jeffrey J. Scheinman ("J. Scheinman"), seeking damages for injuries sustained by J. Scheinman when the car he was driving was rear-ended by a tractor trailer truck driven by defendant Samuel G. Franke ("Franke") on July 3, 2008, near the intersection of Skokie Valley Road and Half Day Road in Highland Park, Illinois. (Dkt. No. 94 ("4th Am. Compl.").)

Plaintiff has alleged four claims of negligence against Franke (Counts I-IV), as well as one negligence claim each against defendants Martin's Bulk Milk Service, Inc. ("MBMS") (Count I), CSX Intermodal, Inc. ("CSXI") (Count II), International Paper Company ("IPC") (Count III), and Overnite Express, Inc. ("OEI"), OX LLC ("OX"), and Universal Am Can Ltd.

1

("UACL") (Count IV).[1]  This court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332(a).[2]

Defendants MBMS and Franke have answered Plaintiff's Fourth Amended Complaint. (Dkt. No. 100 ("MBMS/Franke Ans.").)  Now pending before the court are CSXI's motion to dismiss (Dkt. No. 123), IPC's motion to dismiss (Dkt. No. 94), and UACL, OEI, and OX's motion to dismiss (Dkt. No. 96).  For the reasons set forth below, CSXI's motion is granted, IPC's motion is denied, and UACL, OEI, and OX's motion is denied.

BACKGROUND

For purposes of the pending motions to dismiss, the court accepts the factual allegations in Plaintiff's Fourth Amended Complaint as true and draws all reasonable inferences in favor of Plaintiff.  *Ray v. City of Chi.*, 629 F.3d 660, 662 (7th Cir. 2011).  The facts set forth below are therefore stated from this perspective.

On July 3, 2008, J. Scheinman was driving northbound on Skokie Valley Road in a passenger car.  (Count I, ¶ 7.)  On the same date, Franke was also driving northbound on Skokie Valley Road in a tractor trailer truck.  (Count I, ¶ 4, 6.)  The tractor trailer truck driven by Franke

---

[1] In open court on December 9, 2010, the parties agreed that defendant UACL had been incorrectly named as "Universal Am Ca<u>m</u> Ltd." in the Fourth Amended Complaint, rather than "Universal Am Ca<u>n</u> Ltd."  The parties also agreed that defendant Overnight Logistics, Inc. "does not exist" and was incorrectly named a defendant in this lawsuit.  The Clerk of Court is directed to terminate defendant Overnight Logistics, Inc. and amend the case caption to correctly name defendant Universal Am Can Ltd.

[2] It is undisputed that Plaintiff is a citizen of Illinois, MBMS is a citizen of Wisconsin, Franke is a citizen of Wisconsin, CSXI is a citizen of Delaware and Florida, IPC is a citizen of New York and Tennessee, UACL is a citizen of Delaware and Michigan, OEI is a citizen of Minnesota, and OX is a citizen of Minnesota.  (*See* Dkt. No. 1 ("Notice of Removal") ¶¶ 5, 7-8; *see also* Dkt. No. 145 ("Jurisdictional Statement Concerning OX LLC") at 2.)

2

collided with the rear end of J. Scheinman's passenger car near the intersection of Skokie Valley Road and Half Day Road in Highland Park, Illinois, causing J. Scheinman serious personal injury. (Count I, ¶¶ 6-11.)

MBMS is a corporation "engaged in the business of truck transportation and delivery of milk products." (Count I, ¶ 3.) MBMS owned the tractor trailer truck driven by Franke on July 3, 2008, "with a Freightliner Classic cab bearing vin number 1FUJF6CKX4DM02330," and Franke was an employee of MBMS at the time of the July 3, 2008 accident. (Count I, ¶¶ 5-6; *see also* MBMS/Franke Ans. ¶ 6 (admitting "the referenced employment relationship").)

CSXI is a corporation "engaged in the business of truck transportation of consumer goods in tractor trailer trucks." (Count II, ¶ 3.) CSXI provided Franke with a trailer "for the transportation of paper products" on July 3, 2008, after Franke "delivered a load of goods to [CSXI's] facility located in Bedford Park, Cook County, Illinois." (Count II, ¶ 6.) CSXI owned trailer number CSXU 937987, which was attached to the tractor trailer truck driven by Franke on July 3, 2008. (Count II, ¶ 7.)

