UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person,<br><br>                Plaintiff,<br><br>   vs.<br>MARTIN'S BULK MILK SERVICE,INC., SAMUEL G. FRANKE, CSX INTERMODAL, INC., INTERNATIONAL PAPER COMPANY, UNIVERSAL AM CAN LTD., Successor to OVERNITE EXPRESS, INC. and OX LLC, BMW OF NORTH AMERICA, LLC, a Corporation, BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, a corporation, BMW AG, a corporation, and KARL KNAUZ MOTORS, INC.,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br><br>Case No. 09 cv 5340 |

**BAYERISCHE MOTOREN WERKE AG'S
ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFF'S FIFTH AMENDED COMPLAINT AT LAW**

NOW COMES Defendant BAYERISCHE MOTOREN WERKE AG ("BMW AG"), by and through its attorneys, James K. Toohey and Timothy R. Couture of Johnson & Bell, Ltd., and for its Answer to Plaintiff's Fifth Amended Complaint at Law states as follows:

**COUNT I – NEGLIGENCE
MARTIN'S BULK MILK SERVICE, INC. AND SAMUEL G. FRANKE**

As the allegations contained in Count I of Plaintiff's Fifth Amended Complaint are not directed against Defendant BMW AG, said Defendant makes no answer thereto. To the extent that any of the allegations contained in Plaintiff's Count I are construed as being pled against said Defendant, they are denied.

### COUNT II-NEGLIGENCE
### CSX INTERMODAL, INC. AND SAMUEL G. FRANKE

As the allegations contained in Count II of Plaintiff's Fifth Amended Complaint are not directed against Defendant BMW AG, said Defendant makes no answer thereto. To the extent that any of the allegations contained in Plaintiff's Count II are construed as being pled against said Defendant, they are denied.

### COUNT III - NEGLIGENCE
### INTERNATIONAL PAPER COMPANY AND SAMUEL G. FRANKE

As the allegations contained in Count III of Plaintiff's Fifth Amended Complaint are not directed against Defendant BMW AG, said Defendant makes no answer thereto. To the extent that any of the allegations contained in Plaintiff's Count III are construed as being pled against said Defendant, they are denied.

### COUNT IV-NEGLIGENCE
### UNIVERSAL AM CAN LTD., SUCCESSOR TO OVERNIGHT EXPRESS, INC. and OX LLC, AND SAMUEL G. FRANKE

As the allegations contained in Count IV of Plaintiff's Fifth Amended Complaint are not directed against Defendant BMW AG, said Defendant makes no answer thereto. To the extent that any of the allegations contained in Plaintiff's Count IV are construed as being pled against said Defendant, they are denied.

### COUNT V - STRICT LIABILITY
### BMW OF NORTH AMERICA, LLC, BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, BMW AG, and KARL KNAUZ MOTORS, INC.

The legal name of answering defendant is Bayerische Motoren Werke AG. The name is frequently shortened informally to the acronym "BMW AG." Plaintiff has named the company both under its formal name and under the informal acronym. On September 14, 2010, the Court ordered the dismissal of the non-entity "BMW AG" and dismissed Plaintiff's Complaint against KARL KNAUZ MOTORS, INC. ("KNAUZ") on March 25, 2011. Bayerische Motoren Werke AG (hereinafter "BMW AG") makes no answer to the allegations pled against said dismissed parties.

NOW COMES Defendant BAYERISCHE MOTOREN WERKE AG ("BMW AG"), and for its answer and affirmative defenses to Count V of Plaintiffs' Fifth Amended Complaint states:

1.     On and before July 3, 2008, Defendants, Bayerische Motoren Werke Aktiengesellschaft and BMW AG were German corporations engaged in the business of designing, manufacturing, engineering, testing, assembling, marketing, distributing and selling motor vehicles, including a 2008 BMW convertible, and its component parts bearing vehicle identification number WBAWL73528PX57418, that was owned by JEFFREY J. SCHEINMAN.

**<u>ANSWER:</u>**     BMW AG admits that it is engaged in the design, engineering, testing, manufacture of certain parts and subassemblies, and assembly of motor vehicles, including a 2008 BMW convertible bearing the vehicle identification number identified in paragraph 1, admits that it offers such vehicles for distribution and that it sells such vehicles to BMW of North America, LLC ("BMW NA") for distribution in North America, and is without knowledge sufficient to form a belief as to whether it manufactured any unspecified "component parts" or whether such vehicle is owned by Jeffrey Scheinman.

2.     On and before July 3, 2008, Defendant, BMW of NORTH AMERICA, was a Delaware corporation, with a registered agent in Chicago, Cook County, Illinois, that was engaged in the business of designing, manufacturing, engineering, testing, assembling, marketing, distributing and selling motor vehicles, including a 2008 BMW convertible, and its component parts bearing vehicle identification number WBAWL73528PX57418 that was owned by JEFFREY J. SCHEINMAN.

3

**ANSWER:** BMW AG makes no response to allegations of Paragraph 2 not directed to it, except that it denies that BMW NA designed, manufactured, engineered, tested or assembled the subject vehicle.

