IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person, | ) ) ) ) ) | |
| Plaintiff, | ) | |
| vs. | ) ) | No. 09 cv 5340 |
| MARTIN'S BULK MILK SERVICE, INC., SAMUEL G. FRANKE, CSX INTERMODAL, INC., et al., | ) ) ) ) | The Honorable James F. Holderman Magistrate Susan E. Cox |
| Defendants. | ) ) | |

**BAYERISCHE MOTOREN WERKE AG'S RENEWED MOTION FOR
ENTRY OF PROTECTIVE ORDER REGARDING CONFIDENTIAL DOCUMENTS**

NOW COMES Defendant BAYERISCHE MOTOREN WERKE AG ("BMW AG" or "BMW"), by its attorneys, James K. Toohey and Timothy R. Couture of JOHNSON & BELL, LTD., and hereby renews its request for the entry of a protective order with respect to documents that it proposes to produce to all parties specifically for and expressly limited to use in this case.

At a March 8, 2012 hearing on BMW AG's Motion for Entry of Protective Order, the Court reviewed the amendments and granted the motion with respect to Paragraph 2(c), but denied the motion with respect to Paragraph 5(c). The Court found the language proposed for Paragraph 5(c) to be over-reaching as an invasion of the attorney work product privilege in proposing that, on BMW AG's request, any party would be required to furnish a list of everyone to whom they gave confidential documents. The Court further stated that BMW AG could prepare a new draft of Paragraph 5(c), without that requirement, circulate that draft for party review and present it to the Court if no agreement was reached. The Court cautioned that

BMW AG should support any request for further protection beyond that in the Model Order with citations to cases approving additional protection.

BMW AG has drafted new language for Paragraph 5(c) and removed any reference to a requirement that any Receiving Party supply, at BMW AG's request, a list of persons reviewing documents. In compliance with the Court's directive and Local Rule 37.2, BMW AG submitted the new language to other counsel for review and approval, referencing case law that supported a request for protection broader than found in the Model Order. As they had done on each prior effort by BMW AG, Plaintiff's counsel refused to agree to any language except that in the Model Order. Thus, BMW AG submits its new draft Paragraph 5(c) for the Court's review.

**NEED FOR CHANGES TO MODEL PARAGRAPH 5(C)**

As extensively discussed in BMW AG's original Motion for Entry of Protective Order, Plaintiff seeks extensive confidential, proprietary information from BMW AG concerning the design, development, testing, and certification of an entire series, the E93 series, of BMW vehicles. That series is not an historical system, but one still used for serial production of vehicles at this time. Plaintiff wants information regarding the rear structures, roof structure and roof storage, fuel retention system, and seat structures and anchorage. The documents consist of design drawings, quality control manuals, videotaped and filmed tests by BMW AG and/or system suppliers for the E93 Platform BMW vehicles and, to the extent applicable, to other platforms for vehicles either within contemporarily sold lines such as the E90 platform or prior lines such as the E46. These are all materials constituting proprietary and intellectual property rights of BMW AG and, in some instances, proprietary and intellectual property of BMW suppliers. BMW AG will produce information sought that is reasonably related to the

claims, but BMW AG needs the protection of this Court against use of this information for any other reason.

BMW AG sells high performance passenger cars around the world. Its principal competitive edge is in the quality of its designs and consistent application of sound manufacturing controls. BMW AG has invested many years and hundreds of millions of capital in the research and development of these vehicles, vehicle systems, component development, quality control, and testing necessary to gain its standing among the world's premier vehicle manufacturing and marketing companies. BMW AG can maintain this standing and competitive advantage only through continual development. The materials Plaintiff seeks are exactly those that would allow another entity insight into BMW AG's development process and, thus, would allow another entity to profit from and erode BMW's competitive advantage. Were the documents to fall into the hands of someone with great economic interest in acquiring them, the edge in quality standards and controls would be lost forever. As such, BMW AG has a compelling interest in securing such information and limiting its use and distribution to the maximum extent possible consistent with the legal right of other parties.

While the standard language is appropriate in many cases, these documents are not ordinary documents. They are the lifeblood of the BMW companies. BMW AG seeks only to make sure that the parties maintain tight identification and control over all persons with access to its confidential documents, and that such persons will protect BMW AG's interests.

