IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person,<br><br>  Plaintiffs,<br><br>vs.<br><br>MARTIN'S BULK MILK SERVICE, INC., SAMUEL G. FRANKE, INTERNATIONAL PAPER COMPANY, UNIVERSAL AM CAN LTD., Successor to OVERNITE EXPRESS, INC. and OX LLC, BMW of NORTH AMERICA, LLC, a corporation, BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, a corporation,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 09 cv 5340<br><br>Honorable James F. Holderman<br><br>Magistrate Susan E. Cox |

**MOTION TO COMPEL INSPECTION
AND REMOVAL OF FUEL SYSTEM COMPONENT PARTS,
AND FOR PAYMENT OF EXPENSES FROM TERMINATED INSPECTION**

  Plaintiff, MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person, by his attorneys, CLIFFORD LAW OFFICES, P.C., moves this court pursuant to Federal Rule of Civil Procedure 37 for an order compelling the inspection and removal of fuel system component parts, and for payment of expenses incurred by Plaintiff, as a result of BMW's termination of the agreed upon teardown inspection of said fuel system. In support thereof Plaintiff states as follows:

  1.  The instant case arises out of an incident in which Jeffrey Scheinman, now a disabled person, was struck by a truck while seated in his vehicle stopped at a red light on Route 41 in

Highland Park, Illinois. Immediately after impact Mr. Scheinman's BMW vehicle became engulfed in flames. Mr. Scheinman sustained extremely serious burn injuries and permanent cognitive and neurological injuries that require his confinement in a residential nursing home for the rest of his life.

2. The parties have engaged in very extensive discovery in this case involving both trucking issues, as well as product liability claims against BMW, the manufacturer of Mr. Scheinman's vehicle and its fuel system.

3. By agreement the parties conducted an initial inspection of the BMW on August 30, 2011 at which time BMW had multiple lawyers, retained experts, and BMW representatives present. By agreement of the parties, all BMW representatives were permitted to inspect, videotape, photograph, measure and otherwise investigate and examine Mr. Scheinman's vehicle and its fuel system to the fullest extent they chose to do so.

4. Thereafter, the parties agreed to conduct a second teardown inspection in order to further inspect and evaluate the component parts of the fuel system and the damage done to this system during the collision, as well as to determine the cause and origin of the fire. Plaintiff's retained fuel system expert, John Stilson, prepared a protocol and provided it to Attorney Jim Toohey at Johnson & Bell who represents BMW. Mr. Toohey said he would communicate that protocol to his expert. Thereafter, Mr. Toohey confirmed with Plaintiff's counsel, Richard F. Burke, Jr., that the protocol was acceptable. A copy of that email communication is attached hereto as Exhibit A, in which Mr. Toohey specifically stated: "We have no problem with the protocol for tank removal.". Thereafter, the inspection was set by agreement for October 31, 2012 at Dynamic Safety, which is the facility where the vehicle is stored by agreement of the parties.

5. On October 31, 2012 counsel for Plaintiff, BMW, and Defendant Martin's Bulk Milk

Service, along with multiple retained experts, appeared for the second inspection and teardown of the fuel system component parts. The very purpose of this inspection was described as, and agreed to, by BMW's counsel, to be a "teardown" of the fuel system in order to remove the various component parts for further inspection and analysis by experts for all parties. A copy of this original agreed protocol dated July 27, 2012 is attached hereto as Exhibit B.

6. Plaintiff's counsel, Richard F. Burke, Jr., was accompanied at the inspection by a fuel system expert, John Stilson, a mechanic, John Klchosky, an accident reconstructionest, John Goebelbecker, and Thomas Green, another accident reconstructionist, at whose facility, Dynamic Safety, the Scheinman BMW is stored and the inspection was conducted. BMW was represented by one of its attorneys, Tim Couture, and their fuel system expert, Mark Noble. Defendant Martin's Bulk Milk Service was present with their attorney, Jason Briesemeister, and their expert, Mike Sutton. The sign in sheet is attached as Exhibit C. Jeff Brandt of Dynamic Safety was also present to videotape the inspection and teardown process.

7. On October 31, 2012, after further visual inspection, photography and videotaping of the fuel system, John Stilson, Plaintiff's fuel system expert, and Mark Noble, BMW's fuel system expert, began proceeding through the steps of the protocol in order to remove the fuel tank and related component parts. A copy of the "Teardown Protocol 2008 BMW" is attached hereto as Exhibit B. The parties engaged in Step 1, which was to remove the two oblique metal bars from their anchorage locations. The parties began Step 2, which called for the parties to "Remove the duel exhaust pipes forward of the fuel tank area rearward". As the parties were in the process of removing portions of the exhaust pipes, with the presence, consent and participation of BMW's expert, Mark Noble, Defense counsel, Timothy Couture, left the inspection area on his telephone.

