## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person,<br><br>      Plaintiffs,<br><br>vs.<br><br>MARTIN'S BULK MILK SERVICE, INC., SAMUEL G. FRANKE, INTERNATIONAL PAPER COMPANY, UNIVERSAL AM CAN LTD., Successor to OVERNITE EXPRESS, INC. and OX LLC, BMW of NORTH AMERICA, LLC, a corporation, BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, a corporation,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 09 cv 5340<br>)<br>)  Honorable James F. Holderman<br>)<br>)  Magistrate Susan E. Cox<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S REPLY TO DEFENDANT BMW'S RESPONSE
## TO PLAINTIFF'S MOTION TO COMPEL

MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person, replies to the response filed by Defendants BMW NA and BMW AG (hereinafter BMW) to Plaintiff's Motion to Compel, as follows:

1.    With respect to scheduling of Plaintiff's Motion to Compel for November 15th, Plaintiff did so because of the immediacy of the issue, yet with full willingness for defense counsel Jim Toohey and/or Tim Couture to respond. Although defense counsel attached a copy of Mr. Toohey's email of Friday, November 9th concerning scheduling, they have failed to attach to their response a copy of the reply sent to them by Plaintiff's counsel, Richard Burke. I have attached hereto my response which was sent in two parts on Saturday, November 10th. As specifically stated

therein, Plaintiff's counsel explained that "Jim, I always try to accommodate lawyers schedules, but time is of the essence and this motion needs to remain on the call for November 15th. You caused the need for this motion. I won't object to you or Tim having the opportunity to respond, but I cannot withdraw this motion" ... "when the next available date is two weeks from now". Mr. Burke further explained that I will tell the court that this issue needs to be dealt with promptly, "but that I understand your desire to be present". Plaintiff's counsel clearly has no objection to Mr. Toohey and/or Mr. Couture having an opportunity to respond, but this issue needs to be brought before the court so that a timely resolution can be accomplished since expert reports are due on February 1, 2013.

2.      Unfortunately, as was explained to defense counsel, November 15th was the only possible date that the motion could be scheduled for without delaying the motion until November 27th. Plaintiff's counsel actually tried to notice the motion for November 13th, prior to our status conference on November 14th, but was told that no motions would be heard that day. Neither Mr. Toohey nor Mr. Couture were available Tuesday, November 20th, and November 22nd is Thanksgiving. Accordingly, as I specifically told defense counsel, I do everything I can to accommodate opposing counsel's schedules, but in light of the importance of this issue, the expert disclosure schedule that is currently in place, and defense counsel's unavailability on November 15th and 20th, Plaintiff had to notice the motion, but, as defense counsel were told, we have no objection to them requesting an opportunity to personally respond if they so desire.

3.      Contrary to the contention of defense counsel, Plaintiff has not failed to engage in any meet and confer requirements of Rule 37.2. Defense counsel misperceives the nature of Plaintiff's motion. Plaintiff is requesting this court to order that the inspection proceed as previously agreed

to by defense counsel. The court can order such inspection to proceed regardless of any objection by defense counsel. However, in this instance, as articulated in Plaintiff's Motion to Compel, defense counsel and their retained expert previously agreed to the protocol which was in the process of being executed on October 31, 2012 when defense counsel, Couture, suddenly terminated the procedure. The inspection was terminated despite the fact that Mr. Couture had no valid basis for doing so. Defendant BMW has necessitated the need for Plaintiff to seek a court order compelling the inspection to proceed.

4.     This is not your typical discovery dispute. Rather, Defendants have breached an agreed upon procedure for inspection and removal of the fuel tank in this case. Plaintiff is now asking this court to enforce that prior agreement and to permit the inspection to proceed unimpeded by Defendant's objection and/or despite their objection. Plaintiff has provided Defendants with a supplemental protocol, not because it was necessary, but simply in an effort to ensure that Defendant BMW does not impede completion of this teardown procedure when it is rescheduled.

5.     Notably, the steps which Defendants cite in Paragraph 7 of their response as issues that need to be discussed, do not form any valid basis for denial of Plaintiff's motion. Those steps were previously taken. That is exactly why the parties already entered into a protocol agreed upon by defense counsel and specifically agreed upon by their retained expert, Mark Noble. It is disingenuous for BMW's counsel to suggest that there is now another need to engage in conversation simply to justify their improper termination of the inspection that was in progress.

