IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.:09 cv 5340 |
| MARTIN'S BULK MILK SERVICE, INC., SAMUEL G. FRANKE, CSX INTERMODAL, INC., INTERNATIONAL PAPER COMPANY, UNIVERSAL AM CAN LTD., successor to OVERNITE EXPRESS, INC. and OX LLC, BMW of NORTH AMERICA, LLC, a corporation, BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, a corporation, BMW AG, a corporation, and KARL KNAUZ MOTORS, INC., a corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable James F. Holderman  Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Susan E. Cox, Magistrate Judge

The plaintiff, Murray Scheinman, has charged multiple defendants with negligence in connection to an automobile accident that occurred on July 3, 2008 in Highland Park, Illinois. On that day, plaintiff was stopped at a red light in his BMW 335i convertible when a tractor trailer operated by defendant Samuel Franke struck the rear of plaintiff's car. The tractor went over the frame of the BMW and penetrated deep into the sheet metal, pushing the rear of the BMW down into the ground as both vehicles skidded through the intersection and over a curb. The BMW also caught

fire, causing extensive burns to plaintiff and melting a portion of the BMW.

The massive damage to plaintiff's BMW, and how the experts will analyze what remains of the vehicle, is the subject of this dispute. The parties and their respective experts agreed to an inspection of the BMW that involved the removal of the fuel tank for analysis. Plaintiff drafted the protocol for the fuel tank removal, defendants agreed, and the parties and experts met on October 31, 2012 to complete the process. Before the removal could be completed, however, defendants stopped the inspection, claiming that the least destructive means were not being used. Now before us is plaintiff's motion to compel the inspection and removal of the fuel system [dkt. 125]. For the reasons stated, we grant plaintiff's motion.

## I.      October 31, 2012 Inspection

The parties met on October 31, 2012 to conduct the inspection and removal of the fuel tank. The parties had previously inspected the vehicle, taken photos, and video footage back in August 2011. At the October inspection the parties again took photos and were videotaping each step of the process. The "teardown protocol" was to follow the service manual procedures "except where damage prevents it," and included seven specific steps:

> 1. Remove the two oblique metal bars from their anchorage locations.
> 2. Remove the dual exhaust pipes forward of the fuel tank area rearward.
> 3. Remove the aluminum exhaust shield between the fuel tanks.
> 4. Remove the driver side fuel tank strap and secure the fuel tank prior to removal of the right side fuel tank strap.
> 5. Remove the right side fuel tank strap.
> 6. Remove the fuel tank and filler neck assembly (if filler neck assembly is loose).
> 7. Remove any debris from the filler neck in the routing area up to the filler door.[1]

Plaintiff's expert, John Stilson, first removed the two oblique metal bars from their anchorage

---

[1]Teardown protocol I, Pl's mt, exh. B, dkt. 275.

locations, pursuant to step one of the protocol. Mr. Stilson then asked for a power cutting tool to cut the dual exhaust pipes pursuant to step two of the protocol.[2] It was at this time that BMW's counsel and its expert, Mark Noble, conferred and expressed concern that Mr. Stilson was cutting too much of the vehicle. Counsel for BMW then asked Mr. Stilson to write out his step-by-step plan of the cuts he intended to make to retrieve the fuel tank. Mr. Stilson refused to do so, referring the parties to the agreed-upon protocol for the inspection. It was at this time that BMW terminated the inspection.

## II.  Analysis

Plaintiff, through his expert Mr. Stilson, seek to remove the BMW's fuel tank and its related components to visualize, analyze, and evaluate whether there is damage to areas of the fuel system that currently cannot be seen, and the extent to which any such damage resulted in the leakage of fuel and the fire that started after impact. This discovery directly relates to plaintiff's claim that BMW was negligent in the design of the BMW vehicle's fuel system and seats, and that the vehicle was unreasonably dangerous because of those defects. Mr. Stilson's second, more detailed, protocol and his two additional affidavits explain exactly what parts must be removed and why.

BMW's opposition focuses on two points: Mr. Stilson's credibility and the possibility of using an alternative method of inspection. First, we give no credence to BMW's attempts to discredit Mr. Stilson. BMW's reference to a case in the 1980s involving Mr. Stilson has absolutely no relevance to this case.[3] We also note that the Illinois Supreme Court concluded that plaintiffs, for whom Mr. Stilson had worked in that case, acted in good faith.[4]

The only argument warranting discussion, then, is BMW's position that maintaining the

---

[2]Teardown protocol I, Pl's mt, exh. B, dkt. 275.
[3]*See Shimanovsky v. General Motors Corp.,* 181 Ill.2d 112, 115-118 (1998).
[4]*Shimanovsky,* 181 Ill.2d at 125.

