IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person,<br><br>Plaintiffs,<br><br>vs.<br><br>SAMUEL G. FRANKE, et. al.<br><br>Defendants. | No. 09 CV 5340<br><br>Judge James Holderman<br>Judge Magistrate Susan E. Cox |

**BMW OF NORTH AMERICA, LLC AND BAYERISCHE
MOTOREN WERKE AKTIENGESELLSCHAFT'S OBJECTION TO
MAGISTRATE JUDGE'S ORDER ON PLAINTIFF'S MOTION TO COMPEL**

NOW COME the Defendants BMW of NORTH AMERICA, LLC and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT (jointly referred to hereinafter as "BMW"), by their attorneys, James K. Toohey and Timothy R. Couture, and herein respectfully object to the ruling of Magistrate Judge Susan E. Cox issued January 28, 2013 granting Plaintiff's Motion to Compel allowing Plaintiff to use destructive measures to remove fuel system components from the vehicle at issue in Plaintiff's claims against BMW, and further object to that portion of the Magistrate Judge's ruling which directs BMW's expert consultant to perform portions of the fuel tank removal to which has BMW objected. In support of this motion, BMW states as follows:

**I.   RELEVANT FACTS**

  **A.   The Accident**

On July 3, 2008, Plaintiff was stopped at a red light in his BMW 335i convertible when his car was rammed from behind by a 74,000 pound tractor-trailer truck travelling at up to the 50 mph. Truck driver Samuel Franke never applied the brakes before striking the rear of Plaintiff's

BMW. The tractor went over the bumper/frame of the BMW, penetrated deeply into the BMW sheet metal, and pushed the rear of the Scheinman car downward. The tractor continued to push the rear of the BMW downward forcefully contacting the ground as the two vehicles went through the large intersection, over a curb, and over a traffic sign, causing massive abrasions on the underbody structure and fuel tank. These resulted in the release of fuel, and a fire.

Within days after the collision, Plaintiff filed suit against the truck driver, trucking company, and others related to the truck's cargo. A year later Plaintiff filed a separate suit alleging that the BMW was insufficiently "crashworthy." These two separate actions are now consolidated before this Court.

**B.     The October 31, 2012 "Tear Down"**

Plaintiff has had custody of the BMW vehicle since the accident, and retained consultants who inspected the vehicle before suit was filed against BMW. The parties attended a joint inspection in August, 2011. On or about July 27, 2012, Plaintiff provided a protocol for a proposed removal of the fuel tank. The "teardown protocol" was to "follow the service manual procedures except where damage prevents it. In that case, the least intrusive procedure will be taken by agreement of parties." (Stilson July 27, 2012 Protocol, Ex. 2 to BMW's Response, Dkt 288.) While BMW had no interest or desire to have the fuel tank removed, and believed that all relevant evidence could be properly gathered without taking the car apart, because Plaintiff's protocol called for removal of the fuel tank by non-destructive "service-manual" procedures, BMW Defendants agreed to allow Plaintiff to proceed with the proposed protocol so long as their fuel tank consultant, Mark Noble, was present to monitor.

On October 31, 2012 Plaintiff undertook their tank removal, and Mr. Noble and BMW counsel Timothy R. Couture appeared to observe. After Plaintiff's expert, John Stilson,

2

successfully disassembled the two oblique bars by removing the bolts, he then asked for a power cutting tool and stated his intention to cut the dual exhaust pipes with the cutting tool.[1] After watching Stilson direct the initial cutting of the exhaust pipes, BMW's representatives balked when Stilson indicated he would use the cutting tool to remove any of the other parts he confronted until he was able to get to and remove the fuel tank.[2] Because maintaining the integrity of the entire undercarriage of the vehicle in its post-collision condition as a unitary assembly is essential to the BMW's defense, BMW refused to agree to further destruction of the BMW. After the parties were not able to resolve their differences, the session was terminated.

### C. Plaintiff's Motion and Judge Magistrate Cox' Ruling

On November 9, 2012, Plaintiff filed a Motion to Compel the completion of the fuel tank removal. (*Dkt*. 275.) After a Response, Reply and Sur-Response were filed (dkt. 278, 279, 281), Judge Magistrate Cox set a Supplemental Briefing Schedule. A Supplemental brief, Response and Reply were filed (dkt 286, 288 ad 293), and on January 28, 2013, Judge Magistrate Cox ruled on the Motion, issuing an order and ruling in favor of Plaintiff (dkt 296, 297). BMW now respectfully objects to that ruling.

