# Exhibit A

**Page 1**

09:14:09

```
 1                UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3   MURRAY SCHEINMAN, Plenary Guardian )
     of the Estate also known as       )
 4   JEFFREY J. SCHEINMAN,             )
                                       )
 5              Plaintiff,             )
                                       )
 6        vs.                          )  No. 09 C 5340
                                       )
 7   MARTIN'S BULK MILK SERVICE, INC., )
     et al.,                           )  Chicago, Illinois
 8                                     )  February 19, 2013
                Defendants.            )  9:15 o'clock a.m.
 9              TRANSCRIPT OF PROCEEDINGS
10      BEFORE THE HONORABLE JAMES F. HOLDERMAN

11
     APPEARANCES:
12
     For the Plaintiff:      CLIFFORD LAW OFFICES, P.C.
13                           BY:  MR. RICHARD F. BURKE, JR.
                             120 North LaSalle Street, 31st Floor
14                           Chicago, Illinois  60602
                             (312) 899-9090
15
     For Defendants          MULHERIN, REHFELDT & VARCHETTO, P.C.
16   Martin's Bulk Milk      BY:  MR. JASON M. BRIESEMEISTER
     and Franke:             211 South Wheaton Avenue, Suite 200
17                           Wheaton, Illinois  60187
                             (630) 653-9300
18
                             DOWD & DOWD, LTD.
19                           BY:  MR. ROBERT J. GOLDEN
                             617 West Fulton
20                           Chicago, Illinois  60661
                             (312) 704-4400
21
     For Defendants          HINSHAW & CULBERTSON
22   International Paper,     BY:  MR. CARLTON D. FISHER
     and Universal Am Can:   222 North LaSalle Street, Suite 300
23                           Chicago, Illinois  60601-1081
                             (312) 704-3000
24

25

            Colleen M. Conway, Official Court Reporter
```

**Page 2**

```
 1   APPEARANCES:

 2
     For Defendant BMW:      JOHNSON & BELL, LTD.
 3                           BY:  MR. TIMOTHY R. COUTURE
                                  MR. JAMES K. TOOHEY
 4   (Via telephone)         33 West Monroe Street, Suite 2700
                             Chicago, Illinois  60603
 5                           (312) 984-6651

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22
                COLLEEN M. CONWAY, CSR, RMR, CRR
23                    Official Court Reporter
                219 South Dearborn Street, Room 2524-A
24                    Chicago, Illinois  60604
                           (312) 435-5594
25               colleen_conway@ilnd.uscourts.gov


           Colleen M. Conway, Official Court Reporter
```

**Page 3**

```
          1      (Proceedings heard in open court:)
09:15:09  2          THE CLERK:  09 C 5340, Scheinman versus Martin's Bulk
09:15:15  3   Milk Service.
09:15:20  4          MR. COUTURE:  Good morning, Your Honor.
09:15:23  5          Tim Couture on behalf of Defendant/Movant BMW.
09:15:26  6          MR. BURKE:  Richard Burke for the plaintiff.
09:15:28  7          Good morning, Judge.
09:15:28  8          THE COURT:  Good morning.
09:15:29  9          MR. FISHER:  Good morning, Judge.
09:15:30 10          Carl Fisher for Universal Am Can, as successor to
09:15:34 11   Overnight Transportation, Ox, L.L.C., and International Paper.
09:15:37 12          MR. BRIESEMEISTER:  Good morning, Your Honor.
09:15:38 13          Jason Briesemeister on behalf of Defendants Martin's
09:15:42 14   Bulk and Sam Franke.
09:15:44 15          MR. GOLDEN:  Bob Golden, additional counsel for
09:15:46 16   Martin's, Your Honor.
09:15:47 17          THE COURT:  All right.  Good morning to all of you.
09:15:50 18          I know you have got the car sitting there.  Plaintiff
09:15:54 19   still has possession, right?
09:15:56 20          MR. BURKE:  Judge, it's actually under a protective
09:15:58 21   order issued by the Court.  So I think it's probably joint
09:16:03 22   possession, but yes --
09:16:04 23          THE COURT:  Okay.
09:16:04 24          MR. BURKE:  -- it's definitely in secure storage.
09:16:08 25          THE COURT:  Okay.  All right.  Well, the reason I


            Colleen M. Conway, Official Court Reporter
```

**Page 4**

```
09:16:11  1   said that is you have the keys to the warehouse, right?
09:16:14  2   Defense --
09:16:15  3          MR. COUTURE:  It's their consultant that was hired --
09:16:17  4          THE COURT:  Okay.
09:16:17  5          MR. COUTURE:  -- and I believe they are holding the
09:16:19  6   car.
09:16:20  7          THE COURT:  All right.  Well, let me do this.
09:16:24  8   Actually, I wanted to talk with you about the details of this.
09:16:27  9   Would you guys mind just waiting until the end of the call?  It
09:16:31 10   won't take too long.  But I would like to just sit down with
09:16:34 11   you and see if we can work out a protocol that perhaps can work
09:16:40 12   for everybody without any prejudice, if possible.  Okay?
09:16:47 13          MR. BURKE:  Sure, Judge.
09:16:48 14          MR. COUTURE:  Sure.
09:16:49 15          THE COURT:  Thank you.
09:16:49 16      (Whereupon, the Court heard other matters on his call.)
09:43:41 17      (Resumed at 9:43 a.m.)
09:43:41 18          THE CLERK:  Recalling 09 C 5340, Scheinman versus
09:43:46 19   Martin's Bulk Milk Service.
09:43:51 20          MR. COUTURE:  Good morning, Your Honor.
09:43:52 21          Tim Couture on behalf of Defendant BMW again.
09:43:56 22          If Your Honor is going to be discussing potential
09:43:59 23   agreements about this issue, my partner and lead counsel, Jim
09:44:03 24   Toohey, is actually available by phone, and it might be more
09:44:08 25   productive if he could dial in or be called because --


            Colleen M. Conway, Official Court Reporter
```

