# Exhibit C

## THIRD SUPPLEMENTAL AFFIDAVIT OF MARK M. NOBLE

I, Mark M. Noble, being duly sworn upon oath, do declare and state as follows:

1. I am the same Mark M. Noble who signed three prior affidavits submitted to this Court dated November 14, 2012, November 28, 2012 and December 13, 2012. I am over the age of 18 years, competent to testify to all matters set forth herein, and if called to testify in open court, would testify to these same matters and facts as set forth herein. My Curriculum Vitae is attached.

2. Prior to March 16, 2013, I worked with Tim Couture to prepare for and rent the necessary equipment to inspect the subject vehicle in a non-destructive manner, as Mr. Couture advised had been ordered by the Court. Mr. Couture is one of the attorneys retained by BMW NA and BMW AG, who in turn retained me as an engineering consultant.

3. On March 16, 2013, Mr. Couture and I attended to participate in the non-destructive examination of the subject vehicle's fuel system and adjacent components. The inspection took place at Dynamic Safety LLC in Lake Zurich, Illinois. Plaintiff's representatives were his attorneys, Richard Burke and Shannon McNulty, and Thomas Green, who works at Dynamic Safety. On information and belief, Mr. Green is an engineering consultant retained by Plaintiff's counsel. The inspection was audio-visually recorded.

4. In addition to normal photography, at times supplemented with lights and mirrors, we used an Olympus I-Flex FX industrial videoscope ("scope") for the inspection. The scope is a small camera and light on the end of a long, thin articulating probe, through which remote stills and videos can be shown on a monitor and recorded. It allowed us to visualize many areas of the fuel tank and adjacent structure, even those areas not visible if the fuel tank had been destructively removed from the vehicle. We rented the scope and I returned to Lake Zurich, IL from California so that I could show Plaintiff's experts and his attorneys that all the areas they wanted to see could be seen non-destructively with the scope and associated equipment.

5. All experts and attorneys were able to watch the monitor to visualize what was shown by the scope and associated equipment during the six hour inspection. We utilized it to observe and also identify areas where further investigation was desired. Although the monitor that was available for all to watch continued to function, there were several times that the scope's recording function registered an "error" code. This usually occurred after it had recorded video for more than two minutes at one time. On each occasion, by agreement of all, we repeated the video recording in that area for a time period less than two minutes to capture the same views that we were uncertain had been recorded initially. On each such occasion, when we repeated the recording we were able to capture the location by recording it for less than two minutes. On occasion, I also offered to show Plaintiff's representatives areas where they expressed interest that could better be seen directly or with mirrors. By accomplishing these things, all areas of the fuel tank and surrounding structure were either recorded on the scope, or by a still camera.

6. By using the scope, and mirrors, I specifically sought to visualize and record all areas of the tank and vehicle that Plaintiff asserted by his expert's affidavit were not visible by the naked eye, including the top of the tank, the sides of the tank, the entire inside of the tank, the "fuel tank


EXHIBIT C

environment", and how the components located in proximity to the tank interacted with it. Using the scope and mirrors, we were able to visualize all of these things.

7. On several occasions during the inspection, either Mr. Couture or I asked Mr. Green or Plaintiff's counsel what areas they wanted to see, so that I could have the chance to use the scope or lights and mirrors to show those areas to them. On many occasions throughout the inspection, they requested that I show them specific areas in, around or near the tank or its adjacent structures. I was able to do so on each and every occasion. On a few occasions, I had to manipulate the probe for several minutes to align it and visualize the specified location. But I was able to do so and to demonstrate for them that the areas could be seen with appropriate use of the scope or mirrors and proper lighting. There were no exceptions.

8. Since the first inspection, I have been able to visualize the fuel tank and adjacent structures either directly or with mirrors. I was not informed during either of the first two inspections what Plaintiff's consultant wanted to see which caused him to insist on destructive testing. However, I was quickly convinced at the time that there was nothing relevant that could be seen by destructive removal of the tank that could not be seen with the human eye assisted by a scope, mirrors and lighting. This has been so since the first inspection. The use of the scope, supplemented by mirrors and lighting, not only permitted experts to see every point that could be seen after destructive disassembly of the fuel system, but it permitted visualization of all parts in relation to one another that would be lost by destructive disassembly and permitted visualization of certain parts that could not be seen even after the fuel system was destructively disassembled.

FURTHER, AFFIANT SAYTH NAUGHT

By: [signature]

Mark M. Noble

Sworn and signed before me this

**25TH** day of March, 2013.

[signature]
NOTARY PUBLIC

DANIEL PATRICK KELLY
Commission # 2005207
Notary Public - California
Santa Barbara County
My Comm. Expires Jan 26, 2017

# *NOBLE   ENGINEERING*         MARK M. NOBLE

112 E. DE LA GUERRA ST., SUITE 9    SANTA BARBARA, CALIFORNIA 93101    (805) 566 - 6672

## CURRICULUM VITAE

**POSITION:** PRESIDENT OF THE CONSULTING FIRM OF NOBLE ENGINEERING. ACTIVITIES INCLUDE ANALYSIS AND RECONSTRUCTION OF AUTOMOTIVE ACCIDENTS. COURT APPEARANCES ARE MADE TO PROVIDE EXPERT TESTIMONY.

