IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No.: 09 CV 5340 |
| MARTIN'S BULK MILK SERVICE, INC., SAMUEL G. FRANKE, CSX INTERMODAL, INC., INTERNATIONAL PAPER COMPANY, UNIVERSAL AM CAN LTD., Successor to OVERNITE EXPRESS, INC., and OX LLC, BMW of NORTH AMERICA, LLC, a corporation, BAYERISCHE MOTOREN WERKEAKTIENGESELLSCHAFT, a corporation, BMW AG, a corporation, and KARL KNAUZ MOTORS, INC., a corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge James F. Holderman Magistrate Judge Susan Cox |
| Defendants. | ) ) ) | |

**UNIVERSAL AM-CAN LTD'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF UACL'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the defendant, Universal Am Can, Ltd. ("UACL") d/b/a and successor to Overnite Express, Inc. ("OEI"), by and through its attorneys, Carlton D. Fisher, William Yu and Cecilia A. Horan of HINSHAW & CULBERTSON LLP, and for its Statement of Material Facts pursuant to Local Rule 56.1, it states as follows:

**I.      DESCRIPTION OF THE PARTIES, JURISDICTION AND VENUE**

As alleged in the current complaints of 09 C 5340 and 11 C 2687, on July 3, 2008, plaintiff Jeffrey Scheinman was seated in his stopped car, a convertible manufactured by defendant BMW and sold by defendant BMW distributor Karl Knauz Motors, at the intersection of Skokie Valley Road and Half Day Road in Highland Park, Illinois, when he was rear-ended by a truck driven by Samuel Franke ("Franke"), an employee of Martin's Bulk Milk Service

130293224v1 0903067

("MBMS"). The shipper of the cargo being transported by Franke and MBMS at the time of the accident was defendant International Paper Company ("IPC").

On June 12, 2008, Universal Am-Can Ltd. ("UACL") purchased the operations of Overnite Express Inc. (OEI), which had previously contracted with IPC to provide transportation services for IPC's paper products, from OEI and its related company OX LLC ("OX"). Prior to the date of the accident, UACL entered into a Master Brokerage Agreement with MBMS whereby MBMS would be available to deliver loads to UACL's customers at UACL's request. On July 3, 2008, IPC communicated with UACL about a three-part IPC load that UACL then brokered to MBMS, which in turn assigned the load to Franke.

In 09 CV 5340, this Court has already determined that it has diversity jurisdiction over the trucking parties to this case. As the Court noted in footnote 2 of its April 12, 2011 decision denying UACL's and IPC's motion to dismiss, *Scheinman v. Martin's Bulk Milk Service*, 2011 WL 1399260 (N.D.Ill.) at *1 Fn 2, "it is undisputed that plaintiff is a citizen of Illinois, MBMS is a citizen of Wisconsin, Franke is a citizen of Wisconsin, ... IPC is a citizen of New York and Tennessee, UACL is a citizen of Delaware and Michigan, OEI is a citizen of Minnesota, and OX [LLC] is a citizen of Minnesota."

In the consolidated products liability case, 11 C 2687, that plaintiff brought against BMW and the BMW dealership, this Court determined there is jurisdiction based on diversity. (See Order of Judge Conlon dated June 28, 2011 in the case of *Murray Scheinman v. Bayerische Motoren Werke Aktiengesellschaft, et al*, United States District Court, Northern District of Illinois, Court No. 11 CV 02687 (now consolidated with the present case)).

Venue is proper in the Northern District of Illinois pursuant to 28 USC §1391(a)(2) because a "substantial part of the events giving rise to the claims occurred in this district."

