IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person,<br><br>    Plaintiff,<br><br>v.<br><br>MARTIN'S BULK MILK SERVICE, INC., SAMUEL G. FRANKE, INTERNATIONAL PAPER COMPANY, UNIVERSAL AM CAN LTD., Successor to OVERNITE EXPRESS, INC., and OX LLC, BMW of NORTH AMERICA, LLC, a corporation, BAYERISCHE MOTOREN ERKEAKTIENGESELLSCHAFT, a corporation, BMW AG, a corporation, and KARL KNAUZ MOTORS, INC., a corporation,<br><br>    Defendants. | Case No.: 09 cv 5340<br><br>Judge James F. Holderman<br><br>Magistrate Susan E. Cox |

## INTERNATIONAL PAPER COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

NOW COMES the defendant, International Paper Company ("IPC"), by and through its attorneys, Carlton D. Fisher, William Yu and Cecilia A. Horan of HINSHAW & CULBERTSON LLP, and for its Memorandum of Law in Support of its Motion for Summary Judgment, it states as follows:

### I. SUMMARY OF LEGAL ARGUMENT

Samuel Franke ("Franke") was not acting as the employee, agent or apparent agent of IPC on July 3, 2008, when he rear-ended the BMW convertible occupied by Jeffrey Scheinman. In order for a shipper of products like IPC to be the "employer" of Franke, there must be some evidence that IPC paid him directly, hired him after he applied for employment, processed necessary IRS paperwork for his wages, and otherwise demonstrated an employer-employee

relationship. Martin Bulk Milk Service's (MBMS) and Franke's admissions that MBMS was his employer should end all discussion of this allegation.

The claim of "apparent agency" requires some pre-accident relationship between the plaintiff and IPC or Franke such that Mr. Scheinman believed that Franke was working as an employee or agent of IPC, much like an emergency room patient might believe that the doctors treating her are employees of the hospital as opposed to the separate corporation that employs the ER doctors. Clearly that was not the case when Franke rear-ended the plaintiff's vehicle.

For a principal-agent relationship to exist between Franke and IPC, there must be evidence of control and direction that surpasses the minimal and ancillary indicia of a shipper providing simple details of where and when a load can be picked up and when and where it should be delivered. Recent Illinois appellate and local federal court decisions about shippers that acted similarly to IPC support IPC's conclusion that Franke was not its agent.

General principles of Illinois agency law support IPC's argument that it did not "control" the actions of Franke. Even directions or instructions about ancillary matters do not convert IPC into Franke's principal. Just as employment of an independent contractor ("IndCtr") does not create an agency relationship, when IndCtr #1 in turn contracts with IndCtr #2, any employee of IndCtr #2 does not become the employee or agent of the initial person who hired IndCtr #1.

If a shipper does not control the details of a driver's work, namely moving cargo from point a to point b, then a shipper cannot be held vicariously liable for the negligent driving of the putative agent. Moreover, although a shipper like IPC is not in the same shoes as a broker of transportation services like UACL, the principles of Illinois appellate and federal court cases dealing with brokers supports IPC's conclusion that it should not be held vicariously responsible for the actions of Franke, especially where IPC had no specific knowledge of Franke himself.

130430076v1 0903067

## II. APPLICABLE STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th cir. 2007). The existence of a duty is a question of law and must be decided in the first instance. *Steuri v. Prudential Insurance Company of America*, 282 Ill.App.3d 753, 668 N.E.2d 1066 (1st Dist. 1996). Where the Court determines no duty exists, summary judgment is proper. *Puttman v. May Excavating Co.*, 118 Ill.2d 107, 514 N.E.2d 188 (1987).

## III. LEGAL ARGUMENT

### A. SHIPPERS LIKE INTERNATIONAL PAPER COMPANY DO NOT OWE A DUTY TO INDEMNIFY MEMBERS OF THE MOTORING PUBLIC LIKE THE PLAINTIFF.

A recent First District appellate case and two federal court decisions make it very clear that a shipper can not be held responsible if it exhibits a lack of the requisite control required for vicarious responsibility. In *Dowe v. Birmingham Steel*, 357 Ill.App.3d 391, 963 N.E. 2d 344 (1st Dist. 2011), plaintiff sought damages from Birmingham Steel arising out of a trucking/railroad accident. Birmingham Steel acted as a shipper of rebar. Birmingham Steel obtained summary judgment as against the railroad and injured Amtrak passengers. The appellate court affirmed.

