IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) | Case No.: 09 cv 5340 |
| | ) | |
| MARTIN'S BULK MILK SERVICE, INC., SAMUEL G. FRANKE, INTERNATIONAL PAPER COMPANY, UNIVERSAL AM CAN LTD., Successor to OVERNITE EXPRESS, INC., and OX LLC, BMW of NORTH AMERICA, LLC, a corporation, BAYERISCHE MOTOREN ERKEAKTIENGESELLSCHAFT, a corporation, BMW AG, a corporation, and KARL KNAUZ MOTORS, INC., a corporation, | ) ) ) ) ) ) ) ) ) ) | Judge James F. Holderman

Magistrate Susan E. Cox |
| | ) | |
| Defendants. | ) ) ) | |

**UNIVERSAL AM-CAN LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AGAINST THE PLAINTIFF**

NOW COMES defendant, Universal Am Can, Ltd. d/b/a and successor to Overnite

Express, Inc. ("OEI"), hereinafter ("UACL") by and through its attorneys, Carlton D. Fisher,

William Yu and Cecilia A. Horan of HINSHAW & CULBERTSON LLP, and for its

Memorandum of Law in Support of its Motion for Summary Judgment against the Plaintiff, it

states as follows:

### I.    SUMMARY OF LEGAL ARGUMENT

Samuel Franke ("Franke") was not acting as the employee, agent or apparent agent of

UACL on July 3, 2008, when he rear-ended the BMW convertible occupied by Jeffrey

Scheinman. In order for a broker of transportation services like UACL to be the "employer" of

Franke, there must be some evidence that UACL paid him directly, hired him after he applied for

employment, processed necessary IRS paperwork for his wages, and otherwise demonstrated an

employer-employee relationship. Martin Bulk Milk Service's (MBMS) and Franke's admissions that MBMS was his employer should end all discussion of this allegation.

The claim of "apparent agency" requires some pre-accident relationship between the plaintiff and UACL or Franke such that Scheinman believed that Franke was working as an employee or agent of UACL, much like an emergency room patient might believe that the doctors treating her are employees of the hospital as opposed to the separate corporation that employs the ER doctors. Clearly that was not the case when Franke rear-ended the plaintiff's vehicle.

Recent federal court and Illinois appellate cases discussing the alleged vicarious liability of transportation brokers for the negligent driving of a brokered motor carrier's driver do not support the existence of a principal-agent relationship between Franke and UACL. Instead, they support UACL's conclusion that Franke was not its agent.

General principles of Illinois agency law support UACL's argument that it did not "control" the actions of Franke. Even where the driver does 100% of his work in a dedicated carriage setting or has some contact with the broker, directions or instructions from the broker about ancillary matters do not convert UACL into Franke's principal.

Control over the "means and methods" of a contractor's work is required to support a claim of agency. Where the directions do not concern the putative agent's driving behavior, then there is no agency relationship. This is especially true where, as here, the broker's front-line representative has no knowledge of the identity of the brokered motor carrier's driver on a particular load, has no direct contact with the driver at any time before, during, or after the driver's trip, and does not even know an accident involving that driver occurred until long after a lawsuit is filed.

2

## II.    APPLICABLE LAW

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). The existence of a duty is a question of law and must be decided in the first instance. *Steuri v. Prudential Insurance Company of America*, 282 Ill.App.3d 753, 668 N.E.2d 1066 (1st Dist. 1996). Where the Court determines no duty exists, summary judgment is proper. *Puttman v. May Excavating Co.*, 118 Ill.2d 107, 514 N.E.2d 188 (1987).

## III.    THE LAW CONCERNING BROKERS SUPPORTS UACL'S ARGUMENT THAT IT IS NOT VICARIOUSLY LIABLE FOR SAMUEL FRANKE'S ACTIONS.

Because UACL anticipates that plaintiff will cite, and the Court may very well reference, the recent Illinois appellate court opinion of *Sperl v. C.H. Robinson*, 406 Ill.App.3rd 1051, 946 N.E. 2nd 463 (3rd Dist. 2011), in support of plaintiff's conclusion that Franke was the agent of UACL, an examination of several cases involving brokers will help the Court see that UACL was not the principal of Franke.

