# JAE # 8

# Excerpts from the Transcript of Deposition of John Moorer, dated April 16, 2012

130547293v1  0903067

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEASTERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MURRAY SCHEINMAN, Plenary )
Guardian of the Estate )
and Person of JEFFREY J. )
SCHEINMAN, a disabled )
person, )
)
            Plaintiff, )
                                    ) Case No. 09-CV-5340
vs.                                 )
)
MARTIN'S BULK MILK SERVICE, )
INC.; SAMUEL G. FRANKE, CSX )
INTERMODAL, INC.; )
INTERNATIONAL PAPER COMPANY; )
UNIVERSAL AM-CAN LTD., )
successor to Overnite )
Express, Inc.; OX, L.L.C.; )
BMW OF NORTH AMERICA, )
L.L.C., a corporation; )
BAYERISCHE MOTOREN )
WERKEAKTIENGESELLSCHAFT, a )
corporation; BMW AG, a )
corporation; and KARL KNAUZ )
MOTORS, INC., a corporation. )
)
            Defendants. )

DEPOSITION OF JOHN MOORER

Taken by the Plaintiff on the 16th day of April, 2012, at
26400 Schoenherz Road, Warren, Michigan 48089

APPEARANCES:

For the Plaintiff:    RICHARD F. BURKE, JR., ESQ.
                      Clifford Law Offices, PC
                      120 North La Salle Street
                      31st Floor
                      Chicago, Illinois 60602
                      Telephone: (312) 899-9090

For the Defendant     CARLTON D. FISHER, ESQ.
International          Hinshaw & Culberson, LLP
Paper Company,        222 North La Salle Street
Universal Am-Can,     Suite 300
LTD., and Ox,         Chicago, Illinois 60601
L.L.C.:               Telephone: (312) 704-3450

1

---

APPEARANCES (Continued):

For the Defendants   MR. MATTHEW R. SCHRECK, ESQ.
Samuel G. Franke     Mulherin, Rehfeldt & Varchetto
and Martin's Bulk    211 South Wheaton Avenue, Suite 200
Milk Service:        Wheaton, Illinois 60187
                     Telephone: (630) 517-5082

For the Defendant    MR. ROBERT J. GOLDEN, ESQ.
Martin's Bulk Milk   Dowd & Dowd
Service              617 West Fulton Street
(Via Telephone):     Chicago, Illinois 60661
                     Telephone: (312) 762-9518

For the Defendant    TIMOTHY R. COUTURE, ESQ.
BMW, Bayerische      Johnson & Bell, Ltd.
And Karl Knauz       33 West Monroe Street
Motors               Suite 2700
(Via Telephone):     Chicago, Illinois 60603
                     Telephone: (312) 984-6651

Reported by: Kathleen M. Smith (CSR-4232)
Certified Shorthand Reporter

2

---

WITNESS                                          PAGE

JOHN MOORER

    Direct Examination by Mr. Burke        4

    Cross-Examination by Mr. Schreck      47

    Cross-Examination by Mr. Fisher       58

    Redirect Examination by Mr. Burke     67

    Recross-Examination by Mr. Fisher     71

    Redirect Examination by Mr. Burke     73

E X H I B I T S

                        Marked       Admitted

No exhibits offered

3

---

1          Warren, Michigan

2          Monday, April 16, 2012

3          At or about 4:23 p.m.

4               -- -- --

5

6          MR. BURKE: Let the record reflect this is

7     the discovery deposition of Mr. John Moorer, taken

8     pursuant to notice and in accord with the rules of

9     the United States District Court for the Northern

10    District of Illinois and the 7th Circuit.

11               J O H N   M O O R E R,

12    having been duly sworn at or about 4:23 p.m., called by

13    the Plaintiff, testified as follows:

14          DIRECT EXAMINATION

15    BY MR. BURKE:

16    Q    Mr. Moorer, my name is Rich Burke. Again, I

17         represent Mr. Scheinman, and I'm going to ask you

18         some questions about your work with Universal. And

19         as I do so, if you want any questions repeated,

20         they don't make sense, just say so. If you want to

21         look at some documents, tell me or Mr. Fisher. And

22         if you can verbalize your yes and no answers, even

23         though we can see you nodding your head, the court

24         reporter's got to take down the answer, if that

25         happens to be your answer, okay?

