IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.: 09 cv 5340 |
| MARTIN'S BULK MILK SERVICE, INC., SAMUEL G. FRANKE, INTERNATIONAL PAPER COMPANY, UNIVERSAL AM CAN LTD., Successor to OVERNITE EXPRESS, INC., and OX LLC, BMW of NORTH AMERICA, LLC, a corporation, BAYERISCHE MOTOREN ERKEAKTIENGESELLSCHAFT, a corporation, BMW AG, a corporation, and KARL KNAUZ MOTORS, INC., a corporation, | ) ) ) ) ) ) ) ) ) ) ) | Judge James F. Holderman  Magistrate Susan E. Cox |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO COMPEL WITNESS PODLENA TO ANSWER
DEPOSITION QUESTIONS AND FOR SANCTIONS**

NOW COME the defendants, INTERNATIONAL PAPER COMPANY ("IPC"), UNIVERSAL AM CAN LTD. ("UACL"), as Successor to OVERNITE EXPRESS, INC., and OX LLC ("OX") by and through their attorneys, Carlton D. Fisher, William Yu and Cecilia A. Horan of HINSHAW & CULBERTSON LLP, and for their Motion to Compel Witness Jeremiah Patrick Podlena ("PODLENA") to Answer Deposition Questions and for Sanctions, they state:

**FACTUAL AND PROCEDURAL BACKGROUND**

In the course of completing factual discovery, the parties to this action traveled to Wisconsin Dells, Wisconsin, so that Plaintiff's counsel could depose a former employee of Martin's Bulk Milk Service ("MBMS") named Jeremiah Patrick "Pat" Podlena ("PODLENA"). MBMS's counsel made arrangements for PODLENA to travel to Wisconsin Dells from his home in southeast Minnesota to give his deposition; all Chicago counsel traveled to Wisconsin Dells.

As the Court is aware, the moving defendants, IPC, UACL and OX, filed motions for summary judgment, statements of uncontested facts, and supporting legal memoranda on March 27 and 28, 2013. A briefing schedule was entered such that plaintiff has until May 28, 2013 to file his responses and the moving defendants have until June 18, 2013 to file their replies.

The essence of the summary judgment motions filed by IPC and UACL is that co-defendant Samuel Franke ("FRANKE"), an admitted employee of MBMS, was not the agent of IPC and UACL, and, therefore, they are not vicariously responsible for the negligent conduct of FRANKE when he failed to stop for a stop light and rear-ended the Plaintiff SCHEINMAN. OX's motion for summary judgment is based on the contention that it was not a motor carrier, broker or shipper involved or associated with the shipment being hauled by FRANKE; instead, it was a "partner" of Overnite Express, the motor carrier that had sold its assets to UACL nearly a month before the motor vehicle accident involving FRANKE and SCHEINMAN.

On March 22, 2013, witness PODLENA was deposed in this case in his capacity as a former MBMS dispatcher who had also signed several of the contract and broker confirmation sheets identified in discovery. During his deposition, PODLENA gave lay opinions about the relationship between UACL and MBMS. He opined that the relationship between FRANKE and IPC or UACL was one of agent-principal.[1] When asked in his deposition whether he had been advised by counsel for MBMS to use certain phrases that would ostensibly support a claim of such an agency relationship, the questions were objected to both by Attorney Matthew Schreck for MBMS and by Plaintiff's counsel, and Schreck instructed the witness not to answer the questions on the basis of "attorney-client privilege." PODLENA complied with Attorney

---

[1] Because PODLENA's "lay opinion" testimony on the issue of agency constitutes an improper legal conclusion under FRE 701 and Illinois legal precedent (e.g. bald claim of agency is impermissible legal conclusion under Illinois substantive law, *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 498, 675 N.E.2d 584, 595 (1996), Defendants intend to move, at the appropriate time, to strike all such testimony.

2

Schreck's instruction and refused to answer most of the questions on that topic. Defense counsel for IPC, UACL, OX and BMW attempted to determine whether a cognizable attorney-client relationship actually existed between witness PODLENA and Attorney Schreck. This motion to compel has been brought on the basis of the evidence adduced during that deposition examination.

