# EXHIBIT 22
(November 7, 2007 Master Brokerage Agreement Between UACL and MBMS)

DEPOSITION EXHIBIT
Martin 15
1/12/10

# UNIVERSAL AM-CAN LTD.
## MASTER BROKERAGE AGREEMENT

THIS AGREEMENT, entered into on this 7 day of Nov., 2007 between UNIVERSAL AM-CAN, LTD BROKERAGE DIVISION, a Property Broker as per MC #167922, Sub 5 ("UACL"), and Martin Bulk Milk a motor contract carrier as per MC# 472-816 ("CARRIER").

WHEREAS, UACL is a Property Broker in the business of securing freight from underlying shippers and negotiating with common and contract carriers for the transportation of such freight in interstate or intrastate commerce where allowed by authority of CARRIER and WHEREAS,

CARRIER is a Motor Contract Carrier or a Common Carrier operating in interstate and/or intrastate commerce in accordance with authority issued by the Federal Motor Carrier Safety Administration and/or other appropriate governmental authorities.

NOW THEREFORE, in consideration of mutual covenants and promises herein contained, the parties agree as follows:

1. The term of this AGREEMENT shall be for a period of one year and will automatically renew year after year, for like terms, until cancelled upon 30 days written notice of one party to the other.

2. CARRIER and UACL agree that this Agreement is not exclusive and that both CARRIER and UACL are free to contract with other parties offering the same or similar services.

3. CARRIER is an independent contractor and is IN NO WAY TO BE CONSIDERED AN AGENT, EMPLOYEE OR JOINT VENTURER OF UACL, in the providing of any services hereunder. CARRIER represents and warrants that it is duly and legally qualified to provide, as a contract carrier, the transportation services contemplated herein. CARRIER further represents and warrants that it does not have a unsatisfactory safety rating issued from the U.S. Department of Transportation, and further agrees to comply with all federal, state and local laws regarding the provision of the transportation services contemplated under this Agreement.

4. CARRIER shall be liable, without limitation, for all loss, damage or liability resulting from their transportation of any property arranged for by UACL hereunder as a common carrier and shall process all claims for loss, damage or delay of delivery in accordance with the Code of Federal Regulation (49 C.F.R. Part 370).

5. CARRIER shall procure and maintain at its sole cost and expense, the following insurance:

    (a) [Universal Am-Can, Ltd. *03913Ø15Ø5*] with a reputable and financially [      ]ER in an amount not less than

    (b) All Risk Broad Form Motor Truck Cargo Legal Liability insurance in an amount not less than $100,000.00 (U.S. Dollars) per occurrence. Such insurance policy shall name CARRIER and UACL as insureds and provide coverage to UACL, the Customer or the owner and/or consignee for any loss, damage or delay related

UACL/OEI_000015

to any property coming into the possession of CARRIER under this Agreement. The coverage provided under the policy shall have no exclusions or restrictions of any type that would foreseeably preclude coverage relating to cargo claims.

(c) Statutory Workers' Compensation Insurance and Employee Liability coverage in such amounts and in such form as required by applicable state law.

(d) CARRIER shall furnish to UACL written certificates, obtained from the insurance CARRIER showing that such insurance has been procured, is being properly maintained, the expiration date, and specifying that written notice of cancellation or modification of the policies shall be given to UACL at least thirty (30) days prior to such cancellation or modification. Upon request, CARRIER shall provide UACL with copies of the applicable insurance policies.

6. UACL agrees to pay CARRIER for services provided in accordance with the RATE CONFIRMATION SHEET, issued by UACL and signed by CARRIER as a supplement to this AGREEMENT prior to dispatch of CARRIER equipment. CARRIER represents and warrants that there are no other applicable rates or charges except those established in this Agreement or in any Rate Confirmation Sheet signed by UACL. Payment by UACL will be made upon receipt by UACL of CARRIER's freight bill, bill of lading, clear delivery receipt, and any other necessary billing documents enabling UACL to ascertain that service has been provided at the agreed upon charge. In the event service is provided and it is subsequently discovered that there was no applicable rate in the existing Schedule of Rates or supplements, the parties agree that the rate paid by UACL and collected by CARRIER shall be the agreed upon contract rate. CARRIER agrees that UACL has the exclusive right to handle all billing of freight charges to the Customer for the transportation services provided herein, and, as such, CARRIER agrees to refrain from all collection efforts against the shipper, receiver, consignor, consignee or the Customer. CARRIER further agrees that UACL has the discretionary right to offset any payments owed to CARRIER hereunder for liability incurred by CARRIER pursuant to of this Agreement.

