IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person,<br><br>    Plaintiff,<br><br>v.<br><br>MARTIN'S BULK MILK SERVICE, INC., SAMUEL G. FRANKE, INTERNATIONAL PAPER COMPANY, UNIVERSAL AM CAN LTD., Successor to OVERNITE EXPRESS, INC., and OX LLC,,<br><br>    Defendants. | Case No.: 09 cv 5340<br><br>Judge James F. Holderman<br><br>Magistrate Susan E. Cox |

### **INTERNATIONAL PAPER COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST THE PLAINTIFF**

NOW COMES the defendant, International Paper Company ("IPC"), by and through its attorneys, Carlton D. Fisher, William Yu and Cecilia A. Horan of HINSHAW & CULBERTSON LLP, and for its Reply in Support of Its Motion for Summary Judgment against the plaintiff, it states as follows:

**SUMMARY OF PLAINTIFF'S RESPONSIVE FACTS AND ARGUMENTS**

The essence of plaintiff's responsive facts and arguments in Plaintiff's Response to IPC's Motion for Summary Judgment, Responses to IPC's Statements of Material Facts, and Joint Statement of Additional Facts is fourfold:

  (a) notwithstanding the "label" of independent contractor given to UACL in the IPC-OEI/UACL contract, the language of the agreement evinces IPC's ability to control not only the actions of UACL but also the MBMS driver (FRANKE) who was transporting IPC's paper products;

  (b) the deposition testimony of many witnesses shows control by IPC or a question about the amount of control that IPC exerted or could exert;

  (c) the IPC-OEI/UACL agreement label of "independent contractor" does not shield IPC from vicarious liability; and

(d) the cases cited by the defense are distinguishable.

The facts cited and legal arguments proffered by plaintiff are not persuasive.

## THIS COURT'S PREVIOUS MEMORANDUM OPINION SUPPORTS IPC'S SUMMARY JUDGMENT POSITION THAT IT DID NOT CONTROL FRANKE

When deciding to deny IPC's motion to dismiss the fourth amended complaint in April 2011, but grant CSXI's motion to dismiss, this Court noted that "[w]hile the court can reasonably assume that CSXI received an 'economic benefit' from its dealings with Franke/MBMS, this assumption does not further Plaintiff's argument that Franke was CSXI's agent." *Scheinman v. Martin's Bulk Milk Service*, 2011 WL 1399260 *5 (N.D.Ill.). In discussing Franke's relationship with IPC, the Court acknowledged that although "it can reasonably be inferred … that Franke's actions in driving the tractor trailer truck benefited IPC, …'the primary factor under Illinois law for determining whether a principal-agent relationship exists [is] the right of the person or entity for whom the work is done to control the manner, and not just the result, of the work.' *Boyle*, 2008 WL 4877108, at *10." In other words, one may not assume that just because Franke's actions benefitted IPC he is IPC's agent.

Notably, this Court briefly summarized the *Boyle* decision (one of the cases relied on by IPC and UACL in their motions for summary judgment) as "concluding that a shipper exercised little, if any, control over the carrier/driver where the shipper's only actions were to dictat[e] a delivery schedule and provide trailers and vats for shipping." *Id.* at *7. It then noted that Scheinman's complaint allegations "plausibly suggest[ed] that the terms of the IPC-UACL/OEI agreement permitted IPC to exercise control over the actions of the carrier, and that IPC in fact exercised this control in its relationship with Franke." *Id.* at *7. Now that the parties have fleshed out the facts that they contend support their respective positions, this Court may determine as a matter of law "Did IPC control FRANKE?" IPC is certain the evidence shows it did not.

130592489v1 0903067

## PLAINTIFF FAILED TO RESPOND TO IPC'S DENIAL THAT IT CONTROLLED THE "MEANS AND METHODS" OF MBMS DRIVER FRANKE

When objectively looking at the plaintiff's and IPC's asserted statements of facts, it is clear that nothing of substance ties or connects IPC with FRANKE other than a bill of lading ("Memo Bill") that provided pickup and delivery information. Once again quoting from this Court's April 2011 decision, "[t]he right to control *the manner in which work is performed* is considered the 'hallmark of agency.'" Id. at *5 (emphasis supplied). IPC did not control the way in which FRANKE drove his truck on the highways between Hammond, Indiana, and Wilton, Wisconsin (where he customarily dropped his IPC loads rather than take them all the way to Minneapolis/St. Paul).

