IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MURRAY SCHEINMAN, Plenary Guardian of  )
the Estate and Person of JEFFREY J.  )
SCHEINMAN, a Disabled Person,  )
    )   Case No.: 09 cv 5340
    Plaintiff,  )
v.  )   Judge James F. Holderman
    )
MARTIN'S BULK MILK SERVICE, INC.,  )   Magistrate Susan E. Cox
SAMUEL G. FRANKE, INTERNATIONAL  )
PAPER COMPANY, UNIVERSAL AM CAN  )
LTD., Successor to OVERNITE EXPRESS,  )
INC., and OX LLC, ,  )
    )
    Defendants.  )

## DEFENDANT INTERNATIONAL PAPER COMPANY'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S LOCAL RULE 56.1(b)(3)(C) JOINT STATEMENT OF ADDITIONAL FACTS

NOW COMES the defendant, International Paper Company ("IPC"), by and through its attorneys, Carlton D. Fisher, William Yu and Cecilia A. Horan of HINSHAW & CULBERTSON LLP, and for its Objections and Responses to Plaintiff's Local Rule 56.1(b)(3)(C) Joint Statement of Additional Facts, it states as follows:

**GENERAL OBJECTIONS AND MOTION TO STRIKE:**

**IPC objects to the plaintiff asserting 55 additional facts since they number more than the 40 permitted by Local Rule 56.1. The claim that plaintiff is entitled to 80 additional facts but has only used 55 is disingenuous since the facts asserted by plaintiff as to IPC and UACL are identical.**

**Since Overnite Express Inc. is not a proper party to this lawsuit in light of the admitted fact that UACL had purchased OEI as of June 12, 2008, no assertion of fact claiming that OEI is a party is material. IPC also objects to those additional statements of fact that are not material to a determination of whether FRANKE was the agent of IPC or**

130593198v1 0903067

UACL. In particular, with respect to Additional Facts 50 – 55, see IPC and UACL initial legal memoranda, IPC and UACL Joint Reply, and *Boyle v. RJW Transport, Inc.*, No.5 C 1082, 2008 WL 4877108 (N.D.Ill. June 20, 2008) citing *Continental Ins.Co. v. Empire Fire & Marine Ins. Co.*, 157 F.3d 610, 612-13 (8th Cir. 1998); *United States v. Mut. Trucking Co.*, 141 F.2d 655, 657 n. 1 (6th Cir. 1944); *Narayan v. EGL, Inc.*, No. 05-C4181, 2007 WL 2021809, at *9 (N.D.Cal. July 10, 2007).

| STATEMENT | RESPONSE |
|---|---|
| 1. Defendant Overnite Express (OEI) entered into a contract with International Paper on October 1, 2007 in which OEI represented itself as the motor carrier and agreed to provide transportation of International Paper's commodities pursuant to the terms of that contract. OEI represented that it was an interstate motor contract carrier of property duly licensed and authorized under the Federal Highway Administration. (Exhibit 15, p. 3) | IPC objects because part of this assertion calls for a legal conclusion to which no response is required. IPC admits that OEI entered into a contract with IPC on October 1, 2007. IPC denies that OEI is a defendant in this case, denies that Plaintiff's Exhibit B is a complete copy of the IPC-OEI contract, denies that OEI only represented that it was a motor contract carrier, and denies the remainder of Paragraph 1 to the extent the allegations contained therein do not accurately reflect the terms of a complete copy of the IPC-OEI contract. |
| 2. In OEI's October, 2007 contract with International Paper, OEI did not ever claim to be acting as a broker, did not identify itself as a broker, and did not agree to provide truck brokerage services to International Paper. (Exhibit 15, p. 1-24) | IPC objects because part of this assertion calls for a legal conclusion to which no response is required. IPC denies that OEI never claimed being a broker and objects to Plaintiff's Exhibit 15 attached to plaintiff's Additional Facts since it is an incomplete copy of the IPC-OEI contract. IPC attached complete copies of the IPC-OEI contract with all of the exhibits as Joint Appendix Exhibit 15 of its original Joint Appendix of Exhibits. On Exhibit D ("International Paper-Carrier Profile") to the IPC-OEI contract (Bates Numbered |

130593198v1  0903067

| STATEMENT | RESPONSE |
|---|---|
| | Page IP 000056), OEI specifically stated that it has both "Contract Carrier" and "Broker" authority.<br><br>IPC denies Paragraph 2 to the extent the allegations contained therein do not accurately reflect what is contained on the more complete copy of the IPC-OEI contract, attached to IPC's Joint Appendix Exhibit 15. |
| 3. On or about June 13, 2008 UACL purchased OEI, including OEI's contract with IPC; UACL agreed to accept all the terms of the October 2007 contract that OEI had with IPC. (Limback Dep., pp. 46-51) | IPC admits that on June 13, 2008, UACL purchased the assets of OEI, including OEI's contract with IPC. IPC admits that UACL agreed to accept all the terms of the October 2007 contract that OEI had with IPC but denies that the materials cited by the plaintiff support this fact. |
| 4. On June 13, 2008 IPC and UACL agreed to AMENDMENT NO. 1 under which UACL agreed to operate as the carrier and assume all of the responsibilities of the carrier as set forth in the October 1, 2007 contract (Exhibit 16; Limback Dep., pp. 56-61) | IPC objects to the form of this asserted fact since the actual contract term capitalized as "CARRIER" does not have the meaning of the statutory and regulatory terms of "carrier" or "motor carrier"; since Plaintiff fails to define the term "carrier" in this asserted fact, IPC cannot adequately respond to this asserted fact.<br><br>Without waiving the objection, IPC admits that UACL and IPC entered into a document titled AMENDMENT NO. 1 on June 9, 2008, with an effective date of June 13, 2008.<br><br>IPC denies the assertions of Paragraph 4 to the extent the allegations contained therein do not accurately reflect the testimony of UACL President Mark Limback in Plaintiff's Exhibit 16. |
| 5. Pursuant to the terms of AMENDMENT NO. 1, as of June 13, 2008 UACL contractually obligated itself to act as a motor carrier for transportation of IPC's paper products and to fulfill all of the carriers obligations and other terms of OEI's October | IPC objects to the form of this statement, as vague as "motor carrier" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that UACL and IPC entered |

