**TRANSCRIBED FROM DIGITAL RECORDING**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person, ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | No. 09 C 5340 |
| MARTIN'S BULK MILK SERVICE, INC., et al., ) ) ) | Chicago, Illinois November 29, 2012 |
| Defendants. ) | 9:33 A.M. |

TRANSCRIPT OF PROCEEDINGS - Motion
BEFORE THE HONORABLE SUSAN E. COX, Magistrate Judge

APPEARANCES:

For the Plaintiff:      CLIFFORD LAW OFFICE
                        120 North LaSalle Street
                        Suite 3100
                        Chicago, Illinois  60602
                        BY:  MR. RICHARD FRANCIS BURKE, JR.
                             MS. SHANNON MARIE McNULTY

For Defendant BMW:      JOHNSON & BELL, LTD.
                        33 West Monroe Street
                        Suite 2700
                        Chicago, Illinois  60603
                        BY:  MR. JAMES K. TOOHEY
                             MR. TIMOTHY R. COUTURE


                    PAMELA S. WARREN, CSR, RPR
                      Official Court Reporter
                    219 South Dearborn Street
                          Room 1928
                    Chicago, Illinois  60604
                         (312) 294-8907

**NOTE:  Please notify of correct speaker identification.
FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS UNINTELLIGIBLE.**

**APPEARANCES: Continued**

| | | |
|---|---|---|
| For Defendant Francke: | MULHERIN, REHFELDT & VARCHETTO, P.C.<br>211 South Wheaton Avenue<br>Suite 200<br>Chicago, Illinois 60187<br>BY: MR. MATTHEW RICHARD SCHRECK | |
| For Defendant Martin's: | DOWD & DOWD, LTD.<br>617 West Fulton<br>Chicago, Illinois 60661<br>BY: MR. ROBERT JAMES GOLDEN | |
| For Various Defendants: | HINSHAW & CULBERTSON<br>222 North LaSalle Street<br>Suite 300<br>Chicago, Illinois 60601-1081<br>BY: MS. CECILIA ANNE HORAN | |

1          (Proceedings held in open court:)
2              THE CLERK:  09 C 5340, Scheinman versus Martin's Bulk.
3              MR. BURKE:  Good morning, your Honor.
4              THE COURT:  Good morning.
5              MR. BURKE:  Good morning, Judge.  Richard Burke and
6     Shannon McNulty for the plaintiff.
7              MR. TOOHEY:  James Toohey and Timothy Couture for BMW
8     defendants.
9              MR. GOLDEN:  Bob Golden on behalf of Martin's, your
10    Honor.
11             MR. SCHRECK:  Matthew Schreck on behalf of Samuel
12    Francke (unintelligible).
13             MS. HORAN:  Cecilia Horan on behalf of UACL,
14    (unintelligible) and Ox LLC.
15             THE COURT:  Okay.  Where are we?
16             MR. BURKE:  Judge, we have exchanged -- I had my
17    expert prepare another protocol.  We have exchanged competing
18    affidavits and emails, and I think, unfortunately, at the
19    moment I don't think Mr. Toohey is willing to have the tank
20    removed even using the least intrusive manner.  And if Jim
21    thinks otherwise, he can tell you.  But I think that's where
22    we're at, unfortunately.
23             MR. TOOHEY:  Well, your Honor, since the last time
24    Mr. Burke and I met in the lobby.  We did exchange affidavits.
25    We exchanged numerous emails.  We have proposed alternative

1 methods, specific alternative methods for their consideration
2 that would not require a destruction of evidence, would not
3 require the removal of -- the wholesale removal of the tank.
4     We have gotten no response from them on any of our
5 proposals. They have been adamant in one position, and that is
6 that Mr. Stilson has the right to remove the tank by all means
7 necessary. They always throw in there now because they realize
8 that it is -- it was in their protocol by the least intrusive
9 means possible, but they won't tell us what he plans to do.
10 They say, as they said at the first inspection, that he is
11 going to keep on cutting along the way until he gets the tank
12 out.
13     It is our position, and we have -- I have given to
14 Mr. Burke every case on point where there has been destructive
15 testing and all of the criteria that are set forth in those
16 tests. And I believe that it is fairly clear from our
17 exchanges they have met none of the requirements or destruction
18 of evidence, and we have met all of the requirements for
19 preservation of the evidence.
20     Now the criteria are that the Court must exercise
21 careful discretion by balancing the rights of all parties. The
22 movant must show that destructive testing is necessary to prove
23 his case, a more stringent standard than applicable to other
24 discovery requests. The necessity does not include gaining
25 evidence to bolster an expert's opinion or in search of other

1 intriguing, albeit irrelevant, evidence.

