**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MURRAY SCHEINMAN, Plenary<br>Guardian of the Estate and Person of<br>JEFFREY J. SCHEINMAN, a Disabled<br>Person, | ) )<br>)<br>)<br>)<br>) | |
|       Plaintiffs, | )<br>) | |
| vs. | )<br>) | No. 09 cv 5340 |
| MARTIN'S BULK MILK SERVICE, INC.,<br>SAMUEL G. FRANKE, INTERNATIONAL<br>PAPER COMPANY, UNIVERSAL AM CAN LTD.,<br>Successor to OVERNITE EXPRESS, INC. and<br>OX LLC, BMW of NORTH AMERICA, LLC,<br>a corporation, BAYERISCHE MOTOREN<br>WERKE AKTIENGESELLSCHAFT, a corporation, | )<br>)<br>)<br>)<br>)<br>)<br>) | Honorable James F. Holderman<br><br>Magistrate Susan E. Cox |
|       Defendants. | )<br>) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE
SUPERFLUOUS ARGUMENT CONTAINED IN PLAINTIFF'S RESPONSES TO
UACL'S AND IPC'S STATEMENT OF FACTS**

Plaintiff, MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY

J. SCHEINMAN, a Disabled Person, through his attorneys, CLIFFORD LAW OFFICES, P.C., in

response to the Defendants' motion entitled Motion to Strike Superfluous Argument Contained in

Plaintiff's Responses to UACL's and IPC's Statement of Facts, states as follows:

**INTRODUCTION**

As an initial point, Defendants' current motion to strike is an unnecessary and unfounded

motion that itself should be stricken. Plaintiff's responses to Defendants' Statements of Facts were

completely proper and in full accord with applicable local rules and Judge Holderman's website

procedures. Defendants UACL and IPC ignore the plain language of Local Rule 56.1. The rule

specifically states that a Plaintiff is entitled to file a "concise response" to Defendants' Statement of Facts. Inherent in the right to file a "response" is the need to provide the court with a brief explanation as to why some of Defendants' statements of fact are not accurate and cannot be completely admitted or denied.

In the instant case Plaintiff could not respond to Defendants' Rule 56.1 statement of "facts" with a simple admission and/or denial, as many of the paragraphs are replete with mischaracterizations, inferences and legal conclusions. A brief explanation of the denial with cross-citations to a Local Rule 56.1 statement of facts or additional facts can assist the court in understanding why a particular fact was denied. *Malec v. Sanford*, 191 F.R.D. 581, 584 (E.D. 2000). Accordingly, Plaintiff's brief explanation in conjunction with his admission or denial was proper in addressing Defendants' statements of "fact." Local Rule 56.1(b)(3) provides that the non-movant may file a concise response to the movant's statement that shall contain: (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

In fact, a reading of Defendants' Statements of Facts reveals that all responses by the Plaintiff were necessitated by the content of Defendants' Statements of Facts, which themselves contained blatent argumentative statements and commentary that did not belong in Defendants' statements of facts, and which required a response by Plaintiff. Furthermore, it is ironic that Defendants now

2

complain that Plaintiff responded to Defendants' so called "headings". Of course Plaintiff had to

respond. The reality is that Defendants inserted statements, allegedly as headings, which constituted

nothing but pure closing argument. Plaintiff obviously had to bring that to the Court's attention and

object, as Plaintiff did, and as Plaintiff was entitled to do. Simply put, Defendants should not now

be heard to complain of Plaintiff's proper response, when that response was necessitated by the

inappropriate content of Defendants' Statements of Facts. For example, one of Defendants' headings

in its Rule 56.1(b) Statement of Facts states "D. Franke's Conduct Was Controlled By MBMS, Not

IPC". Clearly this is an argumentative statement as to one of the primary issues in dispute in IPC's

summary judgment motion. Such an argumentative and conclusory statement should not have been

included in the statement of facts, but when Defendants opted to do so, Plaintiff was obligated, and

permitted, to object in a concise manner, as Plaintiff did.

## ANALYSIS OF THE CONTENT OF DEFENDANTS' STATEMENTS OF FACTS AND PLAINTIFF'S RESPONSE THERETO

A review of Defendants claims will show that there is no merit to Defendants' current motion

to strike, and said motion should be either stricken and/or denied in its entirety. For ease in

referencing the disputed Responses, Defendants "highlighted" chart is attached hereto as Exhibit A.

### Regarding Paragraph 7 of Plaintiff's Response to Defendants' Statement of Facts

Defendants apparently misunderstand the nature of Plaintiff's response, which was that

Defendants made an overly broad statement that UACL "took over the previous OEI trucking

services". As Plaintiff pointed out in the response, we have no knowledge of any of the other

trucking services that OEI had been providing; the only contract for trucking services that has been

produced in this case relates to IPC. No citation to the record is necessary or possible, because there

3

is no testimony about any "previous OEI truck services" other than with IPC, Defendants' cited deposition pages only relate to the contract with IPC.

### Regarding Paragraph 8 of Plaintiff's Response to UACL's Statement of Facts

Defendants' own paragraph 8 contains a recitation of ultimate issues as relating to agency/independent contractor, and "control" over work. Plaintiff's statement simply refers to the preceding paragraphs 3 to 14 of the exact same contract to which Defendants cite.

### Regarding Paragraph 9 of Plaintiff's Response to UACL's Statement of Facts

Defendants contend Plaintiff did not cite to a specific part of the record in support of its objection. However, Defendant misunderstands the nature of the objection. As set forth in Plaintiff's response Plaintiff objected to the overly broad characterization that MBMS was providing "the same trucking services that MBMS had provided in the past for OEI". That statement is not a fact, but it is a conclusion. Furthermore, the testimony that Defendant cited in support of the alleged conclusion simply does not substantiate Defendants claim. Neither Gina Hubbs nor Mark Limback testified as Defendants contend in the cited pages.

### Regarding Paragraph 11 of Plaintiff's Response to UACL's Statement of Facts

Defendants own statement of alleged facts referred to "loads that UACL was brokering". Plaintiff's responsive statement that UACL had a contractual obligation to actually transport IPC's paper products on July 3, 2008 is fair explanation of why Plaintiff objected to Defendants' characterization that UACL was simply acting as a broker. Furthermore, contrary to Defendants' claim in its current motion to strike, Plaintiff's cited testimony of Defendants' own employee, Stephen Mundy does, in fact, support Plaintiff's statement. Mr. Mundy specifically testified as follows:

Q:    And even if Overnight - strike that. Even if Universal had the right to do so,

4

International Paper expected Universal to fulfill all of the obligations of the
contract that International had with Universal. Correct?

A:       That is correct.

Q:       And Universal was considered to be the carrier under the terms of the contract
International Paper had with Universal correct?

A:       That is correct.

## Regarding Paragraph 12 of Plaintiff's Response to UACL's Statement of Facts

Defendants stated "deficiency" in Plaintiff's responses once again is unfounded. What

Defendant did in paragraph 12 (which is captioned as "Defendants Alleged Uncontroverted Facts")

is to suggest that "on July 3, 2008 MBMS was operating as an independent contractor to UACL and

was not to be deemed an agent." Therefore Plaintiff's statement is definitely fair response to explain

that such a claim is not an uncontroverted fact. Furthermore, contrary to Defendants' current

contention, the cited deposition testimony of Defendants' employee Joan Anderton does, in fact,

support exactly what Plaintiff said since Ms. Anderton testified:

Q:       And in this circumstance, did International Paper believe the carrier was
Universal?

A:       Yes.