IPC is a corporation "engaged in the business of selling paper and packaging products." (Count III, ¶ 3.) On July 3, 2008, IPC loaded trailer number CSXU 937987 with paper products at IPC's facility in Hammond, Indiana. (Count III, ¶ 7.) Franke drove the tractor trailer truck containing IPC's paper products "pursuant to the direction and supervision of [IPC]." (Count III, ¶ 8.)

UACL, OEI, and OX (collectively the "UACL/OEI/OX Defendants"[3]) are "engaged in

---

[3] Pursuant to a June 13, 2008 purchase agreement, UACL is the "successor" to both OEI and OX. (Notice of Removal ¶ 6; see also Dkt. No. 96 ("UACL/OEI/OX Defs.' Mot.") at 1; Dkt. No. 73-2, Ex. A ("Asset Purchase Agreement") at 1.)

the business of interstate transportation, including truck transportation of goods" and "requesting organizing coordinating, authorizing and arranging the transportation of goods by tractor trailer trucks." (Count IV, ¶¶ 3, 7.) On July 3, 2008, the UACL/OEI/OX Defendants had a contract with IPC "to transport paper products that were in [IPC's] possession, through their duly authorized employees, agents and/or apparent agents." (Count IV, ¶ 8.) On July 3, 2008, the UACL/OEI/OX Defendants "requested and directed" Franke and MBMS "to pick up [IPC's] paper product goods at a Hammond, Indiana warehouse, and transport those goods to various locations in Minnesota." (Count IV, ¶ 9.) Franke subsequently "drove to a warehouse owned by [IPC] to pick up a load of paper product goods for delivery in Minnesota" and thereafter drove the tractor trailer truck carrying IPC's paper products "pursuant to the request, direction, supervision and instruction of [the UACL/OEI/OX Defendants]" on July 3, 2008. (Count IV, ¶¶ 10-11.)

On July 3, 2008, Franke "operated and drove the[ ] . . . tractor trailer truck in such a manner as to cause it to collide with the rear end of the passenger car driven by [J. Scheinman]," including by failing to keep "a proper and sufficient lookout," proceeding "at a speed which was greater than reasonable and proper with regard to traffic conditions and the use of the highway," and failing "to give audible warning with [his] horn when such warning was reasonably necessary to ensure safety." (Count I, ¶¶ 8, 10; Count II, ¶¶ 9, 11; Count III, ¶¶ 10, 12; Count IV, ¶¶ 13, 15.)

Plaintiff has alleged that Franke was "a duly authorized employee, agent and/or apparent agent" of MBMS, CSXI, IPC, and the UACL/OEI/OX Defendants, and was "acting in the course

4

and scope of said employment, agency and apparent agency" at all relevant times on July 3, 2008. (Counts I-IV, ¶¶ 5.)

PROCEDURAL HISTORY

Plaintiff originally filed this case against MBMS and Franke in state court on July 7, 2008. (Dkt. No. 89 ("9/9/2010 Order") at 2.) CSXI was added as a defendant on November 11, 2008, IPC was added as a defendant on July 23, 2009, and OEI was added as a defendant on August 19, 2009. (*Id.* at 3.) On August 28, 2009, IPC and UACL (as successor to OEI) filed a joint notice of removal to federal court. (*Id.*)

IPC and UACL/OEI subsequently filed a motion to dismiss Counts III and IV of Plaintiff's Third Amended Complaint,[4] arguing that Plaintiff failed to state a claim upon which relief could be granted "absent more specific allegations which identify the shipper [and transportation broker] as having some respondeat superior relationship with the truck driver." (Dkt. No. 12, ¶¶ 2, 8.) Plaintiff argued that he was not in a position "to accurately respond" to IPC and UACL/OEI's motion without production of "oral and written contracts, dispatch records, truck logs, and other documents between the various named defendants . . . that pertain to who was picking up goods and delivering goods, and for what purpose, and at whose request." (Dkt. No. 18, ¶ 8.) In response to Plaintiff's objections, Magistrate Judge Susan E. Cox permitted limited discovery regarding "the inter-relationship of the parties" and "the alleged agency or apparent agency relationship between Franke and defendants IPC and UACL/[OEI]." (9/9/2010 Order 3.)