3.     On and before July 3, 2008, Defendants BMW, BMW AG, and BMW NA engaged in the business of designing, manufacturing, engineering, testing, assembling, marketing, distributing and selling motor vehicles in and throughout Cook County, Illinois, including at dealership facilities located at 1035 North Clark Street, Chicago, Illinois, 60610, 700 East Golf Road, Schaumburg, Illinois, 60173, and 700 West Frontage Road, Northfield, Illinois, 60093.

**ANSWER:** BMW AG admits that it is engaged in the design, engineering, testing, manufacture of certain parts and subassemblies, and assembly of motor vehicles, and denies each and every further allegation paragraph 3.

4.     On and before July 3, 2008 Defendant KNAUZ was an Illinois corporation that was engaged in the business of designing, manufacturing, engineering, testing, assembling, marketing, distributing and selling motor vehicles, including a 2008 BMW convertible, and its component parts bearing vehicle identification number WBAWL73528PX57418, that was owned by JEFFREY J. SCHEINMAN.

**ANSWER:** BMW AG makes no response to the allegations made against KNAUZ, which has been dismissed as a party to this action, except that it admits that KNAUZ is and was an authorized dealer of BMW automobiles; and, based on information and belief, KNAUZ sold the motor vehicle specified in Plaintiff's Complaint, but performed none of the other acts described in paragraph 4.

5.     Prior to July 3, 2008, Defendants, BMW, BMW AG, BMW NA and KNAUZ provided, distributed and sold to JEFFREY J. SCHEINMAN the aforesaid 2008 BMW convertible vehicle bearing vehicle identification number WBAWL73528PX57418.

**ANSWER:**   BMW AG admits that BMW NA purchased and imported the motor vehicle specified in paragraph 5 from BMW AG.  On information and belief, this Defendant admits that BMW NA sold said vehicle to KNAUZ, and that KNAUZ sold it to JEFFREY SCHEIMAN.  This Defendant denies the remaining allegations of paragraph 5.

6.     On July 3, 2008 JEFFREY J. SCHEINMAN owned and operated the 2008 BMW convertible vehicle bearing vehicle identification number WBAWL73528PX57418 that had been designed, manufactured, engineered, tested, assembled, inspected, marketed, distributed, and sold by Defendants, BMW, BMW AG, BMW NA and KNAUZ.

**ANSWER:**   BMW AG admits that it designed, manufactured, engineered and inspected the vehicle specified in paragraph 6 prior to its having sold said vehicle to BMW NA.  On information and belief, BMW AG admits that BMW NA distributed said vehicle to KNAUZ, that KNAUZ sold said vehicle to Jeffrey Scheinman prior to July 3, 2008, and that on July 3, 2008 the vehicle was owned by Jeffrey Scheinman.  On information and belief based on investigation and inquiry only, this Defendant admits that Jeffrey J. Scheinman was operating said motor vehicle on the date specified.  This Defendant denies all other allegations of paragraph 6 not specifically admitted herein.

7.     On and before July 3, 2008, Defendants, BMW, BMW AG, BMW NA and KNAUZ, and each of them, had a duty to ensure that the aforesaid 2008 BMW convertible vehicle, and its component parts, were not designed, manufactured, engineered, tested, assembled, marketed, distributed and sold in such a manner and condition so as to be in an unreasonably dangerous condition.

**ANSWER:**     BMW AG admits only those duties specified by law, denies that paragraph 7 properly states said duties, and therefore denies each and every allegation of paragraph 7.

8.     On and before July 3, 2008, Skokie Valley Road was a public way running generally in north and south directions through Highland Park, Illinois.

**ANSWER:**     On information and belief based on investigation and inquiry only, BMW AG admits the allegations of paragraph 8.

9.     On and before July 3, 2008, Half Day Road was a public way running generally in east and west directions in Highland Park, Illinois.

**ANSWER:**     On information and belief based on investigation and inquiry only, BMW AG admits the allegations of paragraph 9.

10.     On July 3, 2008, Samuel Franke, operated, managed, maintained and/or controlled a tractor trailer truck with a Freightliner Classic cab bearing vin number 1 FUJF6CKX4DM02330 in a northbound direction on Skokie Valley Road at or near its intersection with Half Day Road in Highland Park, Illinois.

**ANSWER:**     On information and belief based on investigation and inquiry only, BMW AG admits the allegations of paragraph 10.

11.     On July 3, 2008, JEFFREY J. SCHEINMAN, Currently a Disabled Adult, operated his passenger car in a northbound direction on Skokie Valley Road at or near its intersection with Half Day Road in Highland Park, Illinois.

**ANSWER:**    BMW AG is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11.

12.     On July 3, 2008, Samuel Franke, operated and drove his Freightliner Classic tractor trailer truck in such a manner as to cause it to collide with the rear end of the passenger car driven by JEFFREY J. SCHEINMAN, resulting in serious personal injury to JEFFREY J. SCHEINMAN.

**ANSWER:**    On information and belief based on investigation and inquiry only, BMW AG admits the allegations of paragraph 12.

13.     On July 3, 2008, at the time of the aforesaid collision, various systems and components of JEFFREY J. SCHEINMAN's BMW vehicle failed, including the fuel system, seat back and body structure, resulting in a post-collision fire in the occupant compartment of his vehicle that caused serious burn injuries to JEFFREY J. SCHEINMAN.