**CHANGES TO MODEL PARAGRAPH 5(C)**

BMW AG proposes to following addition to Paragraph 5(c):

**(c) Control of Documents.** Counsel for the parties shall make *every effort* reasonabl*y* [delete "e efforts"] *necessary* to prevent unauthorized or inadvertent

3

disclosure of Confidential Information. *The most effective means of doing so is to control the number of copies made and the number of persons receiving those copies. Toward that end, Counsel for any Party receiving Confidential Information ("Receiving Counsel") shall maintain an inventory ("Inventory") of all confidential Documents or Things, listing the originals received from the producing party and the person in possession of those, and the name of each person to whom a physical or electronic copy of all or any part of the Confidential Documents or Things was given. Receiving Counsel shall instruct the firm's employees or agents not to make additional copies of any Confidential Documents or Things unless directed to do so by Receiving Counsel.*

*Each person who receives a set or any part of the Confidential Documents or Things as a person defined under ¶5(b)(6) above shall sign Attachment A (hereinafter "Recipient"). Receiving Counsel shall instruct each Recipient not to re-copy or further distribute any confidential documents without first informing Receiving Counsel a) that another copy has been made, b) the name of the person to whom the copy was distributed. That new Recipient shall sign Attachment A and the ¶5(b)(6) expert or consultant shall furnish the Form to Receiving Counsel, who should add the information to the Inventory.*

*Receiving Counsel shall maintain the up-to-date Inventory and the originals of all Recipient Forms. At the conclusion of the case and in connection with the return or destruction of Confidential Documents or Things, as provided in paragraph 14 below, the Producing Party may request that Receiving Counsel furnish the Inventory listing the Recipients, the Confidential Documents or Things provided to each of them, and verification by each of compliance with the provisions of paragraph 14. However, Receiving Counsel may redact the names of all Affiants whose identities were not disclosed in the litigation unless Producing Party shows cause why the names should be disclosed. Receiving Counsel shall maintain both the inventory of Recipients and Confidential Documents or Things received by each and the originals of the Recipient Forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.*

The proposed additions eliminate the requirement for the on-demand list that the Court ruled violated the attorney work product privilege. The language of Paragraph 5(c) is carefully drafted to suit the needs of this case for limiting the number of copies made and tracking each set. It fits easily within case law in Illinois and other jurisdictions. Illinois courts have allowed parties a fair amount of freedom in fashioning protective orders and procedures. Approved protective orders in a variety of cases have used elaborate, complex language to regulate access

to confidential documents. *Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Group, Inc.*, 2007 U.S. Dist. LEXIS 91517, at *22-23 (N.D. Ill. Dec. 11, 2007)(individuals allowed access to the confidential material must be advised of the protective order and sign an undertaking acknowledging they will protect confidentiality), *subsequently dismissed on other grounds*; *Jet, Inc. v. Shell Oil Co.*, 2003 U.S. Dist. LEXIS 10537, at *5-8 (N.D. Ill. June 12, 2003)(order required all individuals, other than counsel of record, to read the protective order and sign a sworn statement that they would abide by its terms and allowed all parties access to those forms upon a showing that access was necessary to ensure compliance with the order); *Davis v. Transamerica Commercial Fin. Corp.*, 1995 U.S. Dist. LEXIS 12915, at *3-4 (N.D. Ill. Aug. 29, 1995)(order limited document access to "Attorney's Eyes Only," defined individuals allowed access to the documents, and required individuals accessing the documents to sign a "Confidentiality Agreement").

Courts in other jurisdictions have also entered similarly complex and stringent orders in a variety of cases. *United States v. Exxon Corp.*, 628 F.2d 70 (D.C. Cir. 1980); *Caputo v. BP W. Coast Products, LLC*, 2011 U.S. Dist. LEXIS 98295 (E.D. Cal. Aug. 24, 2011); *Teva Pharms. USA, Inc. v. Sandoz, Inc*., 2009 U.S. Dist. LEXIS 30721 (S.D.N.Y. Apr. 10, 2009); *Bradley v. Cooper Tire & Rubber Co*., 2008 U.S. Dist. LEXIS 102140, at *5 (S.D. Miss. Dec. 5, 2008)(in a motor vehicle accident case substantially factually similar to the current suit, the Order required each individual gaining access to sign a "Promise of Confidentiality").