He returned to the inspection area and demanded that the inspection be terminated because it was altering the present condition of the vehicle. Plaintiff's counsel reminded Mr. Couture that the protocol specifically called for a teardown, and inherent in that protocol was alteration of various portions of the vehicle in order to gain access to, and remove the fuel tank, filler neck, and related fuel system component parts. Mr. Couture refused to permit the inspection work set forth in the agreed upon protocol to proceed, and the parties were forced to terminate the inspection.

8.      Defendant BMW's termination of the inspection has caused great prejudice to the Plaintiff, and Mr. Couture's instructions for such termination had no valid legal basis or reason. A copy of the layout of the fuel system is attached as Exhibit D. As is always the situation in this type of case, there is structural damage to portions of the vehicle that requires component parts to be altered in order to permit removal of the fuel system. This vehicle is not in its original condition because of the collision. As was explained to Mr. Couture, the only way to remove the fuel system component parts is to engage in some limited alteration and destruction of certain components. The protocol specifically called for doing so, and BMW's own expert and Plaintiff's expert were in agreement on the process that was proceeding at the time Mr. Couture terminated the inspection.

9.      The termination was completely inappropriate, has caused great prejudice to the Plaintiff, both from an expense standpoint and a time standpoint. It creates a delay in discovery for which there was no valid basis under the law. BMW's own expert, Mark Noble, is a very experienced fuel system expert who has participated in many teardowns of this nature, including such teardowns with Plaintiff's expert. The experts for Plaintiff and BMW know that there has to be certain alterations to the vehicle in order to remove the fuel system component parts which are the subject of specific product liability claims in this case. Defendant BMW's own expert, Mark

4

Noble, had not objected to any of the procedure at the time it was in progress. In fact, BMW's expert literally was standing under the fuel system videotaping the start of the removal process and conferring with Plaintiff's expert on the best spot to cut the tail pipes to permit access to, and removal of the fuel tank. It was Mr. Couture who objected and terminated the inspection.

      10.     Plaintiff has had his expert create a second revised teardown protocol, a copy of which is attached as Exhibit E. Because of the untimely objection of defense counsel Couture, this revised protocol adds even more detail about the necessary steps. This protocol has been sent to all defense counsel, including the attorneys for BMW, James Toohey and Timothy Couture. This protocol, as did the original one, sets forth the steps to conduct the investigation of the fuel system and removal of the component parts of the fuel system, including the fuel tank and filler neck, both of which have obvious damage to them, in the least intrusive manner. However, some alteration of the current condition of the vehicle is required. That is completely normal in this type of inspection. That is exactly the reason a protocol is followed. That is the reason this vehicle was exhaustively photographed, videotaped, measured, and visually inspected by a myriad of experts on behalf of the various parties, including BMW prior to any teardown starting, both on October 31, 2012 and at the original inspection on August 30, 2011.

      Destructive testing clearly falls within the scope of Federal Rule of Civil Procedure 34. *Spell v. Kendall-Futuroco,* 155 F.R.D. 587 USDC, E.D. Texas, Beaumont Division. It is an elementary part of discovery. The Supreme Court of Illinois long ago clearly upheld testing that involved some destruction and alteration of evidence. *Sarver v. Barrett Ace Hardware*, 63 Ill.2d 454, 349 N.E.2d 28 (1976). In that case, a Plaintiff had sustained an eye injury when a piece of metal chipped off of a hammer. There, it was the defendant manufacturer and retailer of the hammer that requested to

5

drill holes in the hammer for chemical analysis to determine steel composition and to cut out a section of the striking face of the hammer for microscopic examination. The Supreme Court of Illinois ruled that such destructive testing fell within the purview of inspection permitted under Supreme Court Rule 214 and the disclosure of the nature and condition of tangible objects under Supreme Court Rule 201. The Court recognized that Supreme Court Rule 201 provided that a party may obtain by discovery full disclosure of any matter relevant to the issues involved in the pending action, and that both the bench and bar were to wisely use the tools of discovery to illuminate the actual issues in the case. The Court further concluded that the testing procedures contemplated "will clearly promote the 'expeditious and final determination of controversies' and 'illuminate the actual issues in the case'". 63 Ill.2d 454 at 460-61. The Court further explained that "the cause must stand or fall on expert testimony, along with factual testimony, and such expert testimony can only come about if both sides have adequate opportunity to make such tests, even if destructive". 63 Ill.2d at 460. The Supreme Court ruled that "this type of testing is permissible as long as the rights of the opposing litigant are not unduly prejudiced". 63 Ill.2d at 459. (Opinion attached as Exhibit F)

The rationale of the Supreme Court of Illinois in the *Sarver* case is very applicable to the case at hand. Notably, in *Sarver*, it actually was the defendants who were permitted to engage in destructive testing of the plaintiff's hammer that was the subject of the case. Here, the Plaintiff wants to engage in further analysis of his BMW vehicle that he was driving at the time of the occurrence. The Plaintiff has the burden of proof in these product liability cases and Plaintiff's experts need to engage in proper inspection and analysis of the fuel system to prepare their expert reports in accord with Rule 26(a). The Plaintiff has taken all reasonable steps necessary to protect the interest of all Defendants, including Defendant BMW. As noted, the parties previously engaged

6

in an original inspection that permitted exhaustive photography, videotaping, measurements, and inspection of the BMW vehicle by anybody BMW wanted to have present, and for as long as BMW wanted to spend at that inspection. Therefore, the post-accident, and current condition of the BMW vehicle and its fuel system has been permanently documented for a jury to see through photographs, videotapes, and testimony of BMW experts who have visualized the vehicle.