6.     With respect to Paragraph 8 of BMW's response, it is incorrect for defense counsel to suggest that there was any unwillingness by Plaintiff's expert to discuss the process for removing the fuel tank. In fact, Plaintiff's expert and defense expert were jointly inspecting and removing the

3

component parts necessary to remove the fuel tank. The fact that a power saw was to be used to assist in the removal was neither unusual nor surprising to Defendant BMW's own expert. Tools need to be used to remove the fuel system and there has to be some alteration of the current condition of the vehicle to do so. That, too is both expected and common for this type of inspection.

7.     Immediately before Mr. Couture returned to the inspection garage and suddenly terminated the inspection, his own expert, Mark Noble, and Plaintiff's expert literally were picking out the precise spot that a pipe should be cut in order to best facilitate removal of the fuel tank. In fact, Defendant's expert and Plaintiff's expert were working very cooperatively to accomplish removal of this tank since they are both experienced professionals and have engaged in this procedure many times. At no time did defendants' expert ever claim that the protocol was not proper or that the procedure the respective experts were using on October 31, 2012 was inappropriate. When Mr. Couture re-entered the inspection garage and announced he was terminating the inspection, Plaintiff's counsel specifically told Mr. Couture that the protocol had been agreed upon by him and their expert, and pointed out that his expert had not objected to either the protocol or anything that was taking place during the inspection. Accordingly, Plaintiff literally engaged in efforts to resolve this issue at the scene of the inspection, but those efforts were rejected by Mr. Couture. Defense counsel terminated the second-stage inspection and disassembly of the fuel system without any valid basis. Mr. Couture as much as acknowledged that when, upon departure, came over to shake my hand and said "I will look for your motion". Defense counsel Couture knew perfectly well that Plaintiff would have to file exactly the motion to compel that has, in fact, been filed.

WHEREFORE, Plaintiff asks that this court grant Plaintiff's motion to compel completion

4

of the teardown inspection and removal of the fuel tank as previously agreed to by Defendant, BMW.

Plaintiff further asks that Defendant BMW and/or their attorneys be ordered to pay for the expenses

incurred by Plaintiff as a result of Defendant BMW's termination of the October 31, 2012 inspection.

s// Richard F. Burke, Jr.
Richard F. Burke, Jr. Bar Number 03121588
Attorney for Plaintiff MURRAY SCHEINMAN,
Plenary Guardian of the Estate and Person of
JEFFREY J. SCHEINMAN, a Disabled
Person

Richard F. Burke, Jr.
Shannon M. McNulty
Attorneys for Plaintiff
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle Street, Suite 3100
Chicago, Illinois 60602
(312) 899-9090
(312) 251-1160

5

## Richard F. Burke

| | |
|---|---|
| **From:** | Richard F. Burke |
| **Sent:** | Saturday, November 10, 2012 11:24 AM |
| **To:** | James K. Toohey |
| **Cc:** | Timothy R. Couture; Nancy K. O'Donnell; Carlton D. Fisher; Cecelia Horan; Joseph Skryd; Matthew Schreck; Robert J. Golden; William Yu |
| **Subject:** | Re: Scheinman v. Martin's Bulk, et al. |

Jim, I always try to accommodate lawyers schedules, but time is of the essence and this motion needs to remain on the call for nov 15. You caused the need for this motion. I won't object to you or Tim having the opportunity to respond but I cannot withdraw this motion and have i

On Nov 9, 2012, at 7:50 PM, "James K. Toohey" <tooheyj@jbltd.com> wrote:

Rich,

I will not be returning to Chicago until Noon on the 15th and, as Tim advised he is also booked for that morning. Furthermore, your motion to compel is premature, as you made no effort to meet and confer as required condition precedent to such motion. Nor did you give us enought time to review your new proposal with our experts to determine what we might be able to agree to, when we meet and confer. Knowing that we stopped the last evidence destruction party sponsored by John Stilson, because 1) the vehicle as an intact assembly is the best evidence of the crash and its effect on every vehicle part, and 2) any destruction of that intact piece of evidence must be kept to a minimum; however, 3) Stilson had no plan, he could not articulate a single reason why he was doing what he wanted to do except to claim it was necessary to get the tank out, and 4) his immediate response to any difficulty was to pull out the power to to start cutting up the car. Notably, although you seemed to have retained a fire expert who went over the fuel system with a fine tooth comb at the prior inspection, yet I am told he did not even participate in Stilson's "destruction party." I have known John Stilson for years and have had many cases in which he was retained by plaintiffs' counsel. In at least one case that I remember vividly that occurred before there was any developed law on spoliation, he disassembled key parts at issue before the defense even had the chance to see them became the major point of contest in the case.