vehicle "in its post-collision condition as a unitary assembly" is essential to its defense. This is the principal factor courts assess when determining whether to allow destructive testing; will the non-movant suffer prejudice. Destructive testing falls within the purview of Federal Rule of Civil Procedure 34, which provides that a party may request another party "to inspect, copy, test, or sample ... (B) any designated tangible things... ."[5] When a party objects to production, Rule 26(c) governs, giving discretion to the trial court.[6] Courts review several factors in these cases, with emphasis placed on the second factor of prejudice: (1) whether the testing is reasonable, necessary and relevant to the movant's case; (2) whether the non-movant will be prejudiced, or hindered in its effort to present evidence at trial; (3) whether there are less prejudicial alternatives available; and (4) whether there are safeguards in place to minimize the prejudice to the non-movant.[7]

BMW does not dispute that what plaintiff seeks is relevant, especially considering that BMW agreed to the inspection in the first place. BMW's overall complaint is the way plaintiff's expert was trying to get the evidence. Throughout its brief, BMW repeats its concern that Mr. Stilson "appeared to be doing maximum destruction" to the vehicle in his efforts to extract the fuel tank. It was because BMW feared possible loss of evidence, due to Mr. Stilson using a Sawzall cutting tool, that it stopped the inspection. This brings us to the next three factors of the test.

First, BMW argues that there is a less-prejudicial option. BMW submits affidavits from Mr. Noble to support its position that the fuel tank does not need to be removed because all parts of the fuel system are already visible. For those areas that are covered, Mr. Noble states that with the use of "lights, mirrors or a scope (a tiny camera inserted through a small opening through which the

---

[5]Fed.R.Civ.P. 34.
[6]*See Ostrander by Ostrander v. Cone Mills, Inc.,* 119 F.R.D. 417, 419 (D. Minn. 1988).
[7]*Garcia v. Aartman Transport Corp.,* No. 08cv77, 2011 WL 665451, *2 (N.D. Ind., Feb. 14, 2011).

examiner can see what the camera sees on a video screen)," Mr. Stilson will be able to see the entire

tank without the need to remove it.[8]

Mr. Stilson acknowledges Mr. Noble's suggested protocol, but states that

> it does not accomplish my objective of removing the subject fuel tank to examine it, examine the underbody condition above the fuel tank, evaluating potential vehicle components that may have interacted with the fuel tank, and installing an exemplar fuel tank and filler neck to evaluate the total fuel tank environment and vehicle components that may have interacted with the fuel tank in this crash.[9]

Plaintiff further explains that Mr. Stilson's objective is to inspect the fuel tank for brackets, screws,

nuts, or metal pieces that could have penetrated the fuel tank. BMW does not explain how using a

scope will allow for this kind of inspection.

Then BMW argues that Mr. Noble will need to reconstruct the effects of the crash on the fuel

system "as an integrated crash management system" and only with the car intact can he show the jury

how the system was intended to managed "high crash energies."[10] BMW also includes photos of the

vehicles undercarriage with statements like "[t]he relationship of the fuel tank and the protective

structures and how they perform together in this incident would be lost if the tank is removed."[11]

BMW, however, does not explain its premise for these conclusions.

Regardless of whether the vehicle is intact at the time of trial, the experts from both sides will

have photos of the vehicle in its post-collision state, video footage of any disassembly of the vehicle,

and their theories of how the components of the vehicle interacted at the time of impact. What is

---

[8]11/28/12 Noble Aff.at 8, Def's Resp. to Suppl. Brief, dkt. 288, exh. 1.
[9]11/21/12 Stilson Aff. at ¶14, Def's Resp., dkt. 288, exh. 6.
[10]Def's Resp. at 4, dkt. 288.
[11]Def's Resp., exh. 8, dkt. 288-8.

relevant to the jury is how counsel and the experts explain that evidence.[12] We see no particular

benefit to maintaining the physical evidence of the vehicle in its post-collision state. We

acknowledge that where testing will destroy evidence, balance may dictate denying such a request.

But here, neither party claims that the pertinent evidence will be completely destroyed. Mr. Stilson's

affidavit provides that:

> the cutting of the dual exhaust pipe allows reinstallation [of the fuel tank]
> using clamps if necessary, removal of the exhaust heat shield would involve
> the potential to reinstall it following the teardown, and the fire and abrasion
> damage to the fuel tank would be preserved with its removal along with the
> condition of the fuel tank spud that connects the filler pipe hose.[13]

This directly responds to Mr. Noble's concern that the fuel system and surrounding structures be able

to be "replaced in their present locations."[14] Therefore, the vehicle, in perhaps reconstructed form,

will be available as evidence in addition to photographic and video evidence. Taking the analysis

a step further, even if BMW were to find that removal of the fuel tank permanently changed a

particular component of the vehicle relevant to its defense, BMW will be able to explain to the jury

how any post-crash alterations to the vehicle have potentially affected its expert's analysis. BMW

will also be free to make any appropriate motions in limine or evidentiary objections.