---

[1] Instead of examining the vehicle that had been in their possession for the previous four years, determining what destructive measures might be required to accomplish their goal, and including those items in their protocol for BMW to consider, Plaintiff and Stilson either chose not to determine what destruction would be required to accomplish their tank removal, or knew what destruction would be included and chose not to share it with BMW until Stilson was standing under the vehicle with a saw in his hands.

[2] While Stilson refused to provide an itemized list of his steps and planned cuts, at very least the destruction would have included cutting and removing large portions of the exhaust system, exhaust shield, drive shaft and fuel tank strap. While some of these components were including among the items to be "removed" in the protocol, the protocol said nothing about removing, let alone cutting, the vehicle's drive shaft.

3

II.  **LEGAL STANDARD AND TIMELINESS**

Federal Rule of Civil Procedure 72(a) implements 28 U.S.C. § 636(b)(1)(A), authorizing a party to serve objections within 14 days of any magistrate judge's order on non-dispositive matters referred to a magistrate judge from a district judge. Fed. R. Civ. P. 72(a), 28 U.S.C. § 636. BMW received notice of the Magistrate Judge's ruling and Order at issue by Pacer/ECF at 5:27 p.m. on January 28, 2013. Calculating the deadline based on Fed.R.Civ.P. Rule 6(a)(1), this objection is timely if filed on or before February 11, 2013.

Under Rule 72(a), this Court shall consider and shall modify or set aside any portion of the Magistrate Judge's Order found to be clearly erroneous or contrary to law. The clear error standard applies to this objection. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 92 L.Ed. 746, 68 S.Ct. 525 (1948).

BMW asks this Court to sustain their objection to Judge Magistrate Cox's ruling, because:

A.  **The Ruling allowing destruction of BMW's primary evidence, the subject vehicle, was clearly erroneous, especially where there are less destructive means available to gather the information sought by Plaintiff.**

B.  **The Ruling directing that BMW's expert, Mark Noble, perform the destructive fuel tank removal despite BMW's and Mr. Noble's continued objections to said removal, was clearly erroneous.**

III. **ARGUMENT**

BMW and its counsel hold Judge Magistrate Cox in high regard, respect her rulings in this matter, and do not undertake this objection lightly. Nonetheless, BMW objects, because Judge Cox's order compels BMW's own expert to destroy the single most relevant and most

4

valuable piece of evidence in the case. Plaintiff claims that the BMW vehicle was not designed or manufactured such that it was sufficiently "crashworthy" when struck in the rear while at a standstill by a fully-loaded tractor trailer that weighed 74,000 lbs. and was travelling at highway speed with no pre-crash braking by the driver. BMW must be permitted to show the jury how the subject vehicle's component parts worked together as an integrated unit in managing that collision energy in a crashworthy manner. (Supplemental Affidavit of Mark Noble, attached as Ex. 1, to dkt 288, ¶ ¶15- 16.)

Judge Magistrate Cox has allowed Plaintiffs to use destructive measures to remove the vehicle's fuel tank. Worse, she has ordered that BMW should perform the destruction. Plaintiff and Stilson have argued that they "need" to examine the fuel tank, that fuel tanks are removed from cars all the time, and that there may be valuable evidence hidden from view by the fuel tank. They have offered no evidence to rebut Noble's affidavits that all such parts can be visualized, why removing the BMW vehicle's fuel tank is necessary to prove their case, or how their "need" overcomes the substantial prejudice to BMW caused by the destruction of evidence. Critical to this point is the evidence provided by Noble that the source of the fuel leak is already directly visible on the bottom of the tank, and Stilson's concession of that point by his silence. On the record before this Honorable Court, Plaintiff has not satisfied the legal requirements to justify the destruction of the most important piece of evidence in the case and BMW has established that it will suffer substantial prejudice if Plaintiff is permitted to chop up the underside of the subject car.