EXHIBIT

A

5

| | | |
|---|---|---|
| 09:44:10 | 1 | THE COURT: Okay. |
| 09:44:10 | 2 | MR. COUTURE: Because while I represent BMW, he is |
| 09:44:13 | 3 | the more important representative. |
| 09:44:15 | 4 | THE COURT: All right. Well, let's get him on the |
| 09:44:18 | 5 | phone. What phone number should we reach him at? |
| 09:44:21 | 6 | MR. COUTURE: One moment. He is actually waiting for |
| 09:44:23 | 7 | the call. It's 1-773-805-5856. |
| 09:44:43 | 8 | THE COURT: All right. And all other counsel who |
| 09:44:45 | 9 | were here before are here again. |
| 09:45:10 | 10 | (Phone ringing.) |
| 09:45:10 | 11 | THE COURT: He was waiting for the call? |
| 09:45:11 | 12 | MR. COUTURE: He was. |
| 09:45:13 | 13 | (Mr. Toohey on teleconference call.) |
| 09:45:13 | 14 | MR. TOOHEY: Hello? |
| 09:45:14 | 15 | THE COURT: Mr. Toohey? |
| 09:45:15 | 16 | MR. TOOHEY: Yes. |
| 09:45:16 | 17 | THE COURT: Yeah, this is Chief Judge Holderman. I |
| 09:45:19 | 18 | am here in open court, and I have got a lot of your friends |
| 09:45:22 | 19 | with me. I am going to ask them to identify themselves |
| 09:45:26 | 20 | starting with their right and moving to the left. |
| 09:45:33 | 21 | MR. GOLDEN: Bob Golden, additional counsel for |
| 09:45:36 | 22 | Martin's Bulk, Your Honor. |
| 09:45:37 | 23 | MR. BRIESEMEISTER: Jason Briesemeister on behalf of |
| 09:45:40 | 24 | Martin's Bulk and Sam Franke. |
| 09:45:41 | 25 | THE COURT: I'm going to ask you to keep your voices |

Colleen M. Conway, Official Court Reporter

6

| | | |
|---|---|---|
| 09:45:43 | 1 | up because Mr. Toohey is getting his information through that |
| 09:45:48 | 2 | microphone that's right there on the podium. |
| 09:45:51 | 3 | MR. COUTURE: Tim Couture on behalf of BMW, Your |
| 09:45:54 | 4 | Honor. |
| 09:45:54 | 5 | MR. BURKE: Richard Burke for the plaintiff. |
| 09:45:56 | 6 | MR. FISHER: Carl Fisher for International Paper, |
| 09:45:58 | 7 | Universal Am Can, as successor for Overnight Express and Ox, |
| 09:46:02 | 8 | L.L.C. |
| 09:46:03 | 9 | THE COURT: All right. I appreciate, Mr. Toohey, |
| 09:46:05 | 10 | your taking the time, and I appreciate everybody's evaluation |
| 09:46:11 | 11 | of this. |
| 09:46:12 | 12 | When I read the motion, I thought to myself, rather |
| 09:46:15 | 13 | than have a briefing schedule on this, which I think might |
| 09:46:20 | 14 | really not provide me the information that I need to assist you |
| 09:46:27 | 15 | in getting this information that you desire to get from the |
| 09:46:35 | 16 | disassembly of this car, I wanted to talk with you about it. |
| 09:46:40 | 17 | And so is there -- I know there is this alternative |
| 09:46:47 | 18 | proposed by the defense to modify the destructive disassembly, |
| 09:47:03 | 19 | and what can we do to try to preserve everybody's evidence? |
| 09:47:08 | 20 | So, Mr. Burke, do you have any ideas? You have won |
| 09:47:10 | 21 | so far -- |
| 09:47:11 | 22 | MR. BURKE: Yes. |
| 09:47:11 | 23 | THE COURT: -- and I thought I'd turn to you first. |
| 09:47:14 | 24 | Do you have any ideas? Because what I was thinking, if there |
| 09:47:20 | 25 | is some destruction, I might have to allow at trial the defense |