**AREAS OF EXPERTISE:**
- RECONSTRUCTION OF ACCIDENTS INVOLVING PASSENGER CARS, TRUCKS, RECREATIONAL VEHICLES & MOTORCYCLES
- AUTOMOTIVE COMPONENT AND SYSTEM FAILURE ANALYSIS
- OCCUPANT KINEMATICS AND INJURY CAUSATION
- FUEL SYSTEM DESIGN AND PERFORMANCE
- FIRE ANALYSIS

**EXPERIENCE:** PRINCIPAL RESEARCH ENGINEER WITH THE CONSULTING FIRM OF NOBLE ENGINEERING SINCE 1987. RESEARCH ENGINEER WITH THE CONSULTING FIRM OF SEVERY INCORPORATED FROM 1980 TO 1987. RECONSTRUCTED OVER 1500 ACCIDENTS AND PROVIDED COURT TESTIMONY THROUGHOUT THE COUNTRY. CONDUCTED RESEARCH AND TESTING INVOLVING: FUEL SYSTEM SAFETY, OCCUPANT KINEMATICS, VEHICLE DYNAMICS, CRASHWORTHINESS, COMPONENT FAILURE, SEAT STRENGTH, DOOR / LATCH PERFORMANCE, ROLLOVER / ROOF STRENGTH AND OCCUPANT RESTRAINT SYSTEMS.

AUTOMOTIVE ENGINEER WITH CHRYSLER CORPORATION FROM 1969 TO 1980. EXPERIENCED IN MOST ASPECTS OF AUTOMOBILE DESIGN, DEVELOPMENT, AND MANUFACTURE. HELD POSITIONS IN THE FOLLOWING DEPARTMENTS: FUEL SYSTEMS, CHASSIS DESIGN, PERFORMANCE EVALUATION, ASSEMBLY PLANT RESIDENT ENGINEERING, MECHANICAL COMPONENTS, ENGINEERING RESEARCH, EXHAUST AND EVAPORATIVE EMISSIONS, INTERNATIONAL ENGINEERING, AND PRODUCT PLANNING.

EXECUTIVE LEVEL ENGINEER RESPONSIBLE FOR THE DESIGN AND DEVELOPMENT OF ALL CHRYSLER CORPORATION PASSENGER CAR, TRUCK, AND RECREATIONAL VEHICLE FUEL SYSTEMS. CHAIRED THE CORPORATE FUEL SYSTEM INTEGRITY COMMITTEE RESPONSIBLE FOR ALL AREAS OF VEHICLE DESIGN AND DEVELOPMENT WITH REGARD TO FUEL SYSTEM SAFETY AND COMPLIANCE WITH FEDERAL MOTOR VEHICLE SAFETY STANDARD 301. ALSO CHAIRED THE CORPORATE FUEL SYSTEM WARRANTY AND RELIABILITY COMMITTEE AND SERVED ON THE CORPORATE SAFETY COMMITTEE, RESPONSIBLE FOR ALL AREAS OF VEHICLE SAFETY.

INITIATED AND DIRECTED SAFETY RESEARCH PROJECTS IN VARIOUS FIELDS, INCLUDING FIRE TEST STUDIES OF VEHICLES AND FUEL SYSTEM COMPONENTS, PLASTIC FUEL TANKS, FUEL SHUT-OFF VALVES AND BLADDER FUEL CELLS. PLANNED AND DIRECTED NUMEROUS VEHICLE IMPACT TESTS AND MANY IMPACT SIMULATOR AND LABORATORY TESTS. PARTICIPATED IN OVER 1000 FULL-SCALE VEHICLE CRASH TESTS, ANALYZING PERFORMANCE, EVALUATING CRASHWORTHINESS, AND FORMULATING DESIGN IMPROVEMENTS.

**EDUCATION:** MASTER OF SCIENCE - MECHANICAL ENGINEERING, CUM LAUDE, UNIVERSITY OF MICHIGAN, 1971. BACHELOR OF SCIENCE - MECHANICAL ENGINEERING, CUM LAUDE, UNIVERSITY OF MICHIGAN, 1968. ACCIDENT RECONSTRUCTION COURSE, NORTHWESTERN UNIVERSITY. BIOMECHANICS OF IMPACT TRAUMA COURSE, ASSOC. ADVANCE. AUTO. MEDICINE. PHOTOGRAMMETRY, ROLLOVER, RESTRAINT COURSES; SOCIETY OF AUTOMOTIVE ENGINEERS.

**SOCIETIES AND HONORS:** ASSOC. FOR THE ADVANCEMENT OF AUTOMOTIVE MEDICINE. SOCIETY OF AUTOMOTIVE ENGINEERS. NATIONAL FIRE PROTECTION ASSOC. INTERNATIONAL STANDARDS ORGANIZATION. PI TAU SIGMA (NATIONAL MECHANICAL ENGINEERING HONORARY SOCIETY) - CHAPTER PRESIDENT. TAU BETA PI (NATIONAL ENGINEERING HONORARY SOCIETY).

*AUTOMOTIVE ACCIDENT RESEARCH AND ANALYSIS*