130293224v1 0903067

## III. APPENDIX OF EXHIBITS

Since IPC, UACL and OX are moving for summary judgment in separate motions but using similar evidence to support their motions, and in an effort to reduce the number of exhibits used and simplify the references to those exhibits, IPC, UACL and OX are filing a Joint Appendix of Exhibits ("JAE") for reference in their motions for summary judgment. The following exhibits are attached hereto and made a part of the JAE:

| | |
|---|---|
| Exhibit 1. | Excerpts from the Plaintiff's Fifth Amended Complaint (Doc No. 168). |
| Exhibit 2. | Excerpts from the Transcript of Deposition of Samuel Franke, Volume I, dated January 12, 2010. |
| Exhibit 3. | Excerpts from the Transcript of Deposition of Samuel Franke, Volume II, dated February 21, 2012 |
| Exhibit 4. | Excerpts from the Transcript of Deposition of David Martin, Volume I, dated January 12, 2010 |
| Exhibit 5. | Excerpts from the Transcript of Deposition of David Martin, Volume II, dated February 20, 2012 |
| Exhibit 6. | Excerpts from the Transcript of Deposition of Janet Berndt, dated September 28, 2012 |
| Exhibit 7. | Excerpts from the Transcript of Deposition of Gina Hubbs, dated April 16, 2012 |
| Exhibit 8. | Excerpts from the Transcript of Deposition of John Moorer, dated April 16, 2012 |
| Exhibit 9. | Excerpts from the Transcript of Deposition of Mark Limback, dated April 17, 2012 |
| Exhibit 10. | Excerpts from the Transcript of Deposition of Melody Hansen, dated July 19, 2012 |
| Exhibit 11. | Excerpts from the Transcript of Deposition of Joan Anderton, dated April 10, 2012 |
| Exhibit 12. | Excerpts from the Transcript of Deposition of William Crawford, dated June 6, 2012 |

130293224v1 0903067

| Exhibit 13 | Excerpts from the Transcript of Deposition of Steve Mundy, dated June 12, 2012 |
| Exhibit 14 | Master Brokerage Agreement between UACL and MBMS dated June 12, 2008 |
| Exhibit 15 | October 2007 Agreement between IPC and OEI |
| Exhibit 16 | "Amendment 1" to IPC and OEI Agreement substituting UACL for OEI |
| Exhibit 17 | Asset Purchase Agreement between UACL and OEI/OX LLC |
| Exhibit 18. | Excerpts from the Transcript of Deposition of Robert Elsholtz, dated April 17, 2012 |
| Exhibit 19 | MBMS and Franke's Responses to IPC/UACL's Requests for Admissions |

## III.  STATEMENT OF MATERIAL FACTS

### A.  Background Facts

1.  Murray Scheinman, Plenary Guardian of the Estate and Person of Jeffrey J. Scheinman, a Disabled Person ("Plaintiff"), filed a Fifth Amended Complaint ("Complaint") on July 26, 2011, seeking recovery from IPC for personal injuries sustained during a highway auto accident and alleging vicarious liability, **not** direct liability or independent tortious conduct of IPC/UACL/OEI/OX, for the acts and omissions of Samuel Franke, and specifically that

> On and before July 2, 2008, defendant Franke was a duly authorized employee, agent and/or apparent agent of defendant, [MBMS, CSXI, CELTIC, TL, IPC, OEI], and at all times mentioned herein was acting in the course and scope of said employment, agency and apparent agency.

(JAE 1.)

2.  The accident involving Franke and Scheinman occurred on July 3, 2008, on Skokie Valley Road at or near its intersection with Half Day Road in Highland Park, Illinois. (JAE 1.)

4

3.     Franke was a truck driver employed by MBMS and was driving the tractor owned by MBMS on July 3, 2008, when he rear-ended the back of the vehicle driven by Plaintiff.  As a result of the collision, Plaintiff sustained injuries and is disabled.  (JAE 1.)

4.     Martin's Bulk Milk Service ("MBMS") was the owner of the tractor that was driven by Franke that collided with Plaintiff's vehicle.  (JAE 1; JAE 12, pp. 8, 20, 24-24, 29, 34, 53; JAE 13, pp. 7, 16, 22, 85.)