While acknowledging that agency is generally a question of fact, the Court stated it will decide cases as a matter of law where there is no material issue. "[T]he factors to be considered in determining this issue [of agency] are: the right to control the manner in which the work is performed; the right to discharge; the method of payment; who provides tools, materials or equipment; the level of skill required to perform the work; and who deducts or pays for

3

insurance, social security, and taxes on the employee's behalf." *Dowe, supra.* at 351. While no single factor is determinative, the right to control the means and methods of the work is the most important factor, *i.e.*, it is considered the hallmark of agency. *Id.*

In *Dowe*, Plaintiff sought to argue that agency was established by the following evidence: (a) the large volume of hauling by the trucker for the shipper; (b) trucker's assertions that he deemed himself Birmingham Steel's house truck; (c) the trucker hauled **_all_** of Birmingham's oversized loads of rebar; (d) Birmingham Steel had written rules governing the conduct of drivers at the steel mill; and, (e) Birmingham Steel had the right to terminate the services of a driver if it believed a driver to be unsafe. Notwithstanding this evidence, the court held that none of these factors supported agency or created an issue of material fact.

In affirming summary judgment, the court noted that: (1) the trucker chose his own routes; (2) the trucker controlled his own hours; (3) the trucker provided and maintained his own equipment; (4) the trucker was paid directly by the motor carrier, which also provided fringe benefits; (5) the shipper had no authority to discharge the trucker from his employment with the carrier; and, (6) the trucker's work was performed pursuant to the carrier's rules. These undisputed facts demonstrated that no agency and/or employment relationship existed between the shipper and the truck driver.

In *Wilson McCray v. Stokes*, 2003 WL 22901509 (N.D. Ill.), the United States District Court for the Northern District of Illinois interpreted Illinois law, in particular, *Shoemaker v. Elmhurst-Chicago Stone Co., Inc.*, 273 Ill.App.3d 916, 652 N.E.2d 1037 (2nd Dist. 1994), and concluded that shippers do not exhibit the requisite indicia of control for them to be held vicariously liable for an individual trucker's negligent acts. In *Wilson-McCray*, Birmingham Steel was once again alleged to be a shipper that had vicarious responsibility for a truck driver

130430076v1 0903067

whose negligence in crossing railroad tracks caused injuries to many passengers on an Amtrak train. The passengers and the railroad defendants joined forces and argued that the truck driver was the agent of the shipper.

The *Wilson McCray* plaintiffs cast the following facts as supportive of a claim of agency: (a) the truck driver was to follow a set of written rules; (b) the truck driver had a long-time relationship with the shipper pursuant to which he performed all of the shipper's over-sized rebar hauling; (c) the shipper retained the right to discharge a driver based on a customer's complaint; (d) the truck driver deemed himself to be the "house truck" and considered himself to be on a "dedicated run"; (e) truck drivers were required to complete their tasks within a set time period; and (f) truck drivers were to report any collisions or accidents to the shipper.

Even these facts were insufficient to establish a question of fact as to an agency relationship. In rejecting the plaintiffs' and railroad's arguments, the federal court noted, among other things, that written agreements do not necessarily establish conclusively that a shipper has a right to control the way in which a truck driver does his job. Contractual terms or sentences that merely specify the particular hauling task, e.g. delivery in a timely fashion, do not dictate or control the method or manner in which the task is to be completed. Observing that the existence of contract provisions between a shipper and a trucker or his employing motor carrier do not necessarily create a question of fact, just as a contract provision stating that the contractual label of "independent contractor" does not end the inquiry, the federal court opined that "it is the actual conduct of the parties that determines whether one is an independent contractor or an agent." *Id*, at p. 5.

Multiple acts of hauling loads do not by themselves create an agency relationship in the trucking industry. "The suggestion that a contractor's volume of work for a particular entity can

transform him into the [shipper's] agent is unsupported in Illinois law." *Id.* at p. 5. Using an analogy that is particularly apropos to the instant case, if the argument of "volume equals agency" is carried to its logical extreme, then "a company that frequently ships via an entity like Federal Express would be liable for any wrongful acts of the Federal Express driver while delivering the company's packages." *Id.* at p. 5. Moreover, a shipper monitoring the delivery process of its cargo load to ensure prompt delivery to its customer "no more creates an agency relationship than does the designation of 'overnight delivery' on a Federal Express package." *Id.* at p. 6.