C.H. Robinson ("CHR"), a large and well known broker and third-party logistics transportation company, has been involved in many cases throughout the country in which the issue of the vicarious liability of a broker has been tested at summary judgment, during trial, and on appeal. In the most cited case about broker liability, *Schramm v. Foster*, 341 F. Supp. 2d 536 (D. Md. 2004), the summary judgment evidence showed that CHR had promotional materials that advertised its capabilities as a broker. Although CHR did not maintain equipment, it

matched shippers with motor carriers who did not own and operate such equipment. CHR had brokerage contracts with motor carriers that agreed to haul loads for shippers.

Shipper Jasper Products LLC ("Jasper") requested that CHR arrange for the transportation of one of its products to its customer. CHR had a brokerage contract with motor carrier Groff Brothers LLC ("Groff") which agreed to transport the product to its intended destination and, in turn, assigned its driver Foster to drive the load. On route, Foster failed to yield at an intersection and Schramm was seriously injured

Plaintiff Schramm claimed that the broker (CHR) exercised control in the following ways: dispatched Foster (the driver); directed him to pick up and deliver the load at specific times; gave him directions from the Jasper warehouse to the warehouse in New Jersey; gave Foster specific instructions regarding the load including requiring Foster to use load locks on the trailer; and monitored Foster's performance by requiring him to call when he had successfully picked up the load and periodically throughout the trip. *Schramm*, 341 F.Supp.2d at 543.

The *Schramm* court rejected plaintiff's arguments that he had an independent federal cause of action under either the Federal Motor Carrier Safety Act ("FMCSA") or the Federal Motor Carrier Safety Regulations ("FMCSR"). The *Schramm* court determined that the mere fact CHR had Foster call it directly to receive the dispatch information did not demonstrate that Foster was under CHR's control in the performance of his work. Furthermore, although CHR provided Foster with directions to and from the Jasper warehouse, it explicitly stated that the directions provided were simply for informational purposes. *Id.* Similarly, the court held that the desire to have Foster call periodically to check in did not indicate that CHR exercised sufficient control over Foster's movements to make him an agent. "Even some reservation of control to supervise the manner in which the work is done, or to inspect the work during its

4

performance does not destroy the independent contractor relationship where the contractor is not deprived of his judgment in the execution of his duties." *Id*. at 545.

In addressing the claims of plaintiff's claims of *respondeat superior* under Maryland law, which is similar, if not identical, to Illinois law on agency, the court dismissed the few examples of instructions from broker CHR to driver Foster as evincing evidence of control, finding that the only thing that CHR could control was "the ultimate result – the delivery of the load to its final destination." *Jones v. Robinson*, 558 F.Supp. 630, 639 (W.D.Va. 2008), citing *Schramm*, 341 F.Supp.2d at 543. Therefore, CHR's conduct did not establish an agency relationship.

Moreover, driver Foster fit the Maryland definition of independent contractor as "one who contracts to perform a certain work for another according to his own means and methods, free from control of his employer in all details connected with the performance of the work except as to its product or result." *Schramm*, 341 F.Supp. at 544, citing *Kersten v. Van Grack, Axelson & Williamosky P.C.*, 608 A.2d 1270, 1272 (Md.App. 1992)(quoting *Gale v. Greater Washington Softball Umpires Ass'n*, 311 A.2d 817, 821 (Md.App. 1973).

The court found no agency relationship by written agreement. In its review of the CHR-Groff contract, it noted that the contract expressly provided that the "relationship of Carrier [Groff] to [CHR] hereunder is solely that of independent contractor," and that "the carrier [Groff] shall employ all drivers transporting goods under the contract and that such persons are not employees or agents of [CHR] or its Customers." *Id.* at 544. Absent any evidence of control, the court granted summary judgment to CHR on plaintiff's vicarious liability claim.