4

**Page 61**

1  on this document. I have a couple other questions.
2  Up here in the upper left-hand corner of
3  Exhibit 11 where the word "agent" colon appears,
4  and there's a number; describe for us what "agent"
5  means in the context of this document. In other
6  words, what types of numbers or designations, in
7  your experience, appears opposite the word "agent"?
8  A  Opposite are the numbers indicating if it's a
9  agent -- it could be an agency, a company store, or
10  a terminal, but we provide all of those an agency
11  number. For example, 4812 is a company store, but
12  it still has an agency number of 4812.
13  Q  And where is 4812?
14  A  It's in Dearborn, Michigan.
15  Q  Okay. So for example, the terminal that Universal
16  Am-Can runs in Dearborn, Michigan, that has an
17  agency number, and if this particular broker
18  confirmation sheet had been filled out for that
19  particular, having to do with that particular
20  terminal, then the 4812 number would appear?
21  A  Yes.
22  Q  And that would be an example of a company location?
23  A  Company store, yes.
24  Q  Okay. And as you sit here today, you just don't
25  know of your own knowledge what 5511, that's

**Page 62**

1  scratched out, or 6073 represents?
2  A  6073 I have no knowledge if they're a company store
3  or, quote/unquote, an agency.
4  Q  Okay. And how about 5511, the one that's scratched
5  out?
6  A  5511, I do believe that they are a company store.
7  Q  Okay. And do you know what that number was?
8  A  5511.
9  Q  Yeah -- no. Do you know what company store that
10  was?
11  A  Minneapolis/St. Paul.
12  Q  Okay. Do you know if 5511 corresponded to the
13  number that was used to describe the Overnight
14  location on Pelham Street in Minneapolis?
15  A  I don't know.
16  Q  Okay. You just, you just associate it with
17  Minneapolis?
18  A  Yes.
19  Q  Okay. And then getting back to Exhibit 16, the
20  version of the June 12th, 2008 master brokerage
21  agreement that has all the fax transmission numbers
22  at the top and on the bottom.
23  A  Yes.
24  Q  All right. I want to ask you to assume the
25  following: Assume that this particular document,

**Page 63**

1  the master brokerage agreement, irrespective of
2  whoever filled out the printing that appears in the
3  first paragraph, just put that aside for purpose of
4  my question. Assume that this particular document
5  was first faxed from a 708-331-8604 number to
6  Martin's Bulk Milk in Wilton, Wisconsin, and that
7  it was faxed again from that same 708 number on
8  June 17th, okay, assume that.
9  A  Okay.
10  Q  And that these fax transmissions came from the
11  South Holland office as opposed to the 1-800 number
12  that you talked about you have in Warren, Michigan.
13  A  Yes.
14  Q  All right. And assume, likewise, that -- and
15  unfortunately, this is very difficult to figure
16  out. Ah, here we go.
17  Assume likewise that if you look at Bates
18  number 20 of Exhibit 16, that Martin's Bulk Milk
19  faxed back to Universal Am-Can on June 17th at 1:02
20  in the afternoon, or 13:02 in the afternoon, a copy
21  of the Martin's executed contract, and that this
22  was faxed back to Universal Am-Can at the 708
23  number, okay?
24  A  Okay.
25  Q  Got all those assumptions so far?

**Page 64**

1  A  Yes.
2  Q  All right. How do those assumptions interact, if
3  at all, with your previous testimony that you
4  believe you had sent a copy unfilled out of the
5  Martin's -- excuse me -- of the master brokerage
6  agreement to Martin's Bulk Milk sometime before
7  June 12th or June 17th, 2008?
8  A  I sent a master brokerage agreement to Martin's Bulk
9  Milk back in May but they never returned it.
10  Q  Okay. And, and as you sit here today, you don't
11  remember who that agent was that was anxious to be
12  able to use Martin's?
13  A  I don't know who the agent happens to be. I could
14  probably look in the system and see if we still have
15  a record of it.
16  Q  Okay. But suffice it to say that to summarize your
17  testimony on the topic of who and when the master
18  brokerage agreement was sent to Martin's Bulk Milk
19  in either May or June --
20  A  Yes.
21  Q  -- you believe that you sent a copy, and it appears
22  from Exhibit 16 that somebody at the 708 number
23  also sent it to Martin's Bulk Milk, and those
24  events appear to be not related to each other?
25  A  Yes.

1    Q    Okay. You don't know who that is?

2    A    **I don't know.**

3    Q    All right. That's all I've got.

4        REDIRECT EXAMINATION

5    BY MR. BURKE:

6    Q    Did you ask anybody at Overnight Express to send a

7      blank broker confirmation, or a blank master

8      brokerage agreement to Martin's in or around the

9      end of May or early June of 2008?