At this Court's March 28, 2013 hearing, when discussing the briefing schedule associated with IPC's and UACL's motions for summary judgment, Plaintiff's attorney stated that he planned on proffering the lay opinion testimony of PODLENA concerning the purported agency relationship between MBMS and UACL/IPC in an attempt to thwart IPC's and UACL's Motions for Summary Judgment. Before such testimony is proffered by Plaintiff's attorney, the moving defendants should be allowed to complete the deposition of PODLENA to determine the background of PODLENA's supposed lay opinions about agency.

**PODLENA'S TESTIMONY AND ATTORNEY SCHRECK'S OBJECTIONS**

In PODLENA's deposition (a copy of which is attached as Exhibit A), he said he worked for MBMS from 2007 to November 2008. (PODLENA Deposition ("PD"), p. 12) His job duties entailed trying to find loads from the east or west coasts to haul back to the Midwest so MBMS trucks did not make the return trips empty. (PD, p. 13, 16)

PODLENA testified that he was never on the MBMS Board of Directors, an officer of the corporation, or on the risk management team. (PD, p. 105.) He was not involved in the hiring or firing of drivers. (PD, p. 111) He never directed how insurance was purchased or claims were administered. (PD, 105-06.) He was not involved in acquiring liability insurance coverage for MBMS and does not know who was. (PD, p. 14.) He "was not privy to" information concerning insurance coverage limits for MBMS. (PD, p. 50.) He was never responsible for investigating

accidents. (PD, p. 106.) He was a five-day-a week employee whose working hours were from 6:30 or 7:00 a.m. to 5:00 or 5:30 p.m. and he worked occasional Saturday mornings. (PD, p. 106.)

During PODLENA's deposition, Attorney Schreck objected to the following questions based upon the attorney-client privilege and advised PODLENA not to answer the questions, which instructions were followed, for the most part, by PODLENA:

Questions by Attorney Carlton Fisher:

Q. [W]hat did you and [counsel for MBMS] talk about? (PD, p. 95.)

Q. Did you talk with Mr. Schreck about the testimony you were to give in this case. (PD, p. 100.)

Q. Did [Mr. Schreck] give you his theory of the case? (PD, p. 101.)

Q. Did he tell you that when you answered questions, you should use such phrases as "acted as a representative of"? (PD, p. 101.)

Q. Did he advise you to testify that Martin's Bulk Milk or Franke acted as the agent of Universal Am-Can or International Paper? (PD, p. 102.)

Q. Did Mr. Schreck advise you or suggest to you that you should testify that Martin's Bulk Milk or Samuel Franke acted as a representative agent of Universal Am-Can or International Paper?(PD, p. 103)

Q [D]id he suggest to you or advise you that you should testify words to the effect of you knew or you had personal knowledge that Martin's Bulk Milk or its driver, Samuel Franke, was representing Universal Am-Can or International Paper? (PD, p. 103)

During his deposition, PODLENA testified that prior to the date of his deposition, he spoke with "Jason" from Attorney Schreck's office two or three times about the logistics of setting up his deposition. (PD, p. 95, 114.) The day of his deposition, March 22, 2013, was the first time he actually spoke in person with counsel for MBMS. (PD, p. 95.) On that morning, he spoke with Attorney Schreck for 30 – 35 minutes. (PD, p. 96.) There was no agreement

4

between PODLENA and Attorney Schreck for PODLENA to compensate Attorney Schreck for his legal services or provide any other consideration. (PD, p. 104.)

The following exchange occurred during Moving Defendants' attorney's attempt to establish what basis existed for Attorney Schreck's assertions of and objections based on the attorney-client privilege:

> Q. When did you and Mr. Schreck form an attorney-client relationship?
>
> A. **Would have been today, I guess. I mean, I – I'm not under the impression I would be an actual client.**
>
> Q. And why is it you're not under the impression that you would be a client of Mr. Schreck?
>
> Mr. Schreck: If you don't understand the question, you can tell him.
>
> A. **I don't. Yeah.**
>
> Q. My question was very clear. Why do you not believe - -
>
> Mr. Schreck: Let's take a quick break, real quick.
>
> Q. No, we're not going to take a break. I'll let you take a break after he answers this question. (To Podlena:) Why do you believe that you do not consider yourself a client of Mr. Schreck?
>
> Mr. Burke (for Plaintiff): Objection to the form. Calls for legal conclusions beyond the scope and knowledge of this witness.
>
> Mr. Schreck: I'll join, and it's specifically asking for attorney-client privilege.