7. CARRIER will not solicit traffic from any shipper, consignor, consignee or customer of UACL where (1) the availability of such traffic first became known to CARRIER as a result of UACL's efforts, or (2) the traffic of the shipper, consignor, consignee or Customer of UACL was first tendered to CARRIER by UACL. If CARRIER breaches this Agreement and directly or indirectly solicits traffic from customers of UACL and obtains traffic from such customer during the term of this Agreement or for twelve (12) months thereafter, CARRIER shall be obligated to pay UACL, for a period of fifteen (15) months thereafter, commission in the amount of twenty percent (20%) of the transportation revenue resulting from traffic transported for the Customer, and CARRIER shall provide UACL with all documentation requested by UACL to verify such transportation revenue.

8. CARRIER warrants that all shipments transported by CARRIER on behalf of UACL will be transported under its motor carrier authority, and that CARRIER shall not in any manner subcontract, broker or arrange for the shipments to be transported by a third party without the prior written consent of UACL. Both parties waive their respective rights and remedies under 49 USC § 14101(B), and CARRIER agrees that common carrier rates and charges will not apply under any circumstances.

9. In the eve... resulting in legal action, the prevailing party shall be e...

10. CARRIER ... CARRIER's driver into any shipper ... services provided hereunder.

provided, however, that CARRIER agrees to contact UACL's designated agent with billing information immediately upon completion of loading and with the name of receiver and status of delivery immediately upon completion of delivery.

11. CARRIER shall not withhold any goods of the Customer on account of any dispute as to rates or any alleged failure of UACL to pay charges incurred under this Agreement. CARRIER is relying upon the general credit of UACL and hereby waives and releases all liens which CARRIER might otherwise have to any goods of UACL or its Customer in the possession or control of CARRIER.

12. CARRIER shall defend, indemnify, and hold UACL harmless from and against all loss, liability, damage, claim, fine, cost or expense, including reasonable attorney's fees, arising out of or in any way related to the performance or breach of this Agreement by CARRIER, its employees or independent contractors working for CARRIER (collectively, the "Claims"), including, but not limited to, Claims for or related to personal injury (including death), property damage and CARRIER's possession, use, maintenance, custody or operation of the Equipment; provided, however, that CARRIER's indemnification and hold harmless obligations under this paragraph will not apply to any portion of such claim attributable to the tortious conduct of UACL.

13. THIS AGREEMENT, together with subsequently issued RATE CONFIRMATION SHEETS, constitutes the entire agreement between the parties. No additions can be made unless issued in writing and signed by both parties.

14. Any and all Detention, Layover or Truck Ordered Not Used charges will be paid when Universal Am-Can Ltd. collects the charges.

IN WITNESS WHEREOF, the parties have indicated their approval by signature of their authorized representatives on the day and the date first above noted.

BROKER:

UNIVERSAL AM-CAN, LTD
BROKERAGE DIVISION

_____
AUTHORIZED SIGNATURE

MAILING ADDRESS:

P.O. Box 2007
WARREN, MI 48090

CARRIER:

*Martin Bulk Milk*

*Pat Podlesna*
AUTHORIZED SIGNATURE

MAILING ADDRESS:

1101 Water St.
Wilton, WI 54670

Universal Am-Can, Ltd.

*U3913Ø1595*

NOV-07-2007 11:09   From:MARTIN BULK MILK   To:18006270705   Page:9/15

UACL/OEI_000017

```
05/17/2008  13:24   7083318684        OVERNITE LOGISTICS          PAGE  01
05/12/2008  12:24   7083318684        OVERNITE LOGISTICS          PAGE  09
```

MART1505

PO BOX 2007
Warren MI 48090-2007

## CARRIER SURVEY

**ALL AREAS OF THIS FORM MUST BE COMPLETED FOR APPROVAL.**

CARRIER NAME: Martin Bulk Milk Services

MAILING ADDRESS: 1101 Water St.

CITY, STATE: Wilton, WI 54670

PHYSICAL ADDRESS: Same

CITY, STATE: Same

ARE YOUR LOADS PAID THRU A FACTORING COMPANY? ___ YES ✓ NO

FACTORING COMPANY NAME _____

ADDRESS _____

CITY AND STATE _____

CONTACT PHONE# _____

**CARRIER INFORMATION**

TELEPHONE NUMBER: 608-435-6561    800-972-8761

FAX NUMBER: 608-435-6510

PRESIDENT/CEO: Allan Martin

OPERATIONS CONTACT: Dave Martin

FEDERAL ID NUMBER: 39-1301505    MC# 172816

ARE YOU INCORPORATED? Yes

**OPERATIONS INFORMATION**
DO YOU HANDLE HAZMAT? YES (NO)

**EQUIPMENT QTY:**
FLAT BEDS: ___ DROP DECKS: ___ TARPS: YES NO

VANS: 20   REEFERS: 155   OTHER: ___

NUMBER OF POWER UNITS: 125

PLEASE FAX BACK TO BROKERAGE AT 1-___-___-___

Universal Am-Can, Ltd.

*US9138155*

UACL/OEI_000018