The plaintiff's failure to address any of IPC's analysis or cases concerning "means and methods" of a contractor's work on pages 8-12 of IPC's Memorandum of Law suggests that plaintiff has decided to rely on the "right to control" argument as opposed to actual control. This argument can only go so far. If the parties do not act in accordance with a contract's provisions, then the "right to control" factor fades in importance.

For example, plaintiff cites to Section 3.H. of the IPC-UACL/OEI contract (P. 4 of 24) and argues that IPC's requirement that "CARRIER's" personnel must comply with traffic laws evinces IPC's right to control FRANKE. As noted by Judge Kennelly in the *Boyle* decision, asserting in a contract that drivers "shall comply with applicable local, state, and federal laws and regulations" does not "render an independent contractor an agent." *Boyle*, at *8. This is certainly the case where FRANKE was not the direct employee of or owner-operator for UACL, the party labeled as the "CARRIER" in the IPC-UACL/OEI contract.

3

## THE CONTRACTUAL, REGULATORY AND TESTIMONIAL LABELS OF "INDEPENDENT CONTRACTOR," "SHIPPER," "CARRIER,"AND "BROKER" ARE NOT OUTCOME DETERMINATIVE

So there is no confusion from the outset, IPC agrees with plaintiff that the mention of a legal title or conclusion in an agreement is not outcome determinative. In addition, when a party uses a "label" as shorthand to describe a relationship, no court or fact finder is bound by the shorthand expression and no party may expect the label acts as a shield to liability.

In UACL's reply, it describes in great detail how the terms "broker," "motor carrier," and "shipper" are used in litigation involving the Carmack Amendment and why those statutory and regulatory labels should not be determinative of a question of agency in a personal injury lawsuit where deciding that a party is a "broker" or a "carrier" is not outcome determinative as it is in a Carmack Amendment case.

When IPC employees Anderton, Mundy and Crawford conceded that they considered UACL to be the "CARRIER" in the IPC-UACL/OEI contract, those concessions did not resolve the question of agency nor did they create a question of fact as to agency. When Mr. Martin offered up his opinion that his company and FRANKE were acting as "carrier agents" for IPC and UACL and former MBMS employee Pat Podlena said that he thought MBMS's driver FRANKE was acting as a representative, those self-serving appellations did not end the inquiry or create a question of fact. Instead, the Court must look behind the labels being bandied about in the contracts and the testimony of the witnesses to see if IPC truly "controlled" FRANKE on July 3, 2008 or had a right to control at a level that precludes summary judgment.

## IPC IS NOT CLAIMING THAT ITS CONTRACT ACTS AS A SHIELD

For a number of reasons that ring hollow, plaintiff argues that IPC's labeling of UACL as an independent contractor in the IPC-UACL/OEI contract means nothing. First, the contractual language requiring action reports and trailer maintenance is of little meaning where no action

4

reports were used with respect to FRANKE and where FRANKE was pulling a CSXI chassis and attached container as opposed to a trailer within UACL's contractual inventory. Second, the fact that IPC holds its own contract carrier authority and has its own fleet of trucks to transport its paper products is of no moment when the contract uses the words "independent contractor" to describe UACL in its relationship with the shipper IPC. Finally, IPC's power to terminate its contract with UACL does not lessen IPC's intent in describing its relationship with OEI and its successor UACL as one of independent contractor. The important question is of what importance is the label "independent contractor" in a contract and can it be used by IPC as a shield from liability?

IPC concedes that its labeling of UACL, the "CARRIER," as an "Independent Contractor" does not determine *ipso facto* that UACL or any drivers like FRANKE hauling IPC products are not agents of IPC. However, the pronouncement in the contract between IPC and UACL of an independent contractor relationship does evince a "lack of contractual control." When coupling this with (a) the language in the UACL-MBMS Master Brokerage Agreement that identified MBMS and its drivers as independent contractors and (b) the actual absence of any relationship between IPC and FRANKE other than the receipt and use of an IPC issued bill of lading ("memo bill"), it is clear that IPC does not need a shield to protect it from unfounded vicarious liability. This point is made very clear in the chart below that shows how summary judgment has not been denied to shippers like IPC in federal and Illinois state courts where there were similar facts.