130593198v1 0903067

| STATEMENT | RESPONSE |
|---|---|
| 1, 2007 contract with IPC. (Exhibit 15, p. 1-24); Limback Dep., pp. 58-59, 86-87, Exhibit 9) | into a document titled AMENDMENT NO. 1 on June 9, 2008, with an effective date of June 13, 2008, and that UACL agreed to assume the responsibilities of OEI, which was identified as the "CARRIER" in the October 1, 2007 contract.<br><br>IPC denies that AMENDMENT NO. 1 required UACL to act as a "motor carrier" as that term is used in the FMCSA and FMCSR.<br><br>IPC denies Paragraph 5 since the incomplete copy of the IPC-UACL/OEI contract attached as Exhibit 16 to plaintiff's responses does not make reference to the term "motor carrier" and also to the extent the allegations contained therein do not accurately reflect the testimony of UACL President Mark Limback in Plaintiff's Exhibit 9. |
| 6.  Under the terms of the October 1, 2007 contract assumed and accepted by UACL as of June 13, 2008, UACL represented itself to be a motor carrier, was in fact a motor carrier, and provided proof of its motor carrier operating authority to IPC. (Exhibit 15, p. 3; Limback Dep. pp. 14-17, Ex. 9). | IPC objects to the form of this statement as vague since "motor carrier" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that UACL and IPC entered into a document titled AMENDMENT NO. 1 on June 9, 2008, with an effective date of June 13, 2008.<br><br>IPC denies that under the terms of the AMENDMENT No. 1 that UACL is denoted or memorialized as a "motor carrier." However, IPC admits that UACL had authority as a common carrier and as a broker. (Exhibit 9, Limback, p. 14.)<br><br>IPC denies the remaining allegations of paragraph 6 as Mark Limback testified that UACL was acting as a broker in this incident. (IPC and UACL JAE No. 9, p. 15, lines 15-16). |

| STATEMENT | RESPONSE |
|---|---|
| 7. Under the terms of the October 1, 2007 contract assumed and accepted by UACL as of June 13, 2008, UACL did not represent itself as a transportation broker, did not claim to be providing trucking brokerage services to IPC and did not have any broker agreement with IPC. (Ex. 15, pp. 1-24; Limback Dep. pp. 16, Ex. 9). | IPC denies the allegations in paragraph 7 for several reasons. UACL president Mark Limback testified that UACL was acting as a broker in this incident and believed that it was acting as a broker because it used an independent contractor to haul this load based on a Master Brokerage Agreement it had with MBMS. (Plaintiff's Ex. 9, p. 15, lines 15-16; p. 16, lines 10-15). Moreover, UACL did represent itself as a broker to IPC and did claim to be providing brokerage services to IPC. (See Mundy, p. 99, Anderton, p. 26.) |
| 8. On May 21, 2008, UACL sent a letter to IPC announcing that as of June 13, 2008 OEI would be operating under UACL's insurance and operating authority, and accepting the terms of the current contract IPC had in place with OEI. (Exhibit 23) | Admitted. |
| 9. In its May 21, 2008 letter UACL specifically told IPC that "All bills of lading should reflect Universal Am Can Ltd. as the carrier" and that all future "invoices for freight moved will come from Universal Am Can Ltd." so the remittance should be sent to UACL's office. (Exhibit 23). | Admitted. |
| 10. As to this occurrence on July 3, 2008, IPC believed the motor carrier was UACL, and both UACL and any drivers UACL used to transport IPC's goods had to comply with the requirements of the October 2007 contract. (Anderton Dep., pp. 25-26, Exhibit 11). | IPC objects to the form of this statement as vague since "motor carrier" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC denies that it believed the motor carrier was UACL and denies that the materials cited support this asserted fact since Joan Anderton testified that IPC was unaware of and had no influence over how the delivery was executed on July 3, 2008. (Ex. 11, p. 26, lines 4-9.)<br><br>IPC further states that under IPC's agreement with UACL, UACL had the right to broker deliveries of IPC products to |

5

| STATEMENT | RESPONSE |
|---|---|
| | another company. (See Mundy, p.99, Anderton, P.26.) |
| 11. UACL had responsibility for complying with the terms of its contract with IPC regardless of whether a UACL driver or a Martin's driver transported IPC's product. (Anderton Dep. pp. 25-26, 77-78.) | IPC admits that Joan Anderton stated that IPC expected that UACL complied with the terms of its contract with IPC.<br><br>IPC further admits that under IPC's agreement with UACL, UACL had the right to broker deliveries of IPC products to another company. (See Mundy, p. 99, Anderton, p. 26.) |
| 12. Under the terms of the October, 2007 contract, as assumed by UACL on June 13, 2008, IPC set forth a list of Carrier's Obligations in section 3 of the contract under which IPC controlled UACL's provision of transportation services with respect to:<br><br>a. The weekly commitment of services and the rate of compensation;<br><br>b. Completion of a motor carrier vendor profile;<br><br>c. Coordination of delivery schedules;<br><br>d. Guaranteeing a certain number of commitments for transportation services;<br><br>e. Meeting a minimum service level of 98%;<br><br>f. Meeting a minimum on-time delivery requirement of 98%;<br><br>g. Maintaining the requisite motor vehicle equipment needed to provide the amount of transportation services to which UACL committed;<br><br>h. Employing the requisite number of personnel, including ensuring that the carrier's personnel comply with all applicable local, state and federal laws and | IPC objects to the form of this statement as vague since "carrier" and "controlled" are legal terms of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that OEI entered into a contract with IPC on October 1, 2007 and that it contains a list of "Carrier's Obligations" in section 3 of said contract.<br><br>IPC denies that Paragraph 12 sets forth said obligations verbatim and to the extent the allegations contained therein do not accurately reflect the language of Exhibit 15, they are denied. |