2 The non-movant's ability to present evidence at trial
3 must be substantially met, substantially (unintelligible), and
4 then the movant must not be substantially prejudiced in any
5 other way.  The movant must consider all available
6 destructive -- less destructive alternatives, and the movant
7 must assure adequate safeguards to minimize prejudice to the
8 movant at presentation of trial.

9 Cases, there are eight cases since 1956 through the
10 present -- nine cases where destruction has been permitted.  In
11 almost every single case the destruction that they have talked
12 about is removing a piece -- either a piece of garment for
13 flammability testing to meet federal standards, a four-inch
14 cutout, or removing a small piece of metal for metallurgical
15 testing.

16 There was one case, actually by Judge Holderman, back
17 in 1988, in which he permitted the opening of a light fixture
18 to inspect internal wires for shorts to determine if they were
19 improperly sliced.  Destructive testing was not permitted where
20 the state was enjoined from seizing materials from an accident
21 site to do its own destructive testing.  Destructive testing of
22 furnace louvers were not permitted where other portions of the
23 furnace had been destructively tested, and movant did not
24 establish that further testing provide evidence necessary to
25 his case.  A preliminary restraining order was prohibited from

1  doing destructive testing because the tests did not go to the
2  issue of whether the design worked and was patentable.
3      And in one that's particularly on point, Hawthorn
4  versus Michigan Tire, Ninth Circuit 1996, destructive testing
5  was denied because plaintiff's expert already had formed his
6  opinions and there was no showing of need.
7      In this case we had -- we started with the original
8  protocol which said the fuel system -- it described a tear
9  down, it never mentioned destruction.  It made no reference to
10 cutting or destruction by any other means.  The plaintiff was
11 supposed to follow the manual for removal of all parts.  And
12 only if deviation from the manual is required, to use the least
13 instructive measures only, and only by agreement of the
14 parties.
15     Because Mr. Stilson's reputation, which is actually in
16 the Illinois Supreme Court leading case on spoliation of
17 evidence, Shimanovsky versus General Motors, where Mr. Stilson
18 destroyed evidence before the case was filed.  And from my --
19 only personal experiences, and as Mr. Noble, in the affidavit
20 that we furnished to Mr. Burke, has also established in his
21 experience, Mr. Stilson has a reputation of seeking to destroy
22 evidence.  It is his -- and he showed here that his first
23 tendency is to go immediately to the Sawzall rather than to
24 seek the least destructive means.
25     Because of that the defendants insisted that they be

1    present and that they observe to make sure that Mr. Stilson was
2    following the protocol.
3            THE COURT:  Well --
4            MR. BURKE:  Now at the first --
5            THE COURT:  I'm sorry, I don't want to interrupt you
6    but I'd like to ask him a question.  Has your expert provided
7    an affidavit?
8            MR. BURKE:  Yes, he did, Judge.  And all I can say is
9    that I'm utterly shocked to hear some of the comments by
10   Mr. Toohey here.  They are completely untrue and incorrect.
11   Yes, we provided a second protocol.  We provided an affidavit.
12   For him to say there has been no response is utterly untrue.
13           What he just said about my experiment, I have
14   refrained as a courtesy from objecting, but that is completely
15   untrue.  If he read the case, he would know the criticism was
16   of some other expert, not Mr. Stilson.  The -- we most
17   certainly have provided a second protocol.  We have provided an
18   affidavit.  We have exchanged emails.
19           Last night at 5:10 Mr. Toohey sent me a responsive
20   affidavit from his expert to which I have numerous responses
21   and can certainly provide them.
22           But you asked us not to submit anything to the
23   Court --
24           THE COURT:  Yeah, I would --
25           MR. BURKE:  -- so, obviously, we haven't.

1        THE COURT:  -- like to see if we could work it out.
2   And it is pretty clear that you can't.  So the issue for me is
3   whether there is -- whether I am convinced that there is no
4   other alternative other than sawing open the tank.  So I guess
5   what I would like to hear from both of you is how best to
6   resolve that conflict.
7        MR. BURKE:  Judge, I would -- I hate to consume your
8   time with an evidentiary hearing.  My suggestion might be that
9   we submit a motion and submit the protocols and submit our
10  expert's affidavits that we have been exchanging, and I'll
11  submit one that responds to the one that Mr. Toohey sent last
12  night, and perhaps that would be the best use of time.
13       THE COURT:  Do you agree with that?
14       MR. TOOHEY:  I have no problem with that.
15       THE COURT:  Okay.  So you filed an initial -- because
16  I remember when I read the pleadings there were -- they sort
17  of -- you focused on this lack of meet and conferring.  But you
18  did include an affidavit of your expert, did you not?
19       MR. BURKE:  In our declaration.
20       MR. TOOHEY:  What happened there was Mr. Burke filed
21  the motion --
22       THE COURT:  Right.
23       MR. TOOHEY:  -- because neither of us thought we'd be
24  able to be there.
25       THE COURT:  He filed a motion because he thought you