Such testimony clearly supports Plaintiff's statement that International Paper believed Universal was

operating as the "carrier" and not simply as a truck broker.

## Regarding Paragraph 13 of Plaintiff's Response to UACL's Statement of Facts

Defendant once again did not cite a fact, but made a statement of an ultimate conclusion for

the trier of fact by claiming that "UACL brokered the subject load to MBMS". In support of

Plaintiff's denial, Plaintiff cites the precise testimony of some applicable Federal Motor Carrier

Safety Administration regulations. That is a factual statement of what those regulations state. Those

regulations support Plaintiff's claim that UACL cannot accurately characterize itself as simply a

5

truck broker under the facts of this case.

## Regarding Paragraph 14 of Plaintiff's Response to UACL's Statement of Facts

Contrary to Defendants' current claim, Plaintiff's statement was entirely responsive because it is a denial of the statement, inference and suggestion by Defendants that MBMS was delivering goods only under the UACL master brokerage agreement. Defendants' cited deposition testimony from Mark Limback on page 84 does not discuss the specific June 13, 2008 transportation. Furthermore, the testimony of Gina Hubbs (Exhibit 7) at page 76 that Defendants rely on, in actuality supports Plaintiff's statement. Ms. Hubbs testified:

> Q:     Okay. And, this, and then the paper products that were being moved this day were being moved as part of Universal's obligations to provide transportation services pursuant to the contract that they had taken over that Overnight previously had with International, correct?
> A:     Yes.

## Regarding Defendants' Paragraph D

Defendants' current contention is simply disingenuous. They take exception to the fact that Plaintiff objected to Defendants' insertion of what is clearly an argumentative statement of one of the ultimate issues for the trier of fact in this case. Defendants' claimed in a heading in its statement of facts that "Franke's Conduct Was Controlled by MBMS, Not IPC". Because Plaintiff objected and brought Defendants' improper argumentative statement to the court's attention, Defendants now attempt to claim it was simply a header that was "intended to organize the recitation of the 77 facts asserted by IPC and UACL". No such argumentative statement is authorized or required under Rule 56.1(b). Defendants' current contention is simply an attempt to justify their insertion into their statement of facts of pure closing argument language. If Defendants truly wanted to organize the

facts, as they now claim, they could simply state something like "testimony relating to issue of control". Plaintiff clearly was entitled to, and indeed had to, object to Defendants argumentative and conclusory claim, especially when set forth under another heading of alleged "uncontroverted facts" when Defendants know the issue of control is completely controverted and is the subject of much testimony about an issue on which a jury should ultimately render a decision.

**Regarding Defendant's Paragraph E**

Defendants once again insert under a heading of "alleged uncontroverted facts" another conclusory statement about agency. Furthermore, as noted in Plaintiff's objection and denial, Defendants purported statement is actually inaccurate because it attributes testimony to Mr. Franke about agency when, in reality, he was never asked, and never testified, as to whether or not he was an agent of IPC. Plaintiff's response was entirely proper.

**Regarding Defendants Paragraph 26**

Defendants' current statement does not claim that Defendants' objection and denial was improper. Rather it simply notes that the testimony of David Martin is the subject of Defendants' motion to attempt to strike and bar Mr. Martin's testimony. Plaintiff's response was completely proper and completely accurate.

**Regarding Defendants Paragraph 27**

Defendants' current contention is inaccurate. Plaintiff's denial and brief explanation is entirely responsive to Defendants' statement. Plaintiff cites not only the paragraphs of the contract that relate to control, supervision and management (Exhibit 15), but Mr. Mundy's testimony rendering those terms applicable to any company UACL used to perform truck transportation services, such as MBMS.

7

**Regarding Defendants Paragraph 37**

Plaintiff's statement is not surplusage. Without Plaintiff's clarifying statement, Defendants' alleged fact set forth in a vacuum would be misleading, and an incomplete representation of the documented facts pertaining to why MBMS was responsible for maintenance of its tractor.

**Regarding Defendants Paragraph 38**

Similarly, Plaintiff's statement is an accurate response to Defendants' statement in order to accurately clarify the reason that IPC was not responsible for maintenance of the tractor or trailer. Plaintiff's specific citation to contract provisions and deposition testimony is completely responsive and relevant to the issue addressed by Defendants' statement in its paragraph 38.

**Regarding Paragraph 39 (Response to UACL)**

Plaintiff's response is an accurate statement of the contract terms. The provision referred to is part of section 3 (G) of the October 2007 contract which is specifically referred to in the preceding responses by Plaintiff in paragraphs 37 and 38. Paragraph 39 was a continuation of Defendants' alleged statements about maintenance of the tractor and/or trailer equipment.

**Regarding Paragraph 40 (Response to IPC)**

Plaintiff's statement is not surplusage, and is indeed a proper response. Plaintiff has agreed with the factual statement, subject to the stated caveat that IPC employees loaded the trailer. Defendants' use of the expression "instrumentalities he needed to do his work", is itself vague terminology as to what constitutes an instrumentality. Therefore Plaintiff's response properly qualified its agreement by noting that IPC employees actually provided Franke with the loaded trailer, which clearly was one of the primary instruments needed for him to make a delivery.

**Regarding Defendants' Paragraph H**

8

Defendant again contends this statement was simply a section heading. Whether it was or was not, it clearly constituted a statement that immediately above it contained another type of heading suggesting that the content of Paragraph H was an "Uncontroverted Fact". Therefore Plaintiff had to respond because it was factually inaccurate, as Plaintiff explained in his succinct response.

**Regarding Defendants' Paragraph 45**

Plaintiff's response was completely proper and necessary to respond to the vague reference to "other documentation", that was not referred to in the testimony of Janet Berndt relied upon by Defendants. The objection, and Plaintiff's comment simply and accurately respond to the inaccurate inference and implication of Defendants' statement that the handbook referred to entities other than IPC or UACL.

**Regarding Defendants' Paragraph 49**

Contrary to Defendants' current assertion, Plaintiff's response was completely responsive to the inaccurate claim made by Defendants that IPC never "qualified Franke as a driver". Plaintiff concisely explained in its response why that statement was not true and cited appropriate supporting material, including the October 2007 contract and testimony of Defendants' employee, Mr. Mundy.

**Regarding Defendants' Paragraph 50**

Again Plaintiff's response was both responsive and necessary to explain that Defendant was inaccurate in stating that IPC never had the right to discipline Franke. The basis for possible discipline is concisely explained in Plaintiff's response and supported by citation to the appropriate sections of the October 2007 contract.

**Regarding Defendants' Paragraph 53**

Plaintiff's response was indeed responsive to Defendants' statement and was necessary to qualify Plaintiff's agreement. Plaintiff's succinct response addresses the suggestion and inference in Defendants' Paragraph 53 that IPC did not require conformity with Federal Motor Carrier safety regulations, which simply was incorrect, as set forth in the contract provisions cited by Plaintiff.

**Regarding Defendants' Paragraph 56**

Plaintiff's response succinctly and accurately explains the reason Plaintiff denied the statement as to IPC. Defendants "highlighted" sentence set forth by Plaintiff does not contain legal argument, but rather is simply an explanation for the denial, consistent with the cited testimony of Mr. Limback and the contents of the memo bill.

**Regarding Defendants' Paragraph 57**

Plaintiff's response is a proper explanation of its agreement. Plaintiff is entitled to explain and respond to the clear implication of Defendants' Paragraph 57 that UACL was unaware of this collision until 2012, when, in reality, UACL was notified 4 years earlier, on the first business day after the crash, as David Martin so testified.