---

[4] MBMS/Franke and CSXI each filed an Answer to the Third Amended Complaint. (Dkt. Nos. 17, 34.)

On September 9, 2010, Magistrate Judge Cox ruled on Plaintiff's "Motion for Leave to Amend his Third Amended Complaint and to Join Additional Parties." (*Id.* at 1.) Magistrate Judge Cox granted Plaintiff leave to file a Fourth Amended Complaint officially adding UACL and OX as defendants, and to add allegations regarding an alleged contract between IPC and the UACL/OEI/OX Defendants for the transportation of IPC's paper products, as well as the UACL/OEI/OX Defendants' alleged instruction to MBMS and Franke to pick-up IPC goods for transport at the IPC warehouse in Hammond, Indiana. (9/9/2010 Order at 20-21, 24.) At that time, Magistrate Judge Cox explicitly "refrain[ed] from any analysis as to whether [the additional] allegations [against IPC and the UACL/OEI/OX Defendants] combined with the already alleged claims are sufficient to withstand future challenge." (*Id.* at 22.)

On October 22, 2010, IPC and the UACL/OEI/OX Defendants filed their pending motions to dismiss. (Dkt. Nos. 94, 96.) With leave of the court, CSXI withdrew its previously-filed Answer to the Fourth Amended Complaint and filed its pending motion to dismiss on December 29, 2010. (Dkt. No. 123.)

## LEGAL STANDARD

The Federal Rules of Civil Procedure require complaints filed in federal court to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Under this standard, to survive a 12(b)(6) motion to dismiss, "a complaint must contain

6

sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As the Seventh Circuit recently explained, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

"Determining whether a complaint states a plausible claims for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. In performing this analysis, courts need not accept as true any legal conclusions or conclusory statements included in the complaint. *Id.* at 1949-50. The court will, however, accept as true all well-pleaded factual allegations, and will draw all reasonable inferences in the plaintiff's favor. *Ray*, 629 F.3d at 662. If the allegations of the complaint "fail[ ] to state a claim upon which relief can be granted," the complaint will be dismissed. Fed. R. Civ. P. 12(b)(6).

Pursuant to Federal Rule of Civil Procedure 12(d), the court may not consider "matters outside the pleadings" without converting a motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d). The Seventh Circuit has recognized an exception to Rule 12(d), if the materials considered by the court are referred to in the complaint, central to the plaintiff's claim, and admittedly authentic. *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009).

ANALYSIS

7

To prevail on his negligence claims under Illinois law, Plaintiff must ultimately prove that the named defendants breached a duty owed to J. Scheinman, thereby causing his injuries. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (citing *Cunis v. Brennan*, 308 N.E.2d 617, 618 (Ill. 1974)). While defendants CSXI, IPC, and the UACL/OEI/OX Defendants are not alleged to have had any direct interactions with J. Scheinman on July 3, 2008, they nevertheless could be held liable for Franke's actions through a theory of vicarious liability. *See Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007) ("Under the theory of *respondeat superior*, an employer can be liable fo the torts of an employee, but only for those torts that are committed within the scope of the employment."); *Krickl v. Girl Scouts, Ill. Crossroads Council, Inc.*, 930 N.E.2d 1096, 1100 (Ill. App. Ct. 2010) ("A principal is liable for the tort of his agent under the doctrine of *respondeat superior* when the tort is committed within the scope of the agent's agency."); *O'Banner v. McDonald's Corp.*, 670 N.E.2d 632, 634 (Ill. 1996) ("a principal can be held vicariously liable in tort for injury caused by the negligent acts of his apparent agent if the injury would not have occurred but for the injured party's justifiable reliance on the apparent agency").

CSXI, IPC, and the UACL/OEI/OX Defendants contend that the Fourth Amended Complaint contains insufficient allegations to state a plausible right to relief under any of the above-mentioned theories of vicarious liability. These arguments are addressed separately as to each defendant below.

1.   Allegations with Respect to CSXI

The factual allegations in the Fourth Amended Complaint regarding CSXI are sparse: Plaintiff alleges only that Franke delivered a load of goods to a CSXI facility on July 3, 2008, that CSXI thereafter "provided Defendant FRANKE with a CSX[I] trailer for the transportation of paper products," and that this CSXI trailer was attached to the truck driven by Franke on July 3, 2008, at the time of the accident. (Count II, ¶¶ 6-7.) Plaintiff also includes a conclusory allegation that Franke "was a duly authorized employee, agent and/or apparent agent of [CSXI], and at all times mentioned herein was acting in the course and scope of said employment, agency and apparent agency." (Count II, ¶ 5.)