**ANSWER:**    BMW AG denies each and every allegation of paragraph 13.

14.     On and before July 3, 2008, and at the time the aforementioned 2008 BMW convertible vehicle left the control of Defendants BMW, BMW AG, BMW NA, and KNAUZ, this vehicle and its related component parts were in an unreasonably dangerous condition in one or more of the following respects, where Defendants:

   a.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle with a lack of adequate crashworthiness during foreseeable rear end collisions;

b.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle in a manner and condition that failed to provide safe and adequate protection to occupants during foreseeable rear end collisions;

c.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle in a manner and condition that failed to provide adequate and safe survival space to the occupants during foreseeable rear end collisions;

d.    Failed to properly test, monitor and inspect the condition, operation and performance of the 2008 BMW convertible vehicle's fuel system, seat back, body structure, and crash protection system, to ensure that it was safe, suitable, and appropriate for use on the roadway;

e.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle without proper and safe protection and guarding of the fuel system component parts so as to prevent rupture, puncture, damage and failure during reasonably foreseeable rear end collisions;

f.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle in a manner and condition that caused the fuel system, including fuel tanks, fuel lines and other component parts to fail during a foreseeable rear end collision, resulting in the release of gasoline and a post-collision fire;

g.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle without adequate and safe guarding and securing of the fuel system component parts, which increased the likelihood of damage and a post-collision fire during reasonably foreseeable rear end collisions;

h.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle with an inadequate and unsafe sheet metal design, resulting in body seam weld failures that allowed the fire to spread to the occupant compartment;

i.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle in a manner and condition that resulted in body structure failures, which allowed the fire to spread to the occupant compartment;

j.  Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle with a seat and seatback that was of inadequate strength, support and durability to withstand a reasonably foreseeable rear end collision;

k.  Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle in a manner and condition that caused the seat back to fail during a reasonably foreseeable rear end collision, and placed Mr. Scheinman's body in the immediate proximity of the post-collision fire.

l.  Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle without safe and adequate protection against the spread of fire from the fuel system to the occupant compartment of the vehicle;

m.  Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle without providing safe and adequate means to protect the occupant compartment from fire in the event of a post-collision fire during reasonably foreseeable rear impact collisions;

n.  Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle without a crashworthy occupant compartment;

o.  Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle with a retractable convertible top that interfered with the safe placement and protection of the component parts of the fuel system;

p.  Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle with a retractable convertible top that compromised the integrity and performance of the fuel system during a reasonably foreseeable rear end collision;

q.  Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW convertible vehicle with a fuel system, seats and body structure that increased the likelihood of injury during a foreseeable rear end collision;

r.  Failed to provide proper and adequate warnings about defects in the 2008 BMW convertible vehicle, including its fuel system, seats and body structure;

9

s.   Failed to provide proper and adequate warnings about the risk of injury to occupants resulting from the failure of the vehicle's fuel system, seats and body structure during reasonably foreseeable rear end collisions;

t.   Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle in a condition that was otherwise unreasonably dangerous.

**ANSWER:**   BMW AG denies each and every allegation of paragraph 14, including subparagraphs (a) through (t).

15.   As a proximate result of one or more of the aforesaid unreasonably dangerous conditions caused by Defendants BMW, BMW AG, BMW NA and KNAUZ, and each of them, JEFFREY J. SCHEINMAN sustained severe injuries of a personal and pecuniary nature, causing him to be a disabled adult, and this cause of action is brought by Plaintiff, MURRAY SCHEINMAN, the duly appointed Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person.

**ANSWER:**   BMW AG denies each and every allegation of paragraph 15.

WHEREFORE, Defendant BAYERISCHE MOTOREN WERKE AG prays that Count V of Plaintiff's Fifth Amended Complaint be dismissed, with prejudice, and that costs be awarded to Defendants.

### **First Affirmative Defense**

1.   On information and belief, on July 3, 2008, JEFFREY J. SCHEINMAN was operating his BMW automobile in a northbound direction on U.S. 41, also known as Skokie Valley Road, stopped at a red illuminated traffic control signal at or near the intersection with Illinois Route 22, also known as Half Day Road in Highland Park, Illinois.

2.     On information and belief, on July 3, 2008, SAMUEL FRANKE operated and controlled a fully loaded semi tractor-trailer truck in a northbound direction on U.S. Route 41, also known as Skokie Valley Road, at or near its intersection with Illinois Route 22, also known as Half Day Road, in Highland Park, Illinois.

3.     On information and belief, at said time and place, SAMUEL FRANKE operated his motor vehicle in such a reckless manner in utter disregard for the red light signal to stop, in utter disregard for vehicles stopped facing northbound on Route 41 and traffic crossing with a green light in easterly and westerly directions on Route 22, in criminal disregard for the laws and regulations dictating conduct in the operation of motor vehicles on Illinois roads, including  625 ILCS § 5/11-202 and 625 ILCS § 5/11-601(a) and (b), and in utter and reckless disregard for the safety of such persons properly using said roadways, so as to cause the loaded semi-tractor trailer he was operating at highway speed to collide the rear end of the stopped BMW vehicle occupied by JEFFREY J. SCHEINMAN causing injuries and damages to JEFFREY J. SCHEINMAN.