In *Exxon Corp.*, a case involving three competing oil companies disclosing highly confidential documents, the protective order provided that "confidential" documents would remain in special locked files, while "extremely confidential" documents would generally remain in the producing party's possession. 628 F.2d at 77. The Order then provided for the

5

following additional precautions relating to confidential documents:

> (1) All such documents and notes, as well as drafts and manuscripts of the Title III study, shall be secured in a locked file cabinet when not in use and in a room which is locked when not in use or such other facilities as will provide comparable security.
>
> (2) A log, available to the company upon request, shall be maintained by all individuals that have access to "Confidential" documents of that company.
>
> (3) A separate log, available to the company upon request, shall be maintained for "Extremely Confidential" documents which shall show on a document-by-document basis who has possession of such document.
>
> (4) Individuals granted access to "Confidential" or "Extremely Confidential" documents of a company shall be informed of the status of these documents and the limitations on their use and such individuals, other than attorneys employed by O/C, DOJ, FTC, and other agencies designated by the Secretary for participation in the Title III study, shall sign an acknowledgment of their understanding of these limitations in the form attached as Exhibit A. A copy of the executed undertaking shall be made available to the company.
>
> (5) All "Confidential" and "Extremely Confidential" material shall be returned to said locked file cabinets at the end of each working day.

*Id*. at 78-79. Further in *Caputo*, the protective order included, at Paragraphs 3 and 4, a breakdown of different categories of confidential documents and an extensive list of persons allowed to view the documents. 2011 U.S. Dist. LEXIS 98295, at *7-9. It then provided:

> Confidential Information held by a party may be disclosed to persons as provided in Paragraphs 3 and 4, provided that prior to such disclosure such person to whom disclosure of Confidential Information is to be made shall acknowledge and confirm in the form of a Declaration, in the form of Exhibit A hereto, that he or she has read this Stipulated Protective Order and agrees to comply with its terms. . . . The attorneys for the respective parties shall maintain a file of such Declarations, and shall furnish to the requesting attorney a list of the executing individuals (excluding the names of experts and consultants whose names have not been disclosed in the litigation to date and their employees) within twenty (20) days of receipt of a written request.

*Id*. at *10-11. In *Teva Pharms.*, a patent case involving trade secrets, the Order entered was extremely detailed and stringent:

6

7. Access to Confidential Information

Unless otherwise ordered by the Court or permitted in writing by a Source, Confidential Information may be disclosed only as follows:

(a) Materials designated as "EXTERNAL COUNSEL ONLY" pursuant to this Protective Order, including copies thereof, extracts there from, compilations and/or summaries thereof and information therein, may be disclosed only to the following persons:

(i) Any attorney who serves as outside counsel of record to any party to this Litigation and all attorneys, legal assistants, stenographic and clerical employees working under the supervision of such attorney in this Litigation;

(ii) For each party to this Litigation, the attorneys at one additional law firm that is not of record in this Litigation but serves as outside counsel to such party and all attorneys, legal assistants, stenographic and clerical employees working under the supervision of such attorneys. If any party desires to disclose materials designated as "EXTERNAL COUNSEL ONLY" to such additional law firm, the additional law firm must first be identified to the producing party's attorneys in writing, and must agree to be bound by this Protective Order by signing a copy of the Acknowledgement and Agreement to be Bound attached as Exhibit A;

(iii) The Parties' independent expert(s) or consultant(s) in accordance with Paragraphs 10 and 13 herein;

(iv) Any person from whom testimony is taken, where such person was the author or specified recipient of the Confidential Material or is the present employee or expert witness for the Source, or where counsel for the Source has, either before or during the deposition, approved the disclosure of such materials to that person, except that such person may not retain any such Confidential Material;

(v) The Court and court personnel in this Proceeding, including Court reporters in accordance with Paragraph 18 herein;

(vi) Any interpreters, or court or other shorthand reporters or typists translating, recording or transcribing testimony;

(vii) Any service contractors (such as document copy services); and

(viii) Any translators, persons providing graphics or design or document cervices for purposes of preparing demonstrative or other exhibits in this Litigation and non-technical jury or trial consulting services, provided that any such person(s) agrees to be bound by this Protective Order by signing a copy of

7

the Acknowledgement and Agreement to be Bound attached as Exhibit A.