Furthermore, the teardown procedure that was aborted by defense counsel Couture on October 31, 2012 was being videotaped. The precise procedure engaged in to permit removal of the saddle-type fuel tank can also be shown to a jury. The fuel tank, its filler neck, and related component parts need to be further inspected in order for Plaintiff's experts, as well as BMW and other Defendant's experts, to determine the origin and cause of the fire, and to identify all design or manufacturing defects that may have been contributing causes of this fire and the injuries sustained by Mr. Scheinman. As noted in both the original and revised protocol, all component parts will be preserved for further inspection and for use as evidence at the trial of this case. The entire vehicle, including all component parts of the fuel system are subject to a protective order. (Exhibit G)

Additionally, at the first inspection of the fuel system, on August 30, 2011, BMW even brought an exemplar vehicle to the site of the inspection in order to compare it to Mr. Scheinman's vehicle. The current condition of the undercarriage of the BMW vehicle has been permanently documented and preserved by multiple experts and attorneys in photographs, videotapes, drawings, sketches and notes. Simply put, there is no valid basis for BMW's attorneys to have terminated the agreed upon teardown inspection on October 31, 2012. This type of inspection is essential in order for Plaintiff's experts to determine the cause of the fire, to determine what portions of the fuel system failed, and to determine the location and extent of damage to portions of the fuel system, as well as

to inspect the area surrounding the fuel tank and filler neck after those items have been removed. The proposed inspection, which was specifically agreed to by BMW, is a very common procedure in fuel system fire cases. There is nothing unusual at all about this process and the experts retained by both Plaintiff and Defendant BMW are very experienced and have done these teardowns of vehicle fuel systems on many occasions in other cases.

11. Plaintiff asks this court to order that Plaintiff's experts be permitted to proceed with the teardown of the fuel system and all aspects of the protocol as set forth in Exhibit E, without interference, interruption, or termination by Defendant, BMW, or their attorneys. This procedure is essential to permit Plaintiff to proceed with his claims, for which Plaintiff has the burden of proof. This inspection, and the analysis and evaluation of the fuel system component parts after their removal, is essential to permit Plaintiff's experts to prepare proper Rule 26 reports.

12. Plaintiff also asks that Defendant BMW, and their attorneys, Johnson & Bell, be ordered to reimburse Plaintiff for the substantial expenses incurred on October 31, 2012 as a result of the improper termination of the inspection. Defendant BMW has refused to cooperate in discovery to which it had agreed, and payment of the expenses for the inspection terminated by attorney Couture is authorized under FRCP 37. Plaintiff has incurred expenses from Dynamic Safety for setting up the inspection, positioning the vehicle for inspection, and videotaping the inspection. Plaintiff has also incurred expenses from retained fuel system expert, John Stilson, mechanic John Klchosky, and accident reconstructionist, John Goebelbecker, who prepared for, and were present at the inspection up until its improper termination by defense attorney, Timothy Couture. Accordingly, Plaintiff asks that Defendant BMW and their attorneys, Johnson & Bell, be ordered to fully reimburse Plaintiff Scheinman for all such expenses incurred at the October 31, 2012 aborted

inspection.

13. Defendant's untimely and inappropriate termination of the fuel system has also resulted in a delay in the discovery process, which negatively affects, and prejudices Plaintiff by reducing the time available for Plaintiff's experts to evaluate the fuel system and prepare expert reports.

WHEREFORE, Plaintiff asks that this court order that Plaintiff and his experts may proceed with all steps of the teardown protocol attached hereto as Exhibit E, without interference, interruption, or termination by BMW or their attorneys.

Plaintiff also asks this court to order that Defendant BMW and their attorneys, Johnson & Bell, reimburse Plaintiff, Murray Scheinman, for all expenses incurred from his retained experts and Dynamic Safety personnel that are related to the inspection of October 31, 2012 that was needlessly and improperly terminated by BMW's attorneys.

s// Richard F. Burke, Jr.
Richard F. Burke, Jr. Bar Number 03121588
Attorney for Plaintiff MURRAY SCHEINMAN,
Plenary Guardian of the Estate and Person of
JEFFREY J. SCHEINMAN, a Disabled
Person,

Richard F. Burke, Jr.
Shannon M. McNulty
Attorneys for Plaintiff
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle Street, Suite 3100
Chicago, Illinois 60602
(312) 899-9090
(312) 251-1160