With that history, you send a new protocol that is more open-ended than the first and more extensive, now including destructive removal of the seat. You did not offer it as a proposal pursuant to your meet and confer obligation, but instead with your advice that it would be attached to your contemporaneously filed motion to compel. I got hold of my seat expert and he is adamant that the seat assembly must be digitally scanned before it is moved, much less removed. Only with that can he 1) document the parts as they appear in an assembly, and 2) determine if and, if so, how, any disassembly is necessary for experts on both sides. He stressed that the seat at issue is an assembly, not a collection, of parts. I ask that you withdraw the motion, so that after I have spoken with our experts and have an understanding of the technical issues, I can call you to discuss the issues in an attempt to reach an agreement or, at least, minimize our differences. I have a call in to Mr. Noble, as well, but did not yet speak to him about fuel system issues.

Please respond ASAP as to whether you intend to proceed with your motion. If you do, I will find someone who knows nothing about the case to attend, explain our absence, present my limited response based on failure to the meet and confer, and ask for more time to respond to the merits when we obtain our experts' affidavits.

Regards,

Jim

## Richard F. Burke

| | |
|---|---|
| **From:** | Richard F. Burke |
| **Sent:** | Saturday, November 10, 2012 11:45 AM |
| **To:** | James K. Toohey |
| **Cc:** | Timothy R. Couture; Nancy K. O'Donnell; Carlton D. Fisher; Cecelia Horan; Joseph Skryd; Matthew Schreck; Robert J. Golden; William Yu |
| **Subject:** | Re: Scheinman v. Martin's Bulk, et al. |

I was starting to say I can't withdraw this motion when the next available date is two weeks from now . Send someone and have them explain your desire to respond and I will tell the court this needs to be dealt with promptly , but that I understand your desire to be present. I will respond to your other sarcastic comments later, but suffice it to say we are way past meet and confer. We did that at the inspection. This motion is to enforce the inspection previously agreed too, which you and mark noble both know is completely appropriate and common in this type of case.

On Nov 9, 2012, at 7:50 PM, "James K. Toohey" <tooheyj@jbltd.com> wrote:

> Rich,
>
> I will not be returning to Chicago until Noon on the 15th and, as Tim advised he is also booked for that morning. Furthermore, your motion to compel is premature, as you made no effort to meet and confer as required condition precedent to such motion. Nor did you give us enought time to review your new proposal with our experts to determine what we might be able to agree to, when we meet and confer. Knowing that we stopped the last evidence destruction party sponsored by John Stilson, because 1) the vehicle as an intact assembly is the best evidence of the crash and its effect on every vehicle part, and 2) any destruction of that intact piece of evidence must be kept to a minimum; however, 3) Stilson had no plan, he could not articulate a single reason why he was doing what he wanted to do except to claim it was necessary to get the tank out, and 4) his immediate response to any difficulty was to pull out the power to to start cutting up the car. Notably, although you seemed to have retained a fire expert who went over the fuel system with a fine tooth comb at the prior inspection, yet I am told he did not even participate in Stilson's "destruction party." I have known John Stilson for years and have had many cases in which he was retained by plaintiffs' counsel. In at least one case that I remember vividly that occurred before there was any developed law on spoliation, he disassembled key parts at issue before the defense even had the chance to see them became the major point of contest in the case.
>
> With that history, you send a new protocol that is more open-ended than the first and more extensive, now including destructive removal of the seat. You did not offer it as a proposal pursuant to your meet and confer obligation, but instead with your advice that it would be attached to your contemporaneously filed motion to compel. I got hold of my seat expert and he is adamant that the seat assembly must be digitally scanned before it is moved, much less removed. Only with that can he 1) document the parts as they appear in an assembly, and 2) determine if and, if so, how, any disassembly is necessary for experts on both sides. He stressed that the seat at issue is an assembly, not a collection, of parts. I ask that you withdraw the motion, so that after I have spoken with our experts and have an understanding of the technical issues, I can call you to discuss the issues in an attempt to reach an agreement or, at least, minimize our differences. I have a call in to Mr. Noble, as well, but did not yet speak to him about fuel system issues.
>
> Please respond ASAP as to whether you intend to proceed with your motion. If you do, I will find someone who knows nothing about the case to attend, explain our absence, present my limited response based on failure to the meet and confer, and ask for more time to respond to the merits when we obtain our experts' affidavits.
>
> Regards,