Finally, there is ample support from both sides for removal of the fuel tank. Both experts

agree that "in post-crash situations, it is not uncommon that some parts may have to be moved or

removed to gain access to a particular part for examination and/or testing."[15] Mr. Noble explains that

---

[12]*See Mirchandani v. Home Depot, U.S.A., Inc.,* 235 F.R.D. 611, 614 (D. Md. 2006)(concluding that even after destructive testing, the party would have the opportunity to present their defense to the jury with a video presentation and testimony of their experts, thus, any prejudice to them would be minimal).

[13]12/1/12 Stilson Aff. at ¶18, Pl's Suppl. Brief in Support, dkt. 286, exh. 1.

[14]11/28/12 Noble Aff.at ¶20, Def's Resp. to Suppl. Brief, dkt. 288, exh. 1.

[15]11/28/12 Noble Aff. at ¶3, Def's Resp., dkt. 288, exh. 1.

he originally agreed to the removal of the fuel tank as long as he was present for the process and as long as it was done according to the service manual.[16] If that could not be done, removal was to occur using "the least intrusive measures with the agreement of the parties."[17] And BMW's counsel, who was present for the October 31 inspection, stated in his declaration that what most concerned them was Mr. Stilson's plan "to cut anything and everything that prevented access to the fuel tank."[18] Specifically, he explains that after Mr. Stilson made the cuts for the exhaust near the front end of the car, Mr. Stilson indicated that he:

> planned to cut the entire exhaust system out and bend away a support bracket. Mark Noble pointed out that doing only this would not allow removal of the fuel tank because the exhaust shield, drive shaft and fuel tank strap would still prevent the tank's removal. Mark Noble also believed that cutting further towards the front of the vehicle instead of where Stilson wanted to cut would allow the fuel tank to come out without having to remove the entire exhaust.[19]

This is a different issue than BMW's present claim: that the fuel tank should not be removed at all. Because Mr. Noble explains that removal of the fuel tank may be accomplished with "limited destruction" of evidence, and the parts able to "be replaced in their previous positions" if the experts work together,[20] we find that to be the best solution.

### III.    Conclusion

In cases where destructive testing is at issue, courts consider safeguards that parties can follow to limit the risk of prejudice to the non-movant.[21] Many of these safeguards have been used

---

[16]11/28/12 Noble Aff. at ¶4, Def's Resp., dkt. 288, exh. 1.
[17]*Id.*
[18]Couture Decl. at ¶5, Def's Resp., dkt. 288, exh. 3.
[19]Couture Decl. at ¶4, Def's Resp., dkt. 288, exh. 3.
[20]11/14/12 Noble Aff. at ¶9, Def's Sur-Resp., dkt. 281, exh. 1.
[21]*See Garcia,* No. 08cv77, 2011 WL 665451, *3; *see also Mirchandani v. Home Depot, U.S.A., Inc.,* 235 F.R.D. 611, 614 (D. Md. 2006).

in this case already. As mentioned, both sides have photographed and recorded the vehicle and the inspection process. Plaintiff has also suggested that BMW laser map the relationship of the vehicle components prior to any further testing.[22] These alone, we believe, will ensure minimal prejudice.

Nonetheless, Mr. Noble has indicated that he believes he can remove the fuel tank non-destructively.[23] For example, he believes cutting the exhaust pipes further towards the front of the vehicle will allow the tank to come out without having to remove the entire exhaust.[24] As an added safeguard, then, we see no reason that Mr. Noble could not, himself, perform the removal of the fuel tank. Both parties have significant interest in preserving the evidence in this case and, therefore, it is in their interest to work together to meet that goal. The Court is required to balance the interests served by the inspection against the value of preservation of evidence on behalf of BMW.[25] Having BMW's expert perform the actual removal, in the company of plaintiff's expert, would seem to resolve any potential prejudice that has been alleged here. Mr. Noble is to proceed with all steps of Mr. Stilson's revised teardown protocol dated October 31, 2012, as it relates to the "Fuel System Disassembly Protocol" only. The remainder of the protocol and inspection is to be completed by Mr. Stilson.

---

[22]12/1/12 Stilson Aff. at ¶18, Pl's Suppl. Brief in Support, dkt. 286, exh. 1.
[23]11/28/12 Noble Aff. at ¶11, Def's Resp., dkt. 288, exh. 1.
[24]Couture Decl. at ¶4, Def's Resp., dkt. 288, exh. 3.
[25]See Ostrander by Ostrander, 119 F.R.D. at 419.

Plaintiff's motion to compel inspection and removal of the fuel system is hereby granted [dkt. 275]. Plaintiff's request for reimbursement of expenses incurred from his retained experts and the personnel related to the inspection of October 31, 2012, which was terminated, is denied.

**IT IS SO ORDERED.**

**Date:** <u>**January 28, 2013**</u>

U.S. Magistrate Judge
Susan E. Cox