### A. Destruction of Evidence

As noted in BMW's Response (dkt. 288) and Judge Magistrate Cox's Memorandum (dkt. 297), there are four guidelines that courts consider when deciding whether destruction of evidence

is warranted. The burden is on the movant to show: (1) destructive testing is reasonable, relevant and necessary to prove his case; (2) the non-movant's ability to present evidence at trial will not be substantially hindered and non-movant must not be substantially prejudiced in any other way; (3) the movant must consider any available less destructive alternatives; (4) the movant must assure adequate safeguards to minimize prejudice to non-movant's presentation at trial. G*arcia v. Aartman Trans. Corp.*, 2011 U.S. Dist. LEXIS 15065, at *4-6 (N.D. Ind. February 14, 2011); *Cameron v. District Court of First Judicial Dist.*, 565 P.2d 925, 929 (Colo. 1977). On this record, Plaintiff cannot satisfy these requirements.

### 1. Prejudice to BMW

Courts have instructed that the second guideline listed above, ensuring that the non-movant is not substantially prejudiced, is worthy of special emphasis. G*arcia*, 2011 U.S. Dist. LEXIS 15065, at *4-6 (citing *Sarver v. Barrett Ace Hardware, Inc.*, 349 N.E.2d 28, 31 (Ill. 1976) and *Petruk v. South Ferry Realty Co.*, 2 A.D.2d 533, 537 (N.Y. App. Div. 1956)); *Houseknecht v. Zagel*, 445 N.E.2d 402, 407-08 (Ill. App. Ct. 1983). Permitting Plaintiff and Stilson to chop up the undercarriage of the car in order to remove the fuel tank will cause substantial prejudice to BMW. The BMW vehicle was designed such that its component parts would work together as an integrated unit to provide the structural integrity and crashworthiness to withstand a rear-end collision. (Supplemental Affidavit of Mark Noble, attached as Ex. 1, to dkt 288, ¶ 15.) With such evidence maintained, BMW and its experts will demonstrate for the jury what occurred in this high speed impact by the 74,000 lb. truck, the truck bumper overrode the BMW frame and pushed the rear of the BMW down into abrading contact with the pavement, a road sign, and a curb while the truck weight remained boring down on it for 350 feet. BMW and its experts will not be able to properly demonstrate to the jury how the subject vehicle absorbed the enormous energy and multi-

directional loads brought to bear on the car, if the rear of the car is sectioned into pieces. (*Id*. at ¶ ¶ 15-16.)

Courts have generally held that the proportion of the evidence destroyed in testing is a factor in the prejudice experienced by the non-moving party. G*arcia*, 2011 U.S. Dist. LEXIS 15065, at *8; *Ostrander v. Cone Mills, Inc*., 119 F.R.D. 417, 419 (D. Minn. 1988). Plaintiff's intended destruction of the underside of the car will forever alter the two vehicle points most critical to the analysis of the fuel system: the rear of the vehicle where the semi-tractor trailer rammed the stopped BMW (Plaintiff's planned removal of the exhaust system would alter the vehicles rear); and the underside of the vehicle which was abraded for over 350 feet, causing the fire. (*See,* Second Supplemental Affidavit of Mark Noble, Exhibit 8 to dkt 288.)

Judge Magistrate Cox offers that photographs, video, laser mapping and an explanation by BMW to the jury as to why the BMW vehicle's underside is carved into multiple pieces will overcome the prejudice of not being able to present its product in its post-accident state to the jury. As noted in Defendants' Response brief, however, the most reliable evidence in an automobile products liability case is the product itself. (Ex. 1, to dkt 288Id. at ¶ 16). The vehicle does not forget, does not make mistakes, is not influenced by emotion, and does not suffer the limitations of an eye witness who witnesses an horrific and traumatic event that is over within seconds. As the BMW vehicle is *the* important piece of evidence in BMW's defense of the claims made against it, destruction of the rear and undercarriage by Stilson's ad hoc sawzall "protocol" will substantially hinder BMW from presenting evidence at the trial of this cause. As such, Judge Magistrate Cox's order allowing such a destruction is clearly erroneous.

### 2. Necessity and Alternative Non-Destructive Methods

Plaintiffs have not satisfied the "reasonable, relevant and necessary" requirement. On this issue, Judge Magistrate Cox asserts that "BMW does not dispute that what Plaintiff seeks is relevant, especially considering that BMW agreed to the inspection in the first place." (Dkt 297, p. 4). Her Honor points to the fact that Mark Noble and BMW's counsel were present at the October 31, 2012 session, and that they agreed to allow Stilson to make one cut in the vehicle's exhaust pipe before objecting to his plan to cut out large portions of the vehicle's underbelly, as evidence that BMW agreed to the destructive removal of the fuel tank. (*Id.* at p. 6-7.) In furtherance of this, she asserts that, because BMW agreed to the removal, the real issue is not whether the tank should be removed, but how much destruction should be permitted in the removal. (*Id.*) Judge Cox's holding is clearly an erroneous statement of BMW's position on this issue.