Colleen M. Conway, Official Court Reporter

7

| | | |
|---|---|---|
| 09:47:27 | 1 | to say, "Well, we couldn't analyze it because the plaintiff's |
| 09:47:33 | 2 | expert was able to" -- "and under Court order was able to cut |
| 09:47:40 | 3 | and disassemble in a way that destroyed our ability to evaluate |
| 09:47:46 | 4 | the matter." So, do you have any thoughts? |
| 09:47:47 | 5 | MR. BURKE: Judge, I think we have to start from the |
| 09:47:50 | 6 | proposition that I honestly think their objection is rather |
| 09:47:55 | 7 | disingenuous. |
| 09:47:57 | 8 | THE COURT: Okay. |
| 09:47:57 | 9 | MR. BURKE: This is an extremely conventional |
| 09:48:00 | 10 | procedure in any fuel tank case and, quite frankly, in any |
| 09:48:05 | 11 | vehicle product liability case. Portions of vehicles are |
| 09:48:10 | 12 | removed. Because there is damage and, in this case, some |
| 09:48:14 | 13 | significant damage to the vehicle, parts cannot be removed as |
| 09:48:19 | 14 | they would in accord with the service manual. |
| 09:48:21 | 15 | THE COURT: Right. |
| 09:48:22 | 16 | MR. BURKE: And there is no damage to be done to the |
| 09:48:27 | 17 | parts that are in issue here, Judge, the fuel tank and the |
| 09:48:31 | 18 | related components of the fuel system. Rather, the only thing |
| 09:48:37 | 19 | that has to have some minimal damage, Judge, is some area |
| 09:48:41 | 20 | surrounding it that -- in order simply to free up the fuel |
| 09:48:46 | 21 | tank. Because there has been crunching of metal and some |
| 09:48:50 | 22 | damage, we -- it just can't be unscrewed as it normally would |
| 09:48:54 | 23 | if you were in a service station. |
| 09:48:56 | 24 | So whatever is, you know, being cut simply to free it |
| 09:49:02 | 25 | up I honestly don't think at all really relates to their |

Colleen M. Conway, Official Court Reporter

8

| | | |
|---|---|---|
| 09:49:07 | 1 | defense, nor is it the actual component parts that are at issue |
| 09:49:12 | 2 | here. |
| 09:49:13 | 3 | So I think we -- you know, I think this is a "second |
| 09:49:20 | 4 | stage" objection that the defense ultimately made. They |
| 09:49:25 | 5 | originally agreed to removal of the tank because it, in all |
| 09:49:30 | 6 | honestly, is a really normal, conventional procedure in this |
| 09:49:35 | 7 | type of case, and then, all of a sudden, they voiced an |
| 09:49:40 | 8 | objection at the actual inspection. |
| 09:49:43 | 9 | We don't want to do any unnecessary damage, Judge. |
| 09:49:47 | 10 | There's no point in that for us. The -- and whatever defense |
| 09:49:53 | 11 | BMW wants to maintain that requires viewing the car as it |
| 09:50:00 | 12 | currently exists, Judge, has been documented over -- multiple |
| 09:50:05 | 13 | times through videotape, countless photographs, I mean, |
| 09:50:09 | 14 | literally thousands, so -- |
| 09:50:11 | 15 | THE COURT: I have seen none of that, so I don't even |
| 09:50:13 | 16 | know what it looks like. |
| 09:50:14 | 17 | MR. BURKE: Okay. |
| 09:50:14 | 18 | THE COURT: I just know that this tractor-trailer hit |
| 09:50:19 | 19 | it from behind when it was stopped at a red light, crushing the |
| 09:50:24 | 20 | back part -- and I just know this from reading the materials -- |
| 09:50:30 | 21 | and causing a fire to occur. |
| 09:50:35 | 22 | MR. BURKE: Correct. And, therefore, Judge, the -- |
| 09:50:38 | 23 | when BMW's objection basically is that they feel that any |
| 09:50:46 | 24 | destruction for the purpose of removing the tank prevents them |
| 09:50:49 | 25 | from showing a jury what the tank in the car looked like right |

Colleen M. Conway, Official Court Reporter

9

| | | |
|---|---|---|
| 09:50:56 | 1 | after the collision -- and I think that is disingenuous because |
| 09:51:00 | 2 | it's been videotaped, photographed. They have had their own |
| 09:51:03 | 3 | experts out there. Not only that, BMW actually did a secret |
| 09:51:08 | 4 | inspection without telling the plaintiff before we ever saw the |
| 09:51:11 | 5 | car. I must have a hundred photos they took. |
| 09:51:14 | 6 | So it -- the condition of the car is so well |
| 09:51:19 | 7 | documented, Judge, that any destruction -- and when we say |
| 09:51:24 | 8 | "destruction," I am using that term really loosely. I mean, |
| 09:51:28 | 9 | we're sawing an exhaust pipe, for example, or a -- |
| 09:51:30 | 10 | THE COURT: I thought the exhaust pipe had already |
| 09:51:33 | 11 | been sawed. |
| 09:51:34 | 12 | MR. BURKE: Well, it -- |
| 09:51:35 | 13 | THE COURT: Part of it had already been sawed. |
| 09:51:37 | 14 | MR. BURKE: Yeah, I think that got started. But, you |
| 09:51:40 | 15 | know, we're talking about simply very minimal things, |
| 09:51:45 | 16 | alterations for the sole purpose of freeing up this tank so |
| 09:51:50 | 17 | everybody can see the entire tank. |
| 09:51:52 | 18 | Now, if you'd like, Judge -- and I obviously |
| 09:51:55 | 19 | certainly appreciate your efforts here, but I am certainly |
| 09:52:00 | 20 | happy to file a -- you know, a motion to strike the objections, |
| 09:52:04 | 21 | or response or whatever you want to call it, in which we would |
| 09:52:08 | 22 | include all the photos that we submitted to Judge Cox that I |
| 09:52:12 | 23 | think form the basis for her proper decision here. |
| 09:52:14 | 24 | THE COURT: Oh, you submitted them to her? She |
| 09:52:16 | 25 | didn't transmit any of that -- |