### B.     Relationship Between UACL, OEI and IPC

5.     On May 21, 2008, at the direction of UACL President Mark Limback, Gina Hubbs of UACL sent a letter to IPC requesting an assignment of the IPC-OEI agreement for OEI to provide IPC with transportation services for IPC products, since UACL would take over OEI's operations in June 2008 in accordance with an agreement UACL contemplated, but had yet to effectuate, with OEI.  (JAE 7, pp. 43. 49; JAE 9, pp. 56-57; JAE 13, pp. 37-38.)

6.     Effective June 13, 2008, IPC and UACL agreed to "Amendment No. 1" to the IPC-OEI agreement such that IPC would assign the 2007 agreement to UACL, and UACL would assume the responsibilities of the 2007 IPC-OEI transportation agreement.  (JAE 7, p. 68; JAE 9, p. 63; JAE 13, pp. 33, 41-42, 46-47, 49, 62, 99.)

7.     On June 13, 2008, UACL acquired the trucking and brokerage operations of OEI in an Asset Purchase Agreement such that UACL took over the previous OEI trucking services and OEI, for all intents and purposes, ceased to operate.  (JAE 7, pp. 35, 42, 50, 55; JAE 9, pp. 46-47, 49-51, 55; JAE 18, pp. 6-8, 12, 16.)

8.     The amended October 2007 contract between IPC and UACL, effective June 13, 2008, contains a section entitled "Independent Contractor" which provides that UACL shall perform all services under the agreement as an independent contractor to IPC and, under no

130293224v1 0903067

circumstances, shall IPC be construed as having responsibility for UACL's safety, means or methods. (JAE 9, p. 99; JAE 11, pp. 71-72; JAE 12, p. 59; JAE 13, p. 82.)

### C.    Relationship Between UACL and MBMS

9.    As IPC's transportation services provider beginning June 13, 2008, UACL had an obligation to fulfill the terms of the IPC/UACL contract and, in order to do so, it turned to MBMS to provide the same trucking services that MBMS had provided in the past for OEI with regard to its 2007 contract with IPC. (JAE 7, pp. 76, 102; JAE 9, pp.17, 83-85.)

10.    In May 2008, in preparation for the eventual UACL purchase of OEI, UACL brokerage manager, John Moorer, sent a draft UACL Master Brokerage Agreement to MBMS. (JAE 8, p. 64.)

11.    In order for MBMS to act as a carrier on loads that UACL was brokering, UACL had several requirements for MBMS: (1) the three page Master Brokerage Agreement must be signed; (2) MBMS would have to provide a copy of its authority to operate; (3) MBMS must provide proof of insurance; (4) MBMS must provide a completed W-9; (5) MBMS must complete and return the carrier survey form, and (6) all information has to be faxed to the UACL phone number. (JAE 7, pp. 84, 86, 135, 137; JAE 10, pp. 100-103.)

12.    MBMS signed and agreed to the UACL Master Brokerage Agreement, effective as of June 12, 2008 and on July 3, 2008, that provided, among other things, that MBMS is an independent contractor to UACL and is not to be deemed an agent of UACL. (JAE 7, pp. 110-111, 124; JAE 9, pp. 107-108; JAE 10, pp. 127-130.)

13.    Pursuant to an agreement between UACL and IPC for delivery of IPC's products to its customers, UACL brokered the subject load to MBMS. (JAE 11, pp. 35, 78.)

130293224v1 0903067

14.     After June 13, 2008, when picking up IPC products and transporting them from the IPC Midwest Distribution Center, MBMS was delivering goods under the UACL Master Brokerage Agreement. (JAE 7, p. 76; JAE 9, p. 84.)

**D.     Franke's Conduct Was Controlled by MBMS, Not UACL**

15.     Franke was employed by MBMS as a driver since 1999 and was so employed on the date of the occurrence. (JAE 2, pp. 6, 10, 58; JAE 4, pp. 15, 153; JAE 5, pp. 307, 362, 506.)

16.     His work was always assigned through MBMS and his supervisor was David Martin and the Martins of MBMS. (JAE 2, pp. 10, 11; JAE 3, p. 123.)