In *Boyle v. RJW Transport, Inc.*, 2008 WL 4877108 (N.D. Ill.), although the motor carrier ("RJW") admitted it employed its negligent driver, the shipper ("SKF") denied that its relationships with the motor carrier and its driver were that of principal agent. RJW and SKF entered into a "Transportation Agreement" that is known in the industry as a "dedicated carriage contract." The contract recognized a strategic goal of "100 percent on-time service" and required the submission of detailed reports about transit time so that quarterly assessments about profitability and cost cutting could be conducted. The agreement acknowledged that RJW's status would be that of an independent contractor and that RJW would have exclusive control and direction of any person operating the tractors. Appendices to the contract contained "metrics" (detailed conditions) such as: RJW drivers would undergo SKF orientation training and processing; communications would be operational prior to start up; operational plans 100% on time without delay; monthly "Steering Committee Meetings"; and RJW project manager who would work on a daily basis at the SKF supplied office and report to both SKF and RJW management.

The *Boyle* court acknowledged several important factors that weighed against finding any agency relationship. The shipper did not: (a) dictate how carrier's manager performed his job; (b) control drivers' routes; (c) monitor drivers' conduct away from shipper's facility; (d) train the drivers how to drive; (e) issue them any equipment; or (f) have the power to fire the drivers.

In responding to plaintiff's claims of agency, the court highlighted several factors that did not establish an agency relationship: (1) on-time delivery goal did not dictate a specific method of accomplishing that goal; (2) contemplated changes to comment a lateness problem were not solely dictated by the shipper; (3) required communications and meetings between shipper and carrier did not automatically require shipper mandates; (4) pressure of a carrier manager at the shipper facility facilitated the communication between the two parties; (5) language requiring driver compliance with laws and regulations does not render an independent contractor or agent; and (6) shipper's right to reject—but not fire – a driver.

All of these factors evinced a lack of control over the conduct of the driver. Applying and paraphrasing the *Boyle* court's conclusion to the facts of this case, "[n]o reasonable jury could find that [any of the factors asserted by plaintiff] gave [IPC] control over how [MBMS] drivers drove their trucks." *Id.* at p. 8.

Clearly, notwithstanding the existence of new organizational structures to efficiently move cargo from point A to point B, e.g., third-party logistics companies, brokers, freight forwarders, etc., the law has not gone so far as to make a shipper an indemnitor or guarantor to any member of the motoring public who is harmed by the negligent driving of a truck driver.

**B. GENERAL PRINCIPLES OF ILLINOIS AGENCY LAW SUPPORT THE CONCLUSION THAT FRANKE WAS NOT THE AGENT OF IPC.**

The claims against IPC by Plaintiff are brought under Illinois law. To prevail on his negligence claims under Illinois law, Plaintiff must ultimately prove that the named defendants

130430076v1 0903067

breached a duty owed to him thereby causing his injuries. *Scheinman*, 2011 WL 1399260 at 4. As this Court previously noted, the test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal. *Scheinman*, 2011 WL 1399260 at 5.

Assuming for purposes of argument that a question of fact as to agency exists in this case, IPI 50.10 helps to define the considerations in determining agency. The instruction includes such elements as: method of payment; the right to discharge; the skill required in the work to be done; who provides tools, material or equipment; whether the worker's occupation is related to that of the employer; and, whether the employer deducted for withholding tax.

But the critical consideration in finding an agency or employment relationship is "whether the alleged agent retains the right to control the manner and method of doing the work." *Petrovich v. Share Health Plan of Illinois*, 188 Ill.2d 17, 31, 719 N.E.2d 756 (1999). As noted above, there may be instances in which the question of agency can be decided as a matter of law when the relationship is so clear to be indisputable. *Dowe v. Birmingham Steel*. 963 N.E. 2d 344, Ill. App. (1st Dist. 2011); *Lang v. Silva*, 306 Ill.App.3d 960, 715 N.E.2d 708, 717 (1st Dist. 1999); *Shoemaker v. Elmhurst-Chicago Stone Company, Inc.*, 273 Ill.App.3d 916, 920-21, 652 N.E.2d 1037, 1040 (1st Dist. 1995). This is one such case.