Four years after *Schramm*, another federal district court had the opportunity to consider another plaintiff's claim of vicarious liability against CHR. In *Jones v. C.H. Robinson Worldwide, Inc.*, 558 F. Supp. 2d 630 (W.D. Va. 2008), CHR was granted summary judgment on

5

the plaintiff's claims of agency. Like in the *Schramm* case, the *Jones* district court summarily dismissed the claims made under the FMCSA and FMCSR since such claims can only be made in commercial disputes as opposed to personal injury lawsuits. With the exception of the pleadings, the facts of *Jones* are very similar to the facts of the instant case.

In deciding that the truck driver was not an agent of CHR under Virginia agency/independent contractor law, the court reiterated what its sister court in Maryland had decided in *Schramm*; namely, that mere control over the ultimate result – delivery of the cargo to its intended destination – is insufficient to permit a case to go to a jury, and, consequently, summary judgment is appropriate. Although CHR did arrange pickup dates and times, provided pickup and delivery addresses to the carrier, communicated information from the shipper regarding the loading and unloading of cargo, provided other directions regarding the transportation of the load, and required drivers to call in to report the status of shipments, the court determined that all of these activities were directed toward the incidental details required to accomplish the ultimate purpose for which CHR had been hired by its shippers-the delivery of a load to its proper destination in a timely fashion. *Id.* at 639.

Further, the court considered that although CHR could "bounce" a load from a particular carrier, it did so primarily when that carrier could not complete a delivery for any number of reasons. There was no evidence to indicate that CHR could terminate a particular driver or that it asked carriers to do so, or that CHR controlled the details of the carrier's operations such as its drivers' schedules during a trip, particular routes, or compensation plans. Finally, although the carrier may have received funds through CHR's T-Chek system, the court found that such advance payments of the carrier's fee did not indicate that Robinson exercised any heightened level of control over the carrier or its operations. Therefore, the court concluded that the carrier

6

was an independent contractor of CHR and that, as a result, CHR could not be held liable for the negligence of the carrier or its driver, under a theory of respondeat superior. *Id.* The *Jones* court also concluded that the brokerage contract's language, which plainly stated that the carrier was acting as an independent contractor of CHR established an independent contractor relationship was not vitiated by any facts developed in discovery.

### The *Sperl* Decision

In *Sperl*, attorneys for CHR cited the *Schramm* and *Jones* cases in support of its motion for summary judgment and motion for judgment notwithstanding the verdict. The Second District Appellate Court distinguished those cases in affirming a multimillion dollar verdict against CHR.

The Court found the following distinguishing factors as justifying the jury's determination of agency as against the broker despite the fact that the broker-carrier contract described the relationship with the driver as one of independent contractor, a label that the court found was not outcome-determinative:

      (1)    the broker ***owned*** the product being transported;

      (2)    the load was being delivered to the broker's warehouse;

      (3)    the broker imposed fines on the driver to ensure she maintained a broker set schedule;

      (4)    the broker's special instructions included the potential for multiple fines and forced the driver to violate federal regulations in order to avoid them;

      (5)    the broker required the driver to have a refrigerated trailer of a specific length;

      (6)    the broker required the driver to call and ask for a load;

      (7)    although the driver did not see a specific set of instructions about the delivery of the load, the driver was familiar with the requirements based on previous deliveries for the broker;

7

(8)     the broker required the driver to stay in constant communication about the transport and delivery of the load;

(9)     the broker required the driver to make daily check calls;

(10)    the broker instructed the driver to notify the broker if she had an accident;

(11)    the broker required the driver to continuously measure the temperature of the load and contact the broker immediately if the load did not register a certain temperature;

(12)    the broker controlled the method of payment to the driver; and

(13)    the broker dispatched the driver.

These facts are so distinguishable from the fact of this case that *Sperl* really has no application here.

## IV.    CASES INVOLVING SHIPPERS ARE SUPPORTIVE OF UACL'S MOTION FOR SUMMARY JUDGMENT.

In support of its motion for summary judgment, IPC's legal memorandum explores in great detail a recent Illinois First District appellate case and two federal court decisions about shippers and the key Illinois cases on agency law. UACL's memorandum will highlight those decisions as they pertain to brokers.

In *Dowe v. Birmingham Steel*, 357 Ill.App.3d 391, 963 N.E. 2d 344 (1st Dist. 2011), the Court stated it could decide as a matter of law whether an agency relationship exists.