10    A    **No.**

11    Q    Okay. With respect to that agency number from your

12      prior testimony, am I correct that Universal Am-Can

13      had many agents with whom they did business and

14      whose numbers could appear here that were making

15      deliveries for them?

16    A    **Could you rephrase the question?**

17    Q    Sure. With respect to that agency number, you have

18      previously talked about Universal had many

19      different agents that either made deliveries

20      directly for Universal or brought in business that

21      got brokered out; is that correct?

22    A    **We have agents and company stores that are both**

23      **given an agency number.**

24    Q    Okay. And one category of people that get agency

25      numbers are other motor carriers that are making

            73

---

1      deliveries for Universal; is that correct?

2    A    **No. No motor carriers receive an agency number.**

3    Q    Okay. One category of an agent would be drivers

4      who make deliveries for Universal using their own

5      truck but driving under the Universal DOT number?

6    A    **Yes.**

7    Q    Okay. And then is there another category of agents

8      of Universal that bring in business that gets sent

9      out to some other carrier to haul?

10    A    **We do have agents that are, that are just solely**

11      **brokers. That's all they do is broker out the**

12      **loads, yes.**

13    Q    Okay. And for that category of agent, Universal's

14      getting a portion of the freight hauling fee and

15      the agent's getting a portion and whatever carrier

16      actually makes the delivery gets a portion; is that

17      correct?

18    A    **The struck -- I don't know the exact structure of**

19      **it, but if the agent brokers the load out, the rate**

20      **agreement is the rate that the agent is, enters into**

21      **business with the carrier, that's the rate they're**

22      **agreeing to pay them. What the agent and**

23      **Universal's portion, that would be something that**

24      **you'd have to ask, like, Gina.**

25    Q    Okay. But Universal would somehow get paid for

            74

---

1      working with that agent in that scenario; is that

2      correct?

3    A    **Yes.**

4        MR. BURKE: Okay. Nothing else.

5        MR. SCHRECK: Nothing.

6        MR. FISHER: Signature's reserved. We're

7    done.

8        (At or about 6:36 p.m., deposition

9      concluded)

10        - - -

            75

---

1          ERRATA-READSIGN

2

3           ERRATA

4   SCHEINMAN VS. MARTIN'S BULK MILK SERVICE, et al

5    DEPOSITION OF JOHN MOORER - 4/16/2012

6   Page/Line #        Correction

7   _____    _____

8   _____    _____

9   _____    _____

10   _____    _____

11   _____    _____

12   _____    _____

13   _____    _____

14   _____    _____

15   _____    _____

16   _____    _____

17   _____    _____

18   _____    _____

19   _____    _____

20   _____    _____

21   _____    _____

22   _____    _____

23   _____    _____

24   _____    _____

25   _____    _____

            76

```
 1                    AFFIDAVIT

 2      I have read my deposition, and the same is true and

 3   accurate, except for any changes and/or corrections, if

 4   any, as indicated by me on the Errata sheet(s) attached

 5   hereto.

 6

 7

 8              _____

 9              JOHN MOORER

10

11

12                    N O T A R Y

13   Subscribed and sworn to me this _____ day of _____,

14   2012.

15

16   My commission expires _____'

17

18   _____, NOTARY PUBLIC, in and for the

19   State of Michigan.

20

21

22

23

24

25

                        77
```

```
 1                   CERTIFICATE OF COURT REPORTER

 2              STATE OF MICHIGAN  )
                                   )
 3              COUNTY OF OAKLAND  )

 4
                    I certify that this transcript, consisting
 5   of 78 pages, is a complete, true and correct record
     of the testimony of JOHN MOORER, held in this case
 6   on Monday, April 16, 2012.

 7                  I also certify that prior to taking this
     deposition, JOHN MOORER was duly sworn to tell the
 8   truth.

 9                  I also certify that I am not a relative or
     employee of or an attorney for a party; or a
10   relative or employee of an attorney for a party; or
     financially interested in the action.
11

12

13              KATHLEEN N. SMITH (CSR-4232)
                Certified Shorthand Reporter
14              Notary Public, Oakland County, Michigan
                My Commission Expires:  1/2/2016
15
     Dated:  May 7, 2012
16

17

18

19

20

21

22

23

24

25

                        78
```