(PD., p. 95 – 97.)

Eventually, PODLENA gave the following answer to the question about why he does not consider himself to be a client of Attorney Schreck:

> A. **I don't know. I guess he - - I guess I am. I guess he is representing me. Is that correct?**
>
> Mr. Schreck: You can give your answer and then we'll take a break.
>
> A. **I guess. Okay, I hadn't really thought about it.**

5

(PD, p. 98.)

A seven minute recess was taken. (PD, p. 98) When PODLENA and Attorney Schreck returned to the deposition room, the following exchange occurred:

Q. Mr. Podlena, did you just take a break from the deposition?

A. **Yes, I did.**

Q. And did you have an opportunity to speak with Mr. Schreck?

A. **Yes, I did.**

\* \* \* \* \*

Q. And are you willing to answer questions I will have of you now concerning the conversations you had with Mr. Schreck outside the deposition room?

Mr. Schreck: Object. Attorney-client.

A. **No, I won't speak to you about it.**

(P., p. 99.)

Soon thereafter, the following exchange occurred between Attorney Schreck and PODLENA:

Attorney Schreck: [P]rior to your deposition today, did you request that my office represent you for the purpose of your deposition?

A. **No. Or, I'm sorry. Repeat that.**

[Question re-read.]

A. **Okay, it would have been like two phone calls. It would have been like three weeks ago when, I believe it was Jason from your office, said that it sounds like we're definitely going to have to do – you know, we'll set this up.**

Attorney Schreck: I'll ask my question again. Prior to today, did you request that my office represent you for the purpose of your deposition?

A. **That is correct.**

Attorney Schreck: And that was accepted, is that correct?

6

**A.** **That's correct.**

Attorney Schreck: No further questions.

Attorney Fisher: In writing or orally?

**A.** **That was oral, strictly. That's all I've ever** - -

(PD, pp. 114-15)

**LAW ON ATTORNEY CLIENT PRIVILEGE AND DEPOSITION CONDUCT**

Under Federal Rule of Civil Procedure 30(c)(2), [a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3). But, in 30(d)(2), "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent."

An attorney-client privilege attaches to communications made: 1) in confidence; 2) in connection with provision of legal services; 3) to an attorney; 4) in the context of an attorney-client relationship. *Specht v. Google, Inc.*, 268 F.R.D. 596, 599 (N.D.Ill. 2010); *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007).

For an attorney-client relationship to exist, the putative client must reasonably believe he is represented and consent to the representation. *Fematt v. Finnigan*, 2012 WL 3308759 (N.D.Ill.), *citing International Paper Co. v. Lloyd Mfg. Co.*, 555 F.Supp. 125, 132 (N.D.Ill. 1982) *and Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1321 (7th Cir. 1978). An attorney cannot create the relationship without the client's consent. *York v. Stiefel*, 109 Ill.App.3d 342, 440 N.E.2d 440 (3d Dist. 1982), *aff'd in part, rev'd in part on other grounds*, 99 Ill.2d 312, 458 N.E.2d 488 (1983); see also Restatement (Second) of Agency, Sec. 15 (2012).

In the context of a corporation, under Illinois law the attorney-client privilege extends only to communications between counsel and the corporate "control group." *One Place*

*Condominium LLC v. Travelers Property Cas. Co. of America*, 2013 WL 788092, *2 (N.D.Ill.). The "control group" is defined as "final decision makers and top advisers whose opinions form the basis for a final decision." *Id, citing Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.2d 103, 119-20, 432 N.E.2d 250, 257-58 (1982). Individuals upon whom the control group members may rely for supplying information are not members of the control group themselves. *One Place Condominium LLC*, *2, *citing Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.2d 103, 120, 432 N.E.2d 250, 258.