As this Court pointed out, "[u]ltimately, the question of agency will be based on the contours of [the shipper's] business relationship with [the carrier]." *Scheinman v. Martin's Bulk Milk Service, Inc.*, 2011 WL 1399260 *8 (N.D. IL 2011). Now that factual discovery has been

130592489v1 0903067

completed, IPC can state unequivocally what it believed at the outset of this case. Despite plaintiff's characterization, there was no complex relationship between IPC and FRANKE or between IPC and MBMS because, in effect, there was *no relationship between IPC and Franke* and there was *no relationship between IPC and MBMS.*

## PLAINTIFF'S ASSERTIONS OF ADDITIONAL FACTS AND THE DEPOSITION TESTIMONY CITED BY THE PARTIES SUPPORT IPC'S POSITION

In his "Joint Statement of Additional Facts" (Document # 325), plaintiff correctly proffers a fact asserted by both IPC and UACL: "UACL had a right under the amended October 2007 [IPC-UACL/OEI] contract to have another trucking company make deliveries of IPC's products." (Asserted Fact # 35 in Document #325)

The significance of this asserted fact cannot be understated. In essence, plaintiff has admitted that UACL had the right to "broker" IPC loads to another motor carrier in its capacity as a property broker.

Under 49 U.S.C. 13102(2) a broker means "a person . . . that holds itself out . . . as selling, providing, or arranging for transportation by motor carrier for compensation." The enabling regulation, 49 C.F.R. 371.2, provides that "[b]roker means a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier."

These definitions help to crystallize how UACL was acting both factually and legally as a broker for the July 3, 2008, load being transported by FRANKE on its way toward its eventual delivery location, a place to which FRANKE never would have traveled since he would have stopped in Wilton, Wisconsin, at MBMS' headquarters. More importantly, the admission by plaintiff in his proffer of Asserted Fact #35 that UACL was allowed to arrange for transportation

130592489v1 0903067

through an authorized motor carrier like MBMS means that the shipper and broker "labels" do make sense in this case.

Contrary to the assertions by plaintiff in his response, the deposition testimony in this case shows that the contractual relationship between IPC, UACL, and OEI and the contractual relationship between UACL and MBMS were such that MBMS' employee FRANKE was not the agent of IPC. Several of IPC's assertions of fact demonstrate that neither FRANKE nor IPC considered FRANKE to be an agent of IPC: 15, 18, 25, 26, 29, 31, 32, 34-36, 38-43, 47-55, 73, 75, 77. (Document #307) Several of IPC's assertions of fact show unequivocally that FRANKE was operating solely as MBMS' employee and agent: 16, 20, 23, 24, 27, 28, 33, 37, 44-46, 64-66, 74. (Document #307)

Plaintiff relies on the deposition testimony of several witnesses to argue there is a question of fact about agency: IPC employees Crawford, Mundy and Anderton; MBMS employees Martin and FRANKE; and UACL employees Limback, Hubbs and Hansen. Plaintiff asserts eight (8) evidentiary categories in support of his conclusion there is a question of fact as to agency. Each of them is addressed below. None of these factors suggests that IPC controlled FRANKE on July 3, 2008.

1. **Metrics of measurement**

Crawford's and Anderton's testimony about how the performance of the truck drivers was observed and measured is not determinative of control. A shipper has a right to expect deliveries are made on a timely basis without exerting control on how the driver moves from point A to point B. Moreover, as Judge Kennelly pointed out in addressing similar metrics in the contract at issue in the *Boyle* case, "the 'metrics' spelled out in Appendix C of the agreement again address

7

ancillary aspects of the [broker's/contractor's] performace of transportation work – *not the work itself.*" *Boyle* at *8. (Emphasis supplied)

2.     **Provision and use of tractor-trailer equipment**

One need only read this Court's memorandum decision in April 2011 to note that CSXI was the party who provided the chassis and container for the IPC products that were loaded into it at the Hammond distribution center. Since the trailer (chassis and container) was not part of the OEI or UACL inventory referenced in the IPC-UACL/OEI contract, the contractual provisions about a sufficient number of trailers in the "CARRIER's" fleet is immaterial and irrelevant with respect to the trailer used on July 3, 2008.