130593198v1 0903067

| STATEMENT | RESPONSE |
|---|---|
| regulations;<br><br>i. Payment of ancillary costs with respect to fuel, oil, tires, parts and other supplies and equipment;<br><br>j. Providing trailers that were suitably clean and water tight;<br><br>k. Providing an adequate number of empty trailers to meet the number of transportation commitments to which UACL agreed; (Exhibit 15, pgs. 3-4) | |
| 13. Under the terms of the October 1, 2007 contract adopted and assumed by UACL, Defendant IPC controlled the terms of Compensation, payment terms, assignment of accounts receivable, commitments, termination of the contract, the use of electronic communications for dispatching and reporting to IPC, the format for bills of lading and freight receipts, responsibility for damage or lost freight, the insurance limits, and the use of intermodal service. (Exhibit 15, pgs. 411) | IPC objects to the form of this statement, as vague since "controlled" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that OEI entered into a contract with IPC on October 1, 2007 and that it contains a list of "Headers" in the table of contents of said contract.<br><br>IPC denies that Paragraph 13 sets forth said headers verbatim or in their entirety and to the extent the allegations contained therein do not accurately reflect the language of Exhibit 15, they are denied. |
| 14. In the October 1, 2007 contract adopted and assumed by UACL, in section 20 titled Independent Contractor, UACL, as the motor carrier, agreed to "solely direct all persons performing services performed by Carrier under the Agreement, and such persons shall be and remain subject to the exclusive control and direction of CARRIER." Under this provision UACL as the carrier accepted an obligation to direct and control Martin's and Franke, insofar as Martin and Franke performed the transportation services for UACL. (Exhibit 15, pgs. 11-12) | IPC objects to the form of this statement as vague since "motor carrier" and "obligation to direct and control" are legal terms of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that OEI entered into a contract with IPC on October 1, 2007, which was assumed by UACL and that said contract contains a section 20 titled Independent Contractor.<br><br>IPC denies that UACL was labeled as a "motor carrier" under the IPC-UACL-OEI contract. |

130593198v1 0903067

| STATEMENT | RESPONSE |
|---|---|
| | IPC denies the contract terms purport to define the relationship between UACL and any of its contractors such as MBMS.<br><br>IPC denies that Paragraph 14 sets forth section 20 verbatim and to the extent the allegations contained therein do not accurately reflect Exhibit 15, they are denied. |
| 15.  Under the October 2007 contract, IPC required that UACL, and MBMS' employee driver Franke, had to comply with the following contractual provisions:<br><br>J. Trailer Requirements<br><br>CARRIER shall provide SHIPPER with trailers that are suitable for the safe efficient and damage-free transportation of its products. Suitable trailers are defined as van trailers that (I) are clean and free of contaminants, debris, foreign substances, odors, and wall and floor protrusions; (ii) completely protect and prevent SHIPPER'S good from coming into contact with or being exposed to water and other environmental hazards; and, (iii) are in proper condition and have no mechanical defects. CARRIER agrees to pay in full all claims filed by SHIPPER for damage to or destruction of SHIPPER'S good which arise from unsuitable trailers. (Exhibit 15, p. 4, Sec. 3J) | IPC objects to the form of this statement as vague since "required" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that said contract contains language under "J. Trailer Requirements" but language is immaterial to the determination of IPC's motion for summary judgment since the trailer involved with this occurrence was not part of a UACL fleet of trailers.<br><br>IPC denies that the IPC-UACL/OEI contract gave rise to any duties or responsibilities on FRANKE. |
| 16.  Under the October 2007 contract, IPC required that UACL, and MBMS' employee driver Franke, had to comply with the following contractual provisions:<br><br>K.  Trailer Pool Requirements<br><br>CARRIER shall provide empty trailers to be maintained in SHIPPER'S trailer pool, | IPC objects to the form of this statement as vague since "required" and "comply" are legal terms of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that said contract contains the language under "K. Trailer Pool Requirements."  This is immaterial to the determination of IPC's motion for summary |

130593198v1  0903067

| STATEMENT | RESPONSE |
|---|---|
| plus any live load commitments. The number of empty trailers shall be determined by SHIPPER and agreed upon by CARRIER and shall be equal to or greater than $1^1/2$ times the number of daily or weekly Commitments. (Exhibit 15, p. 4, Sec. 3K) | **judgment since the trailer involved with this occurrence was not part of a UACL fleet of trailers.**<br><br>**IPC denies that the IPC-UACL/OEI contract gave rise to any duties or responsibilities on FRANKE.** |
| 17.  Under the October 2007 contract, IPC required that UACL, and MBMS' employee driver Franke, had to comply with the following contractual provisions:<br><br>10. Bills of Lading and Freight Receipts.<br><br>A.  All shipments tendered to CARRIER shall be on a straight bill of lading which shall, regardless of its form, format, or content, be subject only to the terms and conditions contained in Exhibit F, Sample International Paper Bill of Lading, a copy of which is attached hereto and is incorporated herein by reference. This bill of lading may be modified by SHIPPER only. Any attempt by CARRIER to incorporate, directly or indirectly, by reference or otherwise, any other tariffs, rates, charges, rules, or terms or conditions into any bill of lading shall have no effect on the bill of lading. (Exhibit 15, p. 8, Sec. 10)<br><br>B.   Upon delivery of each shipment, CARRIER shall obtain a delivery receipt showing date of delivery, goods delivered, any consignee exceptions to count and conditions of goods delivered, and a legible signature of consignee. CARRIER shall provide SHIPPER with a copy of any delivery receipt or proof of delivery ("POD") as soon as practical for CARRIER, but in no event later than twenty four (24) hours after requested by SHIPPER or the delivery of goods. CARRIER shall transmit the delivery | **IPC objects to the form of this statement as vague since "required" and "comply" are legal terms of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.**<br><br>**IPC admits that OEI entered into a contract with IPC on October 1, 2007, which was assumed by UACL and that said contract contains a section 10 titled "Bills of Lading and Freight Receipts."**<br><br>**IPC admits that said contract contains the language under section 10 titled "Bills of Lading and Freight Receipts."**<br><br>**IPC denies that the IPC-UACL/OEI contract gave rise to any duties or responsibilities on FRANKE.** |