1  had not followed the protocol, that was how the motion was
2  styled. And then you responded to that.
3        MR. TOOHEY: Well, what we responded was he hadn't --
4  there had been no attempt to meet and confer.
5        THE COURT: Right, that's what I just said.
6        MR. TOOHEY: Right. And then when he then filed
7  another response with more attacks, we then filed a simple
8  declaration of Mr. Couture, who was there, and the affidavit of
9  Mr. Noble regarding what happened at that first inspection.
10       THE COURT: Okay. Well, that's really -- what
11 happened at the first inspection really isn't the issue
12 anymore. What happened -- what I need to hear from the parties
13 is your respective positions on the law that should govern this
14 dispute, you know, which normally gets worked out by the
15 parties, which is probably why there is not a lot of case law
16 on it.
17       MR. BURKE: That's exactly correct.
18       THE COURT: Second -- which, you know, that's fine.
19       Secondly, what your respective experts say you have
20 the burden to show, it seems to me from the case law, that
21 there is no other way of getting at what your experts need to
22 see that doesn't require destroying evidence. And if I am
23 convinced that you're correct on the papers, then you win. If
24 I am convinced that you are not, that they're -- that his
25 expert is correct and there are other ways that should be

1  tried, if not the only ways, but maybe, first before we hack
2  off the tank, then he wins.  That's how it works.
3         Do you have anything left to do in -- your discovery
4  cutoff is the 14th of January.  Do you have anything left to
5  do?
6         MR. BURKE:  Judge, we're doing other -- there is still
7  some fact witnesses, probably four or five.  We're doing
8  treating depositions at the moment.  Did one yesterday.  We
9  have one tomorrow.
10        And actually while we're on that point, we -- there is
11 a Dr. Hughes's dep that is noticed for tomorrow and is
12 proceeding.  I did notice this morning that I don't think we
13 noticed it as a videotaped deposition --
14        THE COURT:  Uh-huh.
15        MR. BURKE:  -- and I would like to videotape it for
16 use at trial.  I will send out an amended notice.  But perhaps
17 we can determine right now if anybody has any objection to
18 videotaping it.  I don't know that anybody could possibly be
19 prejudiced in that manner.  But perhaps, if you don't mind,
20 Judge, if I --
21        THE COURT:  Well, you guys can have these
22 conversations without me being present.
23        MR. BURKE:  Yeah, okay.
24        THE COURT:  I'd like to just know how to get this
25 issue resolved.  So since you have the burden on this, why

1  don't you file a brief explaining -- with an affidavit of your
2  expert explaining why you think the tank has to be removed.
3  And then you respond to that. And then since you have the
4  burden, you have the last word. And that's how we'll go about
5  it.
6        The problem is -- but I'm going to tell you right now
7  it's -- you know, it is November 29th. You have got a 14th of
8  January cutoff. I'm going to be gone the last two weeks of
9  this month. I'll get to it as soon as I can, but I can't
10 guarantee you're going to have a written ruling by the time
11 your discovery cutoff occurs. I'll give it my best, but I have
12 got other matters I have to deal with as well. So how long
13 would you like to file your brief?
14       MR. BURKE: Judge, I can do so by December 7th.
15       THE COURT: Okay.
16       MR. BURKE: That's a week from tomorrow.
17       THE COURT: Okay. And you?
18       MR. TOOHEY: I would like to dovetail with your
19 schedule. We could do it really quickly if you were going to
20 get to it, but there is no --
21       THE COURT: Well, I'm going to --
22       MR. TOOHEY: -- sense in --
23       THE COURT: -- what I'll tell you --
24       MR. TOOHEY: -- rushing it if you are going to be
25 away.

```
1            THE COURT:  Well, I mean, it is your discovery
2   schedule, I mean, but I am -- I always like to tell the parties
3   as opposed to -- alert opposed to (unintelligible) misleading
4   them into thinking that, you know, I'm going to be here when I
5   am not.  I mean, I'm going to be gone from the 21st of December
6   until the -- what is it, Vernita?  I don't have my --
7            THE CLERK:  You're coming back the 7th.
8            THE COURT:  -- the 7th of January.  I'm on sabbatical,
9   and I'm taking the last two weeks of the year off.
10           MR. TOOHEY:  If Mr. Burke wanted to get this decided
11  in a -- and if it was possible under your schedule to get it
12  decided in December, perhaps he could move up his time, and we
13  could get a response very quickly, and he could reply very
14  quickly.  But that's up -- that really kind of depends on your
15  schedule and --
16           THE COURT:  Well, I just told what you my schedule is.
17           MR. TOOHEY:  I know, but --
18           THE COURT:  Why don't you stay with this -- why don't
19  you guys try to get it fully briefed by the 21st of December.
20  So you -- you do your brief by the 7th, you do your brief by
21  the 14th, you do your brief -- reply by the 21st, and I'll take
22  it up when I get back and try to get to do it as quickly as
23  possible.
24           MR. TOOHEY:  Your Honor, on that point there is
25  another part of the car that Mr. Stilson has now indicated that
```