**Regarding Defendants' Paragraph J**

Defendant now claims Plaintiff's response contains legal argument when, in reality, Plaintiff's response was necessitated because Defendants' statement in Paragraph J completely consists of argument and conclusion as to ultimate issues in the case. The statement is not uncontested, is not accurate, and is not factual. Plaintiff was required to object and to succinctly explain the reason for that objection, as Plaintiff did.

**Regarding Defendants' Paragraph 63**

Plaintiff's statement highlighted by Defendants is, in fact, responsive to the claim in

10

Paragraph 63 that Melody Hansen, while acting as UACL's representative, did not require drivers like Franke to stay in communication and contact with UACL. Plaintiff succinctly explained its denial and supported that denial with specific citation to the master brokerage agreement between UACL and MBMS.

**Regarding Defendants' Paragraph 64**

The portion of Plaintiff's response highlighted by Defendants was a proper response explaining Defendants' objection. Plaintiff's statement further clarifies the documented process under which any potential transportation of paper products was initiated by IPC and UACL. Plaintiff's response is an accurate and concise statement to clarify the reasons that Plaintiff had to object to Defendants' use of the vague expression "dispatched".

**Regarding Defendants' Paragraph 65**

The portion of Plaintiff's response highlighted by Defendant accurately explains why Plaintiff could only agree to a portion of the statement because Franke was actually hauling the load pursuant to the initial request of IPC and UACL.

**Regarding Defendants' Paragraph 66**

The highlighted portion of Plaintiff's response was a proper and succinct response to explain the inaccuracy in Defendants' statement. Although Mr. Franke may have testified he got his instructions and directions from his employer, all the instructions and directions which MBMS received, and with which Mr. Franke had to comply, came from both IPC and UACL as documented by the cited deposition testimony.

**Regarding Defendants' Paragraph 69**

Plaintiff's response was both responsive and a necessary explanation that bills of lading did

11

not contain only standard information. Rather the bills of lading contained much information specific to the particular delivery date, time, location, and product.

**Regarding Defendants' Paragraph 70**

Plaintiff's statement is a proper and responsive explanation of Plaintiff's objection to the vague and misleading statement contained in Defendants' paragraph 70. Mr. Franke, was, in fact, performing part of the delivery, as documented by the deposition testimony cited by Plaintiff.

**Regarding Defendants' Paragraph 75**

Plaintiff's statement highlighted by Defendants was a proper response to the overly broad, vague and conclusory statement made by Defendants in paragraph 75. Plaintiff's statement properly explains the basis for his objection, while acknowledging, to the extent it was accurate, the testimony of Ms. Berndt. Defendants' statement 75 is an overly broad conclusion that is not completely accurate, because, as Plaintiff points out, there were contract provisions that clearly relate to grounds for termination. Plaintiff's paragraph 75 was not limited to simply what Ms. Berndt testified to, but rather was a sweeping conclusion, and definitely not an uncontroverted fact.

**Regarding Defendants' Paragraph K**

The content of Defendants' Paragraph K is both inaccurate and also constitutes an argumentative conclusion as to an ultimate issue in the case that should be decided by the jury. Therefore Plaintiff had to respond, and Plaintiff's response succinctly explains the inaccuracy and impropriety of Defendants' Paragraph K.

**Regarding Defendants' Paragraph 77**

The content of Defendants' Paragraph 77 is not a statement of facts, but rather improperly constitutes an argumentative conclusion, and further attempts to characterize the mental state of

Franke and MBMS. The portion of Plaintiff's response highlighted by Defendants is a proper and succinct explanation for Plaintiff's objection.

## CONCLUSION

Accordingly, as set forth above, the content of Plaintiff's response to Defendants' alleged uncontroverted statements of facts was entirely proper and in accord with the provisions of Local Rule 56.1. In numerous instances Defendants' statement of facts was argumentative, conclusory, and overly broad, and made unsupported claims as to an ultimate issue, or simply was unsupported by the cited deposition testimony. Such deficiencies in Defendants' statement of facts required Plaintiff to provide an appropriate "response". Language that Defendants now attempt to characterize as "surplusage", in actuality, is Plaintiff's proper explanation as to why Defendants' purported statement of facts is incorrect, unsupported or cannot be entirely admitted, denied or objected to without some qualification or explanation. Also, such statements by Plaintiff were responsive, necessary and proper in light of the content of Defendants' statement of facts.

Defendants' reliance on a footnote in *Larry v. Bagraft Papercon* I, LLC, ---F. Supp. 2d--- 2013 WL 1174653 is misplaced. In *Larry*, Plaintiff's response failed to address each of the defendant's statement of facts and largely responded only to part of the statement and ignored the remainder. On the contrary, here Defendants are complaining about the very portions of Plaintiff's response that were actually required to address the entirety of Defendants' Statements of Facts. Furthermore, unlike the Plaintiff in *Larry*, Plaintiff's Response to Defendants' Rule 56.1(b) Statement of Facts complied with Local Rule 56.1(b)(3) because it contained numbered paragraphs corresponding to the paragraph to which it is directed, and responses to each numbered paragraph,

13

with supporting references to the record where there is disagreement. Therefore, for the reasons discussed above, Plaintiff asks this Court to either strike and/or dismiss in its entirety Defendants' motion to strike allegedly superfluous argument contained in Plaintiff's responses to UACL's and IPC's statement of facts.

Wherefore Plaintiff asks this Court to strike and/or dismiss IPC's and UACL's Motion to Strike Superfluous Argument Contained in Plaintiff's Responses to UACL's and IPC's Statement of Facts.

s//Richard F. Burke, Jr.
Submitted By One of Plaintiff's Attorneys
Richard F. Burke, Jr.
ARDC No: 03121588

Richard F. Burke, Jr.
Shannon M. McNulty
Kimberly M. Halvorsen
Attorneys for Plaintiff
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle Street, Suite 3100
Chicago, Illinois 60602
(312) 899-9090
(312) 251-1160 (Fax)

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MURRAY SCHEINMAN, Plenary Guardian of the Estate and Person of JEFFREY J. SCHEINMAN, a Disabled Person, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No.:09 cv 5340 ) |
| MARTIN'S BULK MILK SERVICE, INC., SAMUEL G. FRANKE, INTERNATIONAL PAPER COMPANY, UNIVERSAL AM CAN LTD., CAN LTD., Successor to OVERNITE EXPRESS, INC EXPRESS, INC. and OX LLC, BMW of NORTH AMERICA, LLC, a corporation, BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, a corporation | ) Honorable James F. Holderman ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT INTERNATIONAL PAPER COMPANY'S LOCAL RULE 56.1(b)(3)(B) STATEMENT OF MATERIAL FACTS IN SUPPORT OF IPC'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, JEFFREY J. SCHEINMAN, through his attorneys, CLIFFORD LAW OFFICES,

P.C., submits this response and statement of material facts pursuant to Local Rule 56.1(b)(3) in

response and opposition to Defendant International Paper Company's Local Rule 56.1(b)(3)

Statement of Material Facts in Support of Their Motion for Summary Judgment. Plaintiff denies that

there is no genuine issue of fact as to all of the facts cited below. Plaintiff further denies that

Defendant's statement of material facts accurately reflects all of the relevant facts, and denies that

defendant's statement of facts supports granting a summary judgment or dismissal of Plaintiff's

Complaint. In support thereof, Plaintiff states as follows:

EXHIBIT "1"
WITH
HIGHLIGHTING

1



PLAINTIFF'S
EXHIBIT

A

**DEFENDANTS ALLEGED UNCONTROVERTED FACTS**

7.     June 13, 2008, UACL acquired the trucking and brokerage operations of OEI in an Asset Purchase Agreement such that UACL took over the previous OEI trucking services and OEI, for all intents and purposes, ceased to operate. (JAE 7, pp. 35, 42, 50, 55; JAE 9, pp. 46-47, 49-51, 55; JAE 18, pp. 6-8, 12, 16.)