Without more, CSXI contends that "Plaintiff fails to provide factual grounds in his allegations that would entitle him to relief against CSXI." (Dkt. No. 124 ("CSXI's Mem.") at 3.) Specifically, CSXI argues "[t]here is no factual allegation that CSXI controlled, or had the right to control, the conduct of Mr. Franke at the time of the accident." (*Id.* at 5.) Plaintiff contends that his allegations suggest a theory of relief based on both agency and apparent agency, insofar as Franke was "allowed to enter [CSXI's] yard, take their equipment and use their equipment." (Dkt. No. 128 ("Pl.s' Resp. to CSXI") at 8-9.)[5]

As noted by Magistrate Judge Cox, "An agency relationship exists when the agent

---

[5] On a motion to dismiss, the court cannot consider any materials outside the scope of the Fourth Amended Complaint. *See* Fed. R. Civ. P. 12(d). The court therefore does not address either of the parties' additional allegations regarding a "pooling agreement" between MBMS and CSXI (the "Uniform Intermodal Interexchange and Facilities Access Agreement"), information contained in the Highland Park Police Department Traffic Crash Narrative Supplement, Plaintiff's allegations that CSXI owned or leased a "chassis" that constituted a separate part of the "trailer" attached to the tractor trailer truck driven by Franke, the deposition testimony of Michael Amerio of Celtic International, Inc., the deposition testimony of David Martin of MBMS, or any of the exhibits shown to Martin at his deposition.

'undertakes to manage some affairs to be transacted for [and] . . . on account of the . . . principal." (9/9/2010 Order 19 (quoting *Williams v. Ford Motor Co.*, 990 F. Supp. 551, 555 (N.D. Ill. 1997).) "The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Krickl*, 930 N.E.2d at 1100 (quoting *Anderson v. Boy Scouts of Am., Inc.*, 589 N.E.2d 892, 894 (Ill. App. Ct. 1st Dist. 1992)); *see also Rollins v. Ellwood*, 565 N.E.2d 1302, 1310 (Ill. 1990). "The right to control the manner in which work is performed is considered the 'hallmark of agency.'" *Phillips v. Quality Terminal Servs., LLC*, No. 08-cv-6633, 2009 WL 4674051, at *5 (N.D. Ill. Dec. 4, 2009) (quoting *Kaporovskiy v. Grecian Delight Foods, Inc.*, 787 N.E.2d 268, 272 (Ill. App. Ct. 1st Dist. 2003)).

The fact that CSXI permitted Franke to use its trailer—presumably, as argued by Plaintiff, in exchange for some payment from Franke/MBMS for this privilege—does not lead to the reasonable inference that Franke was acting on CSXI's behalf when he transported the trailer, or that CSXI had the right to control the manner in which Franke transported the trailer once he left CSXI's premises. As Plaintiff notes, the job of an agent is to "transact[ ] business, manage[ ] some affair or do[ ] some service for the principal." (Dkt. No. 128 ("Pl.'s Resp. to CSXI") at 9-10 (quoting Ill. Pattern Jury Instr. 50.05).) Plaintiff's Fourth Amended Complaint identifies no business, affair, or service managed by Franke on behalf of CSXI or provided by Franke to CSXI, nor do the allegations in the Fourth Amended Complaint plausibly suggest such an inference. While the court can reasonably assume that CSXI received an "economic benefit" from its dealings with Franke/MBMS (Pl.'s Resp. to CSXI 10), this assumption does not further Plaintiff's argument that Franke was CSXI's agent. At most, the assumption of an economic

10

benefit to CSXI suggests only that Franke provided a *payment* to CSXI, not a service.  On the facts alleged in the Fourth Amended Complaint, the court finds that Plaintiff has failed to state a plausible right to relief against CSXI under a theory of agency.  *Accord Dolter v. Keene's Tranfer, Inc.*, No. 3:08-cv-262-JPG/DGW, 2008 WL 3010062, at *3 (S.D. Ill. Aug. 5, 2008) (holding plaintiff's allegation of agency relationship between trailer owner and tractor truck driver "does not rise above the level of speculation" in the absence of "any supporting facts plausibly suggesting an agency relationship").