4.     The utterly reckless acts/omissions of SAMUEL FRANKE, and/or those owners and lessors of the truck driven by SAMUEL FRANKE were the sole proximate cause of the injuries alleged in Plaintiff's Complaint at Law.

WHEREFORE, Defendant BAYERISCHE MOTOREN WERKE AG prays that Count V of Plaintiff's Fifth Amended Complaint be dismissed in its entirety, with prejudice, and that costs be awarded to Defendant.

**Second Affirmative Defense**

1-3.     Defendant BMW AG reasserts and re-alleges paragraphs 1-3 of its First Affirmative Defense as Paragraphs 1-3 of this Second Affirmative Defense.

4.     BMW AG is a manufacturer of motor vehicles.

5.     BMW AG does not owe a duty to protect all occupants from all injuries regardless of the type or severity of the collision, but instead, owes a duty of due care for the safety of Plaintiff by designing and manufacturing a motor vehicle that will provide a reasonable level of protection of occupants in reasonably foreseeable vehicular collisions.

6.     The U.S. Department of Transportation's National Highway Traffic Safety Administration has designed, developed and promulgated specific Federal Motor Vehicle Safety Standards ("FMVSS").  49 C.F.R. 471.201, *et seq.* The FMVSS impose on the manufacturer the legal obligation to design, test and certify any vehicle intended for sale in the United States meets such standards.   Included in the FMVSS are standards directed to the vehicle systems and parts that Plaintiff alleges were not reasonably safe in the crash in which plaintiff and the subject vehicle were involved, including but not limited to, Standard Nos. 201, 207, 208, and 301.  These standards establish the legal purpose of such standards in pertinent part, stating:

    a.     "**Standard No. 201; Occupant protection in interior impact.**  *S1. Purpose and scope.*  This standard specifies requirements to afford impact protection for occupants."

    b.     "**Standard No. 207; Seating systems.**  *S1. Purpose and scope.*  This standard establishes requirements for seats, their attachment assemblies, and their installation to minimize the possibility of their failure by forces acting on them as a result of vehicle impact."

    c.    **"Standard No. 208; Occupant crash protection.** *S1. Scope.* This standard specifies performance requirements for the protection of vehicle occupants in crashes."
*S2. Purpose.* The purpose of this standard is to reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crashworthiness requirements in terms of forces and accelerations measured on anthropomorphic dummies in test crashes, and by specifying equipment requirements for active and passive restraint systems.

    d.    **"Standard No. 301; Fuel system integrity.** *S1. Scope.* This standard specifies requirements for the integrity of motor vehicle fuel systems.

    *S2. Purpose.* The purpose of this standard is to reduce deaths and injuries occurring from fires that result from fuel spillage during and after motor vehicle crashes…."

7.    In order to meet its obligations under the aforesaid standards, BMW AG is required to conduct various tests to determine that the vehicle as a whole, its seat structures and its fuel retention system, will provide reasonable protection in reasonably foreseeable crashes in which the risk of death or serious injury can be reduced.

8.    BMW AG conducted all tests required by the Act necessary to certify that the 2008 BMW Model 335i convertible met each FMVSS standard and so certified the vehicle testing prior to the date Defendant BMW AG released it for sale in the United States, including specifically, FMVSS Standards 201, 207, 208 and 301.

9.    On information and belief, at the time and place alleged in Plaintiff's complaint, the subject vehicle was impacted by a semi-tractor trailer weighing at or near 50,000 lbs. at or near a speed of 50 mph. Based on those numbers, the tractor semi-trailer impacted the subject vehicle with approximately 35 times more kinetic energy than the fuel system must withstand under FMVSS Standard 301, and the accident forces applied loads and acceleration forces to the occupant far in excess of any levels

the human structures are to be protected against by the applicable FMVSS or any other reasonably safe seat design standard.

10.     Compliance with FMVSS standards is relevant to the determination of whether the product was reasonably safe.

11.     The vehicular crash described in Plaintiff's complaint was of such enormity that it was legally unforeseeable as a matter of Illinois law and, as such, any alleged disruption of the integrity of the fuel system, or seats or occupant protection systems, provides no evidence at all that BMW AG breached its duty of reasonable care owed to Plaintiff.

WHEREFORE, Defendant BAYERISCHE MOTOREN WERKE AG prays that Count V of Plaintiff's Fifth Amended Complaint be dismissed in its entirety, with prejudice, and that costs be awarded to Defendant.

### Third Affirmative Defense

1-10.   Defendant BMW AG reasserts and re-alleges paragraphs 1-10 of its Second Affirmative Defense as Paragraphs 1-10 of this Third Affirmative Defense.

11.     The striking vehicle impacted the subject BMW vehicle at such speed and with such enormous weight that the energy transferred to the BMW and the acceleration forces applied at the instant of impact were many times higher than the energy exchange and acceleration forces that a reasonably safe vehicle must withstand to meet the Federal Motor Vehicle Safety Standards and against which a reasonably safe design can be judged under the law.