(b) Materials designated as "HIGHLY CONFIDENTIAL" pursuant to this Protective Order, including copies thereof, extracts there from, compilations and/or summaries thereof and information therein, may be disclosed to the persons designated in subparagraph 7(a), above, as well as to the following persons:

(i) Two designated In-House Counsel from each party, in accordance with Paragraphs 11 and 12 herein. . . .

10. Disclosure To And Identification Of Experts and Consultants. If any party desires to disclose "HIGHLY CONFIDENTIAL" or "EXTERNAL COUNSEL ONLY" information of another party to any Expert or Consultant, it must first identify each Expert or Consultant to the producing party's attorneys in writing. . . .

The attorney for the producing patty shall have seven (7) calendar days from receipt of such notice to object to such disclosure, during which time no such disclosure shall be made.

If the producing party does object to the proposed disclosure, the parties shall meet and confer within seven (7) calendar days of receipt of such objection to resolve the disagreement.

If the parties are not able to come to an agreement, the receiving party shall have the burden of moving the Court for an order allowing the disclosure. The producing party shall have ten (10) business days after the receiving party has filed a motion to respond. If such a motion is filed, disclosure shall not be made until the Court has ruled on the motion and response. If the Court orders disclosure, such disclosure shall not in any way affect the designation of the material or information disclosed, nor shall it allow any party to deviate from the requirements of this Protective-Order regarding disclosure to any other person.

11. Disclosure To And Identification Of In-House Counsel. If any party desires to disclose "HIGHLY CONFIDENTIAL" information of another party to an In House Counsel, it must first identify such in-house counsel to the producing party's attorneys in writing. The initial designations for Plaintiffs are as follows: . . .

2009 U.S. Dist. LEXIS 30721, at *9-15.

As the above cases demonstrate, courts in many jurisdictions, including this one, allow steps far beyond what is proposed in the model order in cases where confidentiality and

security are critical. In this case, the requested documents are the lifeblood of BMW's business, and their revelation outside the limitations of this suit would destroy BMW's commercial standing. Thus, this case easily fits into that special category of cases requiring extra protection. The proposed Paragraph 5(c) is fashioned and limited to fit the needs of the Defendant for protection: careful limitation of the number of sets of copies made and inventory control over those sets.

WHEREFORE, Defendant BAYERISCHE MOTOREN WERKE AG prays that this Court enter the protective order it proposes, which is attached hereto as Exhibit 1.

Respectfully submitted,

BAYERISCHE MOTOREN WERKE AG


By     /s/ *James K. Toohey*
         One of its Attorneys


James K. Toohey
Timothy R. Couture
JOHNSON & BELL, LTD.
33 West Monroe, Suite 2700
Chicago, Illinois 60603
Telephone: 312.372.0770


Doc 2982009

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, states that he filed and served the foregoing **Renewed Motion for Entry of Protective Order Regarding Confidential Documents** with the Court's electronic filing system and on all Counsel of Record, this **2nd day of April, 2012.**

**SEE ATTACHED SERVICE LIST**

_____
[X] Under penalties as provided by law, I certify that the statements set forth herein are true and correct.

*SCHEINMAN v. BMW, et al*
**Case No. 09 cv 05340**
**File No. 7873-10001**

Richard F. Burke, Jr.
Courtney B. Marincsin
Clifford Law Offices, PC
120 North LaSalle Street – Suite 3100
Chicago, IL 60602
rfb@cliffordlaw.com
cbm@cliffordlaw.com

Joseph Gerard Skryd
Matthew Richard Schreck
Mulherin Rehfeldt & Varchetto PC
211 South Wheaton Avenue – Suite 200
Wheaton, IL 60187
jskryd@mrvlaw.com
mschreck@mrvlaw.com

Robert Golden
Dowd & Dowd
617 West Fulton Street
Chicago, IL 60661
rgolden@dowdanddowd.com

Carlton D. Fisher
Hinshaw & Culbertson, LLP
222 North LaSalle Street – Suite 300
Chicago, IL 60601-1081
cfisher@hinshawlaw.com
wyu@hinshawlaw.com

Evan Karnes
Karnes Law Chrtd.
177 North State Street – Floor 3
Chicago, IL 60601
evan@karnes-law.com