The BMW Defendants have never sought the removal of the subject vehicle's fuel tank or fuel system, nor do they believe that the removal of the fuel tank is necessary or even relevant to any issue in this case. When presented by Plaintiff with a protocol that called for the tank to be removed using "service manual techniques," BMW made no objections to the removal because "service manual techniques" indicated that removal of the tank, and any disassembly required to gain access to the tank, would be done using wrenches, removing bolts, and by similar non-destructive measures. (*See* Protocol, Ex. 2 to dkt 288). Using such techniques, all vehicle parts could be removed, examined, and put back in place without destroying the exhaust system and underside of the vehicle. Nonetheless, Judge Cox finds Plaintiff has met the "relevant, reasonable and necessary" requirement based on claims made in Stilson's affidavits. (Op. at p. 5, citing Stilson 11/21/12 Aff. at ¶ 14, Deft. Resp., dkt 288, Exh. 6.) However, Stilson's affidavits do not address the third requirement that a movant *must* consider less destructive alternatives. If a less

destructive alternative can provide the information required by the movant to prove his case, the destruction of evidence cannot be considered necessary or reasonable.

Stilson's protocol did suggest that minimally destructive measures might be considered in the event that accident damage prevented the use of "service manual techniques," the protocol assured that such measures would only be taken "*with agreement of the parties*." (*Id.* [emphasis added]). As such, by not objecting to Plaintiff's protocol, BMW was agreeing to nothing more, and nothing less, than allowing Plaintiff to perform the non-destructive disassembly while retaining the right to disagree with any destructive measures considered by Plaintiff and Stilson. BMW exercised its right to not agree with Stilson's intended destruction only after Stilson had abandoned efforts to use service manual techniques and had left no doubt that he was going to continue cutting, without a specific plan that he was willing to articulate, until the fuel tank was out of the car. BMW has offered less destructive alternatives both while at the October inspection and by affidavits. Judge Cox cites BMW's agreement to discuss alternatives only as evidence that BMW "agreed" to destructive removal. The fact that BMW agreed to initial cuts in the exhaust system, or that Mark Noble conversed with Stilson about the possibility of other minimal cuts to the bottom of the car is *not* evidence that BMW was agreeable to the destructive removal of the tank. It is evidence that BMW and their expert were attempting to determine if there were potential alternatives to chopping out large portions of the bottom of the vehicle versus terminating the removal efforts altogether. Such attempts to be reasonable and conciliatory must not be held against BMW or Mark Noble as "proof" that they agreed to Plaintiff's planned destruction of crucial evidence.

Plaintiff and Stilson have never been willing to attempt either less destructive cutting or BMW's preferred method of non-destructive access to visualizing the evidence – the use of lights,

9

mirrors and scopes which should obviate the need for the destructive fuel tank removal. At the same time, Judge Cox ignores Plaintiff's unwillingness to work with Mr. Noble or his suggested alternatives despite its being clear evidence of their refusal to consider less destructive alternatives.

Stilson claims anything short of tank removal prevents him from accomplishing his goal of examining the tank, examining its condition, evaluating how vehicle components may have interacted with the fuel tank, and to inspect the tank for brackets, screws, nuts or metal pieces that could have penetrated the tank. (*See*, dkt 288, Ex. 6.) Stilson further asserts that he wishes to "install" an exemplar fuel tank and filler neck into the vehicle to evaluate "the total fuel tank environment." (*Id.* at ¶ 14.)

On this issue, Judge Magistrate Cox states that "BMW does not explain how using a scope will allow for this type of inspection." (Dkt 297, p. 9.) Defendant respectfully disagrees with Her Honor on this point. Mark Noble's Second Supplemental Affidavit provides a detailed description, with annotated photographs, of how the scoping procedure works and how the fuel system and tank can be viewed in its entirety without destructive removal. (Ex. 8 to dkt 288.) Moreover, given that it is Plaintiff who wishes to destroy evidence crucial to BMW's defense, Plaintiff has the burden of explaining why he should be permitted to destroy evidence, why such evidence is necessary to prove their case, and why such destruction should occur without first attempting less destructive measures. *Mirchandani v. Home Depot,* 235 F.R.D. 611, 615 (D.Md. 2006). They have not done so. Plaintiff and Stilton have not explained how using a scope that will allow them to visualize every inch of the fuel tank, inside and out, would prevent them from seeing if anything penetrated the tank, or would prevent them from seeing how the vehicle components interacted with the tank. Nor have they explained how placing a new tank and filler neck into the car would give them a better understanding of how the vehicle, tank and filler neck interacted with one