Colleen M. Conway, Official Court Reporter

10

| | | |
|---|---|---|
| 09:52:17 | 1 | MR. BURKE: Oh, sure, Judge. We -- |
| 09:52:18 | 2 | THE COURT: -- information to us, to me. |
| 09:52:20 | 3 | MR. COUTURE: Both sides, Your Honor. |
| 09:52:21 | 4 | MR. BURKE: We -- yes, both sides. We had very |
| 09:52:22 | 5 | lengthy briefing, Judge, and -- |
| 09:52:24 | 6 | THE COURT: Okay. All right. Well -- |
| 09:52:25 | 7 | MR. BURKE: -- affidavits and photos and -- |
| 09:52:27 | 8 | THE COURT: So you have been that route. |
| 09:52:28 | 9 | MR. BURKE: Oh, yeah. |
| 09:52:28 | 10 | THE COURT: So what I'd like to do is see if we can |
| 09:52:31 | 11 | work out something that you could agree to. |
| 09:52:35 | 12 | And so what is it -- I guess I'll turn to Mr. Toohey |
| 09:52:39 | 13 | on the phone or anyone else who's here in the courtroom. What |
| 09:52:44 | 14 | is it that is the real problem here? |
| 09:52:47 | 15 | MR. TOOHEY: Your Honor, the problem is -- and I |
| 09:52:51 | 16 | would like to address this argument of disingenuity by Mr. |
| 09:52:57 | 17 | Burke. |
| 09:52:57 | 18 | They made a proposal for non-destructive testing to |
| 09:53:01 | 19 | be -- the testing to be done according to the manual. They |
| 09:53:06 | 20 | said that if there was anything else, they would confer with |
| 09:53:12 | 21 | us. |
| 09:53:12 | 22 | Our expert, when he saw that, he originally said, |
| 09:53:15 | 23 | "Well, we probably can't stop them from looking at it and |
| 09:53:18 | 24 | trying to get the tank out. It'll be difficult, but I would |
| 09:53:23 | 25 | want to be there to make sure that they don't do anything |

Colleen M. Conway, Official Court Reporter

11

| | | |
|---|---|---|
| 09:53:28 | 1 | that's destructive." |
| 09:53:20 | 2 | The importance of the evidence in integrated fashion |
| 09:53:33 | 3 | to us is that the allegation is crashworthiness of the entire |
| 09:53:38 | 4 | vehicle in an accident which is enormously severe, and once you |
| 09:53:43 | 5 | start taking the vehicle apart, you lose the overall effect of |
| 09:53:49 | 6 | visualizing what it looked like immediately post-accident. |
| 09:53:54 | 7 | The other point is that in the inspection protocol, |
| 09:53:58 | 8 | we were entitled to be there, and the plaintiff's expert was |
| 09:54:03 | 9 | supposed to confer with us before doing anything outside of the |
| 09:54:07 | 10 | manual. |
| 09:54:08 | 11 | The original problem occurred at the inspection when |
| 09:54:11 | 12 | we said, "No. You're doing too much cutting. What do you want |
| 09:54:15 | 13 | to do?" And he refused to do anything or say anything. Mr. |
| 09:54:18 | 14 | Burke refused to do or say anything in a cooperative manner |
| 09:54:22 | 15 | other than to say, "We have an absolute right to do this," |
| 09:54:24 | 16 | which, under their protocol, they proposed they did not have. |
| 09:54:29 | 17 | So we objected because it appeared to our expert at |
| 09:54:34 | 18 | that time that they were going to engage in much greater and |
| 09:54:38 | 19 | much more extensive destructive disassembly than we had |
| 09:54:44 | 20 | contemplated or that we would agree to. |
| 09:54:47 | 21 | And basically our concern and our expert's concern -- |
| 09:54:50 | 22 | and it's based upon some experience that we have had and he has |
| 09:54:53 | 23 | had with Mr. Stilson specifically, the expert -- I know Judge |
| 09:54:57 | 24 | Cox didn't like to hear that, but it's true -- that Mr. Stilson |
| 09:55:01 | 25 | has a propensity to destroy evidence, to cut it all apart and |