17.     Franke never had any conversations with anyone at UACL concerning the load he was hauling on July 3, 2008 or any of the loads he hauled before July 3, 2008. (JAE 2, p. 39-40.)

18.     UACL never gave MBMS or Franke instructions or directions concerning Franke. (JAE 4, p. 144; JAE 5, p. 326.)

19.     UACL never directed Franke to use any particular route or measure, score or evaluate his work. (JAE 3, p. 447.)

20.     Franke was instructed by MBMS to take the shortest, most direct route. (JAE 3, p. 123; JAE 6, pp. 37-38.)

21.     No one from MBMS told Franke what route to take from Hammond to Wilton because Franke knew the route. (JAE 6, p. 42.)

22.     Franke would pick up a load at the MBMS terminal in Wilton, Wisconsin, deliver it to the Chicago area, re-load, and then bring a load back to the Wilton, Wisconsin MBMS terminal. (JAE 6, p. 30.)

130293224v1 0903067

23.     On the day of the occurrence, Franke transported a load from Wilton, Wisconsin to Chicago, Illinois and he was assigned that load through dispatch at MBMS. (JAE 6, pp. 103-104.)

24.     David Martin and Pat Podlena of MBMS had the responsibility of coordinating Franke's pickup of a load on a day to day basis with the IPC Hammond Distribution Center. (JAE 6, p. 39.)

**E.     Neither Franke nor MBMS Represented Franke to be UACL's Agent, Just MBMS' Employee**

25.     Franke never considered himself to be an employee [or agent] of UACL, OEI, or IPC. (JAE 2, p. 47.)

26.     Neither David Martin nor Franke ever represented to anyone that Franke was an agent of UACL and Franke did not consider himself to be an employee of IPC. (JAE 2, pp. 44-45, 47, 58); (JAE 4, pp.142-143.)

27.     David Martin represented only that Franke was an employee of MBMS and that he received direction, control, supervision and management from MBMS. (JAE 4, pp. 143, 159.)

**F.     IPC Had No Involvement in the Method of Payment to MBMS/Franke.**

28.     Franke received a paycheck and W2 form from MBMS, and MBMS deducted his payroll taxes. (JAE 2, p. 46; JAE 4, p. 18.)

29.     UACL never paid Franke his salary, wages, cost of repairs or maintenance, supplies, travel expenses or health benefits including health insurance, workers compensation insurance coverage, pension plan, retirement accounts, profit sharing, vacation pay, or sick pay. (JAE 3, p. 454; JAE 4, p. 146; JAE 5, pp. 348, 350.)

30.     IPC would only pay UACL and not its contractor directly. (JAE 11, p. 59.)

130293224v1 0903067

G.   **UACL Had No Involvement With Providing Tools, Materials or Equipment to MBMS/Franke.**

31.   Franke was not required by MBMS to wear a uniform; however, on occasion, he would wear a hat or a jacket that said "Martin's Bulk Milk Service." (JAE 2, p. 46.)

32.   Franke never wore clothing that said "International Paper Company." (JAE 2, p. 47.)

33.   MBMS provided Franke with the equipment he needed to do his job, including his truck, generally, and the truck he was driving on the date of the occurrence. (JAE 2, p. 10.)

34.   UACL never provided Franke with a truck or supplied the graphics, placard, stickers or logos on the tractor or trailer. (JAE 3, p. 447; JAE 5, p. 347.)

35.   UACL did not have any requirements regarding loading the trailer and never qualified, hired, disciplined, fined, counseled or fired any of the MBMS drivers. (JAE 11, p. 176.)

36.   UACL never inspected the tractor, trailer, chassis or container via a pre-trip inspection. (JAE 11, p. 176).

37.   MBMS owned, and was responsible for maintenance of, the tractor Franke was driving on the date of the accident. (JAE 2, pp. 12, 46; JAE 3, p. 139; JAE 4, pp. 18, 25, 77-79.)

38.   UACL was not responsible for the maintenance of the tractor or trailer, the expenses of operation such as gas and oil, or for obtaining any licenses or permits for the tractor or trailer. (JAE 5, p. 347.)