Agency is a fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control and consent by the other so to act. Restatement Second, Agency §1. "A principal-agent relationship is said to exist where the principal has the right to control the manner and method in which the agent performs his work and the agent has the ability to subject the principal to personal liability."

8

*Lang v. Silva citing Knapp v. Hill*, 276 Ill.App.3d 376, 380, 657 N.E.2d 1068 (1st Dist. 1995). Only when the person for whom service is rendered retains the right to control the details of the work and the method or manner of its performance does an employee-employer relationship exist. *Perkinson v. Manion*, 163 Ill.App.3d 262, 516 N.E.2d 977 (5th Dist. 1987). *See Wilson-McCray v. Stokes* 2003 WL 22901569 at p. 4 (N.D. Ill. 2003)(it is the actual conduct of the parties that determines whether one is an independent contractor or an agent).

Agency is a fiduciary relationship which results from the *manifestation of consent* by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. *Lang v. Silva,* 715 N.E.2d at 716, *citing Knapp v. Hill,* 276 Ill.App.3d 376, 380, 657 N.E.2d 1068 (1st Dist.1995)("[a] principal-agent relationship is said to exist where the principal has the right to control the manner and method in which the agent performs his work and the agent has the ability to subject the principal to personal liability.") If the person for whom service is rendered retains the right to control the details of the work and the method or manner of its performance, an employee-employer relationship exists. *Perkinson v. Manion,* 516 N.E.2d at 977.

## C. DIRECTIONS OR INSTRUCTIONS ABOUT ANCILLARY MATTERS DO NOT EVINCE THE NECESSARY CONTROL TO ESTABLISH A PRINCIPLE-AGENT RELATIONSHIP UNDER ILLINOIS AGENCY LAW.

Control over "activities ancillary to, but not part of, the work itself" is insufficient to establish an agency relationship. *Boyle v. RJW Transport, Inc.*, No.5 C 1082, 2008 WL 4877108 (N.D.Ill. June 20, 2008). Significantly, courts have found no agency relationship to exist even when the shipper has dictated carrier activities ancillary to, but not part of, the work itself. *See Petersen v. U.S. Reduction Co.*, 267 Ill.App.3d 775, 783, 641 N.E.2d 845,851 (1st Dist. 1994) (shipper's help loading truck was "preliminary task necessary before the driver could begin to

9

perform" and shipper's instruction as to where to deliver load "did not control the manner in which the job was done but rather specified the particular hauling task").

The mere fact that a defendant designates a route is not relevant to or dispositive of the question of agency. *Cable v. Perkins*, 121 Ill. App. 3d 127, 129, 459 N.E.2d 275 (3d Dist. 1984); *Shoemaker v. Elmhurst-Chicago*, 273 Ill. App. 3d 916, 652 N.E.2d 1037 (1994). Illinois appellate courts have also held that the fact that a defendant weighs a truck and/or assists in loading a truck are preliminary tasks necessary before a driver could begin his work activities and are irrelevant to the issue of whether an agency relationship and/or employment contract exists. *Shoemaker, supra.* 652 N.E.2d at 1041. A defendant's instruction to a trucker as to where he should pick up or deliver a load also does not constitute "control of the manner" in which the job is done. *Shoemaker, supra.*

Contractual provisions that require compliance with traffic laws or purchase of liability insurance likewise do not evince control. The law is clear that contractual "[l]anguage requiring compliance with laws and regulations does not render an independent contractor an agent…" *Boyle v. RJW Transport, Inc.*, No.5 C 1082, 2008 WL 4877108 (N.D.Ill. June 20, 2008) *citing Continental Ins.Co. v. Empire Fire & Marine Ins. Co.*, 157 F.3d 610, 612-13 (8th Cir. 1998); *United States v. Mut. Trucking Co.*, 141 F.2d 655, 657 n. 1 (6th Cir. 1944); *Narayan v. EGL, Inc.*, No. 05-C4181, 2007 WL 2021809, at *9 (N.D.Cal. July 10, 2007). "Similarly, contract provisions requiring that an independent contractor carry liability insurance do not make an independent contractor an agent. *See Nat'l Continental Ins.*, 157 F.3d at 611-12." *Boyle* at *8.