> **[T]he factors to be considered in determining this issue [of agency] are: the right to control the manner in which the work is performed; the right to discharge; the method of payment; who provides tools, materials or equipment; the level of skill required to perform the work; and who deducts or pays for insurance, social security, and taxes on the employee's behalf.** *Dowe*, *supra*. at 351.

While no single factor is determinative, the right to control the means and methods of the work is the most important factor, *i.e.*, it is considered the hallmark of agency. *Id*.

In *Dowe*, Plaintiffs sought to argue that agency was established by the following evidence: (a) the large volume of hauling by the trucker for the shipper; (b) trucker's assertions

8

that he deemed himself Birmingham Steel's house truck; (c) the trucker hauled **_all_** of Birmingham's oversized loads of rebar; (d) Birmingham Steel had written rules governing the conduct of drivers at the steel mill; and, (e) Birmingham Steel had the right to terminate the services of a driver if it believed a driver to be unsafe.

Notwithstanding this evidence, the court held that these factors failed support the existence of an agency relationship or created an issue of material fact. Although the trucker chose his own routes, controlled his own hours, provided and maintained his own equipment, was paid directly by the motor carrier, performed his driving pursuant to his motor carrier's rules, and could not be discharged by anyone other than his employer, these facts demonstrated that no agency and/or employment relationship existed between the shipper and the truck driver.

In *Wilson McCray v. Stokes*, 2003 WL 22901509 (N.D. Ill.), the United States District Court for the Northern District of Illinois interpreted Illinois law, in particular, *Shoemaker v. Elmhurst-Chicago Stone Co., Inc.*, 273 Ill.App.3d 916, 652 N.E.2d 1037 (2d Dist. 1994), and concluded that shippers do not exhibit the requisite indicia of control for them to be held vicariously liable for an individual trucker's negligent acts. Although the truck driver was to follow a set of written rules, had a long-time relationship during which he hauled all of the shipper's product, deemed himself to be the "house truck" and considered himself to be on a "dedicated run," was required to complete his tasks within a set time period, and was to report any collisions or accidents to the shipper, and the fact that the shipper retained the right to discharge a driver based on a customer's complaint, these facts were insufficient to establish a question of fact as to an agency relationship.

In rejecting the plaintiffs' and the railroad's arguments, the court noted, among other things, that written agreements do not necessarily establish conclusively that a shipper has a right

9

to control the way in which a truck driver does his job. Contractual terms or sentences that merely specify the particular hauling task, e.g. delivery in a timely fashion, do not dictate or control the method or manner in which the task is to be completed. Observing that the existence of contract provisions between a shipper and a trucker or his employing motor carrier do not necessarily create a question of fact, just as a contract provision stating that the contractual label of "independent contractor" does not end the inquiry. Rather, "it is the actual conduct of the parties that determines whether one is an independent contractor or an agent." *Id.* at p. 5.

Multiple acts of hauling loads do not, by themselves, create an agency relationship in the trucking industry. "The suggestion that a contractor's volume of work for a particular entity can transform him into the [broker's] agent is unsupported in Illinois law." *Id.* at p. 5. Using an analogy that is particularly apropos to the instant case, if the argument of "volume equals agency" is carried to its logical extreme, then "a company that frequently ships via an entity like Federal Express would be liable for any wrongful acts of the Federal Express driver while delivering the company's packages." *Id.* at p. 5. Moreover, a shipper who monitors the delivery process of its cargo to ensure prompt delivery to its customer "no more creates an agency relationship than does the designation of 'overnight delivery' on a Federal Express package." *Id.* at p. 6.

In *Boyle v. RJW Transport, Inc.*, 2008 WL 4877108 (N.D. Ill.), the shipper (SKF) and the carrier (RJW) entered into a "Transportation Agreement" that is known in the industry as a "dedicated carriage contract." The agreement acknowledged that RJW's status would be that of an independent contractor and that RJW would have exclusive control and direction of any person operating the tractors. Appendices to the contract contained "metrics" (detailed conditions) for measurement of the effectiveness of RJW's work.