Because the privilege is an exception to the general rule favoring disclosure, the party claiming the privilege carries the burden of presenting facts that give rise to the privilege. *One Place Condominium LLC*, *2, *citing Janousek v. Slotky*, 2012 IL App. 13432, 980 N.E.2d 641 (1st Dist. 2012); *Jentz v. Conagra Foods*, 2011 WL 5325669 (S.D.Ill), *citing Pietro v. Marriott Senior Living Services, Inc.*, 348 Ill.App.3d 541, 810 N.E.2d 217, 226 (1st Dist. 2004.) Moreover, because it is an exception, rather than the rule, it should be strictly confined within its narrowest possible limits. *Id, citing Sharp v. Trans Union L.L.C.*, 364 Ill.App.3d 64, 845 N.E.2d 719, 726 (1st Dist. 2006).

Private conferences that occur while opposing counsel is deposing a witness are improper. See *Murray v. Nationwide Better Health*, 2012 WL 3683397 (C.D.Ill.), citing *Eckler v. Wisconsin Central Ltd.*, 2008 WL 1777222 (E.D.Wis.); *Chapsky v. Baxter V. Mueller Division, Baxter Healthcare Corp.*, 1994 WL 327348 (N.D.Ill.). In the case of *Hall v. Clifton Precision, A Division of Littleton Systems, Inc.*, (cited in both *Murray* and *Chapsky*), the court addressed this situation as follows:

> The underlying purpose of a deposition is to find out what a witness saw, heard, or did—what the witness thinks. A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting

questions, deciding which questions the witness should answer, and helping the witness to formulate answers. The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. It is the witness—not the lawyer—who is the witness. As an advocate, the lawyer is free to frame those facts in a manner favorable to the client, and also to make favorable and creative arguments of law. But the lawyer is not entitled to be creative with the facts. Rather, a lawyer must accept the facts as they develop.

*Hall v. Clifton Precision, A Division of Littleton Systems, Inc.*, 150 F.R.D. 525, 528 (E.D.Pa. 1993.) The *Hall* court noted that private conferences between a deponent and an attorney during a deposition "tend, at the very least, to give the appearance of obstructing the truth." *Id.*

### ARGUMENT

Attorney Schreck's objections border on the frivolous because there is no credible evidence of the existence of a valid, consensual attorney-client relationship which would confer privileged status on the information sought by Mr. Fisher, the deposing counsel. First, the evidence does not demonstrate the existence of an attorney-client relationship between PODLENA and Mr. Schreck or any of his colleagues; in fact, the evidence is to the contrary.[2] Second, there is no evidence to demonstrate that PODLENA was a member of the MBMS "control group" when he was employed by MBMS; once again in fact, the evidence is to the contrary. Third, even if he had been a member of the MBMS control group, any privilege available on that basis would have terminated when his employment terminated and thus would not have been applicable during his deposition.

---

[2] It may be argued that an attorney-client relationship was formed after the deposition recess was taken and Plaintiff's counsel coerced PODLENA into changing his testimony to claim the existence of such a relationship, but the Court should not sanction deceptive tactics designed to obstruct justice or that "impedes, delays, or frustrates the fair examination of the deponent." FRCP 30(c)(2). Even if the Court decided to recognize the formation of such a mercurial relationship during the deposition recess, the critical unanswered questions had been asked prior to the formation of the relationship and therefore would not be covered by privilege.

For these reasons, Attorney Schreck's objections and instructions were improper. PODLENA should be compelled to provide truthful answers to the questions which he refused to answer at his deposition. As a sanction, MBMS' counsel should be required to bear the complete financial burden of bringing PODLENA to Chicago or another convenient venue and to be further deposed on the questions, the answers to which were wrongly obstructed and all reasonable follow-up questions, all at no expense to IPC or UACL.