3.     **Licensure and possible rejection of drivers due to their appearance**

A contractual provision that requires a driver to have a CDL (Commercial Driver's License) is superfluous and immaterial since no person employed by or contracted with any motor carrier can be "qualified" under the FMCSR unless he or she has a CDL. 49 CFR 383, 391.

Moreover, rejecting a driver because his appearance is unkempt has nothing to do with how he drives a tractor-trailer unit and is also immaterial to the issue of control. As pointed out in *Boyle*, arguing that control is demonstrated when a shipper has the contractual or operational right to veto a driver "flies in the face of rulings by this Court and others that a shipper's right to reject – but not fire – a driver does not create an agency relationship. See *Wilson-McCray*, 2003 WL 22901569 at *6 (citing *Shoemaker*, 273 Ill.App.3d at 918, 210 Ill.Dec. 61, 652 N.E.2d at 1039." *Boyle* at *10.

4.     **Operating trucks safely and in compliance with traffic laws**

Judge Kennelly's *Boyle* decision also highlights why a contractual provision "requiring" safe operation of a truck in compliance with traffic laws is not evidence of control or right to control. *Boyle* at *9. Former OEI President Robert Elsholtz highlighted the obvious when he testified that MBMS and its drivers had "an independent responsibility to abide by whatever laws apply to it, regardless of what may have been expressed in any contract that exist[s]." Robert Elsholtz deposition, p. 70, Plaintiff Exhibit 18.

5. **Dictation of payment terms and amount of compensation**

The transportation market and trucking industry remains a free marketplace. If UACL or OEI or MBMS did not want to haul freight at the rates IPC provided to UACL and UACL provided to MBMS, they did not have to sign their respective contracts. The amount of compensation is irrelevant to the issue of control. If it was, then the higher the amount paid, the more control there is. Certainly the law does not recognize such a circumstance as an indicia of control.

6. **Delivery information**

In IPC's initial legal memorandum, it dealt at length with those Illinois state and federal cases that found "ancillary" matters not to be material or determinative of the questions of actual control or right to control. The testimony cited by plaintiff from Mssrs. Martin and FRANKE and Mss. Anderton and Hansen does not overcome the legal analysis finding the delivery information to be ancillary and not outcome determinative.

7. **Use of a communication system**

IPC concedes that a communication system was used by it, UACL, MBMS and FRANKE. The important distinction in this case is there is no evidence that use of the communication system in any way affected or effected the manner in which FRANKE drove on

9

a daily basis or on the July 3, 2008 run. Quoting the *Boyle* decision in the context of a dedicated-carriage contract and the communications that an on-site coordinator provided to the putative agent driver, "[n]o reasonable jury could find that this gave [IPC] control over how [MBMS] drivers [like Franke] drove their trucks." *Boyle* at *9.

### 8. IPC expected UACL to substitute for OEI and assume its obligations

Although IPC and UACL admit that UACL stepped into the shoes of OEI on June 13, 2008, such a transition did not change IPC's expectations or lack of expectations as to what entity would actually do the work of moving IPC's product. As explained elsewhere, since OEI used MBMS as the actual contractor for carriage of IPC products, UACL continued this practice from June 13, 2008 through July 3, 2008, and IPC never had any objection to this practice, IPC's expectation that UACL would step into the shoes of OEI did not expand, or for that matter contract, its lack of a relationship with MBMS or FRANKE.

### ILLINOIS AND FEDERAL CASES SUPPORT IPC'S MOTION

Plaintiff's attempts to distinguish the *Dowe* and *Wilson-McCray* cases are unpersuasive. Pointing out that the same driver was involved in both cases (where a federal judge and state court judge independently granted summary judgment for the shipper), plaintiff claims the distinguishing feature is that the driver was an independent contractor assigned to haul the load by a broker, as opposed to an employee of the broker, pursuant to a written agreement between the shipper and the broker giving the broker the exclusive right to assign drivers. Plaintiff also claims there was no "true broker" in the Scheinman case.