9

130593198v1  0903067

| STATEMENT | RESPONSE |
|---|---|
| receipt copy to SHIPPER via facsimile, express delivery service, or other electronic medium as may be employed between the parties. (Exhibit 15, p. 8, Sec. 10) | |
| 18. Under the October 2007 contract, IPC required that UACL, and MBMS' employee driver Franke, had to comply with the following contractual provisions regarding communication equipment that would allow IPC to stay in constant electronic communication with drivers regarding all facets of the transportation of its goods:<br><br>9. Electronic Communications, Dispatch and Reporting.<br><br>A. Upon delivery of written instructions or procedures from SHIPPER, CARRIER shall obtain, maintain, and utilize electronic connectivity communications (e.g. EDI, XML, FTP, Web) with SHIPPER. CARRIER shall utilize the Transportation Management System (TMS) platform engaged at served SHIPPER facilities.<br><br>B. CARRIER shall report pick-up and delivery events in the format(s) specified by SHIPPER. Timeline requirements and specific events shall be as set forth in Exhibit H. Electronic Compliance Requirements, which is attached hereto and is incorporated herein by reference. CARRIER shall complete and forward to SHIPPER or its agents all requested reports in a timely manner and in industry-standard format(s). | IPC objects to the form of this statement as vague since "required" and "comply" are legal terms of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that OEI entered into a contract with IPC on October 1, 2007, which was assumed by UACL, and that said contract contains a section 9 titled "Electronic Communications, Dispatch and Reporting."<br><br>IPC admits that said contract contains the language under section 9 titled "Electronic Communications, Dispatch and Reporting."<br><br>IPC denies that the IPC-UACL/OEI contract gave rise to any duties or responsibilities on FRANKE. |
| 19. Under Exhibit H of the October 2007 contract, IPC required that UACL and MBMS' employee-driver Franke communicate electronically in the following manner:<br><br>ELECTRONIC COMPLIANCE REQUIREMENTS | IPC objects to the form of this statement as vague since "required" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that OEI entered into a contract with IPC on October 1, 2007, which was |

130593198v1  0903067

| STATEMENT | RESPONSE |
|---|---|
| Carriers for International Paper are required to have the ability to communicate electronically and to be able to conduct transportation operations utilizing electronic means and tools. Communication can be accomplished by EDI, XML, or a web portal provided by International Paper. (Exhibit 15, attachment Exhibit H to October 2007 contract) | assumed by UACL, and that said contract contains an attachment, Exhibit H, titled "Electronic Compliance Requirements"<br><br>IPC admits that said contract contains the language under the attachment, Exhibit H, titled "Electronic Compliance Requirements."<br><br>IPC denies that the IPC-UACL/OEI contract gave rise to any duties or responsibilities on FRANKE. |
| 20. Under Exhibit H of the October 2007 contract, IPC required that UACL and MBMS' employee-driver Franke communicate electronically in the following manner:<br><br>LOAD TENDER Carriers are required to respond (accept/reject) to a load tender within 2 business hours Monday through Friday 7 a.m. to 5 p.m. CST. Failure to respond will be considered a rejected tender. (Exhibit 15, attachment Exhibit H to October 2007 contract) | IPC objects to the form of this statement as vague since "required" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that OEI entered into a contract with IPC on October 1, 2007, which was assumed by UACL, and that said contract contains an attachment, Exhibit H, titled "Load Tender"<br><br>IPC admits that said contract contains the language under the attachment, Exhibit H, titled "Load Tender."<br><br>IPC denies that the IPC-UACL/OEI contract gave rise to any duties or responsibilities on FRANKE. |
| 21. Under Exhibit H of the October 2007 contract, IPC required that UACL and MBMS' employee-driver Franke communicate electronically in the following manner:<br><br>DELIVERY APPOINTMENT Carriers are required to establish a delivery appointment and response with the date and time for each stop within 24 hours of tender acceptance. (Exhibit 15, attachment Exhibit H to October 2007 contract) | IPC objects to the form of this statement as vague since "required" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that OEI entered into a contract with IPC on October 1, 2007, which was assumed by UACL, and that said contract contains an attachment, Exhibit H, titled "Delivery Appointment."<br><br>IPC denies that paragraph 21 sets forth Exhibit H titled "Delivery Appointment" verbatim and further denies that the words |

130593198v1 0903067

| STATEMENT | RESPONSE |
|---|---|
| | "Carriers are required" are indicated in said Exhibit H. To the extent the allegations contained therein do not accurately reflect Exhibit 15 to the contract, they are denied.<br><br>IPC denies that the IPC-UACL/OEI contract gave rise to any duties or responsibilities on FRANKE. |
| 22. Under Exhibit H of the October 2007 contract, IPC required that UACL and MBMS' employee-driver Franke communicate electronically in the following manner:<br><br>PICKUP DATE/TIME Immediately upon making a delivery appointment, establish a pickup date and time and transmit to International Paper. Failure to establish a pickup appointment negates the ability to claim detention at origin. Upon actual pickup, transmit the updated event within 2 hours of departure. (Exhibit 15, attachment Exhibit H to October 2007 contract) | IPC objects to the form of this statement as vague since "required" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that OEI entered into a contract with IPC on October 1, 2007, which was assumed by UACL, and that said contract contains an attachment, Exhibit H, titled "Pickup Date/Time"<br><br>IPC admits that said contract contains the language under the attachment, Exhibit H, titled "Pickup Date/Time."<br><br>IPC denies that the IPC-UACL/OEI contract gave rise to any duties or responsibilities on FRANKE. |
| 23. Under Exhibit H of the October 2007 contract, IPC required that UACL and MBMS' employee-driver Franke communicate electronically in the following manner:<br><br>ARRIVAL Transmit delivery confirmation electronically within 2 business hours of arrival at Consignee's receiving dock or port. (Exhibit 15, attachment Exhibit H to October 2007 contract) | IPC objects to the form of this statement as vague since "required" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that OEI entered into a contract with IPC on October 1, 2007, which was assumed by UACL, and that said contract contains an attachment, Exhibit H titled "Arrival"<br><br>IPC does not dispute that said contract contains the language under the attachment, Exhibit H, titled "Arrival"<br><br>IPC denies that the IPC-UACL/OEI contract gave rise to any duties or responsibilities on FRANKE. |