1  he wants to take out, and that's the seat.  And I think we can
2  work that out because -- but he won't give us a specific
3  protocol.  We believe that if you cut bolts, it will not be at
4  issue in the case, bolts to hold the seat down, and it won't --
5  it would not be an issue, and, therefore, there wouldn't be any
6  great loss that the seat probably could be lifted out.  But we
7  are just waiting for a protocol from him as far as he wants to
8  do it --
9             THE COURT:  Well, here's what I suggest about that.
10 See if you can reach an agreement.  If you can't, then you can
11 include your reasons why something is more extensive than
12 slicing the bolts in your December 7th filing, and I'll deal
13 with that when I get to the other part of it.
14            MR. BURKE:  Judge, the removal of the seat wasn't the
15 subject of my original motion.
16            THE COURT:  No, I know that.
17            MR. BURKE:  And I will talk to Mr. Toohey about that.
18            THE COURT:  But I don't --
19            MR. BURKE:  It is a real simple concept, and we ought
20 to be able to work it out.
21            MR. TOOHEY:  I keep saying simple, but I'm just asking
22 for a protocol.
23            THE COURT:  Well, you know, you don't have --
24            MR. TOOHEY:  And I think we can do that.
25            THE COURT:  You don't have --

```
 1               MR. BURKE:  We (unintelligible).
 2               THE COURT:  This issue has to do with expert
 3   discovery, so I suppose your fact discovery deadline doesn't
 4   really impact -- impact in one way or the other.  If you think
 5   you're not going to get done with your other discovery, you
 6   better go see Judge Holderman very quickly because I can't
 7   change that time frame.
 8               MR. BURKE:  We'll do that, Judge.
 9               THE COURT:  So I guess I would spend some time talking
10   about what else you have to do because you don't have very much
11   time left, especially given the holidays and the availability
12   of witnesses.
13               If you think, again, that you're going to have an
14   issue with that, then you better -- I would file that motion,
15   you know, not on the 13th of January.
16               MR. BURKE:  We'll do, Judge.  Yes.
17               THE COURT:  Okay?
18               MR. BURKE:  Yes.
19               THE COURT:  All right.  I'll rule by mail unless I
20   feel the need to have one of these experts -- one or more of
21   these experts in.  I hope that's not necessary, but we'll see.
22               All right.  Anything else?
23               MR. TOOHEY:  No, Judge, other than just the topic I
24   brought up, only if there was any objection, I would just ask
25   you to rule on that, and that's the only reason that --
```

1          THE COURT:  Well, that's not really properly in front
2    of me.
3          MR. BURKE:  No.  Correct.  Okay.
4          MR. TOOHEY:   There is no objection.
5          MR. BURKE:  Okay.
6          THE COURT:  Okay.
7          MR. BURKE:  That solves it then, Judge.
8          THE COURT:  All right.
9          MR. TOOHEY:  (Unintelligible)?
10         MR. BURKE:  Yeah.
11         THE COURT:  Have a good holiday.
12         MR. BURKE:  Thank you, Judge.  You too.
13       (Which concluded the proceedings.)
14                          CERTIFICATE
15         I certify that the foregoing is a correct transcript
16   from the digital recording of proceedings in the above-entitled
17   matter to the best of my ability, given the limitation of using
18   a digital-recording system.
19   */s/Pamela S. Warren*                         December 7, 2012
     Official Court Reporter                           Date
20   United States District Court
     Northern District of Illinois
21   Eastern Division
22
23
24
25