8.     The amended October 2007 contract between IPC and UACL, effective June 13, 2008, contains a section entitled "Independent Contractor" which provides that UACL shall perform all services under the agreement as an independent contractor to IPC and, under no circumstances, shall PC be construed as having responsibility for UACL's safety, means or methods. (JAE 9, p. 99; JAE 11, pp. 71-72; JAE 12, p. 59; JAE 13, p. 82.)

**C. Relationship Between UACL and MBMS**

9.     As IPC's transportation services provider beginning June 13, 2008, UACL had an obligation to fulfill the terms of the IPC/UACL contract and, in order to do so, it turned to MBMS to provide the same trucking services that MBMS had provided in the past for OEI with regard to its 2007 contract with IPC. (JAE 7, pp. 76, 102; JAE 9, pp. 17, 83-85.)

**PLAINTIFF'S RESPONSE**

7.     Plaintiff agrees the Asset Purchase Agreement sets forth the scope of the acquisition. However, Plaintiff objects to and denies the overly broad characterization that UACL took over the previous OEI trucking services. Plaintiff only has information as it pertains to IPC, and IPC had to agree to UACL's desire to take over OEI's contract with IPC before UACL could do so.

8.     Plaintiff agrees the October 2007 contract as assumed by UACL contains section #20 entitled Independent Contractor, but denies that it contains the argumentative conclusions with respect to responsibility. Plaintiff further states that the preceding paragraphs of the contract, including paragraphs 3-14 set forth multiple provisions that establish that UACL was under the control and supervision of IPC in virtually all aspects of the trucking services to be provided.

9.     Plaintiff agrees that as of June 13, 2008 UACL had an obligation to fulfill the terms of the IPC/UACL contract and agrees that UACL utilized MBMS on July 3, 2008 to perform UACL's truck transportation obligations, but objects to the overly broad characterization that MBMS was providing "the same trucking services that MBMS had provided in the past for OEI"

4

## DEFENDANTS ALLEGED UNCONTROVERTED FACTS

10.     In May 2008, in preparation for the eventual UACL purchase of OEI, UACL brokerage manager, John Moorer, sent a draft UACL Master Brokerage Agreement to MBMS.
(JAE 8, p. 64.)

11.     In order for MBMS to act as a carrier on loads that UACL was brokering, UACL had several requirements for MBMS: (1) the three page Master Brokerage Agreement must be signed; (2) MBMS would have to provide a copy of its authority to operate; (3) MBMS must provide proof of insurance; (4) MBMS must provide a completed W-9; (5) MBMS must complete and return the carrier surgey form; and (6) all information has to be faxed to the UACL phone number. (JAE 7, pp. 84, 86, 135, 137; JAE 10, pp. 100-103.)

## PLAINTIFF'S RESPONSE

10. Plaintiff agrees that John Moorer sent a draft UACL Master Brokerage Agreement to MBMS in May of 2008, and again in June of 2008, since the May copy had never been returned; However, John Moorer did not ever testify that such agreement was sent "in preparation for the eventual UACL purchase of OEI". Furthermore, UACL and MBMS had a standing Master Brokerage Agreement dating back to at least November 7, 2007, which pre-existed UACL's purchase of OEI. (Moorer dep., pp. 50-54, 64, Exhibit 8; November 7, 2007 UACL Master Brokerage Agreement with MBMS, Exhibit 22).

11.     Plaintiff disagrees with the statement, suggestion and/or inference that on July 3, 2008 UACL merely had brokered the transportation of IPC goods that MBMS and Franke were hauling at the time of this crash. UACL, legally and factually was not simply acting as a truck broker because UACL had a contractual obligation to actually transport IPC's paper products on July 3, 2008. However, plaintiff agrees that testimony has been presented stating that where UACL was acting solely in the capacity of a broker, it required MBMS to comply with the 6 items identified by Defendants. Plaintiff further agrees that UACL required MBMS to comply with all of these 6 items on July 3, 2008 even though UACL was not acting only as a broker for the load in question. (Anderton Dep. pp. 25-27, Ex. 11; Mundy Dep. pp. 98-100, Ex. 13.)

5

**DEFENDANTS ALLEGED
UNCONTROVERTED FACTS**

**PLAINTIFF'S RESPONSE**

12.    MBMS signed and agreed to the UACL Master Brokerage Agreement, effective as of June 12, 2008 and on July 3, 2008, that provided, among other things, that MBMS is an independent contractor to UACL and is not to be deemed an agent of UACL. (JAE 7, pp. 110-111, 124; JAE 9, pp. 107-108; JAE 10, pp. 127-130.)

12.  Plaintiff agrees that MBMS had signed and agreed to a UACL master brokerage agreement effective June 12, 2008, but denies that on July 3, 2008, MBMS was hauling a load only pursuant to such brokerage agreement because testimony has established that on that day UACL was not simply a broker, but was operating as a motor carrier and was utilizing the services of MBMS to fulfill the truck transportation of IPC products which it was contractually bound to provide on that day. (Anderton dep., pp. 25-27, Exhibit 11).

6

Case: 1:09-cv-05340 Document #: 354 Filed: 07/10/13 Page 19 of 36 PageID #:5539
Case: 1:09-cv-05340 Document #: 343-1 Filed: 06/18/13 Page 5 of 20 PageID #:5381
Case: 1:09-cv-05340 Document #: 327 Filed: 05/28/13 Page 7 of 31 PageID #:3695

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 13. Pursuant to an agreement between UACL and IPC for delivery of IPC's products to its customers, UACL brokered the subject load to MBMS. (JAE 11, pp. 35, 78.) | 13. Plaintiff denies that UACL was acting as a truck broker when it utilized MBMS and Franke to perform the transportation services to which UACL was contractually bound to provide in UACL's capacity as a motor carrier under the October 2007 amended agreement. **The Federal Motor Carrier Safety Administration Regulations, 49 C.F.R. § 371.2(a) defines a broker as "a person who, for compensation, arranges, or offers to arrange the transportation of property by an authorized motor carrier. Motor carriers or persons who are employees or bonafide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport."** Additionally under 49 U.S.C. § 13102 (2), a broker is defined as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing or arranging for transportation by motor carrier for compensation. Therefore UACL cannot accurately characterize itself as a truck broker who had simply "brokered" the subject load to MBMS. |
| 14. After June 13, 2008, when picking up IPC products and transporting them from the IPC Midwest Distribution Center, MBMS was delivering goods under the UACL Master Brokerage Agreement. (JAE 7, p. 76; JAE 9, p. 84.) | 14. Plaintiff denies the statement, inference and/or suggestion that MBMS delivered IPC goods only under the UACL Master Brokerage Agreement because UACL was operating as a motor carrier rather than a transportation broker. (Anderton Dep. pp. 25-27, Ex. 11). |