Plaintiff does not fare any better under a theory of apparent agency.  As noted above, "a principal can be held vicariously liable in tort for injury caused by the negligent acts of his apparent agent if the injury would not have occurred but for the injured party's justifiable reliance on the apparent agency"  *O'Banner*, 670 N.E.2d at 634 (citing *Glibert v. Sycamore Municipal Hosp.*, 622 N.E.2d 788, 795 (Ill. 1993)).  Plaintiff has not explained how J. Scheinman could possibly have relied on Franke's (alleged) apparent authority to act on behalf of CSXI, thereby causing J. Scheinman's injury, and the court is at a loss to imagine how the theory of apparent agency could be reasonably applied to the facts alleged in the Fourth Amended Complaint against CSXI.  Because Plaintiff has failed to plausibly state a claim against CSXI for which relief can be granted, CSXI's motion is granted and Count II is dismissed.

Plaintiff has requested an opportunity to amend his allegations against CSXI if the court finds that Plaintiff's allegations are insufficient to state a plausible right to relief against CSXI.  Plaintiff notes that CSXI did not object to the allegations in Plaintiff's Third Amended Complaint, and that "it would be the first time that Plaintiff ever amended a count with allegations against CSXI."  (Pl.'s Resp. to CSXI 4.)  The court is skeptical that Plaintiff is able to

amend his allegations against CSXI to state a plausible right to relief consistent with this order and with Rule 11 of the Federal Rules of Civil Procedure. Nevertheless, in light of CSXI's change in posture with respect to the Fourth Amended Complaint, the court will allow Plaintiff an opportunity to file an amended Count II. Plaintiff's Fifth Amended Complaint, including an amended Count II against CSXI, if any is filed, is due on or before April 29, 2011.

Plaintiff has also asked for leave to include "additional paragraphs and allegations that will specifically allege that certain defects and malfunctioning of the chassis [purportedly owned or leased by CSXI] and its component parts were contributing causes of this occurrence." (Pl.'s Resp. to CSXI 4-5.) As CSXI notes, these allegations "are wholly unrelated to the prior agency theory alleged against CSXI." (Dkt. No. 131 ("CSXI's Reply") at 12.) Moreover, because Plaintiff's request is embedded in his response brief, the court has not had the benefit of clear and concise briefing on the question of whether Plaintiff's proposed amendment should be permitted under Rule 15(a). Plaintiff's request is therefore denied without prejudice to Plaintiff filing a proper motion before this court, attaching a copy of his proposed amended complaint. The court expresses no opinion at this time as to whether such amendment is proper under Rule 15(a).

2. Allegations with Respect to IPC

The Fourth Amended Complaint alleges that IPC is "in the business of selling paper and packaging products," that, on July 3, 2008, Franke drove a tractor trailer truck to IPC's facility in Hammond, Indiana, and that IPC "loaded aforesaid trailer with paper products" to be transported

"to various locations in Minnesota." (Count III, ¶¶ 3, 6-7; Count IV, ¶ 9.)[6] At the time of the accident, the UACL/OEI/OX Defendants had a contractual agreement with IPC "to transport paper products that were in [IPC's] possession." (Count IV, ¶ 8.)

Although the UACL/OEI/OX Defendants were the entities that "requested and directed" MBMS and Franke "to pick up [IPC's] paper product goods at a Hammond, Indiana warehouse, and transport those goods to various locations in Minnesota" (Count IV, ¶ 9), Plaintiff has alleged that Franke was driving the tractor trailer truck on July 3, 2008, "pursuant to the direction and supervision" of both IPC and the UACL/OEI/OX Defendants. (Count III, ¶ 8; Count IV, ¶ 11.) Plaintiff also alleges that Franke "was a duly authorized employee, agent and/or apparent agent of [IPC and the UACL/OEI/OX Defendants]" and at all relevant times "was acting in the course and scope of said employment, agency and apparent agency." (Count III, ¶ 5; Count IV, ¶ 5.)