12.     Accordingly, the collision complained of was legally unforeseeable as a matter of law.

14

WHEREFORE, Defendant BAYERISCHE MOTOREN WERKE AG prays that Count V of Plaintiff's Fifth Amended Complaint be dismissed in its entirety, with prejudice, and that costs be awarded to Defendant.

### COUNT VI- NEGLIGENCE
### BMW OF NORTH AMERICA, LLC, BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, BMW AG, AND KARL KNAUZ MOTORS, INC.

As Plaintiff's Complaint against non-entity "BMW AG" was dismissed pursuant to order of Court on September 14, 2010, and as Plaintiff's Complaint against KARL KNAUZ MOTORS, INC. was dismissed with prejudice on March 25, 2011, Bayerische Motoren Werke makes no answer to the allegations pled against said dismissed parties.

NOW COMES Defendant BAYERISCHE MOTOREN WERKE AG ("BMW AG"), and for its answer and affirmative defenses to Count VI of Plaintiff's Fifth Amended Complaint states:

1.      On and before July 3, 2008, Defendants, Bayerische Motoren Werke Aktiengesellschaft and BMW AG were German corporations engaged in the business of designing, manufacturing, engineering, testing, assembling, marketing, distributing and selling motor vehicles, including a 2008 BMW convertible, and its component parts bearing vehicle identification number WBAWL73528PX57418, that was owned by JEFFREY J. SCHEINMAN.

**ANSWER:**  BMW AG admits that it is engaged in the design, engineering, testing, manufacture of certain parts and subassemblies, and assembly of motor vehicles, including a 2008 BMW convertible bearing the vehicle identification number identified in paragraph 1, admits that it offers such vehicles for distribution and that it sells such vehicles to BMW of North America, LLC ("BMW NA") for distribution in North America, and is without knowledge sufficient to form a belief as to whether it

manufactured any unspecified "component parts" or whether such vehicle is owned by Jeffrey Scheinman.

2.     On and before July 3, 2008, Defendant, BMW of NORTH AMERICA, was a Delaware corporation, with a registered agent in Chicago, Cook County, Illinois, that was engaged in the business of designing, manufacturing, engineering, testing, assembling, marketing, distributing and selling motor vehicles, including a 2008 BMW convertible, and its component parts bearing vehicle identification number WBAWL73528PX57418 that was owned by JEFFREY J. SCHEINMAN.

**ANSWER:**     BMW AGA makes no response to allegations of Paragraph 2 not directed to it, except that it denies that BMW NA designed, manufactured, engineered, tested or assembled the subject vehicle.

3.     On and before July 3, 2008, Defendants BMW, BMW AG, and BMW NA engaged in the business of designing, manufacturing, engineering, testing, assembling, marketing, distributing and selling motor vehicles in and throughout Cook County, Illinois, including at dealership facilities located at 1035 North Clark Street, Chicago, Illinois, 60610, 700 East Golf Road, Schaumburg, Illinois, 60173, and 700 West Frontage Road, Northfield, Illinois, 60093.

**ANSWER:**     BMW AG admits that it is engaged in the design, engineering, testing, manufacture of certain parts and subassemblies, and assembly of motor vehicles, and denies each and every further allegation paragraph 3.

4.     On and before July 3, 2008 Defendant KNAUZ was an Illinois corporation that was engaged in the business of designing, manufacturing, engineering, testing, assembling, marketing, distributing and selling motor vehicles, including a 2008 BMW

convertible, and its component parts bearing vehicle identification number WBAWL73528PX57418, that was owned by JEFFREY J. SCHEINMAN.

**ANSWER:** BMW AG makes no response to the allegations made against KNAUZ, which has been dismissed as a party to this action, except that it admits that KNAUZ is and was an authorized dealer of BMW automobiles; and, based on information and belief, KNAUZ sold the motor vehicle specified in Plaintiff's Complaint, but performed none of the other acts described in paragraph 4.

5. Prior to July 3, 2008, Defendants, BMW, BMW AG, BMW NA and KNAUZ provided, distributed and sold to JEFFREY J. SCHEINMAN the aforesaid 2008 BMW convertible vehicle bearing vehicle identification number WBAWL73528PX57418.

**ANSWER:** BMW AG admits that BMW NA purchased and imported the motor vehicle specified in paragraph 5 from BMW AG . On information and belief, this Defendant admits that BMW NA sold said vehicle to KNAUZ, and that KNAUZ sold it to JEFFREY SCHEIMAN. This Defendant denies the remaining allegations of paragraph 5.

6. On July 3, 2008 JEFFREY J. SCHEINMAN owned and operated the 2008 BMW convertible vehicle bearing vehicle identification number WBAWL73528PX57418 that had been designed, manufactured, engineered, tested, assembled, inspected, marketed, distributed, and sold by Defendants, BMW, BMW AG, BMW NA and KNAUZ.

**ANSWER:** BMW AG admits that it designed, manufactured, engineered and inspected the vehicle specified in paragraph 6 prior to its release and sale to BMW NA.