another rather than looking at the *actual* tank and filler neck to see how they interacted with one another and with the rest of the vehicle. Again, while they might explain what they want to do, Plaintiff and Stilson provide no explanation of what useful information it will provide, or of why any of it is necessary to prove Plaintiff's case.

In light of the critical nature of the evidence at issue, and the prejudice that BMW will suffer by its destruction, Plaintiff must not be permitted to destructively remove the fuel tank. At very least, Plaintiff and Stilson should be required to attempt to gain the evidence, information and data they claim to need through the non-destructive methods proposed by BMW. If, after doing so, they claim that the non-destructive methods were not successful, they should be required to explain in detail what evidence they could not obtain, what further destruction is necessary to their case, and why, and what the least destructive methods would be to obtain the same. Judge Magistrate Cox' refusal to enter such and order was clear error.

### B. In the Alternative, Judge Magistrate Cox's Order that Mark Noble Perform the Destructive Removal to Which Defendants Object Should Be Modified.

If this Honorable Court determines that Judge Magistrate Cox's order must not be set aside as clear error and that destruction of the vehicle undercarriage and rear end is appropriate, BMW prays in the alternative that this Court modify Judge Magistrate Cox's order.

#### 1. Plaintiff and His Expert Should Perform the Destructive Disassembly

In her order permitting Plaintiff to proceed with the destructive removal of the BMW vehicle's fuel tank and fuel system components, Judge Magistrate Cox does not simply order that Plaintiff and John Stilson may go forward with their planned removal. Instead, the Court orders that BMW's expert, Mark Noble, undertake the destructive removal to which BMW objects, stating "Mr. Noble is to proceed with all steps of Mr. Stilson's revised teardown protocol dated October 31, 2012, as it relates to the Fuel System Disassembly Protocol only." (Dkt. 297, p. 8).

BMW respectfully submits that the Magistrate's order directing its own expert to perform the evidence destruction that is prejudicial to BMW's case is improper, and clearly erroneous.

BMW does not want, and has never wanted, the vehicle's fuel tank and fuel system components removed. BMW agreed to Plaintiff's removal of the fuel tank when it was believed that the tank could be removed through non-destructive "service manual techniques." BMW and Mr. Noble even tried to work with Plaintiff and Stilson to determine if there was a way to gather the evidence Plaintiff claimed to need with little or no destruction. However, despite BMW's and Mr. Noble's courtesies, Plaintiff and Stilson, and they alone, sought to destructively disassemble the tank. The vehicle at issue is owned by Plaintiff. It is in Plaintiff's possession at a location chosen by Plaintiff. Both the original and the revised protocol for the fuel tank removal were prepared by Plaintiff's expert at Plaintiff's counsel's request, and the October 31, 2012 attempt to remove the fuel tank was done at Plaintiff's location, at the direction of Plaintiff's expert, by Plaintiff's technicians using tools owned by Plaintiff's consultant.

Judge Magistrate Cox's order that Mark Noble perform the destructive tank removal appears to be predicated on a misunderstanding. Judge Cox asserts that "Mr. Noble has indicated that he can remove the fuel tank non-destructively. (*Id.* citing Mr. Noble's Supplemental Affidavit, Ex. 1 to dkt 288, ¶ 11.) This statement is not correct. Mr. Noble did assert in his affidavit that, at the October 31, 2012 session, he told Stilson that he "probably [has] some ideas to get at the evidence non-destructively." (Noble Supplemental affidavit, Ex. 1 to dkt 288, ¶ 11). However these potential "ideas" were not a method to remove the tank without destruction. As is made clear in the remainder of Noble's affidavit, the "ideas to get at the evidence" to which Mr. Noble referred was the use of scopes, mirrors and lights. (*Id.* at ¶ 17.)

12

Despite their disagreement on almost all else, Plaintiff and BMW now agree that the tank cannot be removed without some destruction of evidence.