Colleen M. Conway, Official Court Reporter

12

| | | |
|---|---|---|
| 09:55:05 | 1 | then say, "Look at this junk here," when it comes time to trial |
| 09:55:09 | 2 | instead of looking at it as an integrated piece of evidence. |
| 09:55:13 | 3 | Now, our expert at that time and in every subsequent |
| 09:55:19 | 4 | affidavit has said that in his view, everything that |
| 09:55:25 | 5 | Mr. Stilson wants to look at and needs to look at can be seen |
| 09:55:30 | 6 | without doing destructive tests, destructive disassembly; that |
| 09:55:34 | 7 | it can be done with probes, much like surgery is conducted |
| 09:55:39 | 8 | today. You take a little TV, scope, and you look in there and |
| 09:55:45 | 9 | you poke it around, and you can see everything inside the tank |
| 09:55:50 | 10 | and beyond the tank, including any points of penetration of the |
| 09:55:56 | 11 | tank. |
| 09:55:57 | 12 | THE COURT: Well, Mr. -- |
| 09:55:58 | 13 | MR. TOOHEY: And the other point is that -- |
| 09:56:01 | 14 | THE COURT: Just a second, Mr. Toohey. |
| 09:56:01 | 15 | MR. TOOHEY: Another point is -- |
| 09:56:02 | 16 | THE COURT: If I could stop you for a second. Mr. |
| 09:56:04 | 17 | Burke has said that there has been substantial videotaping and |
| 09:56:10 | 18 | photographic evidence acquired. |
| 09:56:13 | 19 | MR. TOOHEY: There has been. There's -- he's |
| 09:56:15 | 20 | absolutely correct there. |
| 09:56:16 | 21 | THE COURT: So -- |
| 09:56:17 | 22 | MR. TOOHEY: All experts have gone out there and |
| 09:56:19 | 23 | looked at it. But we can't present that to the jury. I mean, |
| 09:56:21 | 24 | we can present evidence, we can present videotapes, we can |
| 09:56:24 | 25 | present it all, but it's not the same as showing it to them |

Colleen M. Conway, Official Court Reporter

13

| | | |
|---|---|---|
| 09:56:27 | 1 | in -- just letting them see the vehicle. |
| 09:56:31 | 2 | THE COURT: So you are intending to bring the damaged |
| 09:56:34 | 3 | vehicle into the courtroom or take it to a location where the |
| 09:56:38 | 4 | jury will view it? |
| 09:56:40 | 5 | MR. TOOHEY: Yes. We have -- the last time I tried a |
| 09:56:42 | 6 | case in federal court, we had a viewing of the vehicle in the |
| 09:56:46 | 7 | basement by the jury. We had brought -- |
| 09:56:51 | 8 | THE COURT: In the basement of the courthouse? |
| 09:56:53 | 9 | MR. TOOHEY: We have brought portions or at least |
| 00:56:56 | 10 | portions of vehicles, quarter sections of vehicles into the |
| 00:56:58 | 11 | courtroom in the past. |
| 09:57:00 | 12 | THE COURT: All right. And that's what you are |
| 09:57:01 | 13 | attempting to preserve, the vehicle itself, so that it can be |
| 09:57:05 | 14 | viewed as an integrated system? |
| 09:57:10 | 15 | MR. TOOHEY: Yes, Your Honor. Exactly. |
| 09:57:12 | 16 | THE COURT: Okay. |
| 09:57:15 | 17 | MR. TOOHEY: And that is the core evidence in this |
| 09:57:17 | 18 | case. Now, there was a leak of fuel from the fuel tank, but -- |
| 09:57:26 | 19 | THE COURT: Is that what ignited? |
| 09:57:28 | 20 | MR. TOOHEY: -- that we can -- it can be seen. It |
| 09:57:29 | 21 | was on the underside of the tank. |
| 09:57:29 | 22 | THE COURT: Is that what ignited? |
| 09:57:31 | 23 | MR. TOOHEY: It's immediately visible -- it's |
| 09:57:32 | 24 | immediately visible by -- |
| 09:57:32 | 25 | THE COURT: Is that what ignited? I have been |

Colleen M. Conway, Official Court Reporter

14

| | | |
|---|---|---|
| 09:57:36 | 1 | talking over you, I guess, or you have been talking over me. |
| 09:57:39 | 2 | Is that what ignited? |
| 09:57:41 | 3 | MR. TOOHEY: That -- yeah, that's -- yes, I believe |
| 09:57:45 | 4 | so. I mean, I think that's what the expert testimony is. |
| 09:57:45 | 5 | THE COURT: And is the -- |
| 09:57:47 | 6 | MR. TOOHEY: But the vehicle got crushed downward and |
| 09:57:51 | 7 | it was driven along for 3 or 400 feet with the truck on top of |
| 09:57:54 | 8 | it, and the underside of the vehicle got crushed down and was |
| 09:57:59 | 9 | riding along the road, kicking up sparks, and there's a cut in |
| 09:58:06 | 10 | the tank at that point. So there's a point at which fuel |
| 09:58:10 | 11 | can -- it's the bottom of the tanks, obviously -- Bradley is |
| 09:58:14 | 12 | going to take it out -- can flow out of the tank, and there's |
| 09:58:17 | 13 | sparks being created to ignite the gas right there. |
| 09:58:20 | 14 | So I'm pretty confident that without disclosing |
| 09:58:23 | 15 | anything too far in advance that that's what the expert |
| 09:58:26 | 16 | testimony is going to be as far as the initiation of the fire. |
| 09:58:29 | 17 | Now, if there is other points of penetration in the |
| 09:58:33 | 18 | back or above the tank, wherever it is that Mr. Stilson, their |
| 09:58:38 | 19 | expert, can't see, those -- all of those points we believe can |
| 09:58:42 | 20 | be visualized with a scope. |
| 09:58:44 | 21 | And we certainly believe that if they can be |
| 09:58:49 | 22 | visualized with a scope without destructive testing, that that |
| 09:58:52 | 23 | should be tried first, and that's what we've been proposing all |
| 09:58:55 | 24 | along. And if they can't -- and if the scope doesn't work, |
| 09:58:58 | 25 | then perhaps the next step would be a careful disassembly with |