39.   UACL never required Franke to inspect, clean, or maintain his tractor or trailer, or require him to use a designated place for the cleaning, servicing, or gassing of his tractor-trailer. (JAE 3, p. 449; JAE 5, pp. 328, 335.)

130293224v1 0903067

40. UACL never provided him with tools or instrumentalities he needed to do his work. (JAE 3, p. 446; JAE 4, p. 145.)

41. UACL never provided Franke with clothing or log books, a co-driver, or money with which to purchase gas. (JAE 3, p. 447; JAE 5, p. 328.)

42. UACL never provided any directions or instructions on where or how to purchase gas, supplies or services while driving the truck. (JAE 6, p. 194.)

43. UACL never dictated to any drivers that came to the Hammond distribution center how to use their log books, what clothing to wear, what equipment should be used, how to operate his tractor on the road, or report what was going on with their driving. (JAE 6, p. 173.)

**H.      UACL Did Not Monitor or Discipline the Conduct of MBMS Driver Franke.**

44. MBMS kept a driver qualification file on Franke, reviewed his work annually, and provided him with an employee handbook which contained instructions from MBMS on how to use the fuel pump, how to fill out MBMS paperwork, what MBMS expected of him, and MBMS safety procedures, including instructions on how to do a pre-trip inspection, and what to do in the event of an accident. (JAE 3, pp.107, 112, 118; JAE 5, pp. 282, 287, 365.)

45. With respect to the driver handbook and other documentation concerning safety that MBMS gave its drivers like Franke, at no time or place did any of those documents indicate that a MBMS driver should contact IPC or UACL after an accident occurred. (JAE 6, p. 132.)

46. With respect to the operating procedures and policies that MBMS provided to its drivers like Franke, where those materials refer to dispatchers or being dispatched, the dispatchers being referenced are the MBMS dispatchers. (JAE 6, pp. 134-35.)

10

47.     UACL never called to check up on Franke or to find out whether he made it back to Wilton, never required him to report in to IPC, and never required him to notify IPC of anything that was happening while he was on the road. (JAE 3, p. 450; JAE 5, pp. 336, 481.)

48.     UACL never fined Franke for not being in compliance with any requirement or dictated what hours he needed to work. (JAE 3, p. 454; JAE 5, p. 338.)

49.     UACL never hired, disciplined, counseled, or qualified Franke as a driver. (JAE 3, p. 454; JAE 5, p. 340.)

50.     UACL never had or exercised the right to discipline Franke. (JAE 3, p. 454; JAE 5, p. 346.)

51.     UACL never instructed Franke on his appearance or personal grooming standards, and did not maintain a personnel file on him. (JAE 3, p. 454; JAE 5, p. 327.)

52.     UACL never conducted safety meetings or informational meetings which Franke was required to attend. (JAE 3, p. 461.)

53.     UACL never kept track of his hours of service to ensure he was in conformity with Federal Motor Carrier Safety Regulations. (JAE 3, p. 454; JAE 5, p. 345.)

54.     UACL never required Franke to take a physical exam. (JAE 3, p. 454; JAE 5, p. 346.)

55.     UACL never directed Franke to use any particular route to use in moving IPC products and did not measure, score or evaluate his work. (JAE 6, pp. 194, 447.)

**I.      IPC/UACL Did Not Learn of the Accident From MBMS/Franke.**

56.     IPC did not learn about the existence of the accident until about a year after the accident. (JAE 11, p. 17.)

11

57.    Melody Hansen of UACL first learned of the July 3, 2008 collision when UACL/IPC's lawyer, Carl Fisher, called her in 2012. (JAE 10, pp. 137-138.)

**J.    The Facts Surrounding the Accident Demonstrate That Neither IPC Nor UACL Controlled Franke.**

58.    UACL was unaware of how the delivery was executed and had no influence over it or any direct contact with MBMS concerning its delivery (JAE 11, pp. 20, 23, 28.)