D. **SELECTION OF AN INDEPENDENT CONTRACTOR DOES NOT ESTABLISH A PRINCIPLE-AGENT RELATIONSHIP UNDER ILLINOIS AGENCY LAW.**

One who hires an independent contractor is not liable for the negligent or intentional acts or omissions of the contractor. *Gomien v. Wear-Ever Aluminum, Inc.*, 50 Ill.2d 19,21,276 N.E.2d

10

336 (1971); *Lang v. Silva*, 715 N.E.2d at 716; *Kouba v. East Joliet Bank*, 135 Ill.App.3d 264, 481 N.E.2d 325 (3rd Dist. 1985). As a general rule, one who subcontracts with an independent contractor is not liable for the acts or omissions of the latter. *Rangel v. Brookhaven Constructors, Inc.*, 307 Ill. App. 3d 835, 838, 719 N.E.2d 174, 176 (1999). The rationale for this rule is that a principal who is unknowledgeable about the details of some task usually delegates that work to an independent contractor and does not supervise the details of the independent contractor's work. *Martens v. MCL Constr. Corp.*, 347 Ill.App.3d 303, 313, 807 N.E.2d 480, 488 (1st Dist. 2004). Therefore, the principal is not in a good position to prevent negligent performance. *Id.*

On the other hand, an independent contractor is one who renders services in the course of an occupation and represents the will of the person for whom the work is done only with respect to the result and not the means by which the result is accomplished. "An independent contractor undertakes to produce a certain result but is not controlled as to the method through which he obtains that result." *Id., citing Spivey* v. *Brown*, 150 Ill.App.3d 139, 143,502 N.E.3d 23 (1ll. App. Ct. 1986). One who hires an independent contractor is generally not liable for the negligent or intentional acts or omissions of the contractor. *Gomien v. Wear-Ever Aluminum. Inc.,* 50 Ill.2d 19,21, 276 N.E.2d 336 (1971).

E.  CONTROL OVER THE "MEANS AND METHODS" OF A CONTRACTOR'S WORK IS REQUIRED TO SUPPORT A CLAIM OF AGENCY.

While Illinois courts have not expressly defined means and methods in the context of general agency litigation, they have defined means and methods as it relates to construction contract cases where a defendant's liability rested on the right to control the work. Appellate courts have defined means and methods in such cases as generally relating to operative details or routine aspects of the work. *Rangel v. Brookhaven Construction*, 307 Ill.App.3d 835, 789

11

N.E.2d 174 (1st Dist. 1999). *See also Moiseyev v. Rots Building & Development*, 369 Ill.App.3d 338, 800 N.E.2d 1128 (3d Dist. 2006). Moreover, in *Horowitz v. Holabid & Root*, 212 Ill.2d 1, 816 N.E.2d 272 (Ill. 2004), the Illinois Supreme Court affirmed summary judgment where the alleged principal did not control or authorize the agent's precise method of performing the work and/or failed to ratify the agent's negligent conduct at a later time.

Although the *Shoemaker* court never explicitly defined the terms "means, manner or method" in a transportation setting, the important question remains: did the principal exercise control or retain the right to control the details of the driver's work, namely to move cargo from Point A to Point B? *Shoemaker, supra*. In *Oliveira-Brooks v. RE/Max International*, 372 Ill.App.3d 127, 865 N.E.2d 252 (1st Dist. 2007), the appellate court affirmed summary judgment in favor of defendants who did not control the means and methods of a putative agent's work, *i.e.*, his driving activity. Several factors were important for the court's decision making process. The contracts between the parties sought to exclude the existence of agency. The alleged principal did not control the day-to-day activity of the alleged agent. The fact that the alleged agent was required to list the alleged principal as an additional insured was irrelevant to the issue of agency absent other rights of control. It is not a new concept that if a broker requires a carrier to maintain liability insurance, this does not create a material issue of fact on issues of agency so as to defeat a motion for summary. *Manahan v. Dailey News*, 50 Ill. App. 3d 9, 16, 365 N.E.2d 1045 (3rd Dist. 1977).

Moreover, the *Oliveira-Brooks* court rejected suggestions of apparent agency in that the injured plaintiff was not relying on an alleged agency relationship between the defendants at the time of the accident.