10

The *Boyle* court acknowledged several important factors that weighed against finding any agency relationship. The shipper did not: (a) dictate how carrier's manager performed his job; (b) control drivers' routes; (c) monitor drivers' conduct away from shipper's who facility; (d) train the drivers how to drive; (e) issue them any equipment; or (f) have the power to fire the drivers. The court noted that several factors did not establish an agency relationship, such as on-time delivery goals, required communications and meetings between shipper and carrier, contractual language requiring driver compliance with laws and regulations, and a shipper's right to reject, but not fire, a driver.

All of these factors evinced a lack of control over the conduct of the driver. Applying and paraphrasing the *Boyle* court's conclusion to the facts of the Scheinman case, "[n]o reasonable jury could find that [any of the factors asserted by plaintiff] gave [UACL] control over how [MBMS] drivers drove their trucks." *Id*. at p. 8.

Clearly, notwithstanding the existence of new organizational structures to efficiently move cargo from point A to point B, e.g., third party logistics companies, brokers, freight forwarders, etc., the law has not gone so far as to make a broker an indemnitor or guarantor to any member of the motoring public who is harmed by the negligent driving of a truck driver.

## V. GENERAL PRINCIPLES OF ILLINOIS AGENCY LAW SUPPORT THE CONCLUSION THAT FRANKE WAS NOT THE AGENT OF UACL.

The claims against UACL by Plaintiff are brought under Illinois law. To prevail on his negligence claims under Illinois law, Plaintiff must ultimately prove that the named defendants breached a duty owed to him thereby causing his injuries. *Scheinman*, 2011 WL 1399260 at 4. As this Court previously noted, the test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal. *Scheinman*, 2011 WL 1399260

11

at 5. It is the actual conduct of the parties that determines whether one is an independent contractor or an agent *Wilson-McCray v. Stokes* 2003 WL 22901569 at p. 4 (N.D. Ill. 2003).

The critical consideration in finding an agency or employment relationship is "whether the alleged agent retains the right to control the manner and method of doing the work." *Petrovich v. Share Health Plan of Illinois*, 188 Ill.2d 17, 31, 719 N.E.2d 756 (1999). As noted above, there may be instances in which the question of agency can be decided as a matter of law when the relationship is so clear to be indisputable. *Dowe v. Birmingham Steel,* 963 N.E. 2d 344, Ill. App. (1st Dist. 2011); *Lang v. Silva*, 306 Ill.App.3d 960, 715 N.E.2d 708, 717 (1st Dist. 1999); *Shoemaker v. Elmhurst-Chicago Stone Company, Inc.*, 273 Ill.App.3d 916, 920-21, 652 N.E.2d 1037, 1040 (1st Dist. 1995). This is one such case.

## VI. DIRECTIONS OR INSTRUCTIONS ABOUT ANCILLARY MATTERS DO NOT EVINCE THE NECESSARY CONTROL TO ESTABLISH A PRINCIPLE-AGENT RELATIONSHIP UNDER ILLINOIS AGENCY LAW.

Control over "activities ancillary to, but not part of, the work itself" is insufficient to establish an agency relationship. *Boyle v. RJW Transport, Inc.*, No.5 C 1082, 2008 WL 4877108 (N.D.Ill. June 20, 2008). Significantly, courts have found no agency relationship to exist even when a shipper has dictated carrier activities ancillary to, but not part of, the work itself. *See Petersen v. U.S. Reduction Co.*, 267 Ill.App.3d 775, 783, 641 N.E.2d 845,851 (1st Dist. 1994) (shipper's help loading truck was "preliminary task necessary before the driver could begin to perform" and shipper's instruction as to where to deliver load "did not control the manner in which the job was done but rather specified the particular hauling task").