### There Was No Pre-Deposition Attorney-Client Relationship Between Attorney Schreck and PODLENA

Here, prior to the time he was pulled out of the deposition room by Attorney Schreck for a seven-minute private conference, PODLENA had clearly testified that there was no manifestation of intent by him to have Attorney Schreck act as his lawyer. In fact, PODLENA testified unequivocally that he did not understand Attorney Schreck to be acting as his attorney at or before his deposition. *("No, I didn't ask you to represent me at my deposition.")*

Only after Attorney Schreck took PODLENA out of the deposition room for a private conference during the recess and only after some additional prodding by Attorney Schreck on the record after the recess did PODLENA's testimony change to contradict his pre-recess testimony. After the recess and some prodding PODLENA finally "got it" and testified that he had asked Attorney Schreck's firm to act as his lawyer before the date of his deposition *("Yes, that's correct, as you just said, I did ask you to represent me at my deposition.")*

Under these facts, MBMS can not credibly argue that PODLENA and Attorney Schreck or his firm had consensually formed any sort of attorney-client relationship prior to the time of the recess and after the unanswered questions had been asked and the non-existent privilege asserted. If an attorney-client privilege had existed, PODLENA could not have said that he was not under the impression that he was a client. Nor would he have *denied* asking Attorney

130548709v1 0903067

Schreck's office to represent him, as he continued to do *after* the recess. PODLENA's continued denial after the recess compelled Attorney Schreck to ask the same question a second time until he finally received the answer he had obviously prodded the witness to provide.

### PODLENA Was Not A Member Of The MBMS Control Group

Since no attorney client relationship was created prior to PODLENA's deposition, the only alternative way an attorney-client relationship could exist would be if PODLENA was still employed by MBMS *and* a member of the control group within that organization. Since PODLENA was not employed by MBMS during his deposition, there can be no attorney-client relationship formed on that basis.

Even if PODLENA was a member of the MBMS control group during his employment with MBMS, which is not possible on these facts, any legal right to claim the attorney-client privilege remained with MBMS and did not leave with him. See *Wychocki v. Franciscan Sisters of Chicago*, 2011 WL 2446426 (N.D.Ill.) (The "attorney-client privilege does not belong to the individual control-group member; it belongs to the corporation because the corporation is the client."); see also *Dexia Credit Local v. Rogan*, 231 F.R.D. 268 (N.D.Ill. 2004) ("Although an agent may be on the "inside" at the time confidential communications were made between the corporation (on whose behalf the agent was acting) and counsel, once this agent leaves the corporation's employ, the privilege, and legal rights associated with it, do not leave with this agent.") Even if the law was that an attorney-client relationship applies to former members of a control group (which it is not) PODLENA, who was employed as and whose job duties were that of a trucking dispatcher, wouldn't even come close to being a member of a control group.

During his approximate one year of employment with MBMS, PODLENA was an hourly employee whose job was to look for loads so that MBMS trucks would not return from either the

east or west coast, empty. He was not a member of management. He was not an officer or on the MBMS Board of Directors. There is no testimony or evidence to support any argument that PODLENA was a final decision maker or top adviser whose opinions formed the basis for a final decision at MBMS. Accordingly, even if PODLENA was still employed by MBMS, his job duties would not qualify him as a member of the control group whose confidential communications with the corporation's attorney would have been protected from disclosure by the attorney-client privilege.

WHEREFORE, Defendants, INTERNATIONAL PAPER COMPANY, UNIVERSAL AM CAN LTD., as Successor to OVERNITE EXPRESS, INC., and OX LLC, respectfully request that the Court enter an Order requiring Jeremiah Patrick Podlena to appear for a second deposition by a date certain and truthfully answer the questions which he refused to answer in his March 22, 2013 deposition and any followup questions related to the answers he gives, and that MBMS bear the expense of bringing Mr. PODLENA to Chicago for his deposition, or, in the alternative, MBMS bear the financial burden of having IPC's/UACL's/OX's counsel travel to Mr. PODLENA's hometown in southeast Minnesota to take his followup deposition,

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: s/Carlton D. Fisher

Carlton D. Fisher
Cecilia Horan
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3450

130548709v1 0903067