These are distinctions without a difference. It is disingenuous for plaintiff to now argue that UACL did not have any responsibility for drivers, regardless of what its "title" or "label" is, when at the same time contending that UACL had the responsibility as the contractual "CARRIER" for IPC to provide drivers, tractors and trailers. Moreover, these distinctions mean

130592489v1 0903067

nothing when one is looking at the alleged vicarious responsibility of the shipper IPC as opposed to the broker/carrier UACL.

Plaintiff also claims as a distinguishing feature the fact there was no direct relationship or direct communication relationship between the shipper and the driver. Yet, in *Dowe* and *Wilson-McCray*, the shipper had a set of rules that the driver was to use, just as plaintiff claims exists in Section 8A of the IPC-UACL/OEI agreement.

The fact that IPC has its own fleet of trucks that it used to move some IPC product is also of no moment since the MBMS daily run for IPC products only involved MBMS driver FRANKE on the leg between Hammond, Indiana, and Wilton, Wisconsin, instead of some hypothetical IPC driver.

The chart below demonstrates how the facts asserted by the plaintiffs, or held by the courts, in the cited cases support IPC's argument that FRANKE was not its agent. IPC has placed asterisks beside those facts in the chart that are identical or very similar to the facts in the Scheinman case.

| Facts Asserted by Plaintiff or Held by Court in Certain Illinois Appellate and Federal District Court Cases That <u>***Did Not Preclude***</u> Summary Judgment for Putative Principal |
|---|
| Large volume of hauling by driver * <div align="right">***Dowe***</div> |
| Driver's assertion he was the shipper's "house driver" <div align="right">***Dowe***</div> |
| Driver hauled "all" of shipper's particular product <div align="right">***Dowe***</div> |
| Shipper had rules regarding driver's conduct at shipper's facility * <div align="right">***Dowe***</div> |
| Shipper could terminate driver if he was, in opinion of shipper, "unsafe" <div align="right">***Dowe***</div> |
| Driver chose his own routes * <div align="right">***Dowe***</div> |
| Driver controlled his own hours * <div align="right">***Dowe***</div> |
| Driver provided and maintained his own equipment * |

| Facts Asserted by Plaintiff or Held by Court in Certain Illinois Appellate and Federal District Court Cases That *Did Not Preclude* Summary Judgment for Putative Principal | |
|---|---|
| | *Dowe* |
| Driver paid by motor carrier plus fringe benefits * | *Dowe* |
| Shipper had no authority to discharge driver from the motor carrier * | *Dowe* |
| Driver's work performed pursuant to motor carrier's rules * | *Dowe* |
| Stone company shipper's weighing of truck was a preliminary task | *Shoemaker* |
| Stone company shipper overseeing the loading of truck was preliminary task * | *Shoemaker* |
| Stone company shipper's instruction on where to deliver did not control manner in which job was done * | *Shoemaker* |
| Stone company shipper specified the particular hauling task * | *Shoemaker* |
| Stone company shipper did not control driver's "driving or other conduct in hauling the load"* | *Shoemaker* |
| Stone company shipper did not pay driver * | *Shoemaker* |
| Stone company shipper could not hire or fire driver * | *Shoemaker* |
| Delivery driver determined route, not the newspaper shipper * | *Cable & Manahan* |
| Delivery driver was to deliver papers at designated hours * | *Cable & Manahan* |
| Delivery driver paid all taxes and expenses * | *Cable & Manahan* |
| Delivery driver provided manpower and vehicles * | *Cable & Manahan* |
| Delivery driver paid all delivery expenses * | *Cable & Manahan* |
| Newspaper shipper did not instruct on how to make deliveries * | *Cable & Manahan* |
| Driver to follow a set of written rules from shipper | *Wilson-McCray* |
| Driver had a longtime relationship with shipper * | *Wilson-McCray* |
| Driver performed all product hauling for shipper | *Wilson-McCray* |
| Shipper could fire driver based on customer complaint | |