130593198v1 0903067

| STATEMENT | RESPONSE |
|---|---|
| 24.    Under Exhibit H of the October 2007 contract, IPC required that UACL and MBMS' employee-driver Franke communicate electronically in the following manner:<br><br>DELAY/REVISED ETA Report revised ETA within 2 business hours of determining that a new, revised delivery time and/or date is required. (Exhibit 15, attachment Exhibit H to October 2007 contract) | IPC objects to the form of this statement, as vague as "required" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC does not dispute that OEI entered into a contract with IPC on October 1, 2007, which was assumed by UACL and that said contract contains an attachment, Exhibit H, titled "Delay/Revised ETA."<br><br>IPC admits that said contract contains the language under the attachment, Exhibit H, titled "Delay/Revised ETA."<br><br>IPC denies that the IPC-UACL/OEI contract gave rise to any duties or responsibilities on FRANKE. |
| 25.    Under Exhibit H of the October 2007 contract, IPC required that UACL and MBMS' employee-driver Franke communicate electronically in the following manner:<br><br>DELIVERY PERFORMANCE The minimum On-Time Delivery Requirement is 98% and the Minimum Service Level Requirement is 98%. (Exhibit 15, attachment Exhibit H to October 2007 contract) | IPC objects to the form of this statement as vague since "required" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that OEI entered into a contract with IPC on October 1, 2007, which was assumed by UACL and that said contract contains an attachment, Exhibit H, titled "Delivery Performance."<br><br>IPC admits that said contract contains the language under the attachment, Exhibit H, titled "Delivery Performance."<br><br>IPC denies that the IPC-UACL/OEI contract gave rise to any duties or responsibilities on FRANKE. |
| 26.    IPC could terminate its contract with UACL if UACL or its carrier drivers, including MBMS employee driver Franke, caused a continuing or substantial failure in the performance of the contract by:<br><br>A.    Failure to comply with facility safety rules and operating procedures, including | IPC admits that OEI entered into a contract with IPC on October 1, 2007, which was assumed by UACL, and that said contract contains a section 8 titled "Default By Carrier."<br><br>IPC denies that paragraph 26 sets forth section 8 titled "Default By Carrier" |

130593198v1  0903067

| STATEMENT | RESPONSE |
|---|---|
| but not limited to check in/dispatch procedures, equipment type and condition, sliding tandem axles to the rear most position for loading and unloading, hours of operation, trailer pool operations, document control, performance reporting and driver personal protective equipment.<br><br>B.  A combined calendar year minimum service acceptance level for origin equipment supply commitments and on time deliveries of less than 98 percent.<br><br>C.  Three consecutive months of minimum service acceptance level below 98 percent in either origin equipment supply commitments and/or on time deliveries.<br><br>D.  Two or more delivery service written complaints within a three (3) month period from SHIPPER's customers requesting that CARRIER no longer deliver to their facilities.<br><br>E.  A downgrade in your DOT rating by the Department of Transportation.<br><br>F.  Failure to maintain minimum insurance coverage.<br><br>G.  Non-compliance with Federal, State, or Municipal laws and regulations.<br><br>H.   Bankruptcy or other insolvency of CARRIER. (Exhibit 15, pp. 7-8, Section 8(A-H)) | **verbatim and in its entirety since it omits language regarding the opportunity to cure. To the extent the allegations contained therein do not accurately reflect Exhibit 15, they are denied.** |
| **Re: IPC's Memo Bills/Bills of Lading** ||
| 27.   IPC, through its Hammond Warehouse personnel, prepared and gave to MBMS truck driver Franke three (3) memo bills when he made the pickup of IPC's paper products on July 3, 2008. All three of the memo bills contain Franke's signature. | **IPC denies that the Memo Bills were prepared by and given to Franke by IPC personnel since Joan Anderton testified that an IPC independent contractor named Exel generated the Memo Bills.  (See Ex. 11, p. 97, lines 22-25; p. 98, lines 1-3).** |

130593198v1 0903067

| STATEMENT | RESPONSE |
|---|---|
| | IPC admits that Franke received the Memo Bills when he picked up the IPC paper products and that completed copies of all three Memo Bills contain his signature. |
| 28.  On IPC's three memo bills the "Carrier" was identified as OXEN, which was a code for OEI, since the paperwork had not yet been updated to reflect UACL's purchase of OEI. The "Carrier" actually was UACL on July 3, 2008. (Exhibit 21; Mundy Dep., p. 109, Exhibit 13) | IPC objects to the form of this statement as vague since "carrier" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that Exhibit 21 identifies "OXEN" as "Carrier." IPC disputes that UACL was the "Carrier" on July 3, 2008 as Mark Limback testified that UACL was acting as a broker in this incident and believed that it was acting as a broker because it used an independent contractor to haul this load based on a Master Brokerage Agreement it had with MBMS. (Ex. 9, p. 15, lines 15-16; p. 16, lines 10-15). |
| 29.  On the bottom of IPC's three memo bills it specified that the word "Carrier" as used in that contract was understood "as meaning any person or corporation in possession of the property under the contract . . ." (Exhibit 21) | IPC objects to the form of this statement as vague since "Carrier" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that the bill of lading attached as Exhibit 21 contains the quoted language. |
| 30.  IPC's three memo bills specified the type of product as printing paper, the amount of cartons, the weight of the goods, and the name and address of IPC's customer to whom the goods were to be delivered by the carrier's driver. (Exhibit 21; Mundy Dep., pp. 103-110, Exhibit 13). | IPC admits that Exhibit 21 indicates the product as printing paper, the number of cartons, the weight of the goods and to whom they were to be delivered.<br><br>IPC denies that the Memo Bills require that the goods be delivered by a driver employed by the entity identified as the "Carrier" in the memo bill. |
| 31.  IPC's three Memo Bills also contained IPC's specific, and separate, instructions to truck driver Franke for delivery of paper goods to IPC's three customers in Minneapolis: Cenveo, Midland Paper and XPEDX, including the name and phone number of the contact person for IPC's customers and the precise time frame during which delivery had to be made. (Exhibit 21; Mundy Dep., pp. 103-110, | IPC admits that the Memo Bills contain the name and phone number of the contact person for its customers.<br><br>IPC denies that the Memo Bills contain specific and separate delivery instructions to Franke since MBMS witnesses Martin and Franke admitted in their depositions that Franke would not and did not make |