7

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| **D. Franke's Conduct Was Controlled by MBMS, Not IPC.** | D.  Plaintiff objects to Defendant's claim that Franke's conduct was controlled by MBMS, not IPC insofar as it constitutes argument and is conclusory and does not properly belong in a Statement of Material Facts. |
| 15.  Franke was employed by MBMS as a driver since 1999 and was so employed on the date of the occurrence. (JAE 2, pp. 6, 10, 58; JAE 4, pp. 15, 153; JAE 5, pp. 307, 362, 506.) | 15.  Agreed. |
| 16.  His work was always assigned through MBMS and his supervisor was David Martin and the Martins of MBMS. (JAE 2, pp. 10, 11; JAE 3, p. 123.) | 16.  Agree other than as to "always." |
| 17.  Franke never had any conversations with anyone at UACL concerning the load he was hauling on July 3, 2008 or any of the loads he hauled before July 3, 2008. (JAE 2, p. 39-40.) | 17.  Agreed. |
| 18.  IPC never gave MBMS or Franke instructions or directions concerning Frank. (JAE 4, p. 144; JAE 5, p. 326.) | 18.  Denied since IPC's instructions and directions concerning transportation of its paper goods set forth in the October 2007 contract were to be complied with by any other company UACL used. (Mundy Dep, pp. 103-104, Ex. 13.) |

8

Case: 1:09-cv-05340 Document #: 343-1 Filed: 06/18/13 Page 7 of 20 PageID #:5383

Case: 1:09-cv-05340 Document #: 327 Filed: 05/28/13 Page 10 of 31 PageID #:3698

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 22. Franke would pick up a load at the MBMS terminal in Wilton, Wisconsin, deliver it to the Chicago area, re-load, and then bring a load back to the Wilton, Wisconsin MBMS terminal. (JAE 6, p. 30.) | 22. Agreed. |
| 23. On the day of the occurrence, Franke transported a load from Wilton, Wisconsin to Chicago, Illinois and he was assigned that load through dispatch at MBMS. (JAE 6, pp. 103-104.) | 23. Objection to the extent the cited testimony does not relate to the statement. However, plaintiff agrees generally Mr. Franke on the date of the occurrence transported a load from Wilton, Wisconsin to Chicago, and he was asked to do so in the most immediate sense by an employee of MBMS. |
| 24. David Martin and Pat Podlena of MBMS had the responsibility of coordinating Franke's pickup of a load on a day to day basis with the IPC Hammond Distribution Center. (JAE 6, p. 39.) | 24. Agreed. |
| **E. Neither Franke nor MBMS Represented Franke to be IPC's Agent, Just MBMS's Employee.** | E. Objection and denied. The cited deposition testimony does not support this statement. Franke was never asked, and never testified, as to whether or not he was a "agent" of IPC. He only testified that he never told people I'm here on behalf of IPC. (Franke dep. I, pp. 44-45, Exhibit 2). Agreed Franke did not consider himself to be an employee of IPC. Agreed David Martin testified he did not "represent" to anyone that Franke was an agent of IPC, however, David Martin testified that MBMS was acting as an agent for IPC by transporting its paper product to Minneapolis, and that MBMS was also acting as an agent for OEI (then owned by UACL) by transporting the paper product that OEI had agreed with IPC to get transported to Minneapolis. (Martin dep. I, p. 65, Exhibit 4) **RFB EDIT THE ABOVE ANSWER** |

10

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 25.　　Franke never considered himself to be an employee [or agent] of UACL, OEI, or IPC. (JAE 2, p. 47.) | 25.　　Agree Franke testified he did not consider himself an employee of UACL, OEI or IPC. Denied as to agency since Franke was not ever asked if he considered himself an agent of UACL, OEI or IPC. (Franke dep. I, p. 47, Exhibit 2). |
| 26.　　Neither David Martin nor Franke ever represented to anyone that Franke was an agent of IPC and Franke did not consider himself to be an employee of IPC. (JAE 2, pp. 44-45, 47, 58); JAE 4, pp. 142-143.) | 26.　　Objection and denied. The cited deposition testimony does not support this statement. Franke was never asked, and never testified, as to whether or not he was an "agent" of IPC. He only testified that he never told people I'm here on behalf of IPC. (Franke dep. I, pp. 44-45, Exhibit 2). Agreed Franke did not consider himself to be an employee of IPC. Agreed David Martin testified he did not "represent" to anyone that Franke was an agent of IPC, however David Martin testified that MBMS was acting as an agent for IPC by transporting its paper product to Minneapolis, and that MBMS was also acting as an agent for OEI (then owned by UACL) by transporting the paper product that OEI had agreed with IPC to get transported to Minneapolis. (Martin dep. I, p. 65, Exhibit 4). |
| 27.　　David Martin represented only that Franke was an employee of MBMS and that he received direction, control, supervision and management from MBMS. (JAE 4, pp. 143, 159.) | 27.　　Denied insofar as the October 2007 contract sets forth in sections 3, 8, 9, 10 and 11 rules and requirements that constituted direction, control, supervision and management. (October 2007 Contract between IPC and UACL, Ex. 15). Said terms were applicable to any company UACL used to perform the truck transportation services. (Mundy Dep., pp. 103-104, Ex. 13). |

**F. IPC Had No Involvement in the Method Of Payment to MBMS/Franke.**

11

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 33. MBMS provided Franke with the equipment he needed to do his job, including his truck, generally, and the truck he was driving on the date of the occurrence. (JAE 2, p. 10.) | 33. Agreed MBMS provided Franke with the tractor he was driving at the time of the occurrence. However, the trailer Franke was hauling was a pool trailer that had to meet the specifications of IPC as stated in their October 2007 contract with UACL, and the trailer had been loaded by IPC. (Mundy Dep., pp. 63-64, October 2007 Contract, Section J, Ex. 15). |
| 34. IPC never provided Franke with a truck or supplied the graphics, placard, stickers or logos on the tractor or trailer. (JAE 3, p. 447; JAE 5, p. 347.) | 34. Agreed as to the tractor portion of the semi-tractor trailer truck Franke was driving. |
| 35. IPC did not have any requirements regarding loading the trailer and never qualified, hired, disciplines, fined, counseled or fired any of the MBMS drivers. (JAE 11, p. 176.) | 35. Denied; IPC's October 2007 Contract with UACL had requirements for the qualifications of drivers used by UACL to haul IPC's goods. (Ex. 15, Sec. 3(H)). |
| 36. IPC never inspected the tractor, trailer, chassis or container via a pre-trip inspection. (JAE 11, p. 176.) | 36. Denied. The cited page of Ms. Anderton's deposition does not discuss the statement. The trailer was loaded by IPC's employees at its Hammond warehouse. (Franke Dep. Pp. 206-207, Ex. 3). |
| 37. MBMS owned, and was responsible for maintenance of, the tractor Franke was driving on the date of the accident. (JAE 2, pp. 12, 46; JAE 3, p. 139; JAE 4, pp. 18, 25, 77-79.) | 37. Agree MBMS owns the tractor and was responsible for maintaining it. However, the maintenance was required by IPC in its contract with UACL. (October 2007 Contract, Section 3(G), Ex. 15; Mundy Dep, pp. 59-60, Ex. 13; Crawford Dep., pp. 39-42, Ex. 12). |
| 38. IPC was not responsible for the maintenance of the tractor or trailer, the expenses of operation such as gas and oil, or for obtaining any licenses or permits for the tractor or trailer. (JAE, p. 347.) | 38. Agree, but further state that IPC required Universal to maintain the truck equipment. (October 2007 Contract, Section 3(G), Ex. 15; Mundy Dep, pp. 59-60, Ex. 13; Crawford Dep., pp. 39-42, Ex. 12). |