IPC argues that the Fourth Amended Complaint "fails to identify any details regarding the alleged relationship between Franke and [IPC]," instead relying on "conclusory and abstract allegations" of agency. (Dkt. No. 95 ("IPC's Mem.") ¶¶ 18-19.) To the extent the Fourth Amended Complaint does contain some factual detail with regard to IPC's involvement in the July 3, 2008 shipment, IPC argues that merely assisting in loading the truck and directing the driver where to deliver the load is not enough to establish an agency relationship under Illinois law. (*Id.* ¶ 27 (citing *Boyle v. RJW Transport, Inc.*, No. 05 C 1082, 2008 WL 4877108, at *6 (N.D. Ill. June 20, 2008) and *Petersen v. U.S. Reduction Co.*, 641 N.E.2d 845, 851 (Ill. App. Ct.

---

[6] The court relies on certain factual allegations that are actually set forth in Count IV, against the UACL/OEI/OX Defendants, noting IPC's admission that these facts are not in dispute. (*See* Dkt. No. 130 ("IPC's Reply") ¶ 2.)

13

1st Dist. 1994)).)[7]

Plaintiff contends that his allegations plausibly describe a "shipping and delivering system" in which Franke and MBMS "were carrying out the instructions of [IPC] and UACL/OEI/OX at the time Franke struck Jeffrey Scheinman's vehicle," thereby creating an agency relationship. (Dkt. No. 127 ("Pl.'s Resp. to IPC") at 7.) To the extent more factual detail is necessary to establish "the presence or absence of an agency relationship," Plaintiff argues that this question is "better left for determination at summary judgment." (*Id.* at 14.)

The question before the court is whether Plaintiff has included "sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face,'" thus allowing the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570). In a general sense, and unlike Plaintiff's allegations against CSXI, it can be reasonably inferred from the allegations of the Fourth Amended Complaint that Franke's actions in driving the tractor trailer truck benefitted IPC. However, "the primary factor under Illinois law for determining whether a principal-agent relationship exists [is] the right of the person or entity for whom the work is done to control the manner, and not just the result, of the work." *Boyle*, 2008 WL 4877108, at *10; *accord Petersen*, 641 N.E.2d at 851 (concluding that a shipper "exercised little, if any, control" over the carrier/driver, where the shipper's only actions were to "dictat[e] a delivery schedule" and provide trailers and vats for shipping).

---

[7] As with CSXI's motion to dismiss, the court declines to consider materials outside the scope of the pleadings, including the deposition testimony of David Martin and the "Universal Am-Can Ltd. Master Brokerage Agreements" between the UACL/OEI/OX Defendants and MBMS.

Plaintiff has alleged that the July 3, 2008 shipment was undertaken, at least in part, pursuant to a contractual relationship between IPC and the UACL/OEI/OX Defendants, and that Franke was driving the tractor trailer truck on July 3, 2008, "pursuant to the direction and supervision" of IPC. (Count III, ¶ 8.) These allegations plausibly suggest that the terms of the IPC–UACL/OEI/OX agreement permitted IPC to exercise control over the actions of the carrier, and that IPC in fact exercised this control in its relationship with Franke.

IPC notes that Plaintiff has also alleged Franke operated the tractor truck trailer "pursuant to the request, direction, supervision and instruction" of the UACL/OEI/OX Defendants (Count IV, ¶ 11), and IPC argues that it "defies logic" and plausibility that Franke could be considered an agent of more than one principal. (IPC's Mem. ¶ 25.) The court disagrees. Plaintiff's claims against the separate defendants need not be consistent with one another at this stage of the litigation. *See* Fed. R. Civ. P. 8(d)(3). The fact that Plaintiff has had access to certain information through preliminary discovery regarding the contractual and business relationships among the various defendants does not materially alter Plaintiff's procedural position, or what is required of Plaintiff at the pleading stage. Ultimately, the question of agency will be based on "the contours of [the shipper's] business relationship with [the carrier]." *Boyle*, 2008 WL 4877108, at *1. Where these relationships are complex, Plaintiff need not determine on his own which defendant was responsible for controlling Franke's actions at the time of the accident. As long as the factual allegations of the Fourth Amended Complaint have evidentiary support, *see* Fed. R. Civ. P. 11, Plaintiff's claims can be plausibly alleged despite the fact that they are internally inconsistent.