17

On information and belief, BMW AG admits that BMW NA distributed said vehicle to KNAUZ, that KNAUZ sold said vehicle to Jeffrey Scheinman prior to July 3, 2008, and that on July 3, 2008 the vehicle was owned by Jeffrey Scheinman. On information and belief based on investigation and inquiry only, this Defendant admits that Jeffrey J. Scheinman was operating said motor vehicle on the date specified. This Defendant denies all other allegations of paragraph 6 not specifically admitted herein.

7.      On and before July 3, 2008, Defendants, BMW, BMW AG, BMW NA and KNAUZ, and each of them, had a duty to ensure that the aforesaid 2008 BMW convertible vehicle, and its component parts, were not designed, manufactured, engineered, tested, assembled, marketed, distributed and sold in such a manner and condition so as to be in an unreasonably dangerous condition.

**ANSWER:**   BMW AG admits only those duties specified by law, denies that paragraph 7 properly states said duties, and therefore denies each and every allegation of paragraph 7.

8.      On and before July 3, 2008, Skokie Valley Road was a public way running generally in north and south directions through Highland Park, Illinois.

**ANSWER:**   On information and belief based on investigation and inquiry only, this BMW AG admits the allegations of paragraph 8.

9.      On and before July 3, 2008, Half Day Road was a public way running generally in east and west directions in Highland Park, Illinois.

**ANSWER:**   On information and belief based on investigation and inquiry only, BMW AG admits the allegations of paragraph 9.

10. On July 3, 2008, Samuel Franke, operated, managed, maintained and/or controlled a tractor trailer truck with a Freightliner Classic cab bearing vin number 1 FUJF6CKX4DM02330 in a northbound direction on Skokie Valley Road at or near its intersection with Half Day Road in Highland Park, Illinois.

**ANSWER:** On information and belief based on investigation and inquiry only, BMW AG admits the allegations of paragraph 10.

11. On July 3, 2008, JEFFREY J. SCHEINMAN, Currently a Disabled Adult, operated his passenger car in a northbound direction on Skokie Valley Road at or near its intersection with Half Day Road in Highland Park, Illinois.

**ANSWER:** BMW AG is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11.

12. On July 3, 2008, Samuel Franke, operated and drove his Freightliner Classic tractor trailer truck in such a manner as to cause it to collide with the rear end of the passenger car driven by JEFFREY J. SCHEINMAN, resulting in serious personal injury to JEFFREY J. SCHEINMAN.

**ANSWER:** On information and belief based on investigation and inquiry only, BMW AG admits the allegations of paragraph 12.

13. On July 3, 2008, at the time of the aforesaid collision, various systems and components of JEFFREY J. SCHEINMAN's BMW vehicle failed, including the fuel system, seat back and body structure, resulting in a post-collision fire in the occupant compartment of his vehicle that caused serious burn injuries to JEFFREY J. SCHEINMAN.

**ANSWER:** BMW AG denies each and every allegation of paragraph 13.

14.     On and before July 3, 2008, Defendants BMW, BMW AG, BMW NA, and KNAUZ, and each of them, were negligent in their design, manufacture, engineering, testing, inspection, assembly, distribution and sale of the aforesaid 2008 BMW convertible vehicle in one or more of the following respects, where Defendants:

    a.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle with a lack of adequate crashworthiness during foreseeable rear end collisions;

    b.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle in a manner and condition that failed to provide safe and adequate protection to occupants during foreseeable rear end collisions;

    c.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle in a manner and condition that failed to provide adequate and safe survival space to the occupants during foreseeable rear end collisions;

    d.    Failed to properly test, monitor and inspect the condition, operation and performance of the 2008 BMW convertible vehicle's fuel system, seat back, body structure, and crash protection system, to ensure that it was safe, suitable, and appropriate for use on the roadway;

    e.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle without proper and safe protection and guarding of the fuel system component parts so as to prevent rupture, puncture, damage and failure during reasonably foreseeable rear end collisions;

    f.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle in a manner and condition that caused the fuel system, including fuel tanks, fuel lines and other component parts to fail during a foreseeable rear end collision, resulting in the release of gasoline and a post-collision fire;

    g.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle without adequate and safe guarding and securing of the fuel system component parts, which increased

the likelihood of damage and a post-collision fire during reasonably foreseeable rear end collisions;

h.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle with an inadequate and unsafe sheet metal design, resulting in body seam weld failures that allowed the fire to spread to the occupant compartment;

i.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle in a manner and condition that resulted in body structure failures, which allowed the fire to spread to the occupant compartment;

j.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle with a seat and seatback that was of inadequate strength, support and durability to withstand a reasonably foreseeable rear end collision;

k.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle in a manner and condition that caused the seat back to fail during a reasonably foreseeable rear end collision, and placed Mr. Scheinman's body in the immediate proximity of the post-collision fire.

l.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle without safe and adequate protection against the spread of fire from the fuel system to the occupant compartment of the vehicle;

m.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle without providing safe and adequate means to protect the occupant compartment from fire in the event of a post-collision fire during reasonably foreseeable rear impact collisions;

n.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle without a crashworthy occupant compartment;

o.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle with a retractable convertible top that interfered with the safe placement and protection of the component parts of the fuel system;

p.    Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW vehicle with a retractable convertible top that compromised the integrity and performance of

the fuel system during a reasonably foreseeable rear end collision;

q. Designed, manufactured, engineered, tested, assembled, distributed and sold the 2008 BMW convertible vehicle with a fuel system, seats and body structure that increased the likelihood of injury during a foreseeable rear end collision;

r. Failed to provide proper and adequate warnings about defects in the 2008 BMW convertible vehicle, including its fuel system, seats and body structure;

s. Failed to provide proper and adequate warnings about the risk of injury to occupants resulting from the failure of the vehicle's fuel system, seats and body structure during reasonably foreseeable rear end collisions;

t. Were otherwise negligent in their design, manufacture, engineering, testing, assembly, distribution and sale of the 2008 BMW convertible vehicle.