Judge Magistrate Cox's explanation for requiring Mr. Noble to perform the tank removal is that both parties should work together to preserve the evidence in the case, and that by having their expert perform the destruction, BMW's interests in preserving the evidence are served. (Dkt 297, pp. 7- 8.) In support of her position, Her Honor cites a paragraph of Mark Noble's initial Affidavit, and suggests that Mr. Noble agreed that working together might minimize the destruction of evidence. (Dkt 297, p. 7,, *citing* Ex. 1 to dkt. 281, ¶ 9.) Importantly, in the paragraph to which Judge Magistrate Cox' cites, Mr. Noble stated that if, ***after*** the proposed alternative examination with scopes, lights and mirror, Plaintiff expresses a legitimate need for additional evidence, and explains with specificity what information he is lacking, depending on the information needed, it was "possible" that the parties could work together to limit the destruction required to gather said evidence. (*Id.*) That is significantly different that Noble saying he could remove the fuel tank with little or no damage, much less that the destructive removal is appropriate, without first attempting the alternative methods.

BMW agrees that parties working together to preserve evidence is an appropriate goal. BMW agrees that if this Court permits Plaintiff and Stilson to proceed with their destructive fuel tank removal, BMW counsel and Mr. Noble could observe, and could engage in discussion with Plaintiff and Stilson regarding the least destructive methods of Plaintiff's tank removal. However, it objects to being compelled to have Mr. Noble perform the destructive removal himself.

If the destructive disassembly is permitted to occur, BMW will be prejudiced. Plaintiff and his experts should perform their protocol. BMW must not be ordered to carry out the

13

destruction of evidence to which it objects. It is manifestly unfair for the Court to compel BMW to be the agent of that prejudice. BMW objects to a Court order that compels BMW to be an active player in the execution of a protocol it deems to be substantially prejudicial to its case.

Moreover, the Magistrate Judge's order leaves unanswered the question of who will pay Mr. Noble and pay for the use of equipment and facilities to perform the fuel tank removal that BMW does not want done. Is BMW being forced to pay its own expert to perform the evidence destruction, or is Plaintiff required to do so? BMW respectfully submits that neither is appropriate or proper.

### 2. Reassembly Of The Vehicle

Judge Magistrate Cox specifically rejected any claim by BMW that Stilson had a history of destroying evidence, and disregarded BMW's argument that it feared Stilson's true intention was to cut the undercarriage to pieces and leave it with the appearance of scrap metal. In fact, she was convinced that the tank could be removed with minimal prejudice to BMW in part based on Stilson's assurance that he could reconstruct the undercarriage with clamps and other fastening devices. (Dkt 297, p. 6.). In his initial declaration, Stilson asserted that planned work "would involve the potential to reinstall" the fuel tank and all of the removed parts. (Exhibit 1 to dkt 286, ¶ 18). However, Plaintiff and Stilson have not specifically committed to the "reassembly," and Judge Magistrate Cox did not order him to do so.

Accordingly, should this Honorable Court not set aside Judge Magistrate Cox's order compelling the destructive disassembly of the rear, undercarriage and tank, BMW requests that the ruling be modified such that, (a) Plaintiff and his experts perform their destructive fuel tank removal and examination, and (b) thereafter, that they reinstall the fuel tank and reassemble the BMW vehicle to return it as closely as possible to its pre-destruction state.

14

WHEREFORE, for the reasons set forth in this Objection and those set forth in their initial brief on Plaintiff's Motion to Compel, Defendants BMW of NORTH AMERICA, LLC and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT object to Judge Cox's opinion and order on Plaintiff's Motion to Compel and request that this Court:

1. Set aside or modify the Magistrate's Order so as to deny Plaintiffs' Motion to Compel destructive disassembly of the undercarriage and fuel system components;

2. In the alternative, modify the Magistrate's order such that Plaintiff's expert is required by order of Court to perform the fuel tank removal, and Plaintiff's expert is required to reassemble the undercarriage and fuel system components after their removal and inspection.

3. Grant such further relief that this Court deems just and proper.

    Respectfully submitted,

    JOHNSON & BELL, LTD.


By: /s/ Timothy R. Couture_____
    One of the Attorneys for Defendants
    BMW of NORTH AMERICA, LLC and
    BAYERISCHE MOTOREN WERKE AG

James K. Toohey
Timothy R. Couture
JOHNSON & BELL, LTD.
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603
Telephone: 312/372-0770

Doc 3230739