Colleen M. Conway, Official Court Reporter

15

| | | |
|---|---|---|
| 09:59:04 | 1 | as little destruction as possible to the surrounding area, but |
| 09:59:07 | 2 | only if the scope does not work to provide a full visualization |
| 09:59:14 | 3 | of everything that they need to see. |
| 09:59:17 | 4 | THE COURT: Would your expert be willing to |
| 09:59:21 | 5 | participate in a scope review? And would you be willing to |
| 09:59:28 | 6 | fund the scoping, Mr. Toohey? |
| 09:59:32 | 7 | MR. TOOHEY: Well, I don't know if we talked yet |
| 09:59:34 | 8 | about the funding of scoping. It would be -- the vehicle is at |
| 09:59:38 | 9 | their expert's facility, not Stilson, but another guy, Dynamic |
| 09:59:43 | 10 | Safety in Libertyville. |
| 09:59:44 | 11 | THE COURT: You weren't on the phone yet. We had a |
| 09:59:47 | 12 | brief discussion about joint custody. |
| 09:59:50 | 13 | MR. TOOHEY: Yeah. Well, we're all paying for it. |
| 09:59:52 | 14 | THE COURT: I understand. |
| 09:59:53 | 15 | MR. TOOHEY: We're paying a quarter -- you know, |
| 09:59:55 | 16 | we're paying a quarter and I think that kind of thing. |
| 09:59:58 | 17 | THE COURT: Who's got the key? |
| 10:00:00 | 18 | MR. TOOHEY: The plaintiffs. |
| 10:00:02 | 19 | THE COURT: All right. All right. Well, Mr. Burke, |
| 10:00:06 | 20 | what do you think about trying one more technique, this scope |
| 10:00:12 | 21 | technique? |
| 10:00:12 | 22 | MR. BURKE: Judge, that was already addressed. My |
| 10:00:15 | 23 | expert filed an affidavit given to Judge Cox saying that it |
| 10:00:21 | 24 | wasn't adequate and that it doesn't permit a full and complete |
| 10:00:25 | 25 | view of all the potential areas for holes. |

Colleen M. Conway, Official Court Reporter

16

| | | |
|---|---|---|
| 10:00:28 | 1 | THE COURT: Did you try it? |
| 10:00:30 | 2 | MR. BURKE: It has not been tried, Judge. And quite |
| 10:00:33 | 3 | honestly, I don't know that that procedure has ever been used |
| 10:00:37 | 4 | in this type of case. I think it's -- |
| 10:00:40 | 5 | THE COURT: There's a first time for everything. |
| 10:00:42 | 6 | MR. BURKE: Well -- but, Judge, it's a proposal that |
| 10:00:45 | 7 | I -- I have to use the word again. It's a very disingenuous |
| 10:00:50 | 8 | one to suggest that this tank can be fully and properly |
| 10:00:54 | 9 | inspected by using a scope. It's a theory that was concocted |
| 10:01:00 | 10 | by the defense expert, Mr. Noble, in an effort to fend off what |
| 10:01:06 | 11 | he knows, and I think every lawyer standing here knows, is a |
| 10:01:11 | 12 | very reasonable and proper and conventional request to remove |
| 10:01:15 | 13 | this tank in as simple of a fashion as possible with as little |
| 10:01:24 | 14 | damage as possible to any surrounding structures. |
| 10:01:28 | 15 | You know, Mr. Toohey, by the way, was not present at |
| 10:01:33 | 16 | this original attempt of removal. Mr. Couture was there. |
| 10:01:37 | 17 | There was no vehement objection or refusal to participate in |
| 10:01:45 | 18 | removing this. |
| 10:01:46 | 19 | And Mr. Stilson was not trying to run headlong and do |
| 10:01:50 | 20 | as much damage as possible. Every -- his original protocol |
| 10:01:55 | 21 | specifies there has to be some degree of destructive testing. |
| 10:02:00 | 22 | Everyone knows that. It's impossible to remove this tank |
| 10:02:04 | 23 | because -- without some destruction because of the damage |
| 10:02:07 | 24 | already done to the surrounding area. |
| 10:02:10 | 25 | So, I mean, I have no objection to Mr. Stilson |