59.    After he was hired by MBMS, he was assigned to a dedicated run from Hammond, Indiana to Wilton, Wisconsin, hauling paper products for the shipper, IPC. (JAE 3, pp. 107, 132.)

60.    IPC did not know whether UACL was going to haul the load with its own driver or broker it out to another driver who was not an IPC employee and did not know it was Franke, in particular, who was hauling its freight. (JAE 11, pp.16, 95, 132.)

61.    Even though he had been doing this run for a number of years, Franke would still get a daily call from MBMS indicating where he was to go, his pickup number for the load, and his reservation number for the empty chassis he would pick up at the intermodal yard. (JAE 2, pp. 26; JAE 3, pp. 201, 377; JAE 4, pp. 56-57.)

62.    Melody Hansen of UACL, the UACL representative who faxed broker confirmation sheets to MBMS, never spoke with MBMS driver Franke about the July 3, 2008 trip or any other Franke trip. (JAE 10, p. 138.)

63.    Melody Hansen of UACL, the UACL representative who faxed broker confirmation sheets to MBMS, never provided any directions, instructions, tools, instrumentalities, safety instructions, driving instructions, discipline, fines, or other indicia of control to Franke; moreover, she did not require Franke to stay in communication or contact with her as a representative of UACL. (JAE 10, pp. 140-142.)

130293224v1 0903067

64.     MBMS, not IPC or UACL, dispatched Franke to transport the subject load.  (JAE 3, pp. 23, 26; JAE 4, p. 164.)

65.     When he was hauling the load on July 3, 2008, Franke considered himself to be an employee of MBMS and he was hauling the load on behalf of his employer.  (JAE 2, p. 44.)

66.     He received all of his instructions and directions from his employer, MBMS, with regard to the pickup and delivery he did on July 3, 2008.  (JAE 2, p. 53.)

67.     There were three Memo Bills (bills of lading) prepared by IPC for this load because the load was destined for three different places in Minneapolis.  (JAE 2, p. 32; JAE 11, p. 94.)

68.     Melody Hansen of UACL did not receive copies of IPC Memo Bills (bills of lading); after the deliveries were made to IPC customers, the brokered carrier (MBMS) sent the executed Memo Bills to UACL for payment.  (JAE 10, pp 54-55.)

69.     The bills of lading contained standard information concerning customer-required delivery instructions for the load.  (JAE 5, p. 483; JAE 11, p. 104.)

70.     The delivery information did not apply to Franke because he was not delivering the load to the delivery location, but dropping the load in Wilton, Wisconsin, for later delivery in Minnesota by another MBMS driver.  (JAE 5, p. 486.)

71.     Franke signed the bills of lading after the trailer was loaded.  (JAE 2, pp. 20, 32.)

72.     Franke's signature means that he was the driver that picked up the load and was responsible for the load until he got to Wilton.  (JAE 2, p. 20.)

73.     After Franke's truck was loaded, nobody from IPC gave him directions on how to drive his truck or what to do with his load once he departed the Hammond distribution center. (JAE 3, p. 441; JAE 11, p.132.)

130293224v1  0903067

74.     After the occurrence, David Martin had no choice but to terminate Franke from his employment at MBMS based on the severity of the collision. (JAE 6, p. 59.)

75.     Neither IPC nor UACL had anything to do with the termination of Franke from MBMS. (JAE 6, pp. 138-39.)

**K.      MBMS and Franke Have Admitted That There Are No Documents That Show Franke Was the Agent of IPC or UACL or That Show IPC or UACL Was the Principal of Franke**

76.     IPC and UACL served multi-item requests for admissions on MBMS and Franke pertaining to documents that purport to show a principal-agent relationship between IPC and Franke or between UACL and Franke. (JAE 19.)

77.     MBMS' and Franke's responses to the Requests for Admissions establish that MBMS and Franke do not believe there are any written documents memorializing a principal agent relationship between IPC and Franke or between UACL and Franke. (JAE 19.)

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By:  s/Carlton D. Fisher

Carlton D. Fisher
William Yu
Cecilia Horan
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
(312) 704-3450

14