130430076v1 0903067

## IV. ARGUMENTS BY UNIVERSAL AM-CAN LTD

In support of its motion for summary judgment, UACL has filed a legal memorandum that references this IPC memorandum; to the extent legal arguments set forth in this memorandum support UACL's legal position, UACL has adopted them.

Likewise, IPC adopts those arguments set forth by co-defendant UACL in its legal memorandum that support its position. However, because many of the "broker" cases cited by UACL support IPC's legal position as a shipper, IPC sets forth in the concluding paragraphs of its legal memorandum the most important points from those cases.

In the most cited case about broker liability *Schramm v. Foster*, 341 F. Supp. 2d 536 (D. Md 2004), the federal court had no difficulty granting summary judgment to the broker C.H. Robinson ("CHR") where it had brokerage contracts with motor carriers that agreed to haul loads for shippers.

The *Schramm* court determined that although the broker provided the driver with directions to and from the warehouse, dispatched the driver, directed him to pick up and deliver the load at specific times, gave the driver specific instructions regarding the load including requiring Foster to use load locks on the trailer, monitored the driver's performance by requiring him to call when he had successfully picked up the load and then periodically throughout the trip, it explicitly stated that the directions provided were simply for informational purposes, the court that these facts did not indicate that the broker exercised sufficient control over the driver's movements to make him an agent. "Even some reservation of control to supervise the manner in which the work is done, or to inspect the work during its performance does not destroy the independent contractor relationship where the contractor is not deprived of his judgment in the execution of his duties." *Id.* at 545. The only thing that CHR could control was "the ultimate

130430076v1 0903067

result – the delivery of the load to its final destination." *Schramm*, 341 F.Supp.2d at 543. Therefore, CHR's conduct did not establish an agency relationship.

Four years after *Schramm* in *Jones v. C.H. Robinson Worldwide, Inc.*, 558 F. Supp. 2d 630 (W.D. Va. 2008), CHR was granted summary judgment on another plaintiff's claims of agency. In deciding that the truck driver was not an agent of CHR under Virginia agency/independent contractor law, the court reiterated what its sister court in Maryland had decided in *Schramm*, namely that mere control over the ultimate result – delivery of the cargo to its intended destination – is insufficient to permit a case to go to a jury for decision and, consequently, summary judgment is appropriate. Although CHR did arrange pickup dates and times, provided pickup and delivery addresses to the carrier, communicated information from the shipper regarding the loading and unloading of cargo, provided other directions regarding the transportation of the load, and required drivers to call in to report the status of shipments, the Court determined that all of these activities were directed toward the incidental details required to accomplish the ultimate purpose for which CHR had been hired by its shippers-the delivery of a load to its proper destination in a timely fashion. *Id.* at 639. In addition, the *Jones* court also concluded that the brokerage contract's language establishing an independent contractor relationship was not vitiated by any facts developed in discovery.

Although in the Illinois appellate case of *Sperl v. C.H. Robinson*, 406 Ill.App.3d 1051, 946 N.E.2d 463 (3d Dist. 2011), the same broker, CHR, was ultimately found responsible to the plaintiff, the language and facts of that case still support the proposition that Franke was not acting as an agent for the once removed shipper, IPC, here.

Unlike CHR in *Sperl*, IPC did not impose any fines on the driver to ensure he maintained a set schedule. IPC did not establish any special instructions that included the potential for

14

multiple fines, thus forcing the driver to violate federal regulations in order to avoid them. IPC did not require the driver to stay in constant communication with IPC about the transport and delivery of the load. Not only did the shipper IPC not require the driver to call and ask for a load or make daily check calls, it did not even dispatch or directly pay the driver.

Interestingly, the shipper IPC did not instruct the driver to notify the shipper if he had an accident; the first time that IPC knew about the accident was when it was served with a lawsuit two years after the accident happened. If IPC did not even know that an accident had happened involving a driver alleged to be its agent, how can IPC be held vicariously liable for the actions of that driver?

Therefore, the "broker" cases all support IPC's conclusion that it is not vicariously liable for the negligent acts of Samuel Franke on July 3, 2008.

## V. CONCLUSION

WHEREFORE, Defendant, International Paper Company, requests that this Court enter an order granting judgment in its favor and against Plaintiff.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: s/Carlton D. Fisher

Carlton D. Fisher
William Yu
Cecilia Horan
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3450

15

130430076v1 0903067