The mere fact that a defendant designates a route is not relevant to or dispositive of the question of agency. *Cable v. Perkins*, 121 Ill. App. 3d 127, 129, 459 N.E.2d 275 (3rd Dist. 1984); *Shoemaker v. Elmhurst-Chicago*, 273 Ill. App. 3d 916, 652 N.E.2d 1037 (1994). Illinois appellate courts have also held that the fact that a defendant weighs a truck and/or assists in

12

loading a truck are preliminary tasks necessary before a driver could begin his work activities and are irrelevant to the issue of whether an agency relationship and/or employment contract exists. *Shoemaker, supra.* 652 N.E.2d at 1041. A defendant's instruction to a trucker as to where he should pick up or deliver a load also does not constitute "control of the manner" in which the job is done. *Shoemaker, supra.*

Contractual provisions that require compliance with traffic laws or purchase of liability insurance likewise do not evince control. The law is clear that contractual "[l]anguage requiring compliance with laws and regulations does not render an independent contractor an agent..." *Boyle v. RJW Transport, Inc.*, No.5 C 1082, 2008 WL 4877108 (N.D.Ill. June 20, 2008) citing *Continental Ins.Co. v. Empire Fire & Marine Ins. Co.*, 157 F.3d 610, 612-13 (8th Cir. 1998); *United States v. Mut. Trucking Co.*, 141 F.2d 655, 657 n. 1 (6th Cir. 1944); *Narayan v. EGL, Inc.,* No. 05-C4181, 2007 WL 2021809, at *9 (N.D.Cal. July 10, 2007). "Similarly, contract provisions requiring that an independent contractor carry liability insurance do not make an independent contractor an agent. See *Nat'l Continental Ins.*, 157 F.3d at 611-12." *Boyle* at *8.

## VII. CONTROL OVER THE "MEANS AND METHODS" OF A CONTRACTOR'S WORK IS REQUIRED TO SUPPORT A CLAIM OF AGENCY.

While Illinois courts have not expressly defined means and methods in the context of general agency litigation, they have defined means and methods as it relates to construction contract cases where a defendant's liability rested on the right to control the work. Appellate courts have defined means and methods in such cases as generally relating to operative details or routine aspects of the work. *Rangel v. Brookhaven Construction*, 307 Ill.App.3d 835, 789 N.E.2d 174 (1st Dist. 1999); see also *Moiseyev v. Rots Building & Development*, 369 Ill.App.3d 338, 800 N.E.2d 1128 (3rd Dist. 2006). Moreover, in *Horowitz v. Holabid & Root*, 212 Ill.2d 1, 816 N.E.2d 272 (Ill. 2004), the Supreme Court affirmed summary judgment where the alleged

13

principal did not control or authorize the agent's precise method of performing the work and/or failed to ratify the agent's negligent conduct at a later time.

Although the *Shoemaker* court never explicitly defined the terms "means, manner or method" in a transportation setting, the important question remains: did the principal exercise control or retain the right to control the details of the driver's work, namely to move cargo from Point A to Point B? *Shoemaker*, *supra*. In *Oliveira-Brooks v. RE/Max International*, 372 Ill.App.3d 127, 865 N.E.2d 252 (1st Dist. 2007), the appellate court affirmed summary judgment in favor of defendants who did not control the means and methods of a putative agent's work, *i.e.*, his driving activity. Several factors were important for the court's decision making process. The contracts between the parties sought to exclude the existence of agency. The alleged principal did not control the day-to-day activity of the alleged agent. The fact that the alleged agent was required to list the alleged principal as an additional insured was irrelevant to the issue of agency absent other rights of control. It is not a new concept that if a broker requires a carrier to maintain liability insurance, this does not create a material issue of fact on issues of agency so as to defeat a motion for summary. *Manahan v. Dailey News*, 50 Ill. App. 3d 9, 16, 365 N.E.2d 1045 (3rd Dist. 1977).

Where the directions from the broker do not concern the putative agent's driving behavior, then there is no agency relationship. This is especially the case when the broker's front line representative does not even know who the brokered motor carrier's driver is on a particular load, has no direct contact with the driver at any time before, during, or after the driver's trip, and does not even know an accident involving that driver occurred until after a lawsuit is filed.

14

## IV.     CONCLUSION

Defendant, Universal Am Can, Ltd. ("UACL"), requests that this Court enter an order granting judgment in its favor and against Plaintiff.

Respectfully submitted,

HINSHAW & CULBERTSON LLP


By:  s/Carlton D. Fisher

Carlton D. Fisher
William Yu
Cecilia Horan
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3450

130408861v1 0903067