130592489v1 0903067

| **Facts Asserted by Plaintiff or Held by Court in Certain Illinois Appellate and Federal District Court Cases That <u>*Did Not Preclude*</u> Summary Judgment for Putative Principal** |
|---|
| *Wilson-McCray* |
| Driver considered himself a "house truck" <br> *Wilson-McCray* |
| Driver considered himself a "dedicated run" * <br> *Wilson-McCray* |
| Driver required to complete tasks within a set period of time * <br> *Wilson-McCray* |
| Driver to report accidents to shipper <br> *Wilson-McCray* |
| Contract language did not specify how the driver was to do his job * <br> *Wilson-McCray* |
| Contract terms specifying particular hauling task did not dictate method or manner in which task is to be completed * <br> *Wilson-McCray* |
| Actual conduct of driver and shipper is what determines where agent or independent contractor * <br> *Wilson-McCray* |
| Multiple acts of hauling loads did not create agency * <br> *Wilson-McCray* |
| Volume of work did not create agency * <br> *Wilson-McCray* |
| Shipper's monitoring of delivery process to ensure prompt delivery and frequent use of driver or driver's company did not create agency relationship * <br> *Wilson-McCray* |
| Dedicated carriage contract did not create agency relationship between shipper and driver <br> *Boyle* |
| Contract between shipper and driver's employer had strategic goals of 100 percent on-time service * <br> *Boyle* |
| Contract between shipper and shipper's employer acknowledged that carrier's and drivers' status would be that of independent contractor <br> *Boyle* |
| Motor carrier had exclusive control and direction of its employee drivers * <br> *Boyle* |
| Contract appendices contained "metrics" for judging performance: e.g. orientation training and processing; communications would be operational prior to start-up; operational plans expected 100% on time delivery without delay; monthly steering committee meetings; carrier manager would work on site of shipper and report to both shipper and carrier management * <br> *Boyle* |
| Shipper did not control drivers' routes * |

13

| Facts Asserted by Plaintiff or Held by Court in Certain Illinois Appellate and Federal District Court Cases That *Did Not Preclude* Summary Judgment for Putative Principal | |
|---|---|
| | *Boyle* |
| Shipper did not monitor drivers' conduct away from shipper's facility * | *Boyle* |
| Shipper did not train drivers how to drive * | *Boyle* |
| Shipper did not issue driver any equipment * | *Boyle* |
| Shipper did not have power to fire drivers * | *Boyle* |
| Shipper's "on-time" delivery goal did not dictate a specific method of accomplishing the goal * | *Boyle* |
| Contemplated operational changes to combat a lateness problem were not solely dictated by shipper | *Boyle* |
| Required communications and meetings between shipper and carrier did not automatically require shipper mandates | *Boyle* |
| Presence of carrier manager at facility facilitated communications between the shipper and the carrier | *Boyle* |
| Language in contract requiring driver compliance with traffic laws and regulations did not create agency * | *Boyle* |
| Shipper had right to reject but not fire a driver | *Boyle* |

From a review of this chart, it is apparent that the highlighted facts of the *Dowe, Shoemaker, Cable, Manahan, Wilson-McCray* and *Boyle* decisions that are not also present in the Scheinman case (those without asterisks) are of such a quality that a plaintiff would be expected to argue these facts preclude summary judgment. Yet these facts were insufficient to preclude those courts from entering summary judgment for the shippers. In like fashion, this Court should find the cases cited by IPC as supportive of summary judgment.

14

## CONCLUSION

Although all of plaintiff's complaints have included allegations that Franke was the employee, agent or apparent agent of IPC, the only real dispute is whether Franke was IPC's agent. IPC did not control or have the right to exercise control over Franke or his employer, MBMS, when he was driving his truck. All of the facts indicate that at the time of the occurrence, Franke and MBMS were independent contractors of UACL, which in turn was an independent contractor of IPC. IPC is entitled to summary judgment on Plaintiff's Fifth Amended Complaint.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: s/Carlton D. Fisher

Carlton D. Fisher
William Yu
Cecilia A. Horan
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3450

130592489v1 0903067