| STATEMENT | RESPONSE |
|---|---|
| Exhibit 13) | deliveries to IPC customers in Minneapolis-St.Paul.<br><br>IPC also denies that the Memo Bills contain the precise time frame for delivery as Stephen Mundy testified that the Memo Bills identify the location, but not necessarily the time, for delivery. (Ex. 13, p. 110, lines 8-9). |
| 32. In the "Notes" section of its Memo Bill for the Cenveo delivery, IPC specifically instructs MBMS driver Franke that if there were problems with the delivery or if he was detained more than 1 hour, he was to call IPC at a specified phone number to report those problems and identify the order number for the Cenveo delivery. (Exhibit 21; Mundy Dep., pp. 104-106, Exhibit 13) | IPC admits that the "Notes" section of the Memo Bills contains instructions about what to do if the driver making the delivery is detained more than one hour.<br><br>IPC denies that the Memo Bills contain specific and separate instructions to Franke since MBMS witnesses Martin and Franke admitted in their depositions that Franke would not and did not make deliveries to IPC customers in Minneapolis-St.Paul. |
| 33. In the "Notes" section of the Memo Bill for the XPEDX delivery, IPC specifically instruct MBMS driver Franke that if he experienced delivery issues or if he was detained at least 1 hour, Franke was to report those problems to IPC by calling them at a specified phone number and identifying the XPEDX order number. (Exhibit 21; Mundy Dep., pp. 106-107, Exhibit 13) | IPC admits that the "Notes" section of the Memo Bills contains instructions about what to do if the driver is detained more than one hour.<br><br>IPC denies that the Memo Bills contain specific and separate instructions to Franke since MBMS witnesses Martin and Franke admitted in their depositions that Franke would not and did not make deliveries to IPC customers in Minneapolis-St.Paul. |
| Re: **Under the Amended October 2007 Contract, UACL Was The Motor Carrier Obligated To Transport IPC's Paper Products** | |
| 34. Under the terms of the amended October 2007 contract, IPC considered UACL to be the motor carrier, and UACL had the responsibility of fulfilling all the transportation commitments and terms which were the subject of this agreement. (Mundy Dep., pp. 98-100, Exhibit 13; Anderton Dep., pp. 25-27, Exhibit 11). | IPC objects to the form of this statement as vague since "motor carrier" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that UACL had the responsibility to fulfill the terms of the IPC-UACL/OEI agreement. |

130593198v1 0903067

| STATEMENT | RESPONSE |
|---|---|
| | IPC denies that it believed the motor carrier was UACL as Joan Anderton testified that IPC was unaware of and had no influence over how the delivery was being executed on July 3, 2008. (Ex. 11, p. 26, lines 4-9.) |
| 35. Even though UACL had a right under the amended October 2007 contract to have another trucking company make deliveries of IPC's products, IPC expected UACL to fulfill all its obligations under the contract. (Mundy Dep., pp. 99-100, Exhibit 13; Anderton Dep., p. 26, Exhibit 11). | IPC admits that UACL had the right under the amended October 2007 IPC-UACL/OEI contract to have another trucking company make deliveries of IPC's product, as Mundy and Anderton so testified.<br><br>IPC admits that Mundy and Anderton of IPC expected UACL to fulfill its obligations under the IPC-UACL/OEI contract, as they testified. |
| 36. If UACL used another trucking company to make the deliveries for which UACL had contracted, IPC expected that other carrier, such as MBMS and its drivers, to comply with all the terms of the contract between IPC and UACL. (Mundy Dep., p. 103, Exhibit 13; Anderton Dep. pp. 25-27, 11 -118, Ex. 11). | IPC admits UACL had the right under the amended October 2007 IPC-UACL/OEI contract to have another trucking company make deliveries of IPC's product, as Mundy and Anderton so testified.<br><br>IPC also admits that Mundy and Anderton of IPC expected UACL to fulfill its obligations under the IPC-UACL/OEI contract, as they testified. |
| 37. Even though MBMS was the motor carrier actually transporting the paper goods, for any breach of the contract terms between IPC and UACL, IPC would seek satisfaction from UACL rather than MBMS because UACL was the designated carrier with whom IPC had contracted. (Mundy Dep., pp. 102-103, Exhibit 13) | IPC objects to the form of this statement as vague since "designated carrier" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that Mundy so testified. |
| 38. At the time of this incident on July 3, 2008, IPC's paper was being hauled to Minneapolis because IPC had asked UACL to make the deliveries pursuant to IPC's contract with UACL as a motor carrier. (Anderton Dep., pp. 132-133, Exhibit 11) | IPC objects to the form of this statement as vague since "motor carrier" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that at the time of this incident on July 3, 2008, IPC's paper was being hauled toward Minneapolis pursuant to |