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 39. IPC never required Franke to inspect, clean, or maintain his tractor or trailer, or require him to use a designated place for the cleaning, servicing, or gassing of his tractor-trailer. (JAE 3, p. 449; JAE 5, pp. 328, 335.) | 39. Agreed. |
| 40. IPC never provided him with tools or instrumentalities he needed to do his work. (JAE 3, p. 446; JAE 4, p. 145.) | 40. Agreed, other than IPC employees at the Hammond Warehouse loaded the trailer. (Anderton Dep. pp.149-159, Ex. 11.) |
| 41. IPC never provided Franke with clothing or log books, a co-driver, or money with which to purchase gas. (JAE 3, p. 447; JAE 5, p. 328.) | 41. Agreed. |
| 42. IPC never provided any directions or instructions on where or how to purchase gas, supplies or services while driving the truck. (JAE 6, p. 194.) | 42. Agreed |
| 43. IPC never dictated to any drivers that came to the Hammond distribution center how to u se their log books, what clothing to wear, what equipment should be used, how to operate his tractor on the road, or report what was going on with their driving. (JAE 6, p. 173.) | 43. Denied insofar as in the October 2007 Contract IPC dictated that the motor carrier hauling its paper goods had to comply with all state, municipal and federal laws and regulations; and the carrier had to follows traffic regulations and Department of Transportation regulations. (October 2007 Contract, Section 3(H), Ex. 15; Anderton Dep., pp. 59-60; 67-68, Ex. 11; Mundy Dep., pp. 61-62, Ex. 13). Drivers also need to report per the contract, to IPC if the driver was going to be detained more than an hour. (Mundy Dep., pp. 103-104; Ex. 13). |

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| **H. IPC Did Not Monitor or Discipline The Conduct of MBMS Driver Franke.** | H. Denied; IPC did in fact monitor driver conduct and required 98% performance compliance with the October 2007 contract terms; IPC engaged in performance reviews of the carrier and its drivers. IPC disciplined the conduct of any MBMS driver because IPC could terminate the contract if a customer complained during delivery. Agree Franke was not actually disciplined by IPC. (Anderton Dep., pp. 125-126; 139-144, Ex.11; Mundy Dep., pp. 59-60; 69-70; 103-104, Ex. 13; Crawford Dep., pp. 42-44). |
| 44. MBMS kept a driver qualification file on Franke, reviewed his work annually, and provided him with an employee handbook which contained instructions from MBMS on how to use the fuel pump, how to fill out MBMS paperwork, what MBMS expected of him, and MBMS safety procedures, including instructions on how to do a pre-trip inspection, and what to do in the event of an accident. (JAE 3, pp. 107, 112, 118; JAE 5, pp. 282, 287, 365.) | 44. Agreed. |
| 45. With respect to the driver handbook and other documentation concerning safety that MBMS gave its drivers like Franke, at no time or place did any of those documents indicate that a MBMS driver should contact IPC or UACL after an accident occurred. (JAE 6, p. 132.) | 45. Object to the overly broad and vague nature of the statement without specifying what "other documentation" concerning safety, is referred to. With respect to the Driver Handbook, Plaintiff agrees Ms. Berndt so testified, but Plaintiff further states that the Handbook is not limited to driving performed for any particular company, including IPC and UACL. |

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 49.     IPC never hired, disciplined, counseled, or qualified Franke as a driver. (JAE 3, p. 454; JAE 5, p. 340.) | 49.     Plaintiff agrees IPC never personally hired, disciplined or counseled Franke. However, IPC did set qualifications for the motor carriers and their drivers that were hauling IPC's goods in Section 3(H) of the October 2007 Contract wherein it required that "carriers personnel shall be fully qualified and shall procure and maintain such licenses and permits as are required by local, state or federal laws and regulations required to maintain and operate the motor vehicle equipment. Carriers personnel shall comply with applicable local, state and federal laws and regulations". (October 2007 Contract, Section 3(H), Exhibit 15.) These contractual requirements had to be complied with by both UACL and any carrier it used to assist them in performing their transportation services for IPC. (Mundy Dep., pp. 103-104, Ex. 13). |
| 50.     IPC never had or exercises the right to discipline Franke. (JAE 3, p. 454; JAE 5, p. 346.) | 50.     Plaintiff agrees that IPC never exercised the right to discipline Franke. However, under the terms of the October 2007 contract, if IPC received complaints about a driver such as Franke, where that driver failed to comply with IPC's facility safety rules, or failed to make timely deliveries, and non-compliance with federal, state or municipal laws and regulations, Defendant IPC could terminate its contract with UACL. (October 2007 Contract, Section 8A-H.) |
| 51.     IPC never instructed Franke on his appearance or personal grooming standards, and did not maintain a personnel file on him. (JAE 3, p. 454; JAE 5, p. 327.) | 51.     Agreed. However, IPC could reject Mr. Franke if he was crass, inappropriately dressed, or disrespectful. (Martin Dep. II, pp. 340-341, Ex. 5.) |

17

Case: 1:09-cv-05340 Document #: 343-1 Filed: 06/18/13 Page 13 of 20 PageID #:5389

Case: 1:09-cv-05340 Document #: 327 Filed: 05/28/13 Page 18 of 31 PageID #:3706

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 52. IPC never conducted safety meetings or informational meetings which Franke was required to attend. (JAE 3, p. 461.) | 52. Agreed however IPC required all drivers to comply with its facility safety rules and operating procedures. (October 2007 Contract, Section 8 (A), Ex. 15). |
| 53. IPC never kept track of his hours or service to ensure he was in conformity with Federal Motor Carrier Safety Regulations. (JAE 3, p. 454; JAE 5, p. 345.) | 53. Agree that IPC never personally kept track of Franke's hours, however IPC did require all drivers hauling its goods to comply with all "applicable local, state, and federal laws and regulations" which includes Federal Motor Carriers Safety Regulations. (October 2007 Contract, Section 3(H) and 8(G), Ex. 15). |
| 54. IPC never required Franke to take a physical exam. (JAE 3, p. 454; JAE 5, p. 345.) | 54. Plaintiff disagrees insofar as IPC required all motor carrier drivers to comply with all state, local and federal regulations, which includes Federal Motor Safety Act Regulations pertaining to periodic physical exams. (October 2007 Contract, Section 3(H) and 8(G), Ex. 15). |
| 55. IPC never directed Franke to use any particular route to use in moving IPC products and did not measure, score or evaluate his work. (JAE 6, pp. 194, 447.) | 55. Agree IPC did not direct Franke to use a particular route. However, Franke's work was subject to evaluation insofar as IPC engaged in performance reviews of its carriers to ensure the motor carriers hauling IPC goods complied with the minimum service level requirement of 98% and minimum on-time delivery requirement. (October 2007 Contract, Section 3(E) and 3(F), Ex. 15; Anderton Dep., pp. 139-144, 125-126, Ex. 11; Mundy Dep., pp. 59-60, 69-70, 103-104, Ex. 13). |