As the Seventh Circuit has stressed, "[t]he purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996) (quoting *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). The court agrees with Plaintiff that the court will be better equipped to address the complex relationships among the defendants at the summary judgment stage. At this point in the litigation, the court finds that Plaintiff has stated a plausible right to relief against IPC, and IPC's motion to dismiss is denied.

3.  Allegations with Respect to the UACL/OEI/OX Defendants

The Fourth Amended Complaint alleges that the UACL/OEI/OX Defendants are "in the business of interstate transportation," including "requesting, organizing, coordinating, authorizing and arranging the transportation of goods by tractor trailer trucks." (Count IV, ¶¶ 3, 7.) At the time of the accident, the UACL/OEI/OX Defendants had a contractual agreement with IPC "to transport paper products that were in [IPC's] possession" and, on July 3, 2008, the UACL/OEI/OX Defendants allegedly "requested and directed" MBMS and Franke "to pick up [IPC's] paper product goods at a Hammond, Indiana warehouse, and transport those goods to various locations in Minnesota." (Count IV, ¶¶ 8-9.)

As noted above, Plaintiff has alleged that Franke was driving the tractor trailer truck on July 3, 2008, "pursuant to the direction and supervision" of both IPC and the UACL/OEI/OX Defendants. (Count III, ¶ 8; Count IV, ¶ 11.) More specifically, Plaintiff alleges that MBMS and Franke acted "pursuant to the request, direction, supervision and instruction" of the UACL/OEI/OX Defendants. (Count IV, ¶¶ 11-12.) Plaintiff also alleges that Franke "was a duly authorized employee, agent and/or apparent agent of [the UACL/OEI/OX Defendants]" and

16

at all relevant times "was acting in the course and scope of said employment, agency and apparent agency." (Count IV, ¶ 5.)[8]

The UACL/OEI/OX Defendants argue that "Plaintiff has failed to articulate in his newest pleading how the alleged activities of the UACL/OEI/OX entities support a theory of agency or apparent agency between [MBMS] and/or its driver, Samuel Franke, and the UACL/OEI/OX entities." (Dkt. No. 97 ("UACL/OEI/OX Mem.") at 1-2.) It is the UACL/OEI/OX Defendants' position that the allegations of the Fourth Amended Complaint are "conclusory and abstract," lacking "sufficient details regarding the alleged relationship between Franke and the UACL/OEI/OX defendants" to state a plausible right to relief. (*Id.* at 5.) The UACL/OEI/OX Defendants further contend that the "sprinkling of conclusory agency buzzwords" does not put them on notice "in what manner they have any relationship with Franke." (*Id.* at 10-11.)

To the extent the Fourth Amended Complaint contains factual detail regarding the UACL/OEI/OX Defendants' involvement in the July 3, 2008 shipment, the UACL/OEI/OX Defendants argue that "[a] mere contract to ship goods between a broker and a carrier does not establish an agency relationship," (*id*. at 9 (citing *Professional Communications, Inc. v. Contract Freighters, Inc.*, 171 F. Supp. 2d 546, 551 (D. Md. 2001)), and that control over "activities ancillary to, but not part of, the work itself" is insufficient to establish an agency relationship. (*Id.* (citing *Boyle*, 2008 WL 4877108, at \*6; *Petersen*, 641 N.E.2d at 851).) Like IPC, the UACL/OEI/OX Defendants also argue that it "defies logic" and plausibility that Franke could be the agent of more than one of the named defendants at the time of the July 3, 2008 accident. (*Id.*

---

[8] The court again declines to consider the substance of David Martin's deposition, Franke's deposition, or the "Universal Am-Can Ltd. Master Brokerage Agreements" between UACL/OEI/OX and MBMS in addressing the pending motion to dismiss. Fed. R. Civ. P. 12(d).

at 8-9.)