**ANSWER:** BMW AG denies each and every allegation of paragraph 14, including subparagraphs (a) through (t).

15. As a proximate result of one or more of the aforesaid negligent acts and/or omissions of Defendants BMW, BMW AG, BMW NA and KNAUZ, and each of them, JEFFREY J. SCHEINMAN sustained severe injuries of a personal and pecuniary nature, causing him to be a disabled adult, and this cause of action is brought by Plaintiff, MURRAY SCHEINMAN, the duly appointed Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person.

**ANSWER:** BMW AG denies each and every allegation of paragraph 15.

WHEREFORE, Defendant BAYERISCHE MOTOREN WERKE AG prays that Count VI of Plaintiff's Fifth Amended Complaint be dismissed in its entirety, with prejudice, and that costs be awarded to Defendant.

## **AFFIRMATIVE DEFENSES**

NOW COMES the Defendant BAYERISCHE MOTOREN WERKE AG, pleading in the alternative and without prejudice to the denials set forth in its Answer to Plaintiff's Complaint at Law, states the following Affirmative Defenses:

### **First Affirmative Defense**

1.    On information and belief, on July 3, 2008, JEFFREY J. SCHEINMAN was operating his BMW automobile in a northbound direction on Skokie Valley Road at or near the intersection with Half Day Road in Highland Park, Illinois.

2.    On information and belief, on July 3, 2008, SAMUEL FRANKE operated and controlled a fully loaded semi tractor-trailer truck in a northbound direction on U.S. Route 41, also known as Skokie Valley Road, at or near its intersection with U.S. Route 22, also known as Half Day Road, in Highland Park, Illinois.

3.    On information and belief, at said time and place, SAMUEL FRANKE operated his motor vehicle in such a reckless manner in utter disregard for the red light signal to stop, in utter disregard for vehicles stopped facing northbound on Route 41 and traffic crossing with a green light in easterly and westerly directions on Route 22, in criminal disregard for the laws and regulations dictating conduct in the operation of motor vehicles on Illinois roads, including  625 ILCS § 5/11-202 and 625 ILCS § 5/11-601(a) and (b), and in utter and reckless disregard for the safety of such persons properly using said roadways, so as to cause the loaded semi-tractor trailer he was operating at highway speed to collide the rear end of the stopped BMW vehicle occupied by JEFFREY J. SCHEINMAN causing injuries and damages to JEFFREY J. SCHEINMAN.

4.      The aforesaid reckless acts/omissions of SAMUEL FRANKE, and/or those owners and lessors of the truck driven by SAMUEL FRANKE, were the sole proximate cause of the injuries alleged in Plaintiff's Complaint at Law.

WHEREFORE, Defendant BAYERISCHE MOTOREN WERKE AG prays that Count VI of Plaintiff's Fifth Amended Complaint be dismissed in its entirety, with prejudice, and that costs be awarded to Defendant.

### Second Affirmative Defense

1-3.    Defendant BMW AG reasserts and re-alleges paragraphs 1-3 of its First Affirmative Defense as Paragraphs 1-3 of this Second Affirmative Defense.

4.      BMW AG is a manufacturer of motor vehicles.

5.      BMW AG does not owe a legal duty to protect all occupants from all injuries regardless of the type or severity of the collision, but instead, owes a duty of due care for the safety of Plaintiff by designing and manufacturing a motor vehicle that will provide a reasonable level of protection of occupants in reasonably foreseeable vehicular collisions.

6.      The U.S. Department of Transportation's National Highway Traffic Safety Administration has designed, developed and promulgated specific Federal Motor Vehicle Safety Standards ("FMVSS"). 49 C.F.R. 471.201, *et seq.* The FMVSS impose on the manufacturer the legal obligation to design, test and certify any vehicle intended for sale in the United States meets such standards. Included in the FMVSS are standards directed to the vehicle systems and parts that Plaintiff alleges were not reasonably safe in the crash in which plaintiff and the subject vehicle were involved,

including but not limited to, Standard Nos. 201, 207, 208, and 301. These standards establish the legal purpose of such standards in pertinent part, stating:

    a.    "**Standard No. 201; Occupant protection in interior impact.** *S1. Purpose and scope.* This standard specifies requirements to afford impact protection for occupants."

    b.    "**Standard No. 207; Seating systems.** *S1. Purpose and scope.* This standard establishes requirements for seats, their attachment assemblies, and their installation to minimize the possibility of their failure by forces acting on them as a result of vehicle impact."

    c.    "**Standard No. 208; Occupant crash protection.** *S1. Scope.* This standard specifies performance requirements for the protection of vehicle occupants in crashes."