Colleen M. Conway, Official Court Reporter

17

| | | |
|---|---|---|
| 10:02:12 | 1 | removing it rather than the defense. In what their objection |
| 10:02:18 | 2 | they filed to you, Judge, they don't like Judge Cox's |
| 10:02:22 | 3 | reasonable suggestion that Mr. Noble do the actual removal, |
| 10:02:26 | 4 | which I think Judge Cox did in an effort to accommodate them. |
| 10:02:29 | 5 | THE COURT: Because they don't want the removal. |
| 10:02:32 | 6 | That's the -- |
| 10:02:33 | 7 | MR. TOOHEY: And we don't want it. We don't want the |
| 10:02:35 | 8 | removal, the destructive disassembly, and we don't want to |
| 10:02:41 | 9 | be -- have aspersions cast on our expert later on that he |
| 10:02:45 | 10 | participated in or that he did it -- |
| 10:02:46 | 11 | THE COURT: Yeah. What -- |
| 10:02:47 | 12 | MR. TOOHEY: -- when, in fact, we don't want it at |
| 10:02:49 | 13 | all. |
| 10:02:50 | 14 | But, Judge, I -- again, Mr. Burke is very casual and |
| 10:02:53 | 15 | very cavalier with his accusations of being disingenuous. Mr. |
| 10:02:58 | 16 | Burke also repeatedly testifies about how ordinary and how |
| 10:03:03 | 17 | everybody agrees, and everything that he says is nonsense, and |
| 10:03:08 | 18 | it is refuted by affidavits submitted by our expert. |
| 10:03:12 | 19 | As far as Mr. Stilson's conduct at the first |
| 10:03:14 | 20 | inspection, it is refuted by an affidavit, signed by our |
| 10:03:17 | 21 | expert, and by a declaration signed by Mr. Couture. Mr. -- |
| 10:03:22 | 22 | THE COURT: Yeah. Mr. Toohey -- |
| 10:03:22 | 23 | MR. TOOHEY: Every time Mr. Burke comes into court, |
| 10:03:25 | 24 | he's very cavalier: Everybody knows, everybody agrees. |
| 10:03:28 | 25 | This has never been done before. Mr. Noble said the |

Colleen M. Conway, Official Court Reporter

18

| | | |
|---|---|---|
| 10:03:32 | 1 | scoping is a normal procedure that is used -- |
| 10:03:36 | 2 | THE COURT: You know -- |
| 10:03:37 | 3 | MR. TOOHEY: -- in his business in order to visualize |
| 10:03:41 | 4 | things you cannot see -- |
| 10:03:42 | 5 | THE COURT: Mr. Toohey, you are not in my courtroom, |
| 10:03:45 | 6 | and -- |
| 10:03:46 | 7 | MR. TOOHEY: Yes, Your Honor. |
| 10:03:46 | 8 | THE COURT: I know you are not in my courtroom, |
| 10:03:48 | 9 | because you had Mr. Couture come on in today. But I have got |
| 10:03:52 | 10 | other cases I have to deal with. And the phrase "disingenuous" |
| 10:04:00 | 11 | is not persuasive. Countering disingenuousness with commentary |
| 10:04:08 | 12 | really is not persuasive. |
| 10:04:10 | 13 | What I am trying to do is get to the bottom to see if |
| 10:04:15 | 14 | we can preserve everyone's evidence so that it can be properly |
| 10:04:20 | 15 | evaluated. I mean -- |
| 10:04:23 | 16 | MR. TOOHEY: Your Honor, to respond -- |
| 10:04:24 | 17 | THE COURT: -- in reviewing the materials, I actually |
| 10:04:26 | 18 | don't even understand why the tank has to be removed if, in |
| 10:04:32 | 19 | fact, the damage to the tank that was caused by the accident is |
| 10:04:37 | 20 | visible. |
| 10:04:39 | 21 | I also think that if there is a means to put a scope |
| 10:04:47 | 22 | in the tank so that the tank can be examined from the inside, I |
| 10:04:55 | 23 | don't know why you'd have to remove it until you have evaluated |
| 10:05:00 | 24 | that there is some further damage that would allow an expert to |
| 10:05:10 | 25 | opine on the crashworthiness of the vehicle itself. I mean -- |

Colleen M. Conway, Official Court Reporter

19

| | | |
|---|---|---|
| 10:05:18 | 1 | MR. TOOHEY: Your Honor, I am in 100% agreement with |
| 10:05:24 | 2 | everything you said. I have been waiting for Mr. Stilson to |
| 10:05:27 | 3 | give us a reason why he needs to remove the tank, and all we |
| 10:05:30 | 4 | get is: Everybody removes the tank. We always remove the |
| 10:05:33 | 5 | tank. |
| 10:05:33 | 6 | THE COURT: And that's what I have heard from Mr. |
| 10:05:35 | 7 | Burke: This is just a traditional approach that we always do. |
| 10:05:38 | 8 | Well, you have been doing this for a long time, Mr. |
| 10:05:40 | 9 | Burke, and I understand that, but every case is different. |
| 10:05:43 | 10 | Every case is different. This is a different accident than any |
| 10:05:47 | 11 | other accident that ever occurred in connection with this |
| 10:05:52 | 12 | vehicle. |
| 10:05:53 | 13 | MR. BURKE: Judge, the reason -- and I thought I said |
| 10:05:57 | 14 | it originally -- is you can only see the bottom of the tank. |
| 10:06:02 | 15 | There's -- |
| 10:06:03 | 16 | THE COURT: Right. You can only see the bottom of |
| 10:06:04 | 17 | the tank, but if you put a scope inside the tank, you can see |
| 10:06:07 | 18 | the entire inside of the tank. And if there's further damage |
| 10:06:12 | 19 | that would cause further reason for you to believe and be able |
| 10:06:21 | 20 | to prove to a jury that this vehicle wasn't crashworthy, then |
| 10:06:25 | 21 | you can take further action. |
| 10:06:29 | 22 | But what I understand what the defense desires is |
| 10:06:32 | 23 | they want the jury to see the vehicle, not parts of the vehicle |
| 10:06:36 | 24 | laying around on a floor when the jury sees it. And so my |
| 10:06:44 | 25 | question is why not try the scope route? |