130593198v1 0903067

| STATEMENT | RESPONSE |
|---|---|
| | **IPC's contract with UACL and UACL's Master Brokerage Agreement with MBMS.** |
| 39. Under the terms of the contract with UACL, IPC would tender the freight to UACL and IPC expected UACL to provide the transportation services to have the freight delivered to its customers in accord with the contract; IPC had this expectation regardless of whether their product was delivered by a direct employee of UACL or a direct employee of some other company that UACL asked to make the delivery. (Anderton Dep., pp. 136-137, Exhibit 11). | **IPC objects to the form of this statement as vague since "in accord with" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.** **IPC admits that IPC expected to have its freight delivered to its customers in accord with the IPC-UACL/OEI contract regardless of whether its product was delivered by UACL or an employee of another company.** **IPC denies that it expected UACL in particular to provide the transportation services as Joan Anderton testified that IPC was unaware of and had no influence over how the delivery was being executed on July 3, 2008. (Ex. 11, p. 26, lines 4-9.)** |
| 40. Regardless of who actually made the delivery of IPC's products, UACL had to make sure the driver made the deliveries in a manner that fulfilled the expectations and obligations under the contract. (Anderton Dep., pp. 188-189, Exhibit 11) | **IPC objects to the form of this statement as vague since which particular "contract" is not specified such that IPC can ascertain a response to this statement.** **IPC admits that Anderton testified that in her opinion IPC did not care who made the deliveries as long as the contract terms were fulfilled. (Ex. 11, p. 189, lines 10-11).** **IPC denies that the IPC-UACL/OEI contract or the facts of this case demonstrate IPC required UACL specifically to transport the IPC paper products as a "motor carrier."** **IPC also denies that UACL was the "motor carrier" for the July 3, 2008 load.** |
| 41. On July 3, 2008, UACL was obligated to fulfill the terms of its contract as a motor carrier in which it had agreed to provide transportation services to IPC and to haul IPC's goods for them. (Limback Dep., pp. 14- | **IPC objects to the form of this statement as vague since "motor carrier" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.** |

18

| STATEMENT | RESPONSE |
|---|---|
| 17, 85-86, Exhibit 9) | **IPC denies it had an obligation to fulfill the terms of the IPC-UACL/OEI contract as the "motor carrier" for the July 3, 2008 load.**<br><br>**IPC denies the remaining allegations of paragraph 41 as Mark Limback testified that UACL was acting as a broker in this incident. (Ex. 9, p. 15, lines 15-16).** |
| 42. UACL did not have a brokerage agreement with IPC, and in its amended October 2007 contract with IPC, UACL was identified as the carrier, not as a broker. (Limback Dep., p. 16, Exhibit 9) | **IPC objects to the form of this statement as vague since "carrier" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.**<br><br>**IPC admits that UACL and IPC did not have an agreement that was entitled "Brokerage Agreement" or that contained explicit language identifying UACL as a broker to IPC.**<br><br>**IPC also admits that UACL, just as OEI before it, was identified as the "CARRIER" in the October 2007 contract with IPC after Amendment 1 was effectuated.**<br><br>**IPC denies the remaining allegations of paragraph 42 since Mark Limback testified that UACL was acting as a broker in this incident (Ex. 9, p. 15, lines 15-16) and, as Mundy and Anderton have admitted, UACL had a right under the amended October 2007 contract to have another trucking company make deliveries of IPC's products. (Mundy Dep., pp. 99-100, Exhibit 13; Anderton Dep., p. 26, Exhibit 11).** |
| 43. MBMS/Franke would not have been hauling the load of IPC paper on July 3, 2008 unless UACL had asked MBMS to do so in order for UACL to comply with its contractual obligations to provide transportation services to IPC. (Limback Dep., p. 87, Exhibit 9) | **IPC objects to the form of this statement as vague since "transportation services" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.**<br><br>**IPC admits that Mark Limback testified that MBMS would not have been hauling the load on July 3, 2007, unless UACL had** |

| STATEMENT | RESPONSE |
|---|---|
| | asked them to do so in order to comply with its contractual obligations.<br><br>IPC denies the remaining allegations of paragraph 43 since Mark Limback testified that UACL was acting as a broker in this incident. (Ex. 9, p. 15, lines 15-16). |
| 44.  By delivering paper products for UACL, MBMS and its driver Franke were providing transportation services to UACL, and these were the same transportation services UACL was obligated to provide to IPC under the amended October 2007 agreement. (Limback Dep., p. 86-87, Exhibit 9) | IPC objects to the form of this statement as vague since "transportation services" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that MBMS and its driver Franke were providing transportation services as those terms might be understood generically.<br><br>IPC denies the remaining allegations of paragraph 44 as Mark Limback testified that UACL was acting as a broker in this incident. (Ex. 9, p. 15, lines 15-16). |
| 45.  UACL's driver, or any driver UACL hired, was performing a service for IPC by delivering its paper products to IPC's customers. (Anderton Dep., p. 30, Exhibit 11) | IPC objects to the form of this statement as vague since the phrase "performing a service" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC admits that Joan Anderton testified that any driver who delivered its paper products was providing a service for IPC; however; it denies that the act of "performing a service" constitutes an indicia of control. |
| 46.    MBMS employee Pat Podlena, who accepted and signed the broker confirmation sheet sent to by UACL on July 3, 2008 for the load in transit at the time of the crash, believed that Franke/MBMS were acting as agents of UACL in the transportation of IPC's goods. (Podlena Dep I, pp. 25-27, Exhibit 25) | IPC objects to the cited deposition testimony of Pat Podlena since it constitutes an inadmissible legal conclusion. See IPC/UACL Motion to Strike Inadmissible Opinions.<br><br>IPC admits that Pat Podlena accepted and signed the broker confirmation sheet sent to by UACL on July 3, 2008. |