I. **IPC/UACL Did Not Learn of the Accident from MBMS/Franke.**

18

Case: 1:09-cv-05340 Document #: 343-1 Filed: 06/18/13 Page 14 of 20 PageID #:5390
Case: 1:09-cv-05340 Document #: 327 Filed: 05/28/13 Page 19 of 31 PageID #:3707

| **DEFENDANTS ALLEGED UNCONTROVERTED FACTS** | **PLAINTIFF'S RESPONSE** |
|---|---|
| 56. IPC did not learn about the existence of the accident until about a year after the accident. (JAE 11, p. 17.) | 56. Denied as to IPC. The cited testimony only states that Joan Anderton, one employee of IPC, did not learn of the collision until about 1 year after it occurred. However, some of IPC's goods were damaged in the collision and UACL had to compensate IPC for that damaged product. So IPC would have to have known some type of incident occurred. (Limback Dep. pp. 96, Ex. 9; Memo Bill for Cenveo delivery July 7, 2008). |
| 57. Melody Hansen of UACL first learned of the July 3, 2008 collision when UACL/IPC's lawyer, Carl Fisher, called her in 2012. (JAE 10, pp. 137-138.) | 57. Plaintiff agrees Melody Hansen personally so testified. However, UACL was notified of the collision by David Martin on the first business day after it occurred. (Martin Dep. pp. 336-337; Ex. 5). |
| **J. The Facts Surrounding the Accident Demonstrate That Neither IPC Nor UACL Controlled Franke.** | J. Plaintiff objects to the argumentative conclusory statement, which is not merely a statement of fact. Notwithstanding said objection, the contents of the October 2007 contract established extensive control and supervision by IPC and UACL on the activities of motor carrier drivers. (Ex. 15). |
| 58. IPC was unaware of how the delivery was executed and had no influence over it or any direct contact with MBMS concerning its delivery (JAE 11, pp. 20, 23, 28.) | |
| 59. After he was hired by MBMS, he was assigned to a dedicated run from Hammond, Indiana to Wilton, Wisconsin, hauling paper products for the shipper, IPC. (JAE 3, pp. 107, 132.) | 59. Object to the conclusory terminology of "dedicated run" and "shipper", but agree Franke regularly hauled paper products from IPC's warehouse to Wisconsin. |

19

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 63. Melody Hansen of UACL, the UACL representative who faxed broker confirmation sheets to MBMS, never provided any directions, instructions, tools, instrumentalities, safety instructions, driving instructions, discipline, fines, or other indicia of control to Franke; moreover, she did not require Franke to stay in communication or contact with her as a representative of UACL. (JAE 10, pp. 140-142.) | 63. Denied. Melody Hansen regularly provided broker confirmation sheets to Sam Franke and MBMS with directions and instructions for the load number, the location date and time of the pickup at International Paper, as well as the date, time and locations for the delivery of IPC's paper products at each of their customer destinations. (Exhibit 20, Broker Confirmation Sheets). Additionally, the Master Brokerage Agreement between UACL and MBMS set forth multiple requirements that MBMS had to meet, including compliance with all federal, state and local laws regarding the provision of transportation services, maintaining adequate insurance coverage and providing UACL with billing information immediately upon completion of loading and providing the name of the receiver and the status of delivery immediately upon completion of delivery. (Master Brokerage Agreement between UACL and MBMS dated June 12, 2008, Exhibit 14). |

21

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 64. MBMS, not IPC or UACL, dispatched Franke to transport the subject load. (JAE 3, pp. 23, 26; JAE 4, p. 164.) | 64. Objection to the vague meaning and import of the expression "dispatched". Notwithstanding said objection, MBMS told Franke that UACL and IPC needed a pickup; however MBMS would not do so unless and until MBMS received instructions from UACL/OEI to make a pickup. For the incident in question on July 3, 2008, at approximately 4:23, Melody Hansen, an employee of UACL/OEI, faxed to MBMS a broker confirmation sheet in which it instructed MBMS to make a pickup of paper goods at IPC's Excel warehouse in Hammond, Indiana, at 7:00 p.m. that evening. UACL/OEI further instructed MBMS that the paper products had to be delivered on July 7, 2008 between 7:30 a.m. and 4:00 p.m. at three different locations in the Minneapolis area. Two of the locations had specific delivery hours that were further specified. IPC and OEI (UACL) told MBMS where and when to make a pickup, and MBMS told Franke. Thereafter, MBMS would "dispatch", or assign one of its drivers, Samuel Franke, to make the requested pickup at IPC's warehouse. (Martin dep. II pp. 412-415, Exhibit 5; Broker Confirmation Sheet, Exhibit 20; Franke dep. II, pp. 470-471, Exhibit 3). |
| 65. When he was hauling the load on July 3, 2008, Franke considered himself to be an employee of MBMS and he was hauling the load on behalf of his employer. (JAE 2, p. 44.) | 65. Agree Franke considered himself to be an employee of MBMS; however, the only reason Franke was hauling a load down Route 41 at the time of this crash was because IPC and OEI (UACL) had requested MBMS to make the pickup of paper goods at IPC. (Franke dep. II, pp. 472-473, Exhibit 3). |

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 66. He received all of his instructions and directions from his employer, MBMS, with regard to the pickup and delivery he did on July 3, 2008. (JAE 2, p. 53.) | 66. Agree Franke so testified, however, Franke further testified that the only reason he made the pickup at IPC's warehouse was because OEI (UACL) and/or IPC had requested MBMS to do so, and MBMS then assigned Franke to pick up the load. (Franke dep. II, pp. 472-473, Exhibit 3). Additionally, all instructions pertaining to the pickup were communicated to MBMS by Melody Hansen of UACL via fax on July 3, 2008. (Martin dep. II, pp. 412-414, Exhibit 5). |
| 67. There were three Memo Bills (bills of lading) prepared by IPC for this load because the load was destined for three different places in Minneapolis. (JAE 2, p. 32; JAE 11, p. 94.) | 67. Plaintiff agrees IPC prepared three Memo Bills, also known as bills of lading, which IPC's warehouse employees gave to Franke when he made the pickup at IPC's Hammond warehouse at about 7:00 p.m. on July 3, 2008. The Memo Bills contain specific instructions from IPC as to the procedure for making the delivery at the offices of IPC's three customers, including date, time, contact person, as well as instructions to contact IPC if Mr. Franke was detained or had delivery issues. (Exhibit 21, three Memo Bills). |
| 68. Melody Hansen of UACL did not receive copies of IPC Memo Bills (bills of lading); after the deliveries were made to IPC customers, the brokered carrier (MBMS) sent the executed Memo Bills to UACL for payment. (JAE 10, pp. 54-55.) | 68. Agree Melody Hansen of UACL did not receive copies of IPC's Memo Bills because IPC prepared the Memo Bills and gave the Memo Bills directly to truck driver Franke when he arrived to make the pickup. Agree that after MBMS' driver made the delivery to IPC's customers, MBMS submitted the Memo Bills to UACL in order for MBMS to be paid, however, IPC then issued payment to UACL. (Anderton dep., pp. 107-112). |

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 69. The bills of lading contained standard information concerning customer-required delivery instructions for the load. (JAE 5, p. 483; JAE 11, p. 104.) | 69. The bills of lading contained some information that was standard "boilerplate" information; however, as described by IPC's Joan Anderton, the Memo Bill/bills of lading was a documented created by IPC and contained specific instructions for accomplishing the delivery to IPC's customer, including delivery date, time, location and contact person. The document also specifically described the commodity, amount of pallets or cartons, and the weight of the goods as well as a shipment number. (Anderton dep., pp. 107-113, Exhibit 11). The standard "boilerplate" language in the IPC's Memo Bill provided that the word "carrier" as used on the Memo Bill meant "any person or corporation in possession of the property under the contract". (Three Memo Bills, Exhibit 21). |
| 70. The delivery information did not apply to Franke because he was not delivering the load to the delivery location, but dropping the load in Wilton, Wisconsin, for later delivery in Minnesota by another MBMS driver. (JAE 5, p. 486.) | 70. Objection to the vague and misleading use of the expression "did not apply to Franke". Agree Franke was not personally taking the load all the way to IPC's three customers in Minneapolis. However, the delivery instructions given to Franke on the Memo Bills were to be given to another MBMS driver once Franke hauled the load to MBMS' headquarters in Wilson, Wisconsin, after which another MBMS driver would continue hauling the load to the three Minneapolis destinations. (Martin dep. II, pp. 484-486, Exhibit 5)(Franke dep. I, pp. 32-36, Exhibit 2). |
| 71. Franke signed the bills of lading after the trailer was loaded. (JAE 2, pp. 20, 32.) | 71. Agreed. |

24

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 72. Franke's signature means that he was the driver that picked up the load and was responsible for the load until he got to Wilton. (JAE 2, p. 20.) | 72. Agreed. |
| 73. After Franke's truck was loaded, nobody from IPC gave him directions on how to drive his truck or what to do with his load once he departed the Hammond distribution center. (JAE 3, p. 442; JAE 11, p. 132.) | 73. Denied. The October 2007 Contract contains multiple provisions in which IPC set forth requirements for compliance with all local, state and federal regulations, and on time performance. (October 2007 Contract, Exhibit 15); Additionally the Memo Bills created by IPC, and given to Franke at IPC's warehouse, contained instructions as to exactly where the load was to be taken and when, how and to whom it was to be delivered. (Three Memo Bills, Exhibit 21) (Anderton dep., pp. 107-115). |
| 74. After the occurrence, David Martin had no choice but to terminate Franke from his employment at MBMS based on the severity of the collision. (JAE 6, p. 59.) | 74. Agree that Janet Berndt of MBMS so testified. |
| 75. Neither IPC nor UACL had anything to do with the termination of Franke from MBMS. (JAE 6, pp. 138-39.) | 75. Object to the vague and conclusory use of the expression "had anything to do with". Ms. Berndt testified that it was the decision of MBMS to terminate Franke after the collision, and that UACL and IPC had no involvement with that decision. (Berndt dep., p. 39, Exhibit 6). However, the Contract between IPC and UACL required compliance with all applicable local, state and federal laws and regulations, and non-compliance was a grounds under which IPC could terminate its Contract with UACL. IPC considered the terms of that Contract applicable to UACL and any carrier UACL used. (October 2007 Contract, Sections 3h and 8g, Exhibit 15); (Anderton dep., pp. 25-27, Exhibit 11). |

| DEFENDANTS ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| K. MBMS and Franke Have Admitted That There Are No Documents That Show Franke Was the Agent of IPC Or UACL or That Show IPC or UACL Was the Principal of Franke. | K.   Plaintiff denies that MBMS and Franke have admitted that there are no documents that "show" Franke was the agent of IPC or UACL or that "show" IPC or UACL was the principal of Franke. Such statement is an inaccurate and overly broad characterization of the questions asked of MBMS and Franke in the Request For Admissions. MBMS and Franke were never asked about what any documents "show". |
| 76.    IPC and UACL served multi-item requests for admissions pertaining to documents that purport to show a principal-agent relationship between IPC and Franke or between UACL and Franke. (JAE 19.) | 76.    Plaintiff denies that IPC and UACL served requests for admissions "pertaining to documents that purport to show a principal-agent relationship". In actuality, IPC and UACL's Request to Admit did not ever use the word "show" or "purport to show". Rather, they requested documents that "state or denote", or "acknowledged in writing" a principal-agent relationship. Furthermore, defendant MBMS admitted only that they do not possess any documents that "specifically identify" MBMS as an agent of IPC or UACL. |
| 77.    MBMS and Franke's responses to the Requests for Admissions establish that MBMS and Franke do not believe there are any written documents memorializing a principal agent relationship between IPC and Franke or between UACL and Franke. (JAE 19.) | 77.    Objection insofar as defendant's paragraph 77 is not a statement of fact, but rather is an argumentative conclusion and is based on speculation as to the mental state of MBMS and Franke, as well as conclusions and opinions of MBMS and Franke. The existence of a principal-agent relationship is a determination to be made by a jury based on evaluation of all the evidence in this case, including the October 2007 Contract between IPC and UACL, which does show that IPC maintained control over the actions of UACL and other drivers it used sufficient to form the basis for a finding that Franke, as a driver fulfilling UACL's contractual obligations to IPC, was an agent of IPC. |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MURRAY SCHEINMAN, Plenary<br>Guardian of the Estate and Person of<br>JEFFREY J. SCHEINMAN, a Disabled<br>Person,<br><br>     Plaintiffs,<br><br>vs.<br><br>MARTIN'S BULK MILK SERVICE, INC.,<br>SAMUEL G. FRANKE, INTERNATIONAL<br>PAPER COMPANY, UNIVERSAL AM CAN LTD.,<br>Successor to OVERNITE EXPRESS, INC. and<br>OX LLC, BMW of NORTH AMERICA, LLC,<br>a corporation, BAYERISCHE MOTOREN<br>WERKE AKTIENGESELLSCHAFT, a corporation,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 09 cv 5340<br>)<br>)  Honorable James F. Holderman<br>)<br>)  Magistrate Susan E. Cox<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on **July 10, 2013**, he caused **Plaintiff's Response to Defendants' Motion to Strike Superfluous Argument Contained in Plaintiff's Responses to UACL's and IPC's Statement of Facts** to be filed electronically through the CM/ECF system which will send notification of such filing to the attorneys listed on the attached Service List.

               s// Richard F. Burke, Jr.
               Richard F. Burke, Jr. Bar Number 03121588
               Attorney for Plaintiff MURRAY SCHEINMAN,
               Plenary Guardian of the Estate and Person of
               JEFFREY J. SCHEINMAN, a Disabled Person

Richard F. Burke, Jr.
Shannon M. McNulty
Attorneys for Plaintiff
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle Street, Suite 3100
Chicago, Illinois 60602
(312) 899-9090/(312) 251-1160 (fax)

Scheinman v. Martins Bulk Milk Service, Inc., et al.
Our File No.: 08-0066
Case No. 1:09-cv-05340

SERVICE LIST

Mr. Joseph Skryd
Mr. Matthew Schreck
Mr. James Temple
Ms. Kristen C. Leppert
Mr. Jason Briesemeister
MULHERIN, REHFELDT & VARCHETTO, P.C.
211 South Wheaton Avenue, Suite 200
Wheaton, Illinois 60187
(630) 653-9300
(630) 653-9316 (Fax)
jskryd@mrvlaw.com
mschreck@mrvlaw.com
jtemple@mrvlaw.com
Jbriesemeister@MRVLaw.com

Mr. Robert J. Golden
Mr. Daniel Polsby
DOWD & DOWD, LTD.
617 West Fulton
Chicago, Illinois 60661
(312) 704-4400
(312) 704-4500 (Fax)
rgolden@dowdanddowd.com
dpolsby@dowdanddowd.com
*ATTORNEYS FOR DEFENDANTS: MARTIN'S BULK MILK SERVICE, INC. AND*
*SAMUEL G. FRANKE*

Carlton D. Fisher
William Yu
Cecilia A. Horan
HINSHAW AND CULBERTSON, LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
(312)704-3000
(312) 704-3001 (Fax)
cfisher@hinshawlaw.com
wyu@hinshawlaw.com
choran@hinshawlaw.com
*ATTORNEY FOR DEFENDANT: INTERNATIONAL PAPER COMPANY AND*
*UNIVERSAL AM CAN, LTD., S/B/A AND SUCCESSOR TO OVERNITE EXPRESS INC.,*
*AND OX, LLC*