The bulk of the UACL/OEI/OX Defendants' arguments can be addressed in the same manner as IPC's arguments. As stated above, it is not enough that Franke's actions in driving the tractor trailer truck benefitted UACL/OEI/OX. "[T]he primary factor under Illinois law for determining whether a principal-agent relationship exists [is] the right of the person or entity for whom the work is done to control the *manner*, and not just the result, of the work." *Boyle*, 2008 WL 4877108, at *10 (emphasis added). The Fourth Amended Complaint alleges that the July 3, 2008 shipment was undertaken, at least in part, pursuant to a contractual relationship between IPC and the UACL/OEI/OX Defendants, and that Franke was driving the tractor trailer truck on July 3, 2008, "pursuant to the request, direction, supervision and instruction" of the UACL/OEI/OX Defendants. (Count IV, ¶¶ 8, 10-11.) Specifically, Plaintiff alleges that the UACL/OEI/OX Defendants "requested and directed" MBMA and Franke "to pick up [IPC's] paper product goods at a Hammond, Indiana warehouse, and transport those goods to various locations in Minnesota." (Count IV, ¶ 9.) The UACL/OEI/OX Defendants are correct in their assertion that "[a] mere contract to ship goods between a broker and a carrier" does not, without more, establish an agency relationship. (UACL/OEI/OX Defs.' Mem. 9.) In this case, however, Plaintiff has also alleged that the UACL/OEI/OX Defendants supervised Franke's actions as he "drove the aforesaid tractor trailer truck containing [IPC's] paper products in a northbound direction on Skokie Valley Road at or near its intersection with Half Day Road in Highland Park, Illinois." (Count IV, ¶ 11.) Although sparse, and generally inconsistent with Plaintiff's allegations against IPC, these allegations nevertheless plausibly suggest that the UACL/OEI/OX Defendants controlled Franke's actions at the time of the July 3, 2008 accident. The "contours

18

of [UACL/OEI/OX's] business relationship with [MBMS/Franke]," *Boyle*, 2008 WL 4877108, at *1, can be fleshed out at summary judgment. At this point in the litigation, the allegations of the Fourth Amended Complaint are sufficient to put the UACL/OEI/OX Defendants on notice of the claim alleged against them, such that Plaintiff need not include additional specific details regarding the nature of UACL/OEI/OX's relationship with MBMS and Franke.

In their reply brief, the UACL/OEI/OX Defendants rely on the case of *Schramm v. Foster*, 341 F. Supp. 2d 536 (D. Md. 2004), to argue "if the pleading does not establish that the broker has control over the driving times, conditions under which he drives, or the manner in which he works, or has the ability to fire or discipline the driver, there is an insufficient relationship to impute liability from the driver to the broker." (Dkt. No. 129 ("UACL/OEI/OX Defs.' Reply") at 3.) The UACL/OEI/OX Defendants' reliance on *Schramm* is misplaced.[9] The district court in *Schramm* did not address the sufficiency of the pleadings, instead reviewing the terms of a broker-carrier contract on summary judgment. After a detailed analysis of the relevant contractual terms, the court in *Schramm* determined "[c]learly, [the carrier] and [the broker] understood that [the carrier] was to maintain control of the means and method of transportation, including the performance of the driver," before going on to address the parties' specific interactions with respect to the shipment at issue. *Schramm*, 341 F. Supp. 2d at 544 (applying both Maryland law and the Restatement (Second) of Agency, §§ 1, 12-14 (1958)). The nuances and details of the relationship between the UACL/OEI/OX Defendants and

---

[9] Plaintiff, in turn, relies on *Schramm* to argued that UACL/OEI/OX had a duty "to use reasonable care in selecting carriers." (Dkt. No. 126 ("Pl.'s Resp. to UACL/OEI/OX") at 11.) Plaintiff has not alleged any claim for negligent hiring against UACL/OEI/OX in this case, thus further distinguishing *Schramm* on this point.

19

MBMS/Franke will certainly be important in assessing the ultimately question of liability in this case; however, such details are not required at the pleading stage. The UACL/OEI/OX Defendants' motion to dismiss is therefore denied.

## CONCLUSION

For the reasons set forth above, CSXI's motion to dismiss (Dkt. No. 123) is granted and Plaintiff's claim against CSXI (Count II) is dismissed without prejudice. Plaintiff is granted leave to file an amended Count II against CSXI in a Fifth Amended Complaint, if he can do so consistent with this order and with Rule 11, on or before April 29, 2011. IPC's motion to dismiss (Dkt. No. 94) and the UACL/OEI/OX Defendants' motion to dismiss (Dkt. No. 96) are denied. IPC and the UACL/OEI/OX Defendants are to file their respective answers on or before May 13, 2011. Status hearing set for May 19, 2011 for purposes of scheduling further dates. All parties are encouraged to discuss settlement.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: April 12, 2011