        *S2. Purpose.* The purpose of this standard is to reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crashworthiness requirements in terms of forces and accelerations measured on anthropomorphic dummies in test crashes, and by specifying equipment requirements for active and passive restraint systems.

    d.    "**Standard No. 301; Fuel system integrity.** *S1. Scope.* This standard specifies requirements for the integrity of motor vehicle fuel systems.

        *S2. Purpose.* The purpose of this standard is to reduce deaths and injuries occurring from fires that result from fuel spillage during and after motor vehicle crashes…."

7.    In order to meet its obligation under Rule 301, this Defendant is required to test the design of the vehicle fuel system by crashing a 4,000 lb. barrier moving at 30 mph into the rear of the test model without leakage of fuel greater than allowed by the test standard.

8.    The 2008 BMW Model 335i convertible passed all required certification testing prior to the date Defendant BMW AG released it for sale in the United States, including, specifically, FMVSS Standards 201, 207, 208 and 301.

9.      On information and belief, at the time and place alleged in Plaintiff's complaint, the subject vehicle was impacted by a tractor semi-trailer weighing at or near 50,000 lbs. at or near a speed of 50 mph.  Based on those numbers, the tractor semi-trailer impacted the subject vehicle with approximately 35 times more kinetic energy than the fuel system must withstand under FMVSS Standard 301.  The accident forces transferred approximately 93% of the accident forces to the subject vehicle, causing it to change velocity at the moment of impact from 0 miles per hour to more than 45 mph, and reducing the impact speed of the tractor-trailer less than 5 mph.

10.     Compliance with federal safety standards is relevant to the determination of whether the product was reasonably designed and manufactured.

11.     The vehicular crash described in Plaintiff's complaint was of such enormity that it was legally unforeseeable as a matter of Illinois law, and, as such, any alleged disruption of the integrity of the fuel system, or seats or occupant protection systems, as alleged, provides no evidence at all that Bayerische Motoren Werke was negligent.

WHEREFORE, Defendant, BAYERISCHE MOTOREN WERKE AG prays this Honorable Court that Count VI of Plaintiff's Fifth Amended Complaint, so wrongfully brought, be dismissed in its entirety with prejudice and award costs to Defendant.

### Third Affirmative Defense

1-10.   Defendant BMW AG repeats and re-alleges the allegations of Paragraphs 1 through 10 of its Second Affirmative Defense as paragraphs 1 through 10 of this affirmative defense.

11.     The striking vehicle impacted the subject BMW vehicle at such speed and with such enormous weight that the energy transferred to the BMW and the acceleration

forces applied at the instant of impact were many times higher than the energy exchange and acceleration forces that a reasonably safe vehicle must withstand to meet the Federal Motor Vehicle Safety Standards and against which a reasonably safe design can be judged under the law.

12.　　Accordingly, the collision complained of was legally unforeseeable as a matter of law.

WHEREFORE, Defendant BAYERISCHE MOTOREN WERKE AG prays that Count VI of Plaintiff's Fifth Amended Complaint be dismissed in its entirety, with prejudice, and that costs be awarded to Defendant.


Respectfully submitted,

JOHNSON & BELL, LTD.,


By: ___/s/ Timothy R. Couture_____
　　　One of the Attorneys for Defendant
　　　BAYERISCHE MOTOREN WERKE AG


James K. Toohey
Timothy R. Couture
JOHNSON & BELL, LTD.,
33 West Monroe Street, Suite 2700
Chicago, IL  60603
(312) 372-0770


_____/s/ Timothy R. Couture_____
I certify that the statements set forth herein are true and correct


Doc 2788710

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Richard F. Burke, Jr.
Courtney A. Marincsin
Shannon Marie McNulty
Clifford Law Offices
120 North LaSalle Street - Suite 3100
Chicago, Illinois 60602
312-899-9090
rfb@cliffordlaw.com
cbm@cliffordlaw.com
smm@cliffordlaw.com

William Yu
Carlton Fisher
Hinshaw & Culbertson
222 North LaSalle Street - Suite 300
Chicago, Illinois 60601
312-704-3000
cfisher@hinshawlaw.com
wuy@hinshawlaw.com

**Attorneys for CSX Intermodal, Inc.**
Scott C. Bentivenga
Michael S. Haggerty
Lewis Brisbois Bisgaard & Smith LLP
550 West Adams Street – Suite 300
Chicago, IL 60661
312/463-3353
sbentivanga@lbbslaw.com
jnelson@lbbslaw.com

**Attorney for Franke and Martins**
Joseph Gerard Skryd
Matthew Richard Schreck
Mulherin Rehfeldt & Varchetto PC
211 South Wheaton Avenue – Suite 200
Wheaton, IL 60187
630/653-9300 **Fax: 630/653-9316**
jskryd@mrvlaw.com
mschreck@mrvlaw.com

Daniel Laurence Polsby
Robert James Golden
Dowd & Dowd
617 West Fulton Street
Chicago, IL 60661
800/451-5238 **Fax: 312/704-4500**
dpolsby@dowdandodwd.com
rgolden@dowdanddowd.com

_____/s/ Timothy R. Couture_____