Colleen M. Conway, Official Court Reporter

20

| | | |
|---|---|---|
| 10:06:48 | 1 | MR. BURKE: Well, because Mr. Stilson responded and |
| 10:06:50 | 2 | gave an affidavit setting out his reasons, some of which |
| 10:06:54 | 3 | were -- |
| 10:06:54 | 4 | THE COURT: I disagree with that, then. I want the |
| 10:06:56 | 5 | scope to be done. Now the question is financing it. |
| 10:07:00 | 6 | Mr. Toohey? |
| 10:07:00 | 7 | MR. TOOHEY: I believe, Judge, we will undertake -- I |
| 10:07:03 | 8 | don't have the specific authority, but I think I can speak for |
| 10:07:05 | 9 | the client. We will undertake to have Mr. Noble come and |
| 10:07:12 | 10 | either rent or bring a scope with him, and he and Mr. Stilson |
| 10:07:17 | 11 | can jointly operate the scope, however they best see fit as |
| 10:07:21 | 12 | experts. |
| 10:07:23 | 13 | THE COURT: When can you get that accomplished? |
| 10:07:27 | 14 | MR. TOOHEY: I don't know. We would get on the phone |
| 10:07:30 | 15 | with Mr. Noble as soon as the Court has adjourned, and we could |
| 10:07:36 | 16 | report back within a day or two. |
| 10:07:39 | 17 | THE COURT: When is Mr. Stilson available? |
| 10:07:41 | 18 | MR. TOOHEY: We'd have to find out when Mr. Stilson |
| 10:07:43 | 19 | is available, too. So it'd have to be -- we'd have to |
| 10:07:45 | 20 | cooperate with plaintiff's counsel. |
| 10:07:46 | 21 | THE COURT: When is Mr. -- |
| 10:07:48 | 22 | MR. TOOHEY: Mr. Noble is in California, so it might |
| 10:07:50 | 23 | be a week or two. |
| 10:07:51 | 24 | THE COURT: When is Mr. Stilson available? |
| 10:07:54 | 25 | MR. BURKE: Judge, I don't know, but I'd obviously |

Colleen M. Conway, Official Court Reporter

21

| | | |
|---|---|---|
| 10:07:56 | 1 | try to make him available as soon as possible, certainly. |
| 10:07:58 | 2 | THE COURT: Okay. Well, let's set the case for |
| 10:08:00 | 3 | further status at the end of March -- you certainly should be |
| 10:08:03 | 4 | able to accomplish it by then -- and we will set some further |
| 10:08:08 | 5 | dates in the case at that time. This is going to delay things |
| 10:08:11 | 6 | a little bit. |
| 10:08:12 | 7 | I would certainly encourage you, after this scope |
| 10:08:17 | 8 | evaluation is done, to further evaluate whether it is necessary |
| 10:08:20 | 9 | to take the tank from the vehicle because the tank, of course, |
| 10:08:27 | 10 | as Mr. Burke has said, you can't follow the service manual, the |
| 10:08:34 | 11 | tank's been destroyed from the standpoint that it has been -- |
| 10:08:40 | 12 | it's no longer usable as a fuel tank. And so, consequently, |
| 10:08:44 | 13 | the question is was there sufficient protection to cause this |
| 10:08:54 | 14 | vehicle to be crashworthy or not. |
| 10:08:57 | 15 | So let's see where we are on March 28th. And I |
| 10:09:02 | 16 | appreciate everybody's efforts on this. |
| 10:09:05 | 17 | I am going to deny the motion now, deny the motion to |
| 10:09:10 | 18 | compel, leaving Judge Cox's order in place, but staying the |
| 10:09:20 | 19 | execution of that order until we have a chance to talk about |
| 10:09:26 | 20 | what you have found out from the scoping that's going to take |
| 10:09:29 | 21 | place between now and March 28th. Okay? |
| 10:09:32 | 22 | MR. COUTURE: Thank you. |
| 10:09:32 | 23 | MR. TOOHEY: Thank you, Your Honor. |
| 10:09:33 | 24 | THE COURT: Okay. |
| 10:09:34 | 25 | MR. BURKE: What time on the 28th, Judge? 9:00 a.m.? |

Colleen M. Conway, Official Court Reporter

CERTIFICATE

1
2
3
4
5    I, Colleen M. Conway, do hereby certify that the
6 foregoing is a complete, true, and accurate transcript of the
7 proceedings had in the above-entitled case before the
8 HONORABLE JAMES F. HOLDERMAN, Chief Judge of said Court. at
9 Chicago, Illinois, on February 19, 2013.
10
11
12    /s/ Colleen M. Conway, CSR,RMR,CRR    03/06/13
13    Official Court Reporter    Date
14    United States District Court
    Northern District of Illinois
15    Eastern Division
16
17
18
19
20
21
22
23
24
25

Colleen M. Conway, Official Court Reporter

22

| | | |
|---|---|---|
| 10:09:36 | 1 | THE COURT: That's at 9:00 a.m. |
| 10:09:37 | 2 | MR. BURKE: 9:00 a.m.? Thank you. |
| 10:09:39 | 3 | THE COURT: Thank you very much. |
| 10:09:39 | 4 | MR. TOOHEY: Thank you, Your Honor, very much. |
| 10:09:40 | 5 | THE COURT: Thank you. |
| | 6 | (Proceedings concluded.) |
| | 7 | |
| | 8 | |
| | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

Colleen M. Conway, Official Court Reporter