| STATEMENT | RESPONSE |
|---|---|
|  | IPC denies the remaining allegations in assertion no. 46 as Podlena testified that he had no idea if UACL ever gave any directions or instructions to Franke on how to drive his truck, what tools, equipment, or other implements to do his job, where to purchase gas, or what route to take. Moreover, Podlena testified that he had no knowledge of the relationship between UACL and Franke. (Ex. 25, p. 112, lines 6-25; p. 113, lines 1-3). |
| 47. David Martin, operations manager for MBMS, believed that Franke/MBMS were acting as agents of, and providing a service to, both IPC and UACL by transporting IPC's paper products that UACL had agreed to haul to Minneapolis. (Martin Dep I, pp. 64-65, Exhibit 4) | IPC objects to the form of this statement as vague since the phrase "providing a service" is a legal term of art which Plaintiff fails to define such that IPC can ascertain a response to this statement.<br><br>IPC objects to the cited deposition testimony of David Martin since it constitutes an inadmissible legal conclusion. See IPC/UACL Motion to Strike Inadmissible Opinions.<br><br>Without waiving these objections, IPC admits that Martin's testimony is fairly summarized. |
| 48. Even though UACL utilized the services of a MBMS driver to physically haul the paper products, IPC only made payment to UACL since it was UACL with whom IPC had contracted. (Anderton Dep., pp. 62-63, Exhibit 11) | Admitted. |
| 49. In the collision of July 3, 2008 some of IPC's paper products were damaged so UACL had to pay IPC for those damaged goods. (Limback Dep., p. 96, Exhibit 9; Memo Bill for Cenveo delivery, Exhibit 24) | Admitted. |
| **Re: Compliance With Traffic Regulations and Avoiding Collisions** | |
| 50. Under the amended October 2007 contract signed by Stephen Mundy for IPC and signed by Mark Limback for UACL, IPC required that | Objection, this statement is immaterial to the issues in this case and the legal relationship between UACL and IPC because, as a matter of law, the contractual |

130593198v1 0903067

| STATEMENT | RESPONSE |
|---|---|
| the carrier's personnel comply with the applicable local, state, and federal laws and regulations and non-compliance was a basis for under which IPC could terminate the contract. (Exhibit 15, Sec. 3(H); Mundy Dep., pp. 61, 71; Anderton Dep., pp. 58-60, 67) | requirement to comply with applicable local, state, and federal laws and regulations does not establish control or a question of fact as to control for the purpose of a principal/agent relationship.<br><br>Without waiving these objections, IPC admits the provisions of the contract are fairly summarized in the assertion of fact no. 50. |
| 51. Pursuant to the amended October 2007 contract signed by Stephen Mundy for IPC, and signed by Mark Limback for UACL, IPC expected its motor carriers to operate their trucks in accord with all applicable traffic rules while making delivery of IPC's products to IPC's customers. (Mundy Dep., pp. 61-63, Exhibit 13; Anderton Dep., pp. 58-60) | Objection, this statement is immaterial to the issues in this case and the legal relationship between UACL and IPC because, as a matter of law, the contractual requirement to comply with applicable local, state, and federal laws and regulations does not establish control or a question of fact as to control for the purpose of a principal/agent relationship.<br><br>Without waiving these objections, IPC admits that the testimony of Mundy and Anderton is fairly summarized in the assertion of fact no. 51. |
| 52. The provision of Section 3(H) of the amended October 2007 contract requiring the carrier's personnel to comply with local, state and federal laws and regulations includes complying with motor vehicle traffic regulations while operating their tractor trailer trucks to deliver IPC's products. (Anderton Dep., pp. 197-198, Exhibit 11) | Objection, this statement is immaterial to the issues in this case and the legal relationship between UACL and IPC because, as a matter of law, the contractual requirement to comply with applicable local, state, and federal laws and regulations does not establish control or a question of fact as to control for the purpose of a principal/agent relationship.<br><br>Without waiving these objections, IPC admits that the testimony of Anderton is fairly summarized in the assertion of fact no. 52. |
| 53. Pursuant to the amended October 2007 contract signed by Stephen Mundy for IPC, and signed by Mark Limback for UACL, IPC required its carriers to adhere to and follow the federal regulations related to the operation of tractor trailer trucks in a safe manner while | Objection, this statement is immaterial to the issues in this case and the legal relationship between UACL and IPC because, as a matter of law, the contractual requirement to comply with applicable local, state, and federal laws and regulations |

22

| STATEMENT | RESPONSE |
|---|---|
| delivering IPC's products to its customers. (Mundy Dep., p. 62, Exhibit 13) | **does not establish control or a question of fact as to control for the purpose of a principal/agent relationship.**<br><br>**Without waiving these objections, IPC admits that the testimony of Mundy is fairly summarized in the assertion of fact no. 53.** |
| 54. IPC expected its motor carriers to avoid colliding with cars while they were making deliveries for IPC. (Mundy Dep., pp. 62-63, Exhibit 13) | **Objection, this statement is immaterial to the issues in this case and the legal relationship between UACL and IPC because, as a matter of law, the contractual requirement to comply with applicable local, state, and federal laws and regulations does not establish control or a question of fact as to control for the purpose of a principal/agent relationship.**<br><br>**Without waiving these objections, IPC admits that the testimony of Mundy is fairly summarized in the assertion of fact no. 54.** |
| 55. Under the amended October 2007 contract, UACL had to make deliveries of IPC's products in compliance with local, state, and federal traffic regulations, and without colliding with other motor vehicles, whether the driver was a UACL driver or a MBMS driver. (Limback Dep., pp. 81-82, Exhibit 9) | **Objection, this statement is immaterial to the issues in this case and the legal relationship between UACL and IPC because, as a matter of law, the contractual requirement to comply with applicable local, state, and federal laws and regulations does not establish control or a question of fact as to control for the purpose of a principal/agent relationship.**<br><br>**Without waiving these objections, IPC admits that the testimony of Limback is fairly summarized in the assertion of fact no. 55.** |

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: s/Carlton D. Fisher
_____

130593198v1 0903067

Carlton D. Fisher
William Yu
Cecilia A. Horan
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
312-